FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ FEB 03 2012 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————————X

Thomas M. Moroughan

   -against-

The County of Suffolk, Suffolk County
Police Department, Suffolk Detectives Tavares, Charles
E. Lester III, Detective/Sgt. William J. Lamb, Suffolk Police Officer Meany and
Suffolk John Does 1-10, The County of Nassau, Nassau County Police Department,
Nassau Police Officers Anthony D. DiLeonardo, Edward Bienz and John Does 11-20

———————————————————————X

*SUMMONS ISSUED*

Complaint

# CV 12 0512

**BIANCO, J.**

**TOMLINSON, M**

Plaintiff, Thomas M. Moroughan, by and through his attorney, Anthony M.
Grandinette states as follows:

## Introduction

1.    This action arises from the unjustified shooting and physical beating of
Plaintiff, by off duty Nassau County Police officer Anthony D. DiLeonardo, who
had been drinking alcohol prior to the shooting; the subsequent actions of certain
Nassau and Suffolk Police officials who failed to arrest DiLeonardo for
attempted murder, assault with a deadly weapon, assault, DWI and other crimes;
but rather, conspired, with each other and other third parties, manipulated facts
and ignored and fabricated evidence, violated Plaintiff's constitutional rights
with the intent of shielding officers' Anthony D. DiLeonardo and Edward Bienz
from criminal, civil and administrative sanctions by falsely arresting Plaintiff for
Assault 2nd, P.L. 120.05, a class D felony, and Reckless Endangerment 2nd
degree, P.L. 120.20, a class A misdemeanor (Exhibit A); thereafter, defendants,
knowing the charges against Moroughan to be false, disseminated a false and
misleading press release stating "Suffolk County Police today arrested a
Huntington Station man for assault after he drove his car into two off-duty
Nassau County Police Department officers, one of whom shot the man". This
false and defamatory press release resulted in outrageous headlines and
television broadcasts depicting plaintiff as an attempted cop killer in the local
news, print media, and internet (Exhibit B).

2.    The Plaintiff seeks redress against the defendants for their acts, which
permitted, condoned and preserved the code of silence, insulated Anthony D.

DiLeonardo and Edward Bienz from swift and effective investigation, arrest, prosecution and conviction for their brazen criminal acts and violations of administrative regulations. The inevitable result of this behavior was Plaintiff's suffering serious physical injuries as a result of an assault, followed by his unlawful arrest, false imprisonment, malicious prosecution and thereafter, his public humiliation as an attempted cop killer. Plaintiff seeks compensation from defendants, including their supervisors, who approved defendants' actions.

## Jurisdiction

3.     This action is brought pursuant to 42 USC §§ 1983, 1985, 1988, and the First, Fourth, Fifth, Sixth, Eight and Fourteenth Amendments to the U.S. Constitution and the laws of the State of New York. Jurisdiction is founded upon 28 USC 1331, 1343, and 2202. Plaintiffs further invoke the supplemental jurisdiction of this Court to adjudicate pendent State Law claims pursuant to 28 U.S.C. §1367.

4.     Venue is proper in this district under 28 U.S.C. § 1391(b)

## Parties

5.     Plaintiff, Thomas Moroughan (hereinafter MOROUGHAN), is a resident of Suffolk County.

6.     Defendant Suffolk County (hereinafter SUFFOLK), is a County within the State of New York and the public employer of Detectives Tavares, Charles E. Lester III, Detective/Sgt. William J. Lamb, police officer Meany and the John Does 1-10. All defendants are sued individually and in their official capacity.

7.     Suffolk County Police Department, is a County agency, organized under and existing and operating by virtue of the laws of the State of New York and the County of Suffolk.

8.     Defendant, Detective Charles E. Lesser II(hereinafter LESSER), was at all relevant times, an employee of the Suffolk County Police department and the County of Suffolk. LESSER is sued individually and in his official capacity.

9.     Defendant, Detective Tavares (hereinafter TAVARES), was at all relevant times and employee of the Suffolk County Police department and the County of Suffolk. TAVARES is sued individually and in his official capacity.

10.     Police Officer Meany (hereinafter MEANY), was at all relevant times an employee of the Suffolk County Police department and the County of Suffolk. MEANY is sued individually and in his official capacity.

11.     Detective Sergeant William J. Lamb (hereinafter LAMB), was at all relevant times an employee of the Suffolk County Police department and the County of Suffolk. LAMB is sued individually and in his official capacity.

12.     Defendant Nassau County (hereinafter NASSAU), is a County within the State of New York and the public employer of John Does 11-20.

14.     Nassau County Police Department is a County agency organized under an existing by virtue of the laws of the State of New York and the County of Nassau.

15.     Police Officer Anthony DiLeonardo (hereinafter DILEONARDO), was at all relevant times and employee of the Nassau County Police Department and the County of Nassau. DILEONARDO is sued individually and in his official capacity.

16.     Police Officer Edward Bienz (hereinafter BIENZ), was at all relevant times an employee of the Nassau County Police Department and the County of Nassau. BIENZ is sued individually and in his official capacity.

17.     Defendants John Does 11-20 were at all relevant times employees of the Nassau County Police department and the County of Nassau. All defendants are sued individually and in their official capacity.

## GENERAL FACTS

18.     On our about February 21, 2011 MOROUGHAN was hired by Dobro Express Taxi, a fledgling cab company with two cars and a physical office located at 168 Main Street in Huntington Village, in the County of Suffolk, State of New York.

19.     MOROUGHAN was hired as a cab driver and held a valid New York State chauffer's license to operate a cab. As such, his job duties called for the pick up and discharge of passengers for hire.

20.    On or about February 26, 2011, MOROUGHAN began working a 6:00 p.m. shift, which was scheduled to end on February 27, 2011 at 6:00 a.m.

21.    MOROUGHAN was driving a 2010 Toyota Prius Hybrid, New York Registration number 13100-TY, which was an electric/gas powered automobile with the gearshift located in the center console separating two front bucket seats.

22.    At approximated 8:00 p.m., MOROUGHAN picked up his girlfriend, Christine Mondo, who was keeping him company during his shift, and who occupied the front right passenger seat of the cab at all relevant times stated herein.

23.    At approximately 1 am, on February 27, MOROUGHAN received a call from his dispatcher to pick up a fare at 131 West 19th Street in Huntington Station. The fare was cancelled, so MOROUGHAN decided to drive to Huntington village.

24.    To return to Huntington Village, MOROUGHAN drove on New York Avenue, West Hills Road, and eventually was traveling north bound on Oakwood Road.

25.    On route to the village, MOROUGHAN was cut off by a Blue   2008 Acura 4 DSD, New York Registration number EMV-254, being driven by off duty Nassau County police officer BIENZ. The Acura was being operated in an erratic manner in violation of various vehicle and traffic laws (speeding, tailgating, failure to signal, improper lane change, failing to maintain lane, reckless driving, DWI, etc.) creating danger to other motorists on the roadway including MOROUGHAN.

26.    Jillian Bienz was a passenger in BIENZ' Acura.

27.    Almost immediately thereafter, a white 2011 Infinity 4DSD, New York Registration number FHP-1567, being driving by off duty Nassau County police officer DILEONARDO approached MOROUGHAN's taxi from the rear. The Infinity was being operated erratically in violation of numerous vehicle and traffic laws (speeding, tailgating, failure to signal, improper lane change, failing to maintain lane, reckless driving, DWI, etc.), creating danger to other motorists on the roadway including MOROUGHAN.

28.    DILEONARDO passed MOROUGHAN'S taxi and headed North on Oakwood Road pursuing BIENZ.

29.    Sophia Cornia was a passenger in the Infinity.

30. Eventually, BIENZ and DILEONARDO stopped their vehicles pulling over to the east side of Oakwood Road near the interesting of Tippin Drive, both cars facing in a northerly direction.

31. MOROUGHAN proceeded North on Oakwood Road toward his intended destination and upon seeing the Infinity and Acura pulled to the side of the road, stopped his cab adjacent to the Infinity. MOROUGHAN rolled down his window and yelled at DILEONARDO, words to the effect of, "where the hell did you learn how to drive asshole."

32. A shouting match ensued between the parties. MOROUGHAN stepped partially out of his vehicle and DILEONARDO and BEINZ both exited their respective automobiles.

33. Being outnumbered and now fearing for his physical safety, MOROUGHAN re-enters the cab, places the cab in reverse, retreating from the approaching DILEONARDO.

34. MOROUGHAN reverses his car approximately three-car lengths, then places his car in drive and begins to perform a u-turn to his left with the intent to drive south bound on Oakwood Road, away from BIENZ and DILEONARDO.

35. The Suffolk Crime Laboratory report dated April 20, 2011 indicates that after reversing the taxi MOROUGHAN'S vehicle could have moved forward as little as a half a car length, and that the bullets' trajectory supports MOROUGHAN'S claim that he was turning the cab left to perform a u-turn. (See Exhibit C).

36. Despite MOROUGHAN'S retreat, BIENZ and DILEONARDO continue approaching MOROUGHAN'S cab from the east bound shoulder of Oakland Road.

37. At some point after the argument began, DILEONARDO had unholstered his Smith and Wesson .38 caliber revolver, model 36, serial number J654049, from his ankle holster inside his left leg. DILEONARDO'S .38 was chambered with the maximum five live cartridges at the time.

38. After MOROUGHAN re-entered his cab and reversed his vehicle thirty to forty five feet, DILEONARDO follows on foot positioning himself somewhere between the two vehicles. Because DILEONARDO was carrying his .38 on an ankle holster on the inside of his left leg, the crime lab report concludes "(t)he difficulty of drawing a weapon from an ankle holster would have required him to

have drawn the weapon prior to the following events; he may have been concealing the weapon from view by holding it at his side" (See Exhibit C).

39.    As MOROUGHAN attempted to flee, DILEONARDO intentionally, negligently, and/or recklessly discharged all five rounds, three of which entered the cab, two rounds struck MOROUGHAN—one in his left arm and one in the chest. DILEONARDO'S actions constituted the excessive use of force, excessive use of physical force, assault, battery, attempted murder, reckless endangerment, intentional infliction of emotional distress, violations of Nassau County police department regulations, including, but not limited to discharging a firearm into a moving vehicle.

40.    The Suffolk County Crime Lab report documented the following facts concerning the crime scene evidence:

A.    Shattered glass on Oakwood Road 22 feet behind the Infinity;

B.    Shattered glass and bloodstains from MOROUGHAN 36 feet behind the Infinity;

C.    A third bullet entered the car via the windshield but was never recovered;

D.    All five rounds in DILEONARDO'S weapon were discharged (see Exhibit C).

41.    The Suffolk County crime lab report concluded that the three rounds which entered the front windshield of the cab were fired from DILEONARDO'S gun while he was positioned between 13-25° to the right front of MOROUGHAN'S cab (See Exhibit C).

42.    After being hit by two of the five rounds fired by DILEONARDO, MOROUGHAN brought the cab to a stop, at which time DILEONARDO ran to the driver's side of the cab, broke the driver's side window with the butt of his gun, and thereafter struck MOROUGHAN with the butt of his .38 squarely on the nose, stunning MOROUGHAN, and fracturing his nose.

43.    DILEONARDO opened the driver's door of the cab and began striking MOROUGHAN on the side of the head.

44.    At this point, MOROUGHAN was seated in the driver's seat, had two bullet wounds, was bleeding profusely, suffered a broken nose, and was being repeatedly struck in the head by DILEONARDO.

45.   MOROUGHAN'S blood was documented on the roadway 36 feet behind DILEONARDO'S Infinity (see Exhibit C).

46.   MOROUGHAN reached over to the gearshift, placed the taxi in reverse, and utilizing the rear camera, backed up the cab, fleeing for his life.

47.   When MOROUGHAN backed up, DILEONARDO was knocked to the ground by the driver's side door of the cab, his .38 dislodged from his hand falling into the rear of the taxi behind MOROUGHAN. As MOROUGHAN continued backing up, DILEONARDO yelled what MOROUGHAN believed may have been stop, police. However, in utter disbelief that his would be attacker, DILEONARDO, who just shot and beat him, could possibly be a police officer, MOROUGHAN  fled the scene for safety.

48.   After reversing the cab, MOROUGHAN reached out and closed the driver's door, successfully maneuvered a u-turn to the left, thereby traveling away from DILEONARDO and BIENZ heading south bound on Oakwood Road.

49.   A second probable bloodstain was documented on the centerline of Oakwood Road approximately 58 feet south of the first bloodstain, and 98 feet behind DILEONARDO'S Infinity(see exhibit C).

50.   After leaving the scene, MOROUGHAN immediately drove himself to Huntington hospital for treatment.

51.   On route, MOROUGHAN'S girlfriend called 911 reporting the  shooting and requesting a police response to Huntington hospital. MOROUGHAN arrived at Huntington hospital at approximately 1:30 a.m.

52.   Prior to the aforementioned events, DILEONARDO and BIENZ had been out socializing which included the consumption of alcohol.

## EVENTS AT HUNTINGTON HOSPITAL

53.   It is believed that Suffolk County police officer Meany was the  first police officer to arrive at Huntington hospital approximately five minutes after MOROUGHAN'S arrival.

54.   He asked MOROUGHAN what happened and MOROUGHAN told him words to the affect that some psycho tried to kill him.

55.   Police officer Meany was assigned to MOROUGHAN'S room.

56.    Throughout the evening, MOROUGHAN'S requests to see his  girlfriend were denied. Initially, MOROUGHAN was told by police officer Meany that he and his girlfriend had to be kept apart so they could be interviewed separately.

57.    The only civilian that was able to see MOROUGHAN that evening was Annmarie Mondo. She did so by claiming she was immediate family— (MOROUGHAN'S stepmother), and was granted permission to speak with MOROUGHAN briefly. Annmarie Mondo  arrived at the hospital 15-20 minutes after MOROUGHAN (approximately 1:50 a.m.).

58.    MOROUGHAN requested Annmarie contact Risco Lewis, his godmother, and career prosecutor for the Nassau District Attorney's office.

59.    Approximately 30 minutes later (2:20 a.m.), Miss Lewis arrived. MOROUGHAN'S repeated request to see his attorney (Risco Lewis), throughout the course of the evening, were denied by defendants.

60.    Defendant's affectively isolated MOROUGHAN from any outside contact or assistance.

61.    MOROUGHAN observed a significant police presence at the hospital from both Nassau and Suffolk Counties. This struck MOROUGHAN as odd in that he was shot in Suffolk County.

## NASSAU DETECTIVES

62.    At approximately 3:30 a.m. Nassau Detectives John Does 1 and 2 (hereinafter NJD 1 & 2) entered MOROUGHAN'S hospital room, introduced themselves and told MOROUGHAN they wanted to question him.

63.    MOROUGHAN advised NJD 1&2 that he was tired and  obviously not feeling well, and requested they question him later, but they said that needed to question him immediately.

64.    MOROUGHAN specifically asked NJD 1&2 if his assailant was a cop, NJD  1& 2 lied to MOROUGHAN telling him they did not know who his assailant was.

65.    Next, MOROUGHAN  requested to speak to his lawyer, referring to Risco Lewis, but that request was denied.

66. NJD 1&2 repeatedly told MOROUGHAN he did not need a lawyer, suspects need lawyers, not victims, and that lawyers only get in the way of investigations and slow things down. NJD 1&2 suggested to MOROUGHAN that he was obviously the victim and they wanted to wrap up their investigation.

67. The interview was interrupted by MOROUGHAN'S need for medical treatment.

68. Upon recommencement of the interview, MOROUGHAN explained that he really wanted his lawyer and explained his special relationship with Risco Lewis. MOROUGHAN explained that Ms. Lewis had been available to MOROUGHAN since he entered foster care at age 12 due to his mother's drug abuse. MOROUGHAN wanted Risco Lewis there as his lawyer and because she made him feel secure and helped him in matters of importance.

69. Once again, NJD 1&2 deny MOROUGHAN'S request for counsel and continue to advise him that he did not need a lawyer, stating he was the victim, and they needed to wrap up their investigation. Tired, sick, on various medications, MOROUGHAN concedes and answers NJD 1&2's questions.

70. MOROUGHAN describes what happens in summary telling NJD 1&2 that a drunk, crazy bastard shot and beat him, nearly killing him and his girlfriend.

71. The interview ended around 4:00 a.m. and NJD 1&2 thanked MOROUGHAN and left the room.

72. Once again, MOROUGHAN asks police officer Meany to speak with Risco Lewis, but police officer Meany denies the request, telling MOROUGHAN he has to comply with his supervisors' orders and therefore he cannot let anyone in his room.

## SUFFOLK DETECTIVES

73. At approximately 7:00 a.m., two Suffolk County Homicide Detectives enter MOROUGHAN'S hospital room, Detectives TAVARES and LESSER.

74. TAVARES and LESSER introduce themselves to MOROUGHAN, explain that in Suffolk County all shootings are investigated by the homicide bureau, and request to speak with MOROUGHAN.

75. MOROUGHAN is in bed, hooked up to IV's, exhausted, on various medications and wanted to sleep. MOROUGHAN requests that TAVARES and

LESSER question him later, or alternatively, they speak to NJD 1&2 who MOROUGHAN spoke to earlier.

76.  TAVARES AND LESSER told MOROUGHAN that they could not delay their interview, and that they had to speak to MOROUGHAN directly. TAVARES and LESSER advised MOROUGHAN that they know what happened as they have other witness statements.

77.  MOROUGHAN told TAVARES and LESSER he was done answering questions, but they insisted they were there to help MOROUGHAN and that MOROUGHAN needed to assist them so they could arrest MOROUGHAN'S assailant.

78.  MOROUGHAN requested to speak to Risco Lewis, to which TAVARES and LESSER responded that MOROUGHAN did not need a lawyer, he was not in any trouble, he did nothing wrong, he was shot twice; he had a broken nose, and had not even thrown a punch according to witnesses.

79.  Eventually, TAVARES and LESSER tell MOROUGHAN in sum and substance, that he if he did not provide a statement immediately, they would have no choice but to release the shooter and his assailant would go free. TAVARES and LESSER told MOROUGHAN they needed his help, they needed his statement, so they could arrest and charge his attacker.

80.  Thereafter, TAVARES and LESSER speak with MOROUGHAN concerning the facts surrounding his assault. TAVARES then sits down and writes out a false three page "confession"(Exhibit D), LESSER comes back to the bedside of MOROUGHAN with statement in hand.

81.  MOROUGHAN is hesitant to sign before talking to anyone, but is told by TAVARES and LESSER, in sum and substance that after he signs the statement the case will be closed, meaning his assailant will be immediately arrested and MOROUGHAN can rest. TAVARES and LESSER also tell MOROUGHAN that after he signs the statement he can finally see his girlfriend. TAVARES and LESSER tell MOROUGHAN all he has to do is sign and this nightmare is over, and his perpetrator will be arrested.

82.  MOROUGHAN is told to initial and sign the statement without having any portion (including the Miranda warnings or the content of the statement) being read to him, or by him. MOROUGHAN is never told he is a suspect, or that he is signing a "confession against his penal interests", but rather, the opposite. MOROUGHAN is lead to believe he is signing a supporting deposition

for the arrest of his assailant. After signing the "confession", MOROUGHAN is never told he is under arrest.

83. Significantly, MOROUGHAN'S "statement" was written by Suffolk Defendants after conferring with Nassau Defendants, contained false and misleading facts with the specific intent to create a false "confession", signed by MOROUGHAN, rather than a supporting deposition supporting DILEONARDO'S arrest. The defendants conspired to distort the truth, to permit the false arrest of MOROUGHAN, in an effort to shield DILEONARDO and BIENZ from their criminal conduct and avoid, or reduce, criminal, civil and administrative sanctions.

84. Approximately ½ to 1 hour later, unknown Suffolk Police officers advise MOROUGHAN they need to bring him to the precinct for additional questioning. MOROUGHAN was placed in the patrol car without handcuffs.

85. Once at the precinct, MOROUGHAN is falsely arrested and charged with two crimes:

1. Assault in the 2nd Degree. A class D violent felony.

The to wit clause of which reads:

"To wit: The defendant, at Oakwood Road and Tippin Drive, Town of Huntington, County of Suffolk, New York on or about 2/27/11 at 0115 hours with intent to prevent Anthony DiLeonardo, a police officer from performing a lawful duty, namely after identifying himself as a police officer, arresting Thomas Moroughan for Reckless Endangerment, caused physical injury to such person; in that he drove a 2010 Toyota Prius New York Registration 13100TY into Anthony DiLeonardo causing pain and injury to his left leg and knee and forearm."

2. Reckless Endangerment 2nd Degree, a class A misdemeanor.

The to wit clause of which reads:

"To wit: The defendant, at Oakwood Road and Tippin Drive in the town of Huntington, in Suffolk County, New York, on or about 2/27/11, at approximately 0115 hours, recklessly engaged in conduct which created a substantial risk of serious physical injury to another person; in that, the defendant accelerated his vehicle and drove it towards Anthony DiLeonardo who was standing in the

roadway, and almost struck Anthony DiLeonardo placing him in fear of serious physical injury or death. The defendant was operating a 2010 Toyota Prius New York Registration 13100TY."

86. The "complainant" on the information is Detective/Sergeant William J. LAMB, SCPD.

87. Prior to his arrival at the precinct MOROUGHAN had never been advised by any party that he was a suspect in a criminal investigation or that he was under arrest.

88. Despite his obvious gunshot wounds, both of MOROUGHAN'S hands were handcuffed to the wall and his requests to adjust this arrangement due to pain were denied.

89. The following day bail was set at $2,500, and MOROUGHAN was released from Riverhead jail later that the same day after his girlfriend posted bail.

90. Horrendous media accounts were broadcast in news, electronic and media formats portraying MOROUGHAN as an attempted cop killer.

91. On April 20, 2011 a shooting incident reconstruction report was published by the Suffolk County police department crime laboratory (Exhibit C).

92. On June 6, 2011 all criminal charges were dismissed against MOROUGHAN (Exhibit E).

93. Defendant police officers from Nassau and Suffolk Counties, two separate municipal entities engaged in a civil conspiracy with each other reaching an agreement between themselves, express and/or tacit, to achieve an unlawful end by inflicting an unconstitutional injury upon MOROUGHAN and carried out overt acts in furtherance of that goal causing damages to plaintiff.

94. Defendant police officers form Nassau and Suffolk Counties two separate municipal entities and other individuals namely Sophia Cornia and Jillian Bienz engaged in a civil conspiracy with each other reaching an agreement between themselves, express and/or tacit, to achieve and unlawful end by inflicting and unconstitutional injury upon MOROUGHAN and carried out overt acts in furtherance of that goal causing damages to plaintiff.

95. Defendant Nassau County, its police officers and other individuals namely Sophia Cornia and Jilian Bienz, engaged in a civil conspiracy with each other

reaching an agreement between themselves, express and/or tacit, to achieve an unlawful end by inflicting unconstitutional injury upon MOROUGHAN and carried out overt acts in furtherance of that goal causing damages to plaintiff.

96.    Defendant Suffolk County, its police officers and other individuals, namely Sophia Cornia and Jillian Bienz engaged in a civil conspiracy with each other reaching an agreement between themselves, express and/or tacit, to achieve and unlawful end by inflicting unconstitutional injury upon MOROUGHAN and carried out overt acts in furtherance of that goal causing damages to plaintiff.

97.   Defendant Suffolk County, its police officers and other individuals, namely BIENZ and DILEONARDO engaged in a civil conspiracy with each other reaching an agreement between themselves, express and/or tacit, to achieve and unlawful end by inflicting unconstitutional injury upon MOROUGHAN and carried out overt acts in furtherance of that goal causing damages to plaintiff.

98.    Defendants' from Nassau County and/or Suffolk County, and Sophia Cornia and Jillian Bienz and BIENZ and DILEONARDO agreed expressly and/or tacitly to cover up the true facts leading up to and including the actions of BIENZ and DILEONARDO leading up to and including DILEONARDO shooting five rounds at MOROUGHAN'S cab as he attempted to flee the scene.

99.    The goal was to avoid the arrests and/or reduce or avoid civil and interdepartmental punishment of BIENZ and DILEONARDO for their unlawful acts by the false arrest of MOROUGHAN.

100.   Specifically as to BIENZ and DILEONARDO for various VTL violations, for assault, reckless endangerment, attempted murder, etc. based upon his shooting in the windshield of an automobile occupied by two people fleeing the scene.

101.   To accomplish this goal, defendants and other individuals carried out overt acts in furtherance of the goal.

102.   The defendants, and third parties, in furtherance of their agreement to shield BIENZ and DILEONARDO from wrongdoing, and in furtherance of

MOROUGHAN'S false arrest, engaged in, but not limited to, the following overt acts:

1. Lied to and intentionally mislead MOROUGHAN concerning their investigation, facts concerning his assault and attempted murder, their motives in questioning MOROUGHAN and securing a "statement" from him, and their reasons for denying MOROUGHAN access to his girlfriend and lawyer.

2. Manipulating MOROUGHAN into believing he was a victim and not a suspect.

3. Never telling MOROUGHAN that he was under arrest for any crime, until February 27, 2011 sometime after 9:00 a.m. when he arrived at the precinct, and thereafter falsifying the arrest time as 01:15 hours on February 27, 2011, six hours prior to Detectives LESSER and TAVARES ever questioning MOROUGHAN.

4. Creating a false confession.

5. Lying to MOROUGHAN to convince him he was signing a "statement", not a confession, to secure his assailants arrest.

6. Lying to MOROUGHAN that his failure to sign a "statement" as opposed to a confession would result in his assailant's immediate release.

7. Withholding information from police paperwork, which defendants knew prosecutors would rely on concerning the true nature of MOROUGHAN'S physical and mental state, including the various medications he was on at the time the defendants manipulated him.

8. Creating false supporting depositions of DILEONARDO, Jillian Bienz and Sophia Cornia. The creation of false supporting depositions by DILEONARDO, Jillian Bienz and Sophia Cornia.

9. Concealing and ignoring critical facts establishing DILEONARDO was the assailant and should have been arrested for a laundry list of criminal acts.

10. Ignoring and lying about the factual account given by MOROUGHAN.

11. Ignoring the factual account of Christine Mondo.

12. Ignoring the physical and forensic evidence.

13. Ignoring the fact that BIENZ and DILEONARDO, Jillian Bienz and Sophia Cornia had been drinking.

14. Failing to test either BIENZ or DILEONARDO for alcohol and drugs.

15. Failing to give either BIENZ or DILEONARDO any field sobriety tests.

16. Failure to arrest BIENZ or DILEONARDO for DWI amongst other crimes.

17. Failure to apply for a warrant to secure a blood test of BIENZ and DILEONARDO.

18. Failure to secure any statement from BIENZ.

19. Disseminating false and misleading information to the press alleging MOROUGHAN engaged in criminal behavior against DILEONARDO when in reality it was DILEONARDO that assaulted MOROUGHAN.

20. Submitting false and misleading facts to the internal affairs bureaus, DA's offices and Courts.

21. Making false statements concerning the true facts post arrest to internal affairs investigators, prosecutors, and others.

22. Creating false documents and reports pre and post-arrest, concealing the truthful account of the evening, concealing BIENZ and DILEONARDO'S unlawful and outrageous acts.

103. The defendants and other parties conspired to cover up the true facts surrounding DILEONARDO'S shooting MOROUGHAN. Thereafter, the defendants and other parties lied to various investigators, and others and submitted false reports regarding the foregoing events to avoid criminal, civil, and administrative responsibility for the mistreatment, false arrest, and injuries to MOROUGHAN.

## EXCESSIVE FORCE CLAIM

104. Assuming the arrest of MOROUGHAN was lawful, and that all facts as asserted against MOROUGHAN in the police paperwork as true, DILEONARDO used excessive force in his attempted arrest of MOROUGHAN.

## FEDERAL CAUSES OF ACTION

## COUNT I

### 42 U.S.C. § 1985 CONSPIRACY AGAINST NASSAU AND SUFFOLK

105.   Paragraphs 1 through 104 are incorporated by reference as though fully set forth.

106.   Defendant police officers from NASSAU and SUFFOLK Counties, two separate municipal entities engaged in a civil conspiracy with each other reaching an agreement between themselves, express and/or tacit, to achieve an unlawful end by inflicting an unconstitutional injury upon MOROUGHAN and carried out overt acts in furtherance of that goal causing damages to plaintiff.

## COUNT II

### 42 U.S.C. § 1985 CONSPIRACY AGAINST NASSAU AND SUFFOLK AND OTHERS NAMELY SOPHIA CORNIA AND JILLIAN BIENZ

107.   Paragraphs 1 through 106 are incorporated by reference as though fully set forth.

108.   Defendant police officers form NASSAU and SUFFOLK Counties two separate municipal entities and other individuals namely Sophia Cornia and Jillian Bienz engaged in a civil conspiracy with each other reaching an agreement between themselves, express and/or tacit, to achieve and unlawful end by inflicting and unconstitutional injury upon MOROUGHAN and carried out overt acts in furtherance of that goal causing damages to plaintiff.

## COUNT III

### 42 U.S.C. § 1985 CONSPIRACY AGAINST NASSAU AND SUFFOLK AND OTHERS NAMELY SOPHIA CORNIA, JILLIAN BIENZ, BIENZ AND DILEONARDO

109. Paragraphs 1 through 108 are incorporated by reference as though fully set forth.

110. Defendant police officers form Nassau and Suffolk Counties two separate municipal entities and other individuals namely Sophia Cornia, Jillian Bienz, BIENZ and DILEONARDO engaged in a civil conspiracy with each other reaching an agreement between themselves, express and/or tacit, to achieve and unlawful end by inflicting and unconstitutional injury upon MOROUGHAN and carried out overt acts in furtherance of that goal causing damages to plaintiff.

## COUNT IV

## 42 U.S.C. § 1985 CONSPIRACY AGAINST NASSAU AND OTHERS NAMELY SOPHIA CORNIA AND JILIAN BIENZ

109. Paragraphs 1 through 108 are incorporated by reference as though fully set forth.

110. Defendant NASSAU COUNTY, its police officers and other individuals, namely Sophia Cornia and Jilian Bienz, engaged in a civil conspiracy with each other reaching an agreement between themselves, express and/or tacit, to achieve an unlawful end by inflicting unconstitutional injury upon MOROUGHAN and carried out overt acts in furtherance of that goal causing damages to plaintiff.

## COUNT V

## 42 U.S.C. § 1985 CONSPIRACY AGAINST NASSAU AND OTHERS NAMELY BIENZ, DILEONARDO, SOPHIA CORNIA AND JILIAN BIENZ

111. Paragraphs 1 through 110 are incorporated by reference as though fully set forth.

112. Defendant NASSAU COUNTY, its police officers and other individuals, namely BIENZ, DILEONARDO and Sophia Cornia and Jilian Bienz, engaged in a civil conspiracy with each other reaching an agreement between themselves, express and/or tacit, to achieve and unlawful end by inflicting unconstitutional injury upon MOROUGHAN and carried out overt acts in furtherance of that goal causing damages to plaintiff.

## COUNT VI

### 42 U.S.C. § 1985 CONSPIRACY AGAINST SUFFOLK AND OTHERS NAMELY SOPHIA CORNIA AND JILIAN BIENZ

113.   Paragraphs 1 through 112 are incorporated by reference as though fully set forth.

114.   Defendant SUFFOLK COUNTY, its police officers and other individuals, namely Sophia Cornia and Jilian Bienz, engaged in a civil conspiracy with each other reaching an agreement between themselves, express and/or tacit, to achieve an unlawful end by inflicting unconstitutional injury upon MOROUGHAN and carried out overt acts in furtherance of that goal causing damages to plaintiff.

## COUNT VII

### 42 U.S.C. § 1985 CONSPIRACY AGAINST SOFFOLK AND OTHERS NAMELY BIENZ, DILEONARDO, SOPHIA CORNIA AND JILIAN BIENZ

115.   Paragraphs 1 through 114 are incorporated by reference as though fully set forth.

116.   Defendant SUFFOLK COUNTY, its police officers and other individuals, namely BIENZ, DILEONARDO and Sophia Cornia and Jilian Bienz, engaged in a civil conspiracy with each other reaching an agreement between themselves, express and/or tacit, to achieve and unlawful end by inflicting unconstitutional injury upon MOROUGHAN and carried out overt acts in furtherance of that goal causing damages to plaintiff.

## COUNT VIII

### 42 U.S.C. § 1985 CONSPIRACY AGAINST SUFFOLK AND OTHERS NAMELY BIENZ, AND DILEONARDO

117.   Paragraphs 1 through 116 are incorporated by reference as though fully set forth.

118.   Defendant SUFFOLK COUNTY, its police officers and other individuals, namely BIENZ and DILEONARDO engaged in a civil conspiracy with each other reaching an agreement between themselves, express and/or tacit, to achieve

and unlawful end by inflicting unconstitutional injury upon MOROUGHAN and carried out overt acts in furtherance of that goal causing damages to plaintiff.

## COUNT IX

### 42 U.S.C. § 1985 CONSPIRACY AGAINST BIENZ, DILEONARDO SOPHIA CORNIA AND JILIAN BIENZ

119.   Paragraphs 1 through 118 are incorporated by reference as though fully set forth.

120.   Defendants, BIENZ and DILEONARDO, and other individuals, namely Sophia Cornia and Jilian Bienz, engaged in a civil conspiracy with each other reaching an agreement between themselves, express and/or tacit, to achieve and unlawful end by inflicting unconstitutional injury upon MOROUGHAN and carried out overt acts in furtherance of that goal causing damages to plaintiff.

## COUNT X

### 42 U.S.C. § 1983 FALSE IMPRISONMENT AGAINST SUFFOLK COUNTY TAVARES and LESSER

121.   False Imprisonment by their conduct and under color of law, defendant(s) deprived  MOROUGHAN of his constitutional right to be free from false imprisonment.

## COUNT XI

### 42 U.S.C. § 1983 FALSE ARREST AGAINST SUFFOLK COUNTY TAVARES and LESSER

122.   False Arrest by their conduct and under color of law, defendant(s) deprived MOROUGHAN of his constitutional right to be free from false arrest.

## COUNT XII

### 42 U.S.C. § 1983 MALICIOUS PROSECUTION AGAINST SUFFOLK COUNTY TAVARES and LESSER

123.   Malicious Prosecution by their conduct and under color of law, defendant(s) deprived PLAINTIFF of his constitutional right to be free from malicious prosecution.

## COUNT XIII

### 42 U.S.C. § 1983 - UNREASONABLE AND EXCESSIVE FORCE

124.   Paragraphs 1 through 123 are incorporated by reference as though fully set forth.

125.   By their conduct, defendants, DILEONARDO and his supervisory personnel, under color of law, deprived MOROUGHAN  of his constitutional right to be free from excessive and unreasonable    force.

126.   Nassau County is responsible for the excessive and unnecessary physical force used by defendant, DILEONARDO because it occurred while he was acting in the scope of his employment, specifically in the course of executing his responsibility to arrest MOROUGHAN.

## COUNT XIV

### 42 U.S.C. § 1983 -FIRST, FOURTH, FIFTH, NINTH, FOURTEENTH AMENDMENTS AND PRIVACY VIOLATIONS

127.   Paragraphs 1 through 126 are incorporated by reference as though fully set forth.

128.   By their conduct and under color of law, defendants and their supervisory  personnel deprived Plaintiff of his First Amendment right to have access to and seek redress in the courts.

129.   The defendants engaged in a cover up in order to conceal the wrongful and unlawful conduct taken against Plaintiff.

130.   The defendants' efforts to conceal the truth continue to the detriment of Plaintiff.

131.   The defendants' conduct interfered with the federally protected liberty and privacy interest of the Plaintiff to maintain a stable family relationship free of intervention from the State.

132.   As a direct and proximate result, Plaintiff suffered the injuries and damages described above.

## COUNT XV

### PENDANT CLAIM OF FALSE ARREST AGAINST SUFFOLK COUNTY TAVARES and LESSER AND ITS EMPLOYEES

133.   MOROUGHAN was wrongfully, unlawfully and unjustifiably charged and arrested without a warrant and without probable cause.

134.   Suffolk County is responsible for the false arrest because it occurred while the defendant(s) and other employees were acting in the scope of their employment.

## COUNT XVI

### PENDENT CLAIM OF FALSE IMPRISONMENT AGAINST SUFFOLK COUNTY TAVARES and LESSER AND ITS EMPLOYEES

135.   MOROUGHAN was wrongfully, unlawfully and unjustifiably detained and deprived of her liberty against her will and imprisoned by defendant(s) without probable cause and without a warrant.

136.   The County is responsible for the false imprisonment of MOROUGHAN because at the time the defendant(s) and other employees were acting within the scope of their employment.

## COUNT XVII

### PENDENT CLAIM OF MALICIOUS PROSECUTION AGAINST SUFFOLK COUNTY TAVARES and LESSER AND ITS EMPLOYEES

137.   MOROUGHAN was wrongfully, unlawfully, unjustifiably and maliciously denied his State constitutional right to freedom of speech.

138.   The County is responsible for the malicious prosecution of MOROUGHAN because at the time the defendant(s) and other employees were acting within the scope of their employment.

## COUNT XVIII

### PENDENT CLAIM OF ASSAULT

139.   Paragraphs 1 through 138 are incorporated by reference as thoughtfully set forth.

140.   By his actions, as set forth above, defendant, DILEONARDO committed atrocious acts of assault against which included but not limited to shooting plaintiff and thereafter breaking his nose without cause. This use of physical force against Mr. MOROUGHAN was unreasonable and excessive.

141.   Nassau County defendants are responsible for the excessive and unnecessary physical force used by defendant, DILEONARDO because it occurred while he was acting in the scope of his employment.

## COUNT XIX

### PENDENT CLAIM OF BATTERY

142.   Paragraphs 1 through 141 are incorporated by reference as though fully set forth.

143.   By their actions, as set forth above, defendant, DILEONARDO committed atrocious acts of BATTERY against which included but not limited to shooting plaintiff and thereafter breaking his nose without cause. This use of physical force against Mr. MOROUGHAN was unreasonable

and excessive.

144. Nassau County defendants are responsible for the excessive and unnecessary physical force used by defendant, DILEONARDO because it occurred while he was acting in the scope of his employment.

## COUNT XX

### PENDENT CLAIM OF PRIMA FACIE TORT

145. Paragraphs 1 through 144 are incorporated by reference as though fully set forth.

146. By their actions, as set forth above, defendants, and supervisory personnel, inflicted harm upon the PLAINTIFF without excuse or justification.

## COUNT XI

### PENDENT CLAIM FOR LIBEL AND SLANDER

147. Paragraphs 1 through 146 are incorporated by reference as though fully set forth.

148. By their actions, as set forth above, defendant Suffolk County Police Department issued a press release about plaintiff which upon its face was per say false and defamatory.

**WHEREFORE,** Plaintiff requests the following relief jointly and severally as against all of the defendants:

     1.    A trial by jury;

     2.    An award of compensatory damages in an amount to be determined at trial;

     3.    An award punitive damages in an amount to be determined at trial;

4.      Disbursements, costs, and attorneys' fees; and

5.      Such other and further relief as this Court may seem just and proper.

Dated: Mineola, NY  11514
        February 2, 2012

Law Offices Of Anthony M. Grandinette
By:ANTHONY M. GANDINETTE (AMG5913)
        Attorney for Plaintiffs
        114 Old Country Road
        Mineola, NY  11501
        (516)248-5317

# EXHIBIT A

**1ST DISTRICT COURT** NY051033J 2011SU07884

DISTRICT – DOCKET NOS.

**FELONY COMPLAINT**

C.C. NUMBER **11-0095045/SPD**

| ARREST NUMBER 006393-11 | APPEARANCE TICKET NO. |
|---|---|

STATE OF NEW YORK ⎱ SS
COUNTY OF SUFFOLK ⎰

PIN: 490485

The People of the State **MOROUGHAN, THOMAS M**
of New York                                    ⎤ Defendant
                    -vs-

ARREST DATE & TIME
02/27/11  01:15

Name (Complainant) LAMB, WILLIAM J                    PID: 31253    DSGT/0526

of No. ___                                    Sqd. # 3310/2

Being duly sworn, says that ON OR ABOUT FEBRUARY 27, 2011, AT APPROXIMATELY 1:15 A.M.

at OAKWOOD ROAD TIPPIN DRIVE, HUNTINGTON                    Town of HUNTINGTON

County of Suffolk, State of New York, the defendant (Name, Address & D.O.B.) MOROUGHAN, THOMAS M

143 WEST 19TH STREET  HUNTINGTON, NY 11743  D.O.B. 07/23/1984

committed the offense of: ASLT- 2:INT CAUS PH INJ TO OFF

IN VIOLATION OF PL 120.05 03    DF2 NYS PENAL LAW

### Count # 001

In That: A PERSON IS GUILTY OF ASSAULT IN THE SECOND DEGREE WHEN WITH INTENT TO PREVENT A PEACE OFFICER, POLICE OFFICER, A FIREMAN, INCLUDING A FIREMAN ACTING AS A PARAMEDIC OR EMERGENCY MEDICAL TECHNICIAN ADMINISTERING FIRST AID IN THE COURSE OF PERFORMANCE OF DUTY AS SUCH FIREMAN, AN EMERGENCY MEDICAL SERVICE PARAMEDIC OR EMERGENCY MEDICAL SERVICE TECHNICIAN, OR MEDICAL OR RELATED PERSONNEL IN A HOSPITAL EMERGENCY DEPARTMENT, FROM PERFORMING A LAWFUL DUTY, BY MEANS INCLUDING RELEASING OR FAILING TO CONTROL AN ANIMAL UNDER CIRCUMSTANCES EVINCING THE ACTOR'S INTENT THAT THE ANIMAL OBSTRUCT THE LAWFUL ACTIVITY OF SUCH PEACE OFFICER, POLICE OFFICER, FIREMAN, PARAMEDIC OR TECHNICIAN, HE CAUSES PHYSICAL INJURY TO SUCH PEACE OFFICER, POLICE OFFICER, FIREMAN, PARAMEDIC, TECHNICIAN OR MEDICAL OR RELATED PERSONNEL IN A HOSPITAL EMERGENCY DEPARTMENT.

To Wit: THE DEFENDANT, AT OAKWOOD ROAD AND TIPPIN DRIVE, TOWN OF HUNTINGTON, COUNTY OF SUFFOLK, NEW YORK, ON OR ABOUT 2/27/11 AT 0115 HOURS, WITH INTENT TO PREVENT ANTHONY DILEONARDO, A POLICE OFFICER, FROM PERFORMING A LAWFUL DUTY, NAMELY AFTER IDENTIFYING HIMSELF AS A POLICE OFFICER, ARRESTING THOMAS MOROUGHAN FOR RECKLESS ENDANGERMENT, CAUSED PHYSICAL INJURY TO SUCH PERSON; IN THAT, HE DROVE A 2010 TOYOTA PRIUS NEW YORK REGISTRATION 13100TY INTO ANTHONY DILEONARDO CAUSING PAIN AND INJURY TO HIS LEFT LEG AND KNEE AND FOREARM.

( )    This charge is based solely upon complainant's personal knowledge.

( )    This charge is based upon complainant's personal knowledge and on information and belief, the source(s) being the accompanying statements and/or documents of: _____

(X)    This charge is based solely upon information and belief, the source(s) being the accompanying statements and/or documents of: ANTHONY PO #3632  DILEONARDO

( )    Warrant Requested                    ( )    Criminal Summons Requested

SWORN TO BEFORE ME _____ Feb _____, 27 _____, 20 11

_Gerard V. Velhofe by DCF_                    _NA - Ofct su/3310/FE_

Signature of Official Administering Oath          Complainant – If Police Officer, Rank, Shield, Squad & Command

**ATTORNEY**

**1ST DISTRICT COURT**          NY051033J

——————— **DISTRICT – DOCKET NOS.** ———————

**MISDEMEANOR COMPLAINT**

| C.C. NUMBER **11-0095045/SPD** | |
|---|---|
| ARREST NUMBER **006393-11** | APPEARANCE TICKET NO. |

STATE OF NEW YORK ⎱
COUNTY OF SUFFOLK ⎰ **SS**

PIN: 490485

The People of the State    **MOROUGHAN, THOMAS M**
of New York                                    ⎰ Defendant
  -vs-

| ARREST DATE & TIME **02/27/11  01:15** |
|---|

Name (Complainant) **LAMB, WILLIAM J**                PID:   31253      DSGT/0526

of No. ___,_____ Sqd. # 3310/2

Being duly sworn, says that  ON OR ABOUT FEBRUARY 27, 2011, AT APPROXIMATELY 1:15 A.M.

at OAKWOOD ROAD TIPPIN DRIVE, HUNTINGTON                    Town of HUNTINGTON

County of Suffolk, State of New York, the defendant (Name, Address & D.O.B.)  MOROUGHAN, THOMAS M

143 WEST 19TH STREET HUNTINGTON, NY 11743  D.O.B. 07/23/1984

committed the offense of: RECKLESS ENDANGERMENT-2ND

IN VIOLATION OF PL 120.20     AM2 NYS PENAL LAW

### Count # 002

In That:  A PERSON IS GUILTY OF RECKLESS ENDANGERMENT IN THE SECOND DEGREE WHEN HE RECKLESSLY ENGAGES IN CONDUCT WHICH CREATES A SUBSTANTIAL RISK OF SERIOUS PHYSICAL INJURY TO ANOTHER PERSON.

To Wit:  THE DEFENDANT, AT OAKWOOD ROAD AND TIPPIN DRIVE, IN THE TOWN OF HUNTINGTON, IN SUFFOLK COUNTY, NEW YORK, ON OR ABOUT 2/27/11, AT APPROXIMATELY 0115 HOURS, RECKLESSLY ENGAGED IN CONDUCT WHICH CREATED A SUBSTANTIAL RISK OF SERIOUS PHYSICAL INJURY TO ANOTHER PERSON; IN THAT, THE DEFENDANT ACCELERATED HIS VEHICLE AND DROVE IT TOWARDS ANTHONY DILEONARDO WHO WAS STANDING IN THE ROADWAY, AND ALMOST STRUCK ANTHONY DILEONARDO PLACING HIM IN FEAR OF SERIOUS PHYSICAL INJURY OR DEATH.  THE DEFENDANT WAS OPERATING A 2010 TOYOTA PRIUS NEW YORK REGISTRATION 13100TY.

( )    This charge is based solely upon complainant's personal knowledge.

( )    This charge is based upon complainant's personal knowledge **and** on information and belief, the source(s) being the accompanying statements and/or documents of: _____

_____

(X)    This charge is based solely upon information and belief, the source(s) being the accompanying statements and/or documents of: ANTHONY PO #3632  DILEONARDO

( )   Warrant Requested          ( )   Criminal Summons Requested

SWORN TO BEFORE ME _____ *Feb* _____ , ___ *27* ___ , 20 _*11*_

_Bernard V. Whaffley Nct_                      _New Opt su/3310 T2_
Signature of Official Administering Oath        Complainant – if Police Officer, Rank, Shield, Squad & Command

**ATTORNEY**

**POLICE DEPARTMENT, COUNTY OF SUFFOLK, N.Y.**

**ACCREDITED LAW ENFORCEMENT AGENCY**

**DEPOSITION**

INSTRUCTIONS: Attach a copy of
this deposition to each information
as required.

STATE OF NEW YORK:
COUNTY OF SUFFOLK:  } ss:
TOWN OR VILLAGE
OF: Huntington

CHARLES E. LESER II
NOTARY PUBLIC
STATE OF NEW YORK
# 01LE6075257
COMM EXP. 06/03/20 14

I PO Anthony DiLeonardo sh 3632 , being duly sworn, depose and say that I am

employed as a police officer for the ~~Suffolk~~ Nassau County Police Department.

That on the 27 of February 20 11 , at Oakwood Rd / Tippen Dr

in the Town of Huntington , County of Suffolk at about 1:15

o'clock in the AM ~~noon~~ of said day, I did personally witness one

Thomas M. Moroughan , commit the offense of Reckless Endangerment 2° and Assault 2°
(DEFENDANT)

in violation of NYS Penal Law 120.20 and 120.05.3

against the person or property of Anthony D. Leonardo

by wrongfully, intentionally, knowingly, recklessly and with criminal negligence, while I was
stopped on the side of the road, the defendant pulled up driving
a taxi and started yelling at me. The defendant started to get out
of his vehicle so I got out of my vehicle. He continued arguing.
The defendant then backed up his vehicle and then accelerated toward
me. I thought he was going to hit me with the car and I was in
fear of my life. That is when I shot the defendant to stop him
from hitting me. When the defendant stopped the vehicle, I went to his
door, identified myself as a police officer, and told him he was under arrest.
While I was trying to arrest the defendant, he backed up his car causing
the driver's door to hit me knocking me to the ground causing
multiple contusions and lacerations for which I was treated at
Huntington Hospital.

SWORN TO BEFORE ME THIS 27th

DAY OF February 20 11

Dt. Charles E. Leser II 951

_____
(SIGNATURE)

CENTRAL COMPLAINT NO.

11-95045

PDCS-1016

53-0365.. 07/05cg

# EXHIBIT B

**For Immediate Release**
02/27/2011

| | |
|---|---|
| **Incident:** | Man Arrested After Hitting Off-Duty Police Officers with Taxi |
| **Location:** | Oakwood Road, near Tippin Drive, Huntington Station |
| **Date/Time:** | Sunday, February 27, 2011 at 1:18 a.m. |

Suffolk County Police today arrested a Huntington Station man for assault after he drove his car into two off-duty Nassau County Police Department officers, one of whom shot the man.

Two off-duty police officers were driving in separate vehicles and pulled over to the side of the road on Oakwood Road, near the intersection with Tippin Drive, in Huntington Station when Thomas Moroughan, who was driving a taxi for Dobro Express, pulled up behind the men. The men engaged in a verbal altercation and Moroughan drove the taxi toward one of the officers, who was outside his vehicle. The officer fired his off-duty weapon into the taxi, identified himself as a police officer and told Moroughan to exit the vehicle. Moroughan refused to exit the taxi and the second police officer came to assist. Moroughan then struck both officers with his vehicle.

Moroughan left the scene and went to Huntington Hospital for treatment of gunshot wounds to his chest and forearm. Both officers were also taken to Huntington Hospital for treatment of abrasions and contusions.

Moroughan, 26, of 143 West 19 th St., was charged with Reckless Endangerment 2 nd Degree and Assault 2 nd Degree. He will be arraigned at First District Court in Central Islip on February 28.

A criminal charge is an accusation. A defendant is presumed innocent until and unless proven guilty.

-30-

Authority:

### CASH FOR TIPS - CALL CRIME STOPPERS - 1-800-220-TIPS

- December 2009
- September 2009
- March 2009
- February 2009
- January 2009
- November 2008

## · Search for:

[                    ] Browse » Home > General News > Cabbie drives car into 2     search
off-duty officers after dispute

# Cabbie drives car into 2 off-duty officers after dispute

Associated Press
From PoliceOne.com

February 28, 2011

HUNTINGTON STATION, N.Y.-Authorities say a Long Island taxi driver is under arrest after he drove his cab into two off-duty police officers.

The incident happened early Sunday in Huntington Station.

Two off-duty Nassau County officers were pulled over to the side of the road.
Suffolk County police say taxi driver Thomas Moroughan pulled up and an argument started.

Police say Moroughan drove toward one of the officers. The officer fired into the taxi, identified himself as a police officer and said to get out of the car.

Police say Moroughan refused to get out and struck both officers with the taxi.
Moroughan was treated for gunshot wounds and then arrested on charges including reckless endangerment and assault. No information on an attorney was available. The officers were treated for cuts and bruises.

Tags: police officer protection

This entry was posted on Wednesday, March 2nd, 2011 at 12:00 pm and is filed under General News. You can follow any responses to this entry through the RSS 2.0 feed. You can leave a response, or trackback from your own site.

# Leave a Reply

[                    ] Name (required)

[                    ] Mail (will not be published) (required)

[                    ] Website





TIPS | LOGIN | REGISTER    81°
                           81 | 63

NEWS | ENTERTAINMENT | THE SCENE | ON AIR | TRAFFIC | WEATHER | OFFERS | Search

LOCAL   POLITICS   SPORTS   HEALTH   TECH   WEIRD   WEATHER   BLOGS≡   THE 20   U.S. & WORLD   9/11 ANNIVERSARY   GO HEALTHY NY



verizon
SAVE $540 ON
[Check Availability]
AdChoices ▷

HOME > NEWS

# Off Duty Officer Shoots Cabby on LI

Officers say cabby tried to run them over

Sunday, Feb 27, 2011 | Updated 4:30 PM EDT          | Recommend          3        0





TOP STORIES

| TODAY | MOST WATCHED | MOST EMAILED |

Mysterious Copper Heiress Dies at 104

DSK's DNA Found on Maid's Shirt: Sources

Celebrity Hookups: "Jersey Shores" Sammi and Ronnie Romance in Italy

FOLLOW NBCNEWYORK

advertisement



▶ ROLL OVER TO PLAY

For those who know more.

⚠ Benjamin Moore

Road rage on Long Island between a taxi driver and two off-duty police officers left the cabby shot and arrested after he allegedly drove his cab into the officers early Sunday, authorities said.

The confrontation began after two off-duty Nassau County officers, driving separate cars, got lost and pulled over in Huntington Station in Suffolk County, said police.

This apparently annoyed a cabby who had been driving behind them near the intersection of Oakwood Road and Tippin Drive about 1:18 a.m., sparking an argument, said Lt. Gerard Pelkossky, a Suffok County Police spokesman.

The officers claimed the cabby, Thomas Moroughan, 26, then tried to run them over, the lieutenant said. One of the unidentified officers fired more than twice at Moroughan in what preliminarily looks like a justified use of force, said the lieutenant.

Wounded in his right chest and left forearm, Moroughan, of Huntington Station, was treated and released from Huntington Hospital and then charged with assault and reckless endangerment, the lieutenant said. He's expected to be arraigned Monday in Central Islip.

After the off-duty officer fired into the taxi, he identified himself as a police officer and ordered Moroughan to get out but he refused and drove himself to the hospital.

| HOME | INTERACT | ON-AIR | LISTEN LIVE | TRAFFIC & TRANSIT | WEATHER CENTER |
|------|----------|--------|-------------|-------------------|----------------|

Studio Phone: 6
E-mail: studio@:

About | Contact

| Smithtown | Long Island | Schools | Opinion | Sports | Transcripts | Weather |
|-----------|-------------|---------|----------|--------|-------------|---------|

On-/

## Man Arrested After Hitting Off-Duty Police Officers with Taxi

Posted by Chris Andrus on Feb 27, 2011 | 0 Comments and 0 Reactions

✉ Email 🖶 Print

Huntington Station, NY (SmithtownRadio.com) – Suffolk County Police today arrested a Huntington Station man for assault after he drove his car into two off-duty Nassau County Police Department officers, one of whom shot the man.

Two off-duty police officers were driving in separate vehicles and pulled over to the side of the road on Oakwood Road, near the intersection with Tippin Drive, in Huntington Station when Thomas Moroughan, who was driving a taxi for Dobro Express, pulled up behind the men. The men engaged in a verbal altercation and Moroughan drove the taxi toward one of the officers, who was outside his vehicle. The officer fired his off-duty weapon into the taxi, identified himself as a police officer and told Moroughan to exit the vehicle. Moroughan refused to exit the taxi and the second police officer came to assist. Moroughan then struck both officers with his vehicle.

Moroughan left the scene and went to Huntington Hospital for treatment of gunshot wounds to his chest and forearm. Both officers were also taken to Huntington Hospital for treatment of abrasions and contusions.

Moroughan, 26, of 143 West 19th St., was charged with Reckless Endangerment 2nd Degree and Assault 2nd Degree. He will be arraigned at First District Court in Central Islip on February 28.

Rece





CRI

N
IMA



Cabbie drives car into 2 off-duty officers after dispute                                    Page 1 of 2

Introducing the TASER® X2™, a multi-shot ECD that is ...    Set as Home Page   My Profile   Register   P1 Email    User Name: [        ]   Password: [        ]    [Sign In]

# POLICEONE.COM

Search [        ]
Products [Police Products]

Home > Topics > Off Duty > Cabbie drives car into 2 off-duty officers after dispute        P1 Mobile Apps

**Email    Print    Comment    RSS**    [Recommend]    105 people recommend this.

**February 28, 2011**

## Cabbie drives car into 2 off-duty officers after dispute

Driver shot during confrontation; officers treated for minor injuries

Back to Off Duty Homepage

Associated Press

Sponsored by

# GOULD
&GOODRICH

*As Good As Gould*
Gould & Goodrich Leather, Inc

HUNTINGTON STATION, N.Y. — Authorities say a Long Island taxi driver is under arrest after he drove his cab into two off-duty police officers.

The incident happened early Sunday in Huntington Station.

Two off-duty Nassau County officers were pulled over to the side of the road.

Suffolk County police say taxi driver Thomas Moroughan pulled up and an argument started.

Police say Moroughan drove toward one of the officers. The officer fired into the taxi, identified himself as a police officer and said to get out of the car.

Police say Moroughan refused to get out and struck both officers with the taxi.

Moroughan was treated for gunshot wounds and then arrested on charges including reckless endangerment and assault. No information on an attorney was available.

The officers were treated for cuts and bruises.

*Copyright 2010 Associated Press. All rights reserved. This material may not be published, broadcast, rewritten, or redistributed.*

## P1 on Facebook

[Recommend] 4K

[Login]  You need to be logged into Facebook to see your friends' recommendations

Wash. teacher shaves for first time since 9/11
545 people shared this.

PoliceOne Newsletter
282 people shared this.

Officer dies 10 days after domestic arrest
138 people shared this.

Letter to the editor: It's not easy to support cops in Philly
375 people shared this.

Facebook social plugin

Simulation Training
1-800-344-1707    www.ies-usa.com

**Post a Comment** - You must be a registered member to comment. Join PoliceOne here

*NOTE: Only law enforcement professionals may comment on articles.*

User Name [        ]    Password [        ]    **Forgot your user name or Password?**

☐ This is a secure computer; Keep me signed in
(DO NOT select if you are on a shared computer)

Your Comment (No HTML; Comments are limited to 1500 characters.) You typed **0** characters.

[                    ]

[Submit]

### Connect with PoliceOne

Mobile Apps    Facebook    Twitter    RSS Feeds

Get the #1 Police eNewsletter

Sign up for our FREE email round-up of the top news, tips columns, videos and more, sent 3 times weekly

[        ]    See Sample

[SUBSCRIBE]

## 10 Member Comments

*The comments below are member-generated and do not necessarily reflect the opinions of PoliceOne or its staff.*

### Most Popular

Most Viewed
Most Discussed

Facebook posts lead to deputy's departure
Incident changes Philly PD's policy on "open carry"
Video: Officer attacked at Ohio police station
Texas chief's philosophy: Shuffle top cops every two years
Video: Machete-wielding man attacks UK cops

All Most Popular

**Page 1**

Posted by jcboston69 on Wednesday, March 02, 2011 03:05 PM Pacific        Report Abuse

I don't think so....I'm IRISH!

Posted by nunkota on Wednesday, March 02, 2011 02:40 PM Pacific        Report Abuse

### Off Duty Videos

How to raise courageous children

Will to Win: Off-duty cop protects family in robbery

More Off Duty Videos



Top rated degree.* Flexible schedule. Affordable Cost. *Pending NY State Approval

This is **my** chance to finish what I started.

The Pace University Degree Completion Program. Click Now to find out more!

ROLL CALL
Invite Your Friends
to PoliceLink
Get Started

## PoliceLink
The Nation's Law Enforcement Community

# NY Cabbie Runs Down Two Off-Duty Long Island Officers

**New York Daily News via YellowBrix**
**February 28, 2011**

LONG ISLAND, NY -- A cabbie deliberately drove into two off-duty Long Island cops Sunday after being shot by one of them, officials said.

The two off-duty cops had pulled to the side of a Huntington Station road after becoming lost, police said. Thomas Moroughan, 26, of Huntington Station, pulled his taxi over behind them about 1:15 a.m. and got into an argument with the cops.

Moroughan drove his cab towards one of the officers, who was out of his vehicle, authorities said. The cop fired into the taxi, hitting Moroughan in the chest and arm.

The cop identified himself as police and ordered Moroughan out of his car, officials said. Instead, Moroughan deliberately struck both cops with his vehicle and then drove off.

Moroughan took himself to Huntington Hospital where he was treated for his gunshot wounds, then arrested, police said. He is charged with assault and reckless endangerment.

The two cops, whose names were not released, were taken to the same hospital for cuts and bruises, officials said.

Share |

# EXHIBIT C

04/27/2011  15:49   6318535739                                                    PAGE  02/09

## COUNTY OF SUFFOLK



### DIVISION OF MEDICAL-LEGAL INVESTIGATIONS

### & FORENSIC SCIENCES

### CRIME LABORATORY

| | |
|---|---|
| Sheet Number | 1 of 6 |
| Laboratory Number | 11-00642 |
| C.C. Number | 11-95045 |
| Command | Suffolk Co. District Attorney Office |
| People vs. | |
| Date Submitted | 2/28/2011 |
| Submitted for | ADA Albertson |

---

### SHOOTING INCIDENT RECONSTRUCTION REPORT

### MATERIALS SUBMITTED

On February 28, 2011, the laboratory began to receive physical evidence, documents, photos, and official records, relative to a shooting incident that occurred on February 27, 2011 on the roadway in front of 422 Oakwood Road, Huntington Station, New York. Members of the Suffolk County Police Department Crime Scene Unit processed the original scene.

Item #01 –   Six (6) questioned stains. Four (4) collected from the "Dobro Express Taxi" and two from the roadway. (Awaiting Serology and DNA reports).

Item #02 –   A revolver with five (5) expended casings (prior report issued on 3/9/11 details examinations performed).

Item #03 –   On March 1, 2011, Forensic Scientists George G. Krivosta, Charles S. Hopkins, and Jennifer J. Zaveski performed a bullet path/trajectory examination on a "Dobro Express Taxi", 2010 Toyota Prius Hybrid, N.Y. Reg. #13100 TY, VIN #JTDKN3DU2A0197988.
Sixty-three (63) photographs documenting this examination were received at the laboratory.

Item #04 –   On April 4, 2011, on the grounds of North County Complex, Hauppauge, N.Y., Forensic Scientists George G. Krivosta, Charles S. Hopkins, Wesley Krupp, and Crime Laboratory Chief Robert Genna performed a shooting incident reconstruction utilizing laboratory-supplied vehicles.
Eleven (11) photographs document this examination.

Item #05 –   On April 22, 2011, Forensic Scientists George G. Krivosta and Wesley Krupp responded to Oakwood Road in Huntington Station, the scene of the shooting incident. The examiners oriented/reviewed the actual scene using the various notes, reports, and photos that were taken as part of the original crime scene examinations.
No additional items were recovered.

The following items of documentary evidence were from the Suffolk County District Attorney's Office:

- Ninety (90) Crime Scene photographs
- Crime Scene Diagram with Total Station download
- Witness Statement of Thomas Moroughan, dated 2/27/11
- Witness Statement of Kristie M. Mondo, dated 2/27/11
- Witness Statement of Sophia Cornia, dated 2/27/11
- Witness Statement of Jillian Bienz, dated 2/27/11
- Witness Statement of PO Anthony DiLeonardo, dated 2/27/11
- Twenty-two (22) photographs of Thomas Moroughan, NCPD P.O. Anthony DiLeonardo, and NCPD P.O. Edward Bienz, dated 2/27/11

## COUNTY OF SUFFOLK



### DIVISION OF MEDICAL-LEGAL INVESTIGATIONS

### & FORENSIC SCIENCES

### CRIME LABORATORY

| | |
|---|---|
| Sheet Number | 2 of 6 |
| Laboratory Number | 11-00642 |
| C.C. Number | 11-95045 |
| Command | Suffolk Co. District Attorney Office |
| People vs. | |
| Date Submitted | 2/28/2011 |
| Submitted for | ADA Albertson |

---

### RESULTS AND CONCLUSIONS

**The Weapon Reported to Have Been Fired:**

- The weapon known as Lab #11-0642: Item #02.02 was recovered from the driver's side rear passenger floor area of the "Dobro Express Taxi". This revolver was reported to have originally been in the possession of NCPD P.O. Anthony DiLeonardo. The weapon is a Smith & Wesson .38 caliber revolver, model 36, serial number J654049. The weapon's barrel is rifled with five (5) lands and grooves of conventional style rifling of a right hand twist. The weapon cylinder is chambered to hold a maximum capacity of five (5) cartridges.

  *(The proper loading procedure for this swing-out cylinder type revolver is to engage the thumb latch, swing-out the cylinder exposing the chambers, load a cartridge into each of the five chambers, close the cylinder so that the internal locks engage. The weapon is now capable of firing a maximum of five shots without reloading by only engaging the trigger; this is referred to as "firing double action". This weapon is also capable of firing in single action mode by first cocking the external hammer, then engaging the trigger. The expended casings from the fired cartridges remain within the weapon and are removed as part of the unloading/reloading process).*

When recovered, the weapon was found to be loaded with an expended casing in each chamber. It is reported that this suggests the firing of five rounds from this weapon. A prior Crime Laboratory report documents the testing of this weapon.

**Expended Ammunition Components Recovered at the Scene:**

The five (5) expended casings recovered at the scene, known as Lab Number 11-0642: Items #02.02; #02.03; #02.04; #02.05; and #02.06, were originally components of Speer brand .38 Spl+P caliber cartridges. A prior Crime Laboratory report documents that these five (5) expended casings had been fired in the submitted Smith & Wesson revolver. No expended bullets have been submitted to the laboratory to date.

**Additional Items of Evidence Recovered From or Documented at the Scene:**

- The position of a White 2011 Infiniti 4DSD, N.Y. reg. #FHP 1567 reported to have been driven by NCPD P.O. Anthony DiLeonardo, was documented at the scene as being parked on a slight angle on the right shoulder of the road behind the blue 2008 Acura, facing in a northerly direction with its' left rear corner extending slightly into the travel lane.

- The position of a blue 2008 Acura, 4DSD, N.Y. Reg. #EMV 254 reported to have been driven by NCPD P.O. Edward Bienz, was documented at the scene as being parked on the right shoulder of the road in proximity to the corner, facing in a northerly direction.

## COUNTY OF SUFFOLK



### DIVISION OF MEDICAL-LEGAL INVESTIGATIONS

### & FORENSIC SCIENCES

### CRIME LABORATORY

| | |
|---|---|
| Sheet Number | 3 of 6 |
| Laboratory Number | 11-00642 |
| C.C. Number | 11-95045 |
| Command | Suffolk Co. District Attorney Office |
| People vs. | |
| Date Submitted | 2/28/2011 |
| Submitted for | ADA Albertson |

## RESULTS AND CONCLUSIONS (continued)

- An area of shattered glass was documented in the northbound travel lane of Oakwood Road at a distance centered at approximately 22 feet behind the white 2011 Infinity.

- An area of shattered glass and probable bloodstains was documented in the northbound lane of Oakwood Road at a distance entered at approximately 36 feet behind the white 2011 Infinity. (Approximately 14 feet separate the centers of both areas of glass).

- A probable bloodstain was documented on the centerline of Oakwood Road at a distance of approximately 91 feet behind the white 2011 Infinity. (Approximately 58 feet separate the two areas of probable bloodstains on the roadway).

**The Passage of Bullets Relative to the "Dobro Express Taxi" Toyota Prius and its' Occupants:**

*(The vehicle is described as being hit by three (3) shots. The numbering that was assigned during the examination of the vehicle was not based on any scientifically determined chronological order. We will follow his numbering system in this report to avoid confusion. During the reconstruction process, a chronological order was determined and will be offered later in this report).*

Examination of the "Dobro Express Taxi", 2010 Toyota Prius Hybrid, N.Y. Reg. #13100-TY revealed the presence of damage consistent with three bullet impacts. See attached diagram.

- The bullet causing trajectory "BHE-1" was fired from a position to the front right (approximately 15-20° right), relative to the vehicle. The bullet penetrated the left of center lower portion of the windshield, 3.9 feet back from the front of the vehicle, 0.95 feet left of center, and 3.7 feet up from the ground. Entering the passenger compartment, this bullet is believed to be the bullet that struck Thomas Moroughan in the left arm.

- The bullet causing trajectory "BHE-2" was fired from a position to the right front (approximately 25-30° right) relative to the vehicle. The bullet penetrated the right of center lower portion of the windshield, 3.6 feet back from the front of the vehicle, 0.65 feet right of center, and 3.65 feet up from the ground. Entering the passenger compartment this bullet is believed to be the bullet that struck Thomas Moroughan in the chest area.

## COUNTY OF SUFFOLK



### DIVISION OF MEDICAL-LEGAL INVESTIGATIONS

### & FORENSIC SCIENCES

### CRIME LABORATORY

| | |
|---|---|
| Sheet Number | 4 of 6 |
| Laboratory Number | 11-00642 |
| C.C. Number | 11-95045 |
| Command | Suffolk Co. District Attorney Office |
| People vs. | |
| Date Submitted | 2/28/2011 |
| Submitted for | ADA Albertson |

## RESULTS AND CONCLUSIONS (continued)

- The bullet causing trajectory "BHE-3" was fired from a position to the right front (approximately 13-14° right) relative to the vehicle. A portion of this bullet penetrated the right of center upper portion of the windshield, 5.4 feet back from the front of the vehicle, 1.1 feet right of center, and 4.4 feet up from the ground. The portion of this bullet entered and traveled through the passenger compartment, perforated the folded-up armrest, 10.7 feet back from the front of the vehicle, 0.2 feet left of center, and 3.1 feet up from the ground. This portion of the bullet was not recovered. The windshield's bullet hole entrance is consistent with a portion of the bullet ricocheting off the glass. This portion was also not recovered.

Further examination of the "Dobro Express Taxi" revealed that the driver's side window had been broken while it was in the fully closed position and the right rear passenger window was in the fully open position.

**Additional Bullet Impacts at the Scene:**

No additional bullet impacts were reported.

**Reconstruction of the Shooting:**

The movement of the participants just prior to the moment that the shooting begins is important in understanding how the events unfold. Thomas Moroughan with Kristie Mondo as a right front seat passenger was driving the "Dobro Express Taxi" on West Hills Road in Huntington Station. This vehicle is initially passed by the blue Acura being driven by off-duty NCPD P.O. Edward Bienz with Jillian Bienz as a right front passenger. The "Dobro Express Taxi" is then passed by the white Infinity being driven by off-duty NCPD P.O. Anthony DiLeonardo with Sophia Cornia as a right front passenger. Witness statements offer differing opinions as to the level of aggressive driving being engaged in by each of the three drivers.

The Acura and the Infinity make a turn at the corner of W. 19th Street and Oakwood Road, parting from the "Dobro Express Taxi" for a period of time, the taxi then follows, coming upon the two vehicles pulled over to the side of Oakwood Road near the intersection of Tippin Drive. Moroughan stops his taxi in the roadway to the left of the stopped vehicles, rolls down his left rear passenger windows and initiates a shouting match. As the shouting escalates, all parties with the exception of Kristie Mondo have exited their vehicles.

# COUNTY OF SUFFOLK



## DIVISION OF MEDICAL-LEGAL INVESTIGATIONS

## & FORENSIC SCIENCES

### CRIME LABORATORY

| | |
|---|---|
| Sheet Number | 5 of 6 |
| Laboratory Number | 11-00642 |
| C.C. Number | 11-95045 |
| Command | Suffolk Co. District Attorney Office |
| People vs. | |
| Date Submitted | 2/28/2011 |
| Submitted for | ADA Albertson |

## RESULTS AND CONCLUSIONS (continued)

At this point, Moroughan re-enters his taxi and backs up the vehicle a minimum distance of thirty to forty-five feet. DiLeonardo then chooses to follow on foot positioning himself somewhere between the two vehicles. It has been verbally reported to this analyst that DiLeonardo was previously carrying a Smith & Wesson revolver in an ankle holster on the inside of his left leg. The difficulty of drawing a weapon from an ankle holster would have required him to have drawn the weapon prior to the following events; he may have been concealing the weapon from view by holding it at his side.

*Special consideration must be given to the "Dobro Express Taxi" as it is not your typical car. This vehicle is a 2010 Toyota Prius Hybrid and operates in a manner totally different from your normal passenger car as it operates under both electric and gasoline motors. Having a key fob that contains an electronic chip in proximity of the vehicle, stepping on the brake pedal, and pushing a button on the dashboard starts the car. A series of lights on the dashboard indicate that the car is started and now ready to drive. When the car is stopped it is totally quiet. As the car moves forward the electric motor is responsible for the initial acceleration. Even when the car is pushed to full acceleration, there is a very significant delay before the gasoline engine starts which slightly increases the noise level. By the time the gasoline engine starts the vehicle has already accelerated and covered significant distance. The vehicle very easily shifts between forward, neutral, and reverse.*

By Moroughan's own statement he puts the car in drive to move forward, possibly initially with an alignment that would have taken him too close to DiLeonardo, who initiates firing his weapon at this point.

The exact position of DiLeonardo and the initial position and direction of travel of the taxi cannot be absolutely determined. Reconstruction analysis showed the car could have moved forward as little as half a car length. With either the car in a turn to the left or the shooter shifting his position to the right (his left) all three of the determined bullet paths/trajectories can be achieved. The reconstruction analysis revealed the chronological order of shots to be "BHE-1" was the first to strike the vehicle, "BHE-3" was the second to strike the vehicle, and "BHE-2" was the last to strike the vehicle. No opinion can be given relative the other two shots fired. The taxi is believed to stop its' forward motion at a point where the driver's window is in proximity to the first area of broken glass on the road.

The movement of the participants after the moment that the shooting concludes is also important in understanding how the events unfolded. DiLeonardo approaches the driver's door then shatters the driver's window with the revolver. The taxi, now in reverse begins to back up as a struggle ensues to extract Moroughan from his vehicle. By the second area of glass, which has probable bloodstains present, the driver's door is open and Moroughan is bleeding appreciably. *(The confirmed source of the bloodstains on the vehicle and roadway await confirmation by Serological and DNA analysis. Utilizing the concept of a "Limited Universe" this analyst will treat this blood as originating from Moroughan. Should DNA analysis prove otherwise this analyst reserves the right to amend this report.)*

04/27/2011   15:49   6318535739                                              PAGE   07/09

## COUNTY OF SUFFOLK



### DIVISION OF MEDICAL-LEGAL INVESTIGATIONS

### & FORENSIC SCIENCES

### CRIME LABORATORY

| | |
|---|---|
| Sheet Number | 6 of 6 |
| Laboratory Number | 11-00642 |
| C.C. Number | 11-95045 |
| Command | Suffolk Co. District Attorney Office |
| People vs. | |
| Date Submitted | 2/28/2011 |
| Submitted for | ADA Albertson |

---

### RESULTS AND CONCLUSIONS (continued)

During this struggle DiLeonardo will loose possession of his revolver within the taxi, where it will eventually be recovered on the left rear passenger floor area. Moroughan will now back the taxi up with the door still open to a minimum distance of where the bloodstain is located on the yellow centerline, at which point he continues his retreat to the hospital while notifying authorities. During this final travel in reverse by the taxi, DiLeonardo will be knocked to the ground and Bienz who was presumably approaching the taxi from the other side will also be bumped. DiLeonardo will also notify the authorities at this point.

False statements made herein are punishable as a Class 'A' misdemeanor pursuant to Section 210.45 of the Penal Law, State of New York.

I have performed the above indicated analysis (as) and reach the conclusion set forth, and hereby certify that the within is a true and correct original or copy of the laboratory report in this case.

George Krivosta
Analyst

Date   4 / 27 / 2011

vm



CC# 11-95045

11-55054   2/2/11   Police Investigation
HO 622 Oakwood Rd., Huntington Station
P/O Olsen 4807/4140/4
Crime Scene Section

# EXHIBIT D

FEB. 28. 2011 9:22AM 6318548236  SCPD 2ND SQUAD  NO. 959 P. 2 02/14



**POLICE DEPARTMENT, COUNTY OF SUFFOLK, NEW YORK**

ACCREDITED LAW ENFORCEMENT AGENCY

**ADVICE OF RIGHTS**  PDCS-1184b  Page _1_ of _3_

CENTRAL COMPLAINT NUMBER _11-95045_

## YOU MUST UNDERSTAND YOUR RIGHTS BEFORE BEING ASKED ANY QUESTIONS

### YOUR RIGHTS

1. You have the right to remain silent. _TMM_ (INITIALS OF DEFENDANT)

2. Anything you say can and will be used against you in a court of law. _TMM_ (INITIALS OF DEFENDANT)

3. You have the right to talk to a lawyer, right now, and have him present with you while you are being questioned. _TMM_ (INITIALS OF DEFENDANT)

4. If you cannot afford a lawyer and want one, a lawyer will be appointed for you by the court before any questioning. If you decide to answer questions now, without a lawyer present, you will have the right to stop the questioning at any time until you talk to a lawyer. _TMM_ (INITIALS OF DEFENDANT)

### WAIVER OF RIGHTS

1. Do you understand each of these rights I have explained to you?

 Answer: _Yes TMM_  (USE EXACT WORDS OF DEFENDANT)

2. Having these rights in mind, do you wish to talk to me/us now?

 Answer: _Yes TMM_  (USE EXACT WORDS OF DEFENDANT)

   SIGNATURE OF DEFENDANT

DATE: _2-27-11_

TIME: _0700_

WITNESS: _Det Charles E. Leser II 951_
 Police Officer's Signature

Sworn to Before me this 27th Day of February 2011 Det Charles E. Leser II 951

CHARLES E. LESER II
NOTARY PUBLIC
STATE OF NEW YORK
# 01LE6075257
COMM EXP. 06/03/201__

STATE OF NEW YORK
COUNTY OF SUFFOLK }

I, _THOMAS MOROUGHAN_ July 22nd _TMM_, [being duly sworn deposes and] say(s):
I WAS BORN AUGUST 19th, 1984 IN STONY BROOK, N.Y.
I LIVE AT 143 W. 19th ST, HUNTINGTON STATION.
ON FEBRUARY 27th 2011, AT ABOUT 1:10-1:15 A.M. I
WAS DRIVING A WHITE PRIUS TAXI FOR SDRRO EXPRESS. I
WAS WORKING A 6 P.M. TO 6 A.M. SHIFT AND AT THAT TIME I
HAD MY GIRLFRIEND IN THE CAR WITH ME. HER NAME IS KRIST
MONDO. I HAVE BEEN WORKING FOR THE COMPANY FOR ONE
WEEK. MY SHIFT STARTED WITH ME HAVING A BAD DAY. THERE
WAS A LOT OF TRAFFIC AND I WASN'T MAKING ANY LIGHTS.
SOMETIME AFTER 1 A.M. A BLUE ACURA PAST ME AND I GO

53-0171p 0808 _of Thomas M M_

11-95045

**POLICE DEPARTMENT**
**COUNTY OF SUFFOLK, N.Y.**

PAGE 2/3

ANNOYED AND FLASHED MY HIGH BEAMS AT HIM. I
LEFT THEM ON CONTINUOUSLY. I WAS MAD AT THE
WAY THE GUY WAS DRIVING. A WHITE CAR THEN CAME
UP BEHIND ME AND FLASHED HIS BRIGHT LIGHTS AT
ME. AT THAT TIME I WAS DRIVING SOUTHBOUND ON
NEW YORK AVE IN HUNTINGTON STATION. THE WHITE
CAR PASSED ME AND I GOT PISSED OFF AND FOLLOW
THE CARS. I DROVE WEST ON WEST 19th ST, THEN
NORTH ON OAKWOOD RD. I SAW THE TWO CARS
PARKED ON THE SIDE OF OAKWOOD DR AT TIPPEN S
I ROLLED DOWN MY PASSENGER WINDOW AND PULLED
NEXT TO THE WHITE INFINITI. I YELLED TO THE
GUY, WHO WAS IN HIS MID 20'S AND WHITE, "WHY
DON'T YOU LEARN HOW TO DRIVE YOU FUCKING
ASSHOLE!" HE CURSED BACK AT ME AND WE YELLED
BACK AND FORTH. I WENT TO GET OUT OF MY CAR
AND SO DID THE GUY IN THE WHITE CAR AND SO
DID THE GUY IN THE BLUE CAR WHO WAS STOPPED
DIRECTLY IN FRONT OF THE WHITE CAR. I THEN GOT
BACK IN MY CAR AND BACKED IT UP. I CONTIN
YELLING AT THE GUY IN THE WHITE CAR AND HE YELL
BACK. THE GUY IN THE WHITE CAR STARTED
WALKING TOWARD MY CAR AND I REVVED MY
ENGINE. I DROVE FORWARD TOWARD THE GUY WHO W
STANDING IN THE STREET NEAR HIS WHITE CAR. I
THEN SAW THE GUY FIRE ABOUT 3 OR 4 SHOTS AT
MY CAR AND I FELT I WAS HIT. I FELT HE

Sworn To Before me this
27th Day of FEBRUARY 20
Det. Charl E. ___

PDCS-7129

CHARLES E. LESSIN
NOTARY PUBLIC
STATE OF NEW YORK
# 01LE6106527
COMM EXP 06/15/2014

11-95045

POLICE DEPARTMENT
COUNTY OF SUFFOLK, N.Y.

page 3/3

FIRED AT ME TO PROTECT HIMSELF BECAUSE I
DROVE AT HIM. THE GUY THEN CAME UP TO MY
DRIVER'S WINDOW AND SMASHED HIS GUN BUSTING M
WINDOW AND HITTING ME IN THE FACE. THE GUY
TOLD ME TO GET OUT AND WE STRUGGLED. HE SAID
HE WAS A POLICE OFFICER AND THAT I WAS UNDER
ARREST. I WASN'T SURE HE WAS A COP, SO I DROVE
BACKWARDS MY DOOR WAS Still OPEN AND AS I
WENT BACKWARDS I KNOCKED THE GUY DOWN. I
KNOW THE GUN WAS A REVOLVER. WHEN I WENT FORWA
WITH MY CAR I MEANT TO GO BACKWARDS BUT I
HAD TROUBLE SHIFTING AT THE END I DROVE TO THE
HOSPITAL AND MY GIRLFRIEND CALLED 911 AS I DROVE
TO THE HOSPITAL. I HAVE READ THIS THREE PAGE
STATEMENT DETECTIVE TAVARES HAS WRITTEN AND I
SWEAR IT IS TRUE.

Sworn to before me
This 28th Day of February 20
Det. Charles E. Leser 951

CHARLES E. LESER II
NOTARY PUBLIC
STATE OF NEW YORK
# 01LE6079257
COMM EXP. 09/03/2014

# EXHIBIT E

1

1    DISTRICT COURT OF THE STATE OF NEW YORK

2    COUNTY OF SUFFOLK        PART D-35

3    -------------------------------------------X

4    THE PEOPLE OF THE STATE OF NEW YORK,        :CASE NO.

5                            Petitioner,         :2011SU007884

6      - against -                               :

7     THOMAS MOROUGHAN,                          :

8                            Defendant.          :

9    -------------------------------------------X

10                        June 6, 2011
                          Central Islip, New York

11

12   BEFORE:

13           HON. GAETAN LOZITO
             District Court Judge

14

15   APPEARANCES:

16

17           THOMAS SPOTA, ESQ.
             District Attorney - Suffolk County
             For the People of the State of New York

18           BY:   RAPHAEL PEARL, ESQ.
                   Assistant District Attorney

19

20

21           THE LAW OFFICE OF WILLIAM PETRILLO
             11 Clinton Avenue
             Rockville Centre, New York  11570

22           BY:  WILLIAM PETRILLO, ESQ.
                  Attorney for the Defendant

23

24

25           Susan T. Connors, RPR
             Senior Court Reporter

1           THE CLERK:   42, Thomas Moroughan.

2           THE COURT:   Second call.

3           Mr. Petrillo and Mr. Pearl are in

4     the hallway.

5           Second call.

6           (WHEREUPON, A RECESS WAS TAKEN)

7           THE CLERK:   This is 42,

8     Thomas Moroughan.

9           MR. PEARL:   May we approach?

10          THE COURT:   Yes.

11          (WHEREUPON, A DISCUSSION WAS HELD

12    OUTSIDE THE PRESENCE OF THE JURY BETWEEN

13    THE ASSISTANT DISTRICT ATTORNEY,

14    MR. PEARL, DEFENSE COUNSEL, MR. PETRILLO,

15    AND THE HON. GAETAN LOZITO)

16          THE COURT:   Sir, would you step up,

17    please.

18          (WHEREUPON, THE DEFENDANT,

19    THOMAS MOROUGHAN, IS PRESENT IN THE

20    COURTROOM)

21          THE COURT:   People.

22          MR. PEARL:   Thank you, Your Honor.

23          Your Honor, at this time under

24    Docket 2011SU007884 The People have an

25    application to dismiss the charges against

People -v- Thomas Moroughan

```
 1        Mr. Moroughan in the interest of justice
 2        pursuant to -- excuse me, Your Honor
 3        170.30 F.
 4             Judge, just for the record, a
 5        review of the evidence discloses a
 6        significant deficiency in the proof which
 7        would impact our ability to prove beyond a
 8        reasonable doubt the elements of the
 9        charges currently pending against the
10        defendant -- I'm sorry, I'm just out of
11        breath -- those being Reckless
12        Endangerment as a Class A Misdemeanor and
13        Assault in the Second Degree as a Class D
14        Felony.
15             There is conflicting evidence
16        surrounding the facts and circumstances
17        which led to the discharge of a firearm by
18        off duty Police Officer Anthony DiLeonardo
19        from Nassau County, as well as the actions
20        of both parties thereafter.
21             There is evidence to support the
22        fact that defendant cabdriver escalated
23        the confrontation by pursuing the vehicle
24        operated by the off duty police officers,
25        stopping to initiate an angry verbal
```

People -v- Thomas Moroughan

1    exchange and subsequentially exiting his

2    vehicle to confront the officers on the

3    street.

4         There is also evidence to support

5    the fact that the defendant withdrew from

6    the confrontation by retreating to his

7    vehicle and attempted to drive away from

8    the location.  In his haste to withdraw,

9    he was moving his vehicle forward at the

10   time the shots were fired.

11        There is also evidence that the

12   officers involved had been consuming

13   alcoholic beverages prior to the shooting.

14   And that Officer DiLeonardo refused to

15   provide a sample of his blood and urine to

16   hospital personnel who were treating his

17   injuries following the incident.

18        While there is evidence to prove

19   the officer consumed alcohol prior to

20   discharging the firearm, there is

21   conflicting evidence to prove he was

22   legally intoxicated, so it negatively

23   impacts upon the officer's credibility

24   upon whose testimony the charges are

25   based.  That undermines The People's

People -v- Thomas Moroughan

1    ability to obtain a conviction beyond a
2    reasonable doubt.
3            Further, the scientific evidence,
4    specifically, trajectory and
5    reconstruction analysis, which has been
6    turned over to Mr. Petrillo today,
7    provides some support for the position of
8    both The People and the defendant, but it
9    is not in and of itself dispositive of the
10   ultimate issues.
11           The defendant suffered from two
12   non-life threatening gunshot wounds and a
13   broken nose as a result of the conflict
14   with Officer DiLeonardo.  The officer
15   suffered minor injury, the most serious
16   being a cut to his finger, which he caused
17   by breaking the driver's side window of
18   the cab with the butt of his gun in order
19   to arrest the defendant.  That action also
20   caused the defendant's broken nose.
21           In addition, the defense has
22   represented that the defendant does not
23   wish to testify before a grand jury or to
24   participate in any criminal proceeding
25   regarding the events of that night.

1          We have attempted to speak with the

2     defendant's girlfriend who was -- who was

3     a passenger in the cab at the time of the

4     shooting, but she has declined to speak

5     with us.

6          Our investigative findings have

7     been made available to the Nassau County

8     Police Department and their Internal

9     Affairs Bureau.

10         Therefore, following the

11    acknowledgment of counsel and his joining

12    in the application, The People would be

13    moving to dismiss the charges against the

14    defendant pursuant to 130.70.

15         MR. PETRILLO:   F.

16         For Mr. Moroughan,

17    William Petrillo, 111 Clinton Avenue,

18    Rockville Center.

19         Good morning, Your Honor.

20         THE COURT:   Good morning.

21         MR. PETRILLO:   Your Honor, I would

22    first like to thank the Suffolk County

23    District Attorney's Office for their

24    investigation into this case.   And, quite

25    frankly, for correcting the injustice that

People -v- Thomas Moroughan

1    took place to Mr. Moroughan back on

2    February 27th when he was, quite frankly,

3    arrested without any basis to do so.  So

4    we thank them for their expeditious

5    investigation and for correcting this

6    injustice.

7          Umm, we do agree, Judge, that the

8    case should be dismissed pursuant to

9    170.50 Subdivision F, which calls for a

10   legal impediment.

11         It is our position in this case,

12   Judge, that as The People stated, there is

13   insufficient evidence to prove the case

14   beyond a reasonable doubt.  The legal

15   impediment here is that Mr. Moroughan is

16   actually innocent in this case.

17         It has been our position from day

18   one that on the day in question

19   Mr. Moroughan did not commit any crime.

20   There was never a basis to have arrested

21   him in the first place.  And he is

22   completely innocent.

23         We do not agree with all of the

24   findings of fact as stated or as

25   interpreted by The People.

People -v- Thomas Moroughan

1            I will acknowledge on the record,

2      Judge, that we do agree that at the time

3      the shots were fired Mr. Moroughan was

4      moving forward in his -- in his taxicab.

5      He was not moving at anybody, he was not

6      intending to hit anybody, he was not

7      acting reckless, and he was not acting

8      with criminal negligence, he was simply

9      moving forward, endangering no one.  And,

10     quite frankly, fleeing for his life in an

11     effort to get out of there.

12            I believe it's undisputed in this

13     case, Judge, that at the time the two

14     shots were fired at Mr. Moroughan the off

15     duty officers had not even identified

16     themselves yet at that point.

17            The People in their findings of

18     fact talk about an alleged verbal

19     confrontation and Mr. Moroughan allegedly

20     escalating a confrontation.  We do

21     disagree with those findings of fact,

22     Judge, as they do ignore the series of

23     traffic incidents that took place prior to

24     that with the off duty officer.  The one

25     who The People say there is conflicting

1     evidence of intoxication.  The one who

2     The People say refused to provide blood

3     and urine.  He was driving -- a

4     conflicting series of traffic incidents,

5     it's our position caused by and escalated

6     by the off duty police officer.

7              Mr. Moroughan, in our position, did

8     not escalate anything, and was reacting to

9     what was happening to him.

10             The People did speak about an

11    alleged butt of the gun.  And it's true,

12    Mr. Moroughan suffered some injuries as a

13    result of being pistol whipped and hit

14    with the butt of a gun, but it was not in

15    an effort to perform any sort of lawful

16    arrest.

17             I also will acknowledge for the

18    record that I have advised Mr. Moroughan

19    that this case is being dismissed.  That

20    he -- that there is no need to be

21    testifying before a grand jury or

22    participating in any criminal proceedings.

23             And I have let the Suffolk County

24    District Attorney's Office know that as

25    well.

People -v- Thomas Moroughan

| | |
|---|---|
| 1 | So in the end, Judge, we agree that |
| 2 | the case should be dismissed pursuant to |
| 3 | 170.30 F.  That the legal impediment is |
| 4 | his actual innocence.  That there was |
| 5 | never a basis or probable cause for the |
| 6 | arrest in the first place. |
| 7 | And we join in the application to |
| 8 | dismiss the case for those reasons. |
| 9 | THE COURT:  For the reasons -- |
| 10 | MR. PEARL:  Judge, just so the |
| 11 | record is clear, while there might be a |
| 12 | legal impediment, The People are not |
| 13 | joining in that application of actual |
| 14 | innocence. |
| 15 | People are relying on our statement |
| 16 | on the record. |
| 17 | THE COURT:  The People's |
| 18 | application to dismiss pursuant to Section |
| 19 | 170.30 Subdivision F for the reasons |
| 20 | stated in the record by The People is |
| 21 | granted. |
| 22 | MR. PEARL:  Thank you, Your Honor. |
| 23 | MR. PETRILLO:  Thank you, |
| 24 | Your Honor. |
| 25 | Have a nice day. |

People -v- Thomas Moroughan

```
 1              *        *        *

 2

 3          I, Susan T. Connors, Senior Court Reporter,

 4     hereby certify that the foregoing is a true and

 5     correct transcript of the County Court proceedings

 6     regarding The People of the State of New York -v-

 7     Thomas Moroughan, held on June 6, 2011, at Central

 8     Islip, New York.

 9

10     Dated: 10|4|11        Susan T. Connors

11                           Susan T. Connors, RPR
                             Senior Court Reporter
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```