INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

for the Suffolk County Police Department. A copy of the Notice of Claim is attached and made a part of the case.

On June 15, 2011 D/Lt. Hoffman and D/Sgt. Distler obtained an authorization for release of medical records from PO DiLeonardo. A copy of the authorization and a copy of the medical records of PO DiLeonardo are attached and made a part of the case. A review of the medical records of PO DiLeonardo revealed that a Commack Volunteer Ambulance arrived at 422 Oakwood Road Huntington at 1:37 am and transported PO DiLeonardo to Huntington Hospital for a contusion on his left forearm and a small laceration to one finger on his right hand. Medical reports from Huntington Hospital state PO DiLeonardo refused blood work at 2:10 am. Attending physician Beverly Kraszewski noted PO DiLeonardo was "slurring words at times with smell of alcohol on breath, perseverating." Dr. Kraszewski also noted PO DiLeonardo's psychiatric insight and judgment to be impaired and his affect to be hostile. Dr. Kraszewski noted PO DiLeonardo refused to have any blood or urine tested after being informed it was for trauma purposes.

On March 20, 2012 PO Bienz signed an authorization for release of medical records. A copy of the authorization and a copy of the medical records of PO Bienz are attached and made a part of the case.

The Patient Care Report (PCR) completed by Commack Volunteer Ambulance Corp. reports PO Bienz had a minor abrasion on his right hand, swelling to his left hand, and a complaint of extreme pain on the left side of his body. The PCR indicated PO Bienz had a smell of alcohol present on his breath. Medical reports completed by attending physician Dr. Kraszewski from Huntington Hospital stated PO Bienz 'admits to drinking etoh tonight.' **(INVESTIGATOR'S NOTE:** etoh is the medical term for alcohol.**)** Dr. Kraszewski reported PO Bienz was cooperative in his treatment.

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

A canvass was done of the following establishments in the Village of Huntington between July 5-July 8, 2011 by D/Sgt. Distler and Detective Sergeant George Darienzo, Serial Number 7551, Shield Number, 187, Internal Affairs Unit.

- Katie M's
- Honu

- Artful Dodger
- Rookies Bar

All canvassed persons had no independent knowledge of PO DiLeonardo and PO Bienz being in their establishments on the evening of February 26, 2011. **(INVESTIGATOR'S NOTE:** SI Palumbo reported all establishments PO DiLeonardo and PO Bienz were at were canvassed by Suffolk County investigators with negative results).

On July 5, 2011 a canvass was done at 424 Oakwood Drive Huntington, Jesus Ambric, and 74 Tippen Drive Huntington, James Keene. Both persons reported no knowledge of the shooting.

On July 13, 2011 SI Palumbo provided D/Sgt. Distler with the Suffolk County Police Department Crime Scene photographs and Suffolk County Police Department Crime Scene Shooting Reconstruction Report which are attached to the case. Suffolk County Shooting Incident Reconstruction Report was prepared by Forensic Scientist (FS) George Krivosta.

Suffolk County Crime Scene photographs show a 2010 White Prius taxi with three bullet holes in the front windshield. FS Krivosta reported one bullet hole in front of the driver's seat to have been fired from a position to the front right (approximately 15-20 degrees right) relative to the vehicle. This is the bullet believed to have struck Mr. Moroughan in the left arm. FS Krivosta reported the

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

second bullet hole is between the driver's seat and the passenger seat fired from a position to the right front (approximately 25-30 degrees right) relative to the vehicle. This is the bullet believed to have struck Mr. Moroughan in the chest area.   FS Krivosta reported the third bullet hole is at the top of the windshield on the passenger side of the taxi fired from a position to the right front (approximately 13-14 degrees right) relative to the vehicle.  This bullet is believed to have traveled through the passenger compartment and perforated the folded-up armrest in the rear seat. This bullet was not recovered and the windshield's bullet hole entrance is consistent with a portion of the bullet ricocheting off the glass.    Crime Scene photographs show shattered glass on the driver's seat and floor area with what appears to be bloodstains. There is also shattered glass on the passenger side and rear seat with the majority of the glass being on the driver's side of the taxi.  The photographs show what appears to be blood stains on the steering wheel, driver's side door and driver's side door frame area of the taxi.  FS Krivosta reported a Smith & Wesson .38 Spl caliber revolver, belonging to PO DiLeonardo, was recovered from the driver's side rear passenger floor area of the taxi.  The weapon was found to be loaded with expended casings in each chamber.   FS Krivosta reported the white Infiniti, driven by PO DiLeonardo, was parked on a slight angle on the right shoulder of the road behind the blue Acura, driven by PO Bienz.  FS Krivosta reported an area of shattered glass in the northbound travel lane of Oakwood Road approximately 36 feet behind the Infiniti and a probable bloodstain on the centerline of Oakwood Road approximately 91 feet behind the Infiniti.  FS Krivosta reported that the driver's side window had been broken while it was in the fully closed position and the right rear passenger window was in the fully open position.

FS Krivosta reported that after reviewing all the evidence he concluded that as the verbal altercation between Mr. Moroughan and PO DiLeonardo was occurring on Oakwood Road, all parties with the exception of Kristie Mondo had exited their vehicles. FS Krivosta reported that Mr. Moroughan re-entered his taxi and backed up a minimum of thirty to forty-five feet with PO DiLeonardo following on foot

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

IAU NUMBER 27- 2011                                                PAGE 17

positioning himself somewhere between the two vehicles. FS Krivosta reported that PO DiLeonardo was carrying his Smith & Wesson revolver in an ankle holster on the inside of his left leg and the difficulty of drawing a weapon from an ankle holster would have required him to have drawn the weapon prior to Mr. Moroughan putting his car in drive to move forward. FS Krivosta reported that the exact position of PO DiLeonardo and the initial position and direction of travel of the taxi cannot be absolutely determined. Reconstruction analysis showed the taxi could have moved forward as little as half a car length with either the car in a turn to the left or PO DiLeonardo shifting his position to the right (his left). All three of the determined bullet paths could be achieved depending upon PO DiLeonardo's and the taxi's movements. FS Krivosta reported the taxi is believed to stop its forward motion at a point where the driver's window is in proximity to the first area of broken glass. FS Krivosta reported that PO DiLeonardo approached the driver's door then shattered the driver's window with the revolver. FS Krivosta reported the taxi began to back up as a struggle ensued to extract Mr. Moroughan from his vehicle. FS Krivosta reported the second area of glass, which has probable bloodstains, indicates the driver's door is open and Mr. Moroughan is bleeding. FS Krivosta reported PO DiLeonardo lost possession of his revolver within the taxi, where it was eventually recovered on the left rear passenger floor area. FS Krivosta reported Mr. Moroughan backed up the taxi with the door still open knocking PO DiLeonardo and PO Bienz to the ground. FS Krivosta reported it was presumable that PO Bienz was also approaching the taxi. (**INVESTIGATOR'S NOTE:** Suffolk County Crime Scene Photograph placard of the incident listed the incident as Assault 1st. This indicates that initially PO DiLeonardo was a subject as it was factually impossible for Mr. Moroughan to commit an Assault 1st Degree.)

On July 18, 2011 D/Sgt. Distler and D/Sgt. Darienzo interviewed Mr. Eric Klug at his home located at 422 Oakwood Road Huntington. Mr. Klug reported that on February 26, 2011 he was residing at 422 Oakwood Road Huntington with his friend Sabrina Torres. Mr. Klug stated on February 27, 2011 he was sitting on his couch in

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

IAU NUMBER 27- 2011                                          PAGE 18

his living room playing a video game when he heard a screeching sound and what
he thought was a gun shot.  Mr. Klug stated he heard one shot, looked out of his
window and the other shots seemed to be grouped together without hesitation.
**(INVESTIGATOR'S NOTE:** Mr. Klug's residence is a high ranch and his living room
is on the upper level with a big picture window overlooking Oakwood Road**)**.


Mr. Klug stated he looked out of the window and saw a man shooting a gun
walking towards a white car which was stopped facing northbound in the travel lane
of Oakwood Road.  Mr. Klug stated he saw the flash coming from the gun as the
man was shooting at the windshield of the white car.  Mr. Klug stated the white car
which was being shot at had a male driver and a female passenger who was yelling.
Mr. Klug stated he saw the white car moving in reverse and the shooter continuing to
shoot while moving forward toward the white car.  Mr. Klug stated the female
passenger opened the door and got out of the white car which was being shot at.
Mr. Klug stated the female was yelling and he saw her get knocked to the ground as
the white car was backing up. Mr. Klug stated the man that was shooting and made
it to the front of the hood of the white car before the white car was able to move
away in reverse. Mr. Klug stated he did not see the female get back into the white
car.  Mr. Klug stated he did not see if the shooter had anything in his hand, but he
believes the shooter may have had something large around his neck.  Mr. Klug
stated he saw a white Infiniti which was parked in front of his home facing
northbound on Oakwood Rd. Mr. Klug stated he left the window to call 911 and
when he looked out of the window again he saw three people sitting on his lawn and
the police were there.


On July 18, 2011 D/Sgt. Distler and D/Sgt. Darienzo responded to 143, West
19th Street Huntington and interviewed Kristie Mondo and Ann Marie Mondo,
Kristie's aunt. Ms. Mondo and her aunt refused to discuss the incident on the advice
of attorney Anthony Grandinette, 114 Old Country Road, #420 Mineola, NY, counsel
to Mr. Moroughan.

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

On July 18, 2011 D/Sgt. Distler and D/Sgt. Darienzo responded to the Commack Volunteer Ambulance Corp., 200 Burr Road Commack to interview members who transported PO DiLeonardo and PO Bienz to Huntington Hospital. Advanced Emergency Medical Technician Alex Calabro, Firefighter Driver Anthony Napoli and Emergency Medical Technician Corey Rayfield all refused to be interviewed on advice of counsel.

On July 20, 2011 Nassau County Assistant District Attorney Risco Lewis was interviewed on the phone by D/Sgt. Distler.  ADA Lewis is a Nassau County Assistant District Attorney and the godmother of Mr. Moroughan. ADA Lewis stated that she has known Mr. Moroughan since he was a kid and she looked after him when they lived in Gordon Heights. ADA Lewis stated she now resides in Wheatley Heights and she speaks to Mr. Moroughan a few times a year.

ADA Lewis stated that in the early morning hours on February 27, 2011 she received a phone call from Kristie Mondo's aunt stating that Mr. Moroughan had been shot and was at Huntington Hospital. ADA Lewis stated that she arrived at Huntington Hospital at approximately 2:00 am and when she arrived she observed that both Nassau County police officers and Suffolk County police officers were present. ADA Lewis stated that there was a uniformed Suffolk County police officer stationed outside of Mr. Moroughan's room and she was not allowed to enter to speak with Mr. Moroughan. ADA Lewis stated she remained outside of the room and she could see Mr. Moroughan who was asking for her to come in.    ADA Lewis stated Mr. Moroughan was telling everyone that ADA Lewis was his attorney and she informed the officers that she could not be his attorney based on their relationship.

ADA Lewis stated that at the hospital the Nassau County Police were conducting the investigation and they told her that they were waiting for Suffolk County homicide to arrive.  ADA Lewis stated that the Suffolk County detectives did

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

IAU NUMBER 27- 2011                                          PAGE 20

not show up until later in the morning.  ADA Lewis stated she overheard a doctor and nurse discussing that the officer was drunk.

ADA Lewis stated that at approximately 8:00 am, she was informed that Mr. Moroughan was under arrest and she was allowed to speak with him.  ADA Lewis stated Mr. Moroughan was crying and said "I don't know why he shot me, he shot me for no reason."  ADA Lewis stated she asked Mr. Moroughan if he knew they were cops and he responded "how would I know, he had on a bright orange shirt." ADA Lewis stated that Mr. Moroughan told her he picked up his girlfriend and a car was racing behind him, passed him and he later caught up with the car.  ADA Lewis stated that Mr. Moroughan told her PO DiLeonardo broke his window and told him he was going to arrest him.

ADA Lewis stated she responded to the stationhouse after Mr. Moroughan was released from the hospital and was informed that the Nassau County Police were making the arrest and the Suffolk County Police were just doing the paperwork.

On July 20, 2011 D/Sgt. Distler and D/Sgt. Darienzo responded to 191 West 19th Street Huntington and interviewed Timothy Jochen and Ruti Besares. **(INVESTIGATOR'S NOTE:** Mr. Jochen and Ms. Besares live behind 422 Oakwood Road.)  Mr. Jochen made two calls to 911 on February 27, 2011 to report the shooting.  Written statements were prepared and are attached to the case.

Ms. Besares stated that on February 27, 2011 around 1:00 am she was walking into her kitchen when she heard about 5 rapid gunshots.  Ms. Besares stated she yelled to her husband Tim, opened the window in the rear of the home and heard a woman screaming and a man yell "what the fuck are you doing?  What the fuck did you do?"  Ms. Besares stated her husband called 911.  Ms. Besares stated she did not hear any tires screeching.

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

IAU NUMBER 27- 2011                                              PAGE 21

Mr. Jochen stated that on February 27, 2011 around 1:00 am he was in his bedroom when he heard 5 gunshots. Mr. Jochen stated he jumped out of bed and grabbed the phone to call 911. Mr. Jochen stated his wife opened the window and he heard a woman screaming from Oakwood Road and a man yelling "what are you fucking crazy? What did you fucking do?" Mr. Jochen stated he did not hear any tires screeching.

On August 12, 2011 Mr. Anthony Grandinette was contacted by D/Sgt. Distler to schedule an interview of his client, Mr. Moroughan. Mr. Grandinette stated his client would not consent to an interview by D/Sgt. Distler.

On July 28, 2011 a 50-H Hearing, deposition of Mr. Moroughan was conducted at the office of the Suffolk County Attorney, H. Lee Dennison Building, Hauppauge New York by attorney Brian Mitchell, Assistant County Attorney, Suffolk County Attorney's Office. A copy of the hearing is attached and made a part of the case.

On August 29, 2011 a 50-H Hearing, deposition of Mr. Moroughan was conducted at the office of the Nassau County Attorney's Office, 1 West Street, Mineola, New York by Michael Ferguson, Deputy County Attorney, Nassau County Attorney's Office. A copy of the hearing is attached and made a part of the case.

Mr. Moroughan stated at his 50H hearings that as he was driving south on New York Avenue to pick up a fare on West 19th Street when a blue Acura came up on the left side of him and nearly ran him off the road causing him to drive onto the sidewalk. Mr. Moroughan stated he was making a right turn onto West Hills Road when the Acura cut him off. Mr. Moroughan stated he flashed his high beams at the car and the Acura increased its speed going ahead of him. Mr. Moroughan stated a white Infiniti then approached him from behind flashing his high beams and beeping his horn. Mr. Moroughan stated he was afraid the Infiniti was going to ram him so he

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

pulled over to the side of the road with his hazard lights on and allowed the Infiniti to pass him. Mr. Moroughan stated he estimated the speed of the Infiniti to be 50-60 mph. **(INVESTIGATOR'S NOTE:** The speed limit on West Hills Road is 30 mph.**)** Mr. Moroughan stated the fare he was picking up cancelled, so he decided to drive to Huntington Village, so when he made a right turn on Oakwood Road he saw the Acura and Infiniti stopped. Mr. Moroughan stated he stopped next to the Infiniti, rolled down his front passenger window and asked the driver "what the hell are you guys doing? You are driving like complete morons. Where did you get your license from? You can kill somebody, learn how to drive." Mr. Moroughan stated the driver of the Infiniti, later identified as PO DiLeonardo, said, "learn how to drive a taxi, faggot, and get your fat ass girlfriend on a diet." Mr. Moroughan stated he opened his car door and put his left leg and his head out of his cab and asked PO DiLeonardo over the hood of the car "what the hell is your problem?" Mr. Moroughan stated PO DiLeonardo and PO Bienz got out of their vehicles. Mr. Moroughan stated PO DiLeonardo said, "I'll show you my fucking problem." Mr. Moroughan stated he realized he was facing two men so he got back into his car and drove in reverse to get away. Mr. Moroughan stated the men were charging at his car from the front off to the right and he reversed approximately three to four car lengths. Mr. Moroughan stated the driver of the Acura, identified as PO Bienz, was over by his vehicle. Mr. Moroughan stated he put his car into drive and turned his wheel to the left to make a u-turn and he drove forward a foot or two when he saw PO DiLeonardo put his hand up and he heard gunshots and his windshield shattered. Mr. Moroughan stated PO DiLeonardo was about 50 to 60 feet in front and to the right of him when the first shot was fired. Mr. Moroughan stated the shots were in rapid succession. Mr. Moroughan stated he felt one shot hit his chest and one shot hit his arm. He stated that he stopped his car and slouched down to take cover underneath the dashboard. Mr. Moroughan stated when he looked up, he saw PO DiLeonardo at his driver's window swing his right hand and break the glass with the butt of his gun. Mr. Moroughan stated PO DiLeonardo took another swing and hit him directly in the nose with the butt of his gun breaking his nose. Mr.

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

IAU NUMBER 27- 2011                                                    PAGE 23

Moroughan stated PO DiLeonardo opened his driver's door and punched him on the side of his face and head approximately ten times and tried to pull him out of the car. Mr. Moroughan stated PO DiLeonardo was telling him to get out of the car. Mr. Moroughan stated his girlfriend was screaming at PO DiLeonardo to leave them the fuck alone. Mr. Moroughan stated he was able to get the car into reverse and PO DiLeonardo was knocked to the ground by the open car door. Mr. Moroughan stated he reversed about 60 to 70 feet, swung around and made a u-turn. Mr. Moroughan stated he heard PO DiLeonardo yell, "stop, stop, I'm a cop, stop." Mr. Moroughan stated he did not believe PO DiLeonardo was a cop because he shot him and beat him. Mr. Moroughan stated he did not see PO Bienz any time after he heard the first gun shots. Mr. Moroughan stated he told his girlfriend to call 911 and drove himself to Huntington Hospital.

Mr. Moroughan stated while he was in the hospital there were both Nassau County and Suffolk County police present.   Mr. Moroughan stated that two detectives came into his room to speak with him and he believed they were from Nassau County.  Mr. Moroughan stated he told the detectives that he wanted his lawyer and he stated the detectives told him that lawyers only slow things down and they just need to hear from him what happened.   Mr. Moroughan stated Ms. Lewis was present and he told the detectives that she was his lawyer, but they would not allow her to talk to him. Mr. Moroughan stated the detectives told him that if he gave them a statement he would be able to rest. Mr. Moroughan stated he was tired and he was finally calming down from the shock and he was on medication.    Mr. Moroughan stated he eventually gave the detectives a verbal statement.    Mr. Moroughan stated approximately two or three hours later two Suffolk County Homicide detectives came into his room and told him that if he wanted to see the guy that shot him locked up he would need to give them a written statement. Mr. Moroughan stated he asked for a lawyer at least twenty times and they kept telling him he did not need one. Mr. Moroughan stated that the Suffolk County Homicide detectives told him that if he didn't give them a statement they were going to let the

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

guy who shot him go free, so he agreed to give them a written statement. Mr. Moroughan stated one detective sat on the side of the room and wrote the statement and told him to sign. Mr. Moroughan stated he initialed the statements where the detective directed him to and signed the statement. Mr. Moroughan stated he did not read the statement before he signed it because the detective told him to hurry so they could let him rest. Mr. Moroughan stated he has since read the statement and the majority of it is not true. Mr. Moroughan stated about a half an hour later two uniformed cops came in and told him they were taking him to the Second Precinct for further questioning and when he arrived he was handcuffed to the wall and told he was under arrest.

On September 23, 2011 Sgt. Lynch was contacted by D/Sgt. Distler to schedule interviews of the Suffolk County Police Department members who were involved in the shooting incident on February 27, 2011.  As per department procedure, Sgt. Lynch was to conduct the interviews of Suffolk County Police Department members and provide the results to D/Sgt. Distler.

Sgt. Lynch reported that on January 19, 2012 she interviewed the following members at the Suffolk County Internal Affairs Bureau:

**PO Channon Rocchio**, Shield Number 5167:
PO Rocchio reported she was doubled with PO Nieves and they were the first officers to arrive at 422 Oakwood Dr. on the February 27, 2011.  PO Rocchio reported that she did a cursory interview of PO DiLeonardo and PO Bienz at the scene and both officers were extremely nervous and upset. PO Rocchio reported PO DiLeonardo was injured on his forearm and he reported his weapon was missing. PO Rocchio reported that PO DiLeonardo stated he was involved in a road rage incident which began on West Hills Road and New York Avenue and ended on Oakwood Drive when PO DiLeonardo and PO Bienz had pulled over.  PO Rocchio

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

IAU NUMBER 27- 2011                                              PAGE 25

reported that she never asked PO DiLeonardo or PO Bienz where they were coming from prior to the shooting. PO Rocchio reported that she responded to the hospital in the ambulance with PO DiLeonardo, PO Bienz, Jillian Bienz, Sophia Cornia, Det. Savata, Det. Geissenger and members of the Commack Volunteer Ambulance. PO Rocchio reported that she did smell an odor of alcohol but she does not recall where she was at the time (in the ambulance or at Oakwood Road.) PO Rocchio reported that she did not know where the odor of alcohol was coming from, the police officers or their friends. PO Rocchio reported that both PO DiLeonardo and PO Bienz did not appear intoxicated.

**PO Enid Nieves**, Shield Number 5176:
PO Nieves reported that PO DiLeonardo and PO Bienz did not appear intoxicated and she did not smell any odor of alcohol. PO Nieves had no information to provide. PO Nieves reported that she stayed at the scene and secured the scene log and searched for the missing weapon.

**PO William Meaney**, Shield Number 4315:
PO Meaney reported that he was assigned to Huntington Hospital on February 27, 2011. PO Meaney reported that he had no contact with PO DiLeonardo or PO Bienz. PO Meaney remained with Mr. Moroughan.

**PO Jesus Faya,** Shield Number 4917:
PO Faya reported that he was assigned to Huntington Hospital on February 27, 2011. PO Faya reported he did observe both PO DiLeonardo and PO Bienz but he was unable to make an observation relative to their possible intoxication.

Sgt. Lynch reported on March 9, 2012 she interviewed the following member at the Suffolk County Internal Affairs Bureau:

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

IAU NUMBER 27- 2011                                            PAGE 26

**Sergeant Jack Smither,** Shield Number 779:

Sgt. Smither was assigned to 422 Oakwood Drive, Huntington on February 27, 2011. Sgt. Smither arrived at the scene at 1:26 am. Sgt. Smither reported that he interviewed PO DiLeonardo for several minutes at the scene and that PO DiLeonardo was upset, had tears in his eyes and was very agitated. Sgt. Smither reported that he did not smell any odor of alcohol on PO DiLeonardo and he did not interview PO Bienz. Sgt. Smither reported that he did not ask PO DiLeonardo if he had consumed any alcohol because he observed no signs of intoxication. Sgt. Smither reported that PO DiLeonardo did not mention a road rage incident and stated that he got lost and went to the side of the road. Sgt. Smither reported that PO DiLeonardo stated that the taxi driver got back into his car and drove forward as if to strike him. Sgt. Smither asked PO DiLeonardo if he was shot and PO DiLeonardo said, "I think I may have shot myself." Sgt. Smither reported that PO DiLeonardo stated that he was pretty sure his gun was in the cab.

Sgt. Lynch reported on March 30, 2012 she interviewed the following members at the Suffolk County Internal Affairs Bureau:

**Detective Eugene Geissinger,** Shield 1026, Second Squad:

Det. Geissinger reported that he was partnered with Det. Favatta when they responded to 422 Oakwood Road Huntington for a shooting. Det. Geissinger reported that when he arrived he observed one male with a police shield around his neck, bleeding from his arm. Det. Geissinger reported he observed two vehicles parked on the side of the road and that the scene was very chaotic. Det. Geissinger reported he spoke with PO Rocchio who informed him that it appeared that the Nassau County police officer discharged his weapon after he was involved in a driving incident. Det. Geissinger reported that he was told that either one or both of the officers were hit by a vehicle. Det. Geissinger reported PO DiLeonardo was walking in circles, bleeding and he thought he was shot. Det. Geissinger reported that he did not speak directly with the Nassau County police officers. Det.

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

IAU NUMBER 27- 2011                                         PAGE 27

Geissinger reported that he ordered the Suffolk County police officers at the scene to keep everyone separated. Det. Geissinger reported Sgt. Smithers was the supervisor at the scene and Sgt. Smithers requested crime scene to respond. Det. Geissinger reported that Det. Favatta remained at the scene on Oakwood Road and he responded in the ambulance with PO Rocchio, PO DiLeonardo, PO Bienz, Jillian Bienz, Sophia Cornia and one or two medical personnel to Huntington Hospital. Det. Geissinger reported that Homicide would be conducting the investigation and he did not take any notes. Det. Geissinger reported that he did not have any interaction with PO DiLeonardo and PO Bienz in the ambulance because the medical personnel were treating them. Det. Geissinger reported that he did smell an odor of alcohol but he was not sure where the odor was coming from. Det. Geissinger reported that he did not observe any slurred speech or staggering and PO DiLeonardo and PO Bienz answered all questions asked by the medical personnel clearly. Det. Geissinger reported that PO Rocchio mentioned a possible road rage incident. Det. Geissinger reported that when he arrived at Huntington Hospital he observed a taxi cab with bullet holes in the windshield. Det. Geissinger reported that he did not conduct an interview of any member of the Nassau County Police Department or the taxi driver. Det. Geissinger reported that members from the Nassau County Police Department did not pressure him to handle the case in any specific manner. Det. Geissinger reported a female hospital employee, possibly a doctor, running around the hospital stating "I want his blood, I want his blood." Det. Geissinger reported that when Suffolk County Homicide responded to Huntington Hospital, he briefed Detective Lieutenant Pelkofsky, Commanding Officer of Suffolk County Police Department Homicide Bureau, and then left the hospital.

**Detective Nicholas Favatta,** Shield Number 1367, Second Squad:
Det. Favatta reported that he responded to 422 Oakwood Road Huntington for a shooting with Det. Geissinger. Det. Favatta reported that when he arrived he observed one male with a police shield around his neck, bleeding from his arm. Det. Favatta reported PO Bienz was pale and shaken up. Det. Favatta reported both

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

IAU NUMBER 27- 2011                                             PAGE 28

police officers appeared to be in shock. Det. Favatta reported PO DiLeonardo stated he thought he was shot. Det. Favatta reported he asked PO DiLeonardo where he was coming from and he responded "we are going to Friday's." Det. Favatta reported he asked PO DiLeonardo a second time where he was coming from and he said "we are coming from Kings Park." Det. Favatta reported PO DiLeonardo stated PO Bienz was hit by a taxi but there was no mention of a road rage incident. Det. Favatta reported both police officers were steady on their feet and he did not hear any slurring of words. Det. Favatta reported PO DiLeonardo stated that he thought he dropped his gun in the taxi and he never stated that the taxi driver stole his gun. Det. Favatta reported he remained at Oakwood Road and conducted a canvass. Det. Favatta reported no one answered the door or came outside. Det. Favatta reported he remained at the scene for 1-2 hours before he responded to Huntington Hospital. Det. Favatta reported that when he arrived at Huntington Hospital he stayed outside of PO DiLeonardo's treatment cubicle and advised PO DiLeonardo not to make any statements to him because homicide would be handling the investigation. Det. Favatta reported that he did not speak to any Nassau County personnel or PO Bienz at Huntington Hospital. Det. Favatta reported he did not smell any alcohol on PO DiLeonardo at the hospital. Det. Favatta reported he remained at Huntington Hospital until about 5:00 am when Homicide arrived.

Sgt. Lynch reported on April 20, 2012 she interviewed the following members at the Suffolk County Internal Affairs Bureau:

**Detective Alfred Ciccotto,** Shield Number 1077, Homicide Squad:
Det. Ciccotto reported that on February 27, 2011 at 3:10 am he was notified by Detective Tavares that there was an off-duty police officer shooting involving Nassau County Police Department police officers. Det. Ciccotto stated he responded to Huntington Hospital and was briefed by Detective Sergeant Lamb and Det. Geissenger as to the events surrounding the shooting incident. Det. Ciccotto

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

IAU NUMBER 27- 2011                                     PAGE 29

reported he did see PO DiLeonardo and PO Bienz at Huntington Hospital but he did not have close contact with them and from his observations, PO DiLeonardo and PO Bienz did not appear drunk. Det. Ciccotto reported that he responded to the Artful Dodger and attempted to recover video, but no video was available. Det. Ciccotto reported that no one recalled any incident involving PO DiLeonardo and PO Bienz. Det. Ciccotto reported that on February 27, 2011 he responded to Huntington Hospital to preserve blood from PO DiLeonardo, PO Bienz and Mr. Moroughan and he was informed that no blood was taken from PO DiLeonardo and PO Bienz. Det. Ciccotto reported that at 4:50 am he interviewed Ms. Mondo in his vehicle in the parking lot of the emergency room at Huntington Hospital and secured a written statement from Ms. Mondo which is attached to the case. Det. Ciccotto reported that he responded to the Suffolk County Police Department Second Precinct where he interviewed Mrs. Bienz. Det. Ciccotto reported Mrs. Bienz did not appear intoxicated and he did not recall if he asked Mrs. Bienz if she had been drinking. Det. Ciccotto reported Mrs. Bienz had an attorney present during the interview and he secured a written statement from Mrs. Bienz which is made a part of the case. Det. Ciccotto reported he interviewed Ms. Cornia at the Suffolk County Police Department Second Precinct. Det. Ciccotto reported Ms. Cornia had Nassau County Police Department PBA representative PO Covais present with her during her interview. Det. Ciccotto reported that Ms. Cornia did not appear intoxicated, did not smell of any alcohol and he did not recall if he directly asked Ms. Cornia if she had been drinking. Det. Ciccotto reported he secured a written statement from Ms. Cornia which is attached to the case. Det. Ciccotto reported that he was under the impression that PO DiLeonardo placed Mr. Moroughan under arrest prior to their arrival and the only reason that D/Sgt. Lamb signed the paperwork is because they do not have the ability for PO DiLeonardo to sign his own paperwork. Det. Ciccotto reported the arrest was based on the confession of Mr. Moroughan, the supplemental report of PO DiLeonardo and the witness statements. Det. Ciccotto reported he did not have any contact with any Nassau County Police Department members besides PBA Representative PO Covais.

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

IAU NUMBER 27- 2011                                                    PAGE 30

**Detective Ronald Tavares,** Shield Number 1157, Homicide Squad:

Det. Tavares reported that on February 27, 2011 at 3:06 am he was notified by Detective Sergeant Lamb that there was an off-duty police officer shooting involving Nassau County Police Department police officers.    Det. Tavares reported he responded to Huntington Hospital and arrived at 3:57 am. Det. Tavares reported he was the first member from Homicide to arrive at Huntington Hospital and was told by Det. Geissinger where all the involved parties were located.  Det. Tavares reported Det. Geissinger told him that the officers fired at the taxi driver after he drove at the officers. Det. Tavares reported that he was directed by D/Sgt. Lamb to interview Mr. Moroughan at 5:50 am. Det. Tavares reported he informed Mr. Moroughan he was under arrest by the Nassau County police officers, he read Mr. Moroughan his rights and asked him if wanted to speak with them. Det. Tavares reported at 7:00 am he wrote out Mr. Moroughan's statement which he signed and is attached to the case. Det. Tavares reported that Mr. Moroughan had one hand cuffed to the hospital bed. Det. Tavares reported he met Chief John Hunter and Inspector Edmund Horace at Huntington Hospital and informed them that he would be handling the investigation. Det. Tavares reported he did not see any Nassau County Police Department detectives at Huntington Hospital. Det. Tavares reported he did not speak with PO DiLeonardo or PO Bienz at Huntington Hospital.   Det. Tavares reported he responded to the Suffolk County Police Department Second Precinct where he and Det. Leser interviewed PO DiLeonardo at 10:00 am.  Det. Tavares reported PO DiLeonardo did not report being involved in any road rage incident and the first time he saw Mr. Moroughan was when he pulled next to him in the taxi on Oakwood Road and told him he was driving like an asshole.    Det. Tavares reported PO DiLeonardo reported Mr. Moroughan revved his engine, backed up, revved his engine again and drove forward. Det. Tavares reported PO DiLeonardo stated that he thought Mr. Moroughan was going to run him over so he drew his weapon and fired. He believed he emptied all 5 rounds in his weapon, went to the driver's door to arrest him, told him he was a police officer and he was under arrest. Det. Tavares reported PO DiLeonardo stated Mr. Moroughan resisted, there was a struggle and

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

IAU NUMBER 27- 2011                                            PAGE 31

Mr. Moroughan backed up knocking him to the ground and drove off.    PO
DiLeonardo reported to have leg, knee and hand injuries. Det. Tavares reported he
asked PO DiLeonardo where he was coming from and he told him the Artful Dodger
and he did have a couple of drinks but he was not drunk. Det. Tavares reported at
10:00 am PO DiLeonardo was completely lucid and there were no signs of
intoxication. Det. Tavares reported that he did not conduct any testing to see if PO
DiLeonardo was impaired by alcohol. Det. Tavares reported PO DiLeonardo filled
out the supporting deposition.   Det. Tavares reported that he and Det. Leser
interviewed PO Bienz at 11:00 am. Det. Tavares reported PO Bienz stated he had a
couple of drinks and they were heading home from the Artful Dodger when they got
lost. Det. Tavares reported PO Bienz stated he was not involved in any road rage
and the first time he saw the taxi was when he pulled next to them on Oakwood
Road.  PO Bienz stated he thought the taxi driver was asking for directions. Det.
Tavares reported PO Bienz stated he saw PO DiLeonardo get out of his vehicle and
Mr. Moroughan start to get out of his vehicle when he thought there might be a
problem so he got out of his vehicle and walked towards PO DiLeonardo. Det.
Tavares reported PO Bienz stated he saw Mr. Moroughan get back into his vehicle
and drive at PO DiLeonardo.   Det. Tavares reported PO Bienz stated PO
DiLeonardo shot at the cab and the cab stopped and PO DiLeonardo went up to the
cab and told Mr. Moroughan he was a cop and he was under arrest.  PO Bienz
stated he walked in front of the cab to help PO DiLeonardo effect the arrest when
the cab drove backwards, then forwards knocking him down, causing an injury to his
leg. Det. Tavares reported PO Bienz appeared calm and lucid and there was no
sign of intoxication. Det. Tavares reported no written statement was taken from PO
Bienz.

**Detective Charles Leser**, Shield Number 951, Homicide Squad:
Det. Leser reported that on February 27, 2011 at 3:08 am he was notified by Det.
Tavares that there was an off duty police officer shooting involving Nassau County
Police Department police officers. Det. Leser reported he responded to Huntington

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

IAU NUMBER 27- 2011                                          PAGE 32

Hospital. Det. Leser reported that he observed PO DiLeonardo and PO Bienz in the
hospital from several feet away, did not speak to them directly and observed no
indication of intoxication or smell of alcohol. Det. Leser reported that he was present
during the interviews of PO DiLeonardo and PO Bienz at SCPD Second Precinct.
Det. Leser reported he was the lead detective on the interview of PO Bienz which
occurred at approximately 11 am at the SCPD Second Precinct. Det. Leser reported
PO Bienz stated he was out to dinner with his wife, Jillian, and PO DiLeonardo and
PO DiLeonardo's girlfriend and then went to the Artful Dodger in Huntington. Det.
Leser reported PO Bienz stated that he and PO DiLeonardo had a couple of drinks
that evening but he did not ask him what they had to drink or how much they drank.
Det. Leser reported PO Bienz stated when they left the Artful Dodger he was driving
his Acura and PO DiLeonardo was driving the white Infiniti when they got lost in the
side streets of Huntington and pulled over to the side of the road. Det. Leser stated
PO Bienz said he saw the taxi pull up next to PO DiLeonardo's car and he thought
the taxi driver was asking for directions. PO Bienz stated he saw PO DiLeonardo
get out of his vehicle and the taxi driver start to get out of his vehicle. Det. Leser
stated PO Bienz said he thought there was a problem when he saw them get out of
their vehicles so he got out of his car and started heading towards PO DiLeonardo's
car. PO Bienz stated he saw the taxi cab driver get back into his car and drive his
car at PO DiLeonardo. PO Bienz stated he then saw PO DiLeonardo shoot at the
cab and the cab stopped. PO Bienz stated he saw PO DiLeonardo go up to the
driver's door and tell the driver he was a cop and he is under arrest. PO Bienz
stated he started walking towards the cab to help PO DiLeonardo arrest the cab
driver when the cab drove backward and then forward striking him and knocking him
to the ground. PO Bienz stated the cab made a U-turn and drove away. PO Bienz
stated he did not have his weapon with him and had injuries to his leg. PO Bienz
stated he did not recall any problem with the taxi driver prior to the incident. Det.
Leser reported PO Bienz was cooperative, did not appear to be intoxicated, and he
did not smell any odor of alcohol on his breath. Det. Leser stated he did not take a
statement from PO Bienz because he felt PO Bienz would testify at the Grand Jury.

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

IAU NUMBER 27- 2011                                      PAGE 33

Det. Leser reported he was present with Det. Tavares when he interviewed PO DiLeonardo. Det. Leser reported the facts reported by PO DiLeonardo were similar to the story PO Bienz gave. Det. Leser reported PO DiLeonardo stated he got out of his vehicle because the cab driver got out of his cab and he felt he did not want to be confronted while sitting in his car. PO DiLeonardo stated he and Mr. Moroughan were yelling and cursing back and forth at each other about driving. Det. Leser reported PO DiLeonardo did not appear intoxicated, there was no smell of alcohol on his breath and he spoke clearly. PO DiLeonardo wrote out his supporting deposition, established the reasonable cause for reckless endangerment and assault and Det. Leser notarized it. Det. Leser reported the interview of PO DiLeonardo occurred between at 10 am prior to the interview of PO Bienz.

Det. Leser reported based upon the statement from the witnesses (Mrs. Bienz, Ms. Cornia, and Ms. Mondo), the account of the incident from PO Bienz, the supporting deposition of PO DiLeonardo, the confession of Mr. Moroughan, and conferral with D/Sgt. Lamb regarding the crime scene details available to them led to his determination that there was probable cause to arrest the cab driver.

Det. Leser reported that no member of the Nassau County Police Department pressured him into arresting Mr. Moroughan.

Sgt. Lynch reported on June 7, 2012 she interviewed the below member at the Suffolk County Internal Affairs Bureau:

**Detective Sergeant William Lamb**, Shield Number 526, Seventh Precinct Detective Squad:
D/Sgt. Lamb reported that on February 27, 2012 at 3:05 am, he was notified by D/Lt. Pelkofsky that there was an off-duty police officer shooting involving Nassau County Police Department police officers and homicide would be handling the case. **(INVESTIGATOR'S NOTE:** D/Sgt. Lamb was assigned to Homicide Bureau on the

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

IAU NUMBER 27- 2011                                                PAGE 34

date of the incident and subsequently transferred to the Sixth Squad and Seventh
Squad). D/Sgt. Lamb reported he responded to Huntington Hospital arriving at 4:15
am and met with D/Lt. Pelkofsky who briefed him on the incident and became the
supervisor in charge of the incident. D/Sgt. Lamb reported he introduced himself to
PO DiLeonardo and PO Bienz while they were sitting in their hospital beds but he
did not speak to them about the incident. D/Sgt. Lamb reported PO DiLeonardo and
PO Bienz appeared very upset, alert and there was no indication of intoxication.
D/Sgt. Lamb reported he made the decision not to question PO DiLeonardo or PO
Bienz because he wanted to have Mr. Moroughan interviewed and get his statement
in writing. D/Sgt. Lamb stated he did not question PO DiLeonardo or PO Bienz in
the hospital because there were a lot of Nassau County Police Department
members around and it was not a proper environment to take a statement from them
at that point.

D/Sgt. Lamb directed Det. Leser and Det. Tavares to interview Mr.
Moroughan. D/Sgt. Lamb reported he was aware that Mr. Moroughan had been
shot, he went to the room and looked into the room at Mr. Moroughan and observed
Mr. Moroughan to be sitting in his bed, appearing to be alert, and animated. D/Sgt.
Lamb reported Mr. Moroughan did not appear to be lethargic or unable to speak with
the detectives. D/Sgt. Lamb reported that he did not speak with the doctors or
nurses regarding Mr. Moroughan's medical condition to see if he was capable of
giving a statement. D/Sgt. Lamb reported that it was his judgment that Mr.
Moroughan was capable of giving a statement to Det. Leser and Det. Tavares.

D/Sgt. Lamb reported he did not sit in on any interviews in relation to the
incident. D/Sgt. Lamb reported that after he reviewed Mr. Moroughan's confession
and Ms. Mondo's statement, PO DiLeonardo and PO Bienz were being released
from the hospital so he decided it would be best to interview them at the Second
Precinct. D/Sgt. Lamb reported that he did not speak with PO DiLeonardo or PO
Bienz at the Second Precinct. D/Sgt. Lamb reported that he was under the

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

IAU NUMBER 27- 2011                                                    PAGE 35

impression that PO DiLeonardo had made the arrest of Mr. Moroughan and Suffolk County Police was doing the investigation. D/Sgt. Lamb reported that there was a police officer guarding Mr. Moroughan's door at the hospital and it was his impression that the Suffolk County police officer was holding Mr. Moroughan because he was not free to leave and was in custody having been arrested by PO DiLeonardo even though PO DiLeonardo did not put the handcuffs on Mr. Moroughan. D/Sgt. Lamb reported that after conferring with all the homicide detectives, reviewing all the statements that were taken, concluding that the taxi driver was the main aggressor and acted in a reckless manner, and after conferring with the crime scene detectives it was a lawful arrest. D/Sgt. Lamb reported he responded to Oakwood Road to make sure everything was being handled properly at the crime scene.

D/Sgt. Lamb reported that on March 4, 2011 he met with Suffolk County Assistant District Attorney Janet Albertson and Suffolk County Assistant District Attorney Raphael Pearl who informed him that the Suffolk County District Attorney's Office would be taking over the investigation and conducting all further interviews. D/Sgt. Lamb reported that after he was informed that the Suffolk County District Attorney's Office was taking over the investigation, sometime after June 4, 2011 he was directed by the Suffolk County District Attorney's Office to recover and preserve a bullet which was removed from Mr. Moroughan and that was the only additional work he did on the case.

D/Sgt. Lamb reported that he was not pressured by any member from the Nassau County Police Department to arrest Mr. Moroughan and he had limited contact with any member from Nassau County Police Department.

D/Sgt. Lamb reported that he was shocked to learn that the charges were dismissed by the Suffolk County District Attorney's Office.

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

IAU NUMBER 27- 2011                                                        PAGE 36

On February 28, 2012 Detective Lieutenant Gerard Pelkofsky, commanding officer of Suffolk County Police Department Homicide Squad retired. No interview was conducted of D/Lt. Pelkofsky prior to his retirement.

On September 26, 2011 D/Sgt. Distler and D/Sgt. Darienzo responded to Dobro Taxi Stand, 674 Jericho Turnpike Huntington and interviewed Boris Goldstein the owner.  D/Sgt. Distler and D/Sgt. Darienzo examined the 2010 Toyota Prius Hybrid which was involved in the shooting incident. Mr. Goldstein demonstrated the vehicles operation.   On October 11, 2011 D/ Lt. Hoffman and D/Sgt. Distler responded to Hempstead Toyota and interviewed technician Andre Vegas in reference to the operation of 2010 Toyota Prius Hybrid.   Shooting Incident Reconstruction Report completed by FS Krivosta, states *"Special consideration must be given to the "Dobro Express Taxi" as it is not your typical car. This vehicle is a 2010 Toyota Prius Hybrid and operates in a manner totally different from your normal passenger car as it operates under both electric and gasoline motors. Having a key fob that contains an electronic chip in proximity of the vehicle, stepping on the brake pedal, and pushing a button on the dashboard starts the car. A series of lights on the dashboard indicated that the car is started and now ready to drive. When the car is stopped it is totally quiet.  As the car moves forward the electric motor is responsible for the initial acceleration.  Even when the car is pushed to full acceleration, there is a very significant delay before the gasoline engine starts which __slightly__ increases the noise level.  By the time the gasoline engine starts the vehicle has already accelerated and covered significant distance.  The vehicle very easily shifts between forward, neutral, and reverse.*  **(INVESTIGATOR'S NOTE:** This investigation has determined the operation of the 2010 Toyota Prius to be consistent with the finding listed in the Shooting Incident Reconstruction Report completed FS Krivosta.  The unusual operation of the car also cast doubt on any witness who reported that "the taxi revved its engine.")

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

IAU NUMBER 27- 2011                                                    PAGE 37

On October 7, 2011 D/Sgt. Distler and D/Sgt. Darienzo interviewed Dennis Dobrochasan, owner of Dobros Taxi, at 67 W. Main Street, Apartment 204, Oyster Bay, New York. A written statement was prepared and is attached to the case.

Mr. Dobrochasan stated on February 27, 2011 he received a phone call from his dispatcher who told him that Mr. Moroughan had been shot. Mr. Dobrochasan stated he responded to Huntington Hospital and saw his cab with police tape around it. Mr. Dobrochasan stated the police informed him that they would be impounding his vehicle as part of their investigation.

Mr. Dobrochasan stated that on February 29, 2011 Mr. Moroughan came into the office and told him that he was involved in a road rage incident with a white Infiniti and blue Acura. Mr. Dobrochasan stated Mr. Moroughan told him he rolled down his window and yelled at the driver of the blue Acura and decided to follow the cars. Mr. Dobrochasan stated Mr. Moroughan told him he saw the cars parked on Oakwood Road and he stopped the taxi, got out of the cab and engaged in a heated argument with the driver of the white Infiniti. Mr. Dobrochasan stated Mr. Moroughan told him the guy in the white Infiniti pulled out a gun and shot at him, smashed the driver's side window and said he was a police officer and he was going to be in trouble. Mr. Dobrochasan stated Mr. Moroughan told him the man unlocked the door and tried to pull him out of the cab and punched him. Mr. Dobrochasan stated Mr. Moroughan told him he panicked and put the cab in reverse, knocking the man over by the open door and he drove himself to Huntington Hospital. Mr. Dobrochasan stated that within a week of the incident he was visited by Detective Anthony Rivera, Serial Number 7362, Shield Number 1021, Special Investigations Squad. Mr. Dobrochasan stated that Det. Rivera stated he was investigating a report that Mr. Dobrochasan had made a possible threat against PO DiLeonardo.

On November 16, 2011 D/Sgt. Distler interviewed Det. Rivera at the Internal Affairs Unit Office. A written statement was prepared and is attached to the case.

INTERNAL AFFAIRS UNIT

NASSAU COUNTY POLICE

IAU NUMBER 27- 2011                                          PAGE 38

Det. Rivera reported that on March 5, 2011 the Suffolk County Police Department notified the Nassau County Police Department Third Squad of a report they received regarding a possible threat to life of Nassau County Police Officers who were involved in a shooting with a taxi cab driver in Huntington on February 27, 2011.   Det. Rivera reported he assisted Detective Grogan and Detective O'Grady from the Suffolk County Police Department with the investigation.   Det. Rivera reported he met Mr. Dobrochasan at his office and he stated that he was annoyed about losing his taxi cab to a police impound and was losing money.  Det. Rivera reported Mr. Dobrochasan denied making any threats against any police officers. Det. Rivera reported Suffolk County Police Department was unable to determine if such threats were made and they documented the incident without any further police action. A copy of Suffolk County Police Department Field Report 2011-104470 and Nassau County Police Department Case Report 211CR0090643 are attached to the case.

On December 14, 2011 Inspector Edmund Horace, Serial Number 6069, Support Division, was interviewed in the Office of the Chief of Support by D/Sgt. Distler.

Inspector Horace reported that on the night of February 26, 2011 he was assigned as the Duty Inspector. Inspector Horace reported that at approximately 1:45 am on February 27, 2011 he received a phone call from the Third Precinct desk officer who informed him that a Nassau County police officer had been involved in a shooting and the police officer was at Huntington Hospital.   Inspector Horace responded to Huntington Hospital.

Inspector Horace reported that when he arrived at Huntington Hospital he saw a Third Precinct Sergeant standing at the entrance to the emergency room. **(INVESTIGATOR'S NOTE:** The Third Precinct Sergeant has been identified as