UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____X

Thomas M. Moroughan

              Plaintiff,

     -against-

The County of Suffolk, Suffolk County
Police Department, Suffolk Detectives Ronald Tavares, Charles
Leser, Eugene Geissinger, Nicholas Favatta, and Alfred Ciccotto,
Detective/Sgt. William J. Lamb, Sgt. Jack Smithers,
Suffolk Police Officers William Meaney, Enid Nieves, Channon Rocchio,
and Jesus Faya and Suffolk John Does 1-10,
The County of Nassau, Nassau County Police Department,
Sgt. Timothy Marinaci, Deputy Chief of Patrol John Hunter,
Inspector Edmund Horace, Commanding Officer Daniel Flanagan,
Detective/Sgt. John DeMartinis, Nassau Police Officers Anthony D. DiLeonardo,
Edward Bienz and John Does 11-20

              Defendants.
_____X

12-CV-0512
(JFB)(AKT)

Amended
Complaint

     Plaintiff, Thomas M. Moroughan, by and through his attorney, Anthony M. Grandinette states as follows:

## Introduction

    1.    This action arises from the unjustified shooting and physical beating of Plaintiff, by off duty Nassau County Police officer Anthony D. DiLeonardo who had been drinking alcohol prior to the shooting; the subsequent actions of certain Nassau and Suffolk Police officials who failed to arrest Anthony D. DiLeonardo for attempted murder, assault with a deadly weapon, assault, DWI and other crimes; but rather, conspired, with each other and other third parties, manipulated facts and ignored and fabricated evidence, violated Plaintiff's constitutional rights with the intent of shielding officers' DiLeonardo and Edward Bienz from criminal, civil and administrative sanctions by falsely arresting Plaintiff for Assault 2nd, P.L. 120.05, a class D felony, and Reckless Endangerment 2nd degree, P.L. 120.20, a class A misdemeanor (Exhibit A); thereafter, defendants, knowing the charges against Moroughan to be false, disseminated a false and misleading press release stating "Suffolk County Police today arrested a Huntington Station man for assault after he drove his car into two off-duty Nassau County Police Department officers, one of whom shot the man". This false and defamatory press release resulted in outrageous headlines and television broadcasts depicting plaintiff as an attempted cop killer in the local news, print media, and internet (Exhibit B).

1

2. The Plaintiff seeks redress against the defendants for their acts, which permitted, condoned and preserved the code of silence, insulated Anthony D. DiLeonardo and Edward Bienz from swift and effective investigation, arrest, prosecution and conviction for their brazen criminal acts and violations of administrative regulations. The inevitable result of this behavior was Plaintiff's suffering serious physical injuries as a result of an assault, followed by his unlawful arrest, false imprisonment, malicious prosecution and thereafter, his public humiliation as an attempted cop killer. Plaintiff seeks compensation from defendants, including their supervisors, who approved defendants' actions.

### Jurisdiction

3. This action is brought pursuant to 42 USC §§ 1983, 1988, and the First, Fourth, Fifth, Sixth, Eight and Fourteenth Amendments to the U.S. Constitution and the laws of the State of New York. Jurisdiction is founded upon 28 USC 1331, 1343, and 2202. Plaintiffs further invoke the supplemental jurisdiction of this Court to adjudicate pendent State Law claims pursuant to 28 U.S.C. §1367.

4. Venue is proper in this district under 28 U.S.C. § 1391(b).

### Parties

5. Plaintiff, Thomas Moroughan (hereinafter MOROUGHAN), is a resident of Suffolk County.

6. Defendant Suffolk County (hereinafter SUFFOLK), is a County within the State of New York and the public employer of Detectives Ronald Tavares, Charles Leser, Eugene Geissinger, Nicholas Favatta, Alfred Ciccotto, Detective/Sgt. William J. Lamb, Sgt. Jack Smithers and police officers William Meaney, Channon Rocchio, Jesus Faya, Enid Nieves, and Suffolk John Does 1-10. All defendants are sued individually and in their official capacity.

7. Suffolk County Police Department, is a County agency, organized under and existing and operating by virtue of the laws of the State of New York and the County of Suffolk.

8. Defendant, Detective Ronald Tavares (hereinafter TAVARES) was at all relevant times, an employee of the Suffolk County Police department and the County of Suffolk. TAVARES is sued individually and in his official capacity.

9. Defendant, Detective Charles Leser (hereinafter LESER) was at all relevant times and employee of the Suffolk County Police department and the County of Suffolk. LESER is sued individually and in his official capacity.

10. Defendant, Detective Eugene Geissinger (hereinafter GEISSINGER) was at all relevant times an employee of the Suffolk County Police department and the County of Suffolk. GEISSINGER is sued individually and in his official capacity.

11. Defendant, Detective Nicholas Favatta (hereinafter FAVATTA) was at all relevant times an employee of the Suffolk County Police department and the County of Suffolk. FAVATTA is sued individually and in his official capacity.

12. Defendant, Detective Alfred Ciccotto (hereinafter CICCOTTO) was at all relevant times an employee of the Suffolk County Police department and the County of Suffolk. CICCOTTO is sued individually and in his official capacity.

13. Defendant, Detective-Sergeant William J. Lamb (hereinafter LAMB) was at all relevant times an employee of the Suffolk County Police department and the County of Suffolk. LAMB is sued individually and in his official capacity.

14. Defendant, Sergeant Jack Smithers, (hereinafter SMITHERS) was at all relevant times an employee of the Suffolk County Police department and the County of Suffolk. SMITHERS is sued individually and in his official capacity.

15. Defendant, Police Officer William Meaney (hereinafter MEANEY) was at all relevant times an employee of the Suffolk County Police department and the County of Suffolk. MEANEY is sued individually and in his official capacity.

16. Defendant, Police Officer Enid Nieves (hereinafter NIEVES) was at all relevant times an employee of the Suffolk County Police department and the County of Suffolk. NIEVES is sued individually and in his official capacity.

17. Defendant, Police Officer Channon Rocchio (hereinafter ROCCHIO) was at all relevant times an employee of the Suffolk County Police department and the County of Suffolk. ROCCHIO is sued individually and in his official capacity.

18. Defendant, Police Officer Jesus Faya (hereinafter FAYA) was at all relevant times an employee of the Suffolk County Police department and the County of Suffolk. FAYA is sued individually and in his official capacity.

19. Defendants John Does 11-20 were at all relevant times employees of the Suffolk County Police department and the County of Suffolk. All defendants are sued individually and in their official capacity.

20. Defendant Nassau County (hereinafter NASSAU), is a County within the State of New York and the public employer of Sergeant Timothy Marinace, Deputy Chief of Patrol John Hunter, Inspector Edmund Horace, Commanding Officer Daniel P. Flanagan, Detective-Sergeant John DeMartinis, Police Officer Anthony D. DiLeonardo, Police Officer Edward Bienz and of John Does 11-20.

21. Nassau County Police Department is a County agency organized under an existing by virtue of the laws of the State of New York and the County of Nassau.

22. Defendant, Police Officer Anthony DiLeonardo (hereinafter DILEONARDO), was at all relevant times and employee of the Nassau County Police Department and the County of Nassau. DILEONARDO is sued individually and in his official capacity.

23. Defendant, Police Officer Edward Bienz (hereinafter BIENZ), was at all relevant times an employee of the Nassau County Police Department and the County of Nassau. BIENZ is sued individually and in his official capacity.

24. Defendant, Sergeant Timothy Marinace (hereinafter MARINACE) was at all relevant times an employee of the Nassau County Police Department and the County of Nassau. MARINACE is sued individually and in his official capacity.

25. Defendant, Deputy Chief of Patrol John Hunter (hereinafter HUNTER) was at all relevant times an employee of the Nassau County Police Department and the County of Nassau. HUNTER is sued individually and in his official capacity.

26. Defendant, Inspector Edmund Horace (hereinafter HORACE) was at all relevant times an employee of the Nassau County Police Department and the County of Nassau. HORACE is sued individually and in his official capacity.

27. Defendant, Commanding Officer Daniel P. Flanagan (hereinafter FLANAGAN) was at all relevant times an employee of the Nassau County Police Department and the County of Nassau. FLANAGAN is sued individually and in his official capacity.

28. Defendant, Detective-Sergeant John DeMartinis (hereinafter DEMARTINIS) was at all relevant times an employee of the Nassau County Police Department and the County of Nassau. FLANAGAN is sued individually and in his official capacity.

29. Defendants John Does 11-20 were at all relevant times employees of the Nassau County Police department and the County of Nassau. All defendants are sued individually and in their official capacity.

30. The above-named defendants were, at all relevant times reflected herein, acting under color of State Law.

**General Facts**

31. On or about February 21, 2011 MOROUGHAN was hired by Dobro Express Taxi, a fledgling cab company with two cars and a physical office located at 168 Main Street in Huntington Village, in the County of Suffolk, State of New York.

32. MOROUGHAN was hired as a cab driver and held a valid New York State chauffer's license to operate a cab. As such, his job duties called for the pick up and discharge of passengers for hire.

33. On or about February 26, 2011, MOROUGHAN began working a 6:00 p.m. shift, which was scheduled to end on February 27, 2011 at 6:00 a.m.

34. MOROUGHAN was driving a 2010 Toyota Prius Hybrid, New York Registration number 13100-TY, which was an electric/gas powered automobile with the gearshift located in the center console separating two front bucket seats.

35. At approximated 8:00 p.m., MOROUGHAN picked up his girlfriend, Christine Mondo, who was keeping him company during his shift, and who occupied the front right passenger seat of the cab at all relevant times stated herein.

36. At approximately 1 am, on February 27, MOROUGHAN received a call from his dispatcher to pick up a fare at 131 West 19th Street in Huntington Station. The fare was cancelled, so MOROUGHAN decided to drive to Huntington village.

37. To return to Huntington Village, MOROUGHAN drove on New York Avenue, West Hills Road, and eventually was traveling north bound on Oakwood Road.

38. On route to the village, MOROUGHAN was cut off by a Blue 2008 Acura 4 DSD, New York Registration number EMV-254, being driven by off duty Nassau County police officer BIENZ. The Acura was being operated in an erratic manner in violation of various vehicle and traffic laws (speeding, tailgating, failure to signal, improper lane change, failing to maintain lane, reckless driving, DWI, etc.) creating a danger to other motorists on the roadway including MOROUGHAN.

39. Jillian Bienz was a passenger in BIENZ' Acura.

40. Almost immediately thereafter, a white 2011 Infinity 4DSD, New York Registration number FHP-1567, being driving by off duty Nassau County police officer DILEONARDO approached MOROUGHAN's taxi from the rear. The Infinity was being operated erratically in violation of numerous vehicle and traffic laws (speeding, tailgating, failure to signal, improper lane change, failing to maintain lane, reckless driving, DWI, etc.), creating a danger to other motorists on the roadway including MOROUGHAN.

41. DILEONARDO passed MOROUGHAN'S taxi and headed North on Oakwood Road pursuing BIENZ.

42. Sophia Cornia was a passenger in the front seat of the Infinity.

43. Eventually, BIENZ and DILEONARDO stopped their vehicles pulling over to the east side of Oakwood Road near the intersection of Tippin Drive, both cars facing in a northerly direction.

44. MOROUGHAN proceeded North on Oakwood Road toward his intended destination and upon seeing the Infinity and Acura pulled to the side of the road, stopped his cab adjacent to the Infinity. MOROUGHAN rolled down his window and yelled at DILEONARDO, words to the effect of, "where the hell did you learn how to drive asshole."

5

45. A shouting match ensued between the parties. MOROUGHAN stepped partially out of his vehicle and DILEONARDO and BEINZ both exited their respective automobiles.

46. Being outnumbered and now fearing for his physical safety, MOROUGHAN re-enters the cab, places the cab in reverse, retreating from the approaching DILEONARDO.

47. MOROUGHAN reverses his car approximately three-car lengths, then places his car in drive and begins to perform a u-turn to his left with the intent to drive south bound on Oakwood Road, away from BIENZ and DILEONARDO.

48. The Suffolk Crime Laboratory report dated April 20, 2011 indicates that after reversing the taxi MOROUGHAN'S vehicle could have moved forward as little as a half a car length, and that the bullets' trajectory supports MOROUGHAN'S claim that he was turning the cab left to perform a u-turn. (See Exhibit C).

49. Despite MOROUGHAN'S retreat, BIENZ and DILEONARDO continue approaching MOROUGHAN'S cab from the east bound shoulder of Oakland Road.

50.

51. After MOROUGHAN re-entered his cab and reversed his vehicle thirty to forty five feet, DILEONARDO follows on foot positioning himself somewhere between the two vehicles. In addition to DILEONARDO'S admission that he drew his service weapon, the Suffolk Crime Lab Report concluded, in part, that DILEONARDO may have been concealing his weapon from view by holding it at his side (See Exhibit C).

52. As MOROUGHAN attempted to flee, DILEONARDO intentionally, negligently, and/or recklessly discharged all five rounds, three of which entered the cab, two rounds struck MOROUGHAN—one in his left arm and one in the chest. DILEONARDO'S actions constituted the excessive use of force, excessive use of physical force, assault, battery, attempted murder, reckless endangerment, criminal mischief, reckless driving, driving while intoxicated, driving while impaired, and numerous other criminal and non-criminal acts including the intentional infliction of emotional distress, violations of Nassau County police department regulations, including but not limited, conduct unbecoming an officer, discharging a firearm into a moving vehicle, using deadly physical force in circumstances that present a grave risk of death or serious physical injury, recklessly using deadly physical force, failing to secure his weapon.

53. The Suffolk County Crime Lab report documented the following facts concerning the crime scene evidence:

    A. Shattered glass on Oakwood Road 22 feet behind the Infinity;

    B. Shattered glass from the car, and bloodstains from MOROUGHAN's person, 36 feet behind the Infinity;

    C. A third bullet entered the car via the windshield but was never recovered;

    D. All five rounds in DILEONARDO'S weapon were discharged (see Exhibit C).

54. The Suffolk County crime lab report concluded that the three rounds which entered the front windshield of the cab were fired from DILEONARDO'S gun while he was positioned between 13-25° to the right front of MOROUGHAN'S cab (See Exhibit C).

55. After discharging all five rounds, two of which struck MOROUGHAN, DILEONARDO ran to the driver's side of the cab, broke the driver's side window with his gun, and thereafter struck MOROUGHAN with the butt of his .38 squarely on the nose, stunning MOROUGHAN, and fracturing his nose.

56. DILEONARDO opened the driver's door of the cab and began striking MOROUGHAN on the side of the head.

57. At this point, MOROUGHAN was seated in the driver's seat, had two bullet wounds, was bleeding profusely, suffered a broken nose, and was being repeatedly struck in the head by DILEONARDO.

58. MOROUGHAN'S blood was documented on the roadway 36 feet behind DILEONARDO'S Infinity (see Exhibit C).

59. MOROUGHAN reached over to the gearshift, placed the taxi in reverse, and utilizing the rear camera, backed up the cab, fleeing for his life.

60. When MOROUGHAN backed up, DILEONARDO was knocked to the ground by the driver's side door of the cab, his .38 dislodged from his hand falling into the rear of the taxi behind MOROUGHAN. As MOROUGHAN continued backing up, DILEONARDO yelled what MOROUGHAN believed may have been stop, police. However, in utter disbelief that his attacker, DILEONARDO, who just shot and beat him, could possibly be a police officer, MOROUGHAN fled the scene for safety.

61. After reversing the cab, MOROUGHAN reached out and closed the driver's door, successfully maneuvered a u-turn to the left, thereby traveling away from DILEONARDO and BIENZ heading south bound on Oakwood Road.

62. A second probable bloodstain was documented on the centerline of Oakwood Road approximately 58 feet south of the first bloodstain, and 98 feet behind DILEONARDO'S Infinity(see exhibit C).

63. After leaving the scene, MOROUGHAN immediately drove himself to Huntington hospital for treatment.

64. On route, MOROUGHAN'S girlfriend called 911 reporting the shooting and requesting a police response to Huntington hospital. MOROUGHAN arrived at Huntington hospital at approximately 1:30 a.m.

65. The only civilian that was able to see MOROUGHAN that evening was Annmarie Mondo. She did so by claiming she was immediate family—(MOROUGHAN'S stepmother), and was granted permission to speak with MOROUGHAN briefly. Annmarie Mondo arrived at the hospital 15-20 minutes after MOROUGHAN (approximately 1:50 a.m.).

66. MOROUGHAN requested Annmarie contact Risco Lewis, his godmother, and career prosecutor for the Nassau District Attorney's office.

67. Approximately 30 minutes later (2:20 a.m.), Miss Lewis arrived. MOROUGHAN'S repeated request to see his attorney (Risco Lewis), throughout the course of the evening, were denied by defendants.

68. Defendant's intentionally and affectively isolated MOROUGHAN from any outside contact or assistance.

69. MOROUGHAN observed a significant police presence at the hospital from both Nassau and Suffolk Counties. This struck MOROUGHAN as odd in that he was shot in Suffolk County.

**Nassau Detectives**

70. Sometime after MOROUGHAN'S arrival at Huntington Hospital Nassau Detectives John Does 1 and 2 (hereinafter NJD 1 & 2) entered MOROUGHAN'S hospital room, introduced themselves and told MOROUGHAN they wanted to question him.

71. MOROUGHAN advised NJD 1&2 that he was tired, not feeling well, and requested they question him later, but they told MOROUGHAN they needed to question him immediately.

72. MOROUGHAN specifically asked NJD 1&2 if his assailant was a cop, NJD 1& 2 lied to MOROUGHAN telling him they did not know who his assailant was.

73. Next, MOROUGHAN requested to speak to his lawyer, referring to Risco Lewis, but that request was also denied.

8

74. Nassau County John Does 1 and 2 repeatedly told MOROUGHAN he did not need a lawyer, suspects need lawyers, not victims, and that lawyers only get in the way of investigations and slow things down. Nassau Count John Does 1 and 2 communicated to MOROUGHAN that he was the victim and they wanted to wrap up their investigation.

75. The interview was interrupted by MOROUGHAN'S need for medical treatment.

76. After receiving medical treatment, NJD 1 & 2 recommenced their interview, MOROUGHAN explained that he really wanted his lawyer and explained his special relationship with Risco Lewis. MOROUGHAN explained that Ms. Lewis had been available to MOROUGHAN since he entered foster care at age 12 due to his mother's drug abuse. MOROUGHAN wanted Risco Lewis there as his lawyer and because she made him feel secure and helped him in matters of importance.

77. Once again, Nassau County John Does 1 and 2 deny MOROUGHAN'S request for counsel and continue to advise him that he did not need a lawyer, stating he was the victim, and they needed to wrap up their investigation. Tired, seriously injured and on various medications, MOROUGHAN acquiesces and answers Nassau County John Does questions.

78. MOROUGHAN describes what happens in summary telling Nassau County John Does1 and 2 about the erratic driving of BIENZ and DILEONARDO, followed by the oral argument between MOROUGHAN and DILEONARDO, and finally, that a drunk, crazy bastard (DILEONARDO) shot and beat him, nearly killing him and his girlfriend.

79. The interview ended around 4:00 a.m. and Nassau County John Does 1 and 2 thanked MOROUGHAN and left the room.

80. Once again, MOROUGHAN asks police officer MEANEY to speak with Risco Lewis, but police officer MEANEY denies the request, telling MOROUGHAN he has to comply with his supervisors' orders and therefore he cannot let anyone in his room. It is clear that both Nassau and Suffolk police Departments were put on notice that MOROUGHAN had expressly exercised his constitutional right to counsel.

**Suffolk Detectives**

81. At approximately 5:50 a.m., two Suffolk County Homicide Detectives TAVARES and LESER enter MOROUGHAN'S hospital room.

82. TAVARES and LESER introduce themselves to MOROUGHAN, explain that in Suffolk County all shootings are investigated by the homicide bureau, and request to speak with MOROUGHAN.

9

83. MOROUGHAN is in bed, hooked up to IV's, exhausted, on various medications and wanted to sleep. MOROUGHAN requests that TAVARES and LESER question him later, or alternatively, they speak to NJD 1&2 who MOROUGHAN explained he spoke with earlier.

84. In sum and substance TAVARES AND LESER told MOROUGHAN that they could not delay their interview, and that they had to speak to MOROUGHAN directly. TAVARES and LESER advised MOROUGHAN that they know what happened, as they have spoken with other witnesses and have their statements.

85. TAVARES and LESER lie to MOROUGHAN concerning the true identity of his assailant.

86. MOROUGHAN once again requested to speak to his lawyer Risco Lewis, to which TAVARES and LESER responded that MOROUGHAN did not need a lawyer, he was not in any trouble, he did nothing wrong, he was shot twice, had a broken nose, and had not even thrown a punch according to witnesses.

87. Eventually, TAVARES and LESER tell MOROUGHAN in sum and substance, that he if he did not immediately provide a statement, they would have no choice but to release the shooter, and his assailant would go free. TAVARES and LESER told MOROUGHAN they needed his help, they needed his statement, so they could arrest and charge his attacker.

88.

89. MOROUGHAN is told by TAVARES and LESER, that after he signs the statement the case will be closed, meaning his assailant will be immediately arrested and MOROUGHAN can rest. TAVARES and LESER also tell MOROUGHAN that after he signs the statement he can finally see his girlfriend. TAVARES and LESER tell MOROUGHAN all he has to do is sign and this nightmare is over, his perpetrator will be arrested.

90. MOROUGHAN is told to initial and sign the statement without having any portion (including the Miranda warnings or the content of the statement) being read to him, or by him. MOROUGHAN is never told he is a suspect, or that he is signing a "confession against his penal interests", but rather, the opposite. MOROUGHAN is lead to believe he is signing a supporting deposition for the arrest of his assailant. After signing the "confession", MOROUGHAN is never told he is under arrest.

91. Significantly, MOROUGHAN'S "statement" was written by Suffolk Defendants after conferring with Nassau Defendants, contained false and misleading facts with the specific intent to create a false "confession", signed by MOROUGHAN, rather than a supporting deposition supporting DILEONARDO'S arrest. The defendants conspired to distort the truth, to permit the false arrest of MOROUGHAN, in an effort to shield DILEONARDO and BIENZ from their criminal conduct and avoid, or reduce, criminal, civil and administrative sanctions.

92. Approximately ½ to 1 hour later, unknown Suffolk Police officers advise MOROUGHAN they need to bring him to the precinct for additional questioning. MOROUGHAN was placed in the patrol car without handcuffs.

93. Once at the precinct, MOROUGHAN is falsely arrested and charged with two crimes:

1. Assault in the 2nd Degree. A class D violent felony.

The to wit clause of which reads:

"To wit: The defendant, at Oakwood Road and Tippin Drive, Town of Huntington, County of Suffolk, New York on or about 2/27/11 at 0115 hours with intent to prevent Anthony DiLeonardo, a police officer from performing a lawful duty, namely after identifying himself as a police officer, arresting Thomas Moroughan for Reckless Endangerment, caused physical injury to such person; in that he drove a 2010 Toyota Prius New York Registration 13100TY into Anthony DiLeonardo causing pain and injury to his left leg and knee and forearm."

2. Reckless Endangerment 2nd Degree, a class A misdemeanor.

The to wit clause of which reads:

"To wit: The defendant, at Oakwood Road and Tippin Drive in the town of Huntington, in Suffolk County, New York, on or about 2/27/11, at approximately 0115 hours, recklessly engaged in conduct which created a substantial risk of serious physical injury to another person; in that, the defendant accelerated his vehicle and drove it towards Anthony DiLeonardo who was standing in the roadway, and almost struck Anthony DiLeonardo placing him in fear of serious physical injury or death. The defendant was operating a 2010 Toyota Prius New York Registration 13100TY."

94. The "complainant" on the information is Detective/Sergeant William J. LAMB, Suffolk County Police Department.

95. Prior to his arrival at the precinct MOROUGHAN had never been advised by any party that he was a suspect in a criminal investigation or that he was under arrest.

96. Despite his obvious gunshot wounds, both of MOROUGHAN'S hands were handcuffed to the wall and his requests to adjust this arrangement due to pain were denied.

11

97. The following day bail was set at $2,500, and MOROUGHAN was released from Riverhead jail later that the same day after his girlfriend posted bail.

98. Suffolk Police issued false and misleading media accounts which were broadcast in news, electronic and media formats portraying MOROUGHAN as an attempted cop killer.

99. On April 20, 2011 a shooting incident reconstruction report was published by the Suffolk County police department crime laboratory (Exhibit C).

100.

### Evidence of Alcohol Consumption and Impairment

101. Prior to the aforementioned events, DILEONARDO and BIENZ had been out socializing which included visiting numerous bars/restaurants in Huntington and their admitted consumption of alcohol.

    A.    PARTY ADMISSIONS OF BIENZ AND DILEONARDO:

102.

103.

    B.    AMBULANCE AND HOSPITAL RECORDS ESTABLISH ALCOHOL CONSUMPTION AND IMPAIRMENT

104.

12