IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---

THOMAS M. MOROUGHAN, )
)
                Plaintiff, )
)
-against- )
) Docket No.: 12 CV 0512
THE COUNTY OF SUFFOLK, SUFFOLK COUNTY )
POLICE DEPARTMENT, SUFFOLK DETECTIVES )
TAVARES, CHARLES E. LESTER III, )
DETECTIVE/SGT. WILLIAM J. LAMB, SUFFOLK )
POLICE OFFICER MEANY AND SUFFOLK JOHN )
DOES 1-10, THE COUNTY OF NASSAU, NASSAU )
COUNTY POLICE DEPARTMENT, NASSAU )
POLICE OFFICERS ANTHONY D. DILEONARDO, )
EDWARD BIENZ AND JOHN DOES 11-20, )
)
                Defendants. )

---

## MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO QUASH SUBPOENA

Defendant Officer DiLeonardo moves this Court for an Order quashing the subpoena of Plaintiff which requests the deposition testimony of a medical provider who treated Officer DiLeonardo for trauma and other related injuries suffered by him as a result of discharging his firearm in the line of duty. In doing so, Defendant DiLeonardo recognizes that New York laws regarding privilege are not controlling in federal civil rights actions brought under § 1983. However, "state laws may underscore important privacy interests that the Court should consider." *Sparks v. Seltzer*, 5 CV 1061 (NG)(KAM), 2006 WL 2358157 (E.D.N.Y. Aug. 14, 2006) citing *King v. Conde,* 121 F.R.D. 180, 187 (E.D.N.Y.1988), *United States v. King,* 73 F.R.D. 103, 105 (E.D.N.Y.1976)("a strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy"). Where a party seeks to

1

invoke the privilege, he bears the burden of "overcome[ing] the fundamental importance of a law meant to insure each citizen from unconstitutional state action." *Id.* citing *Unger v. Cohen,* 125 F.R.D. 67, 69 (S.D.N.Y.1989). In the subpoena put before Your Honor, Plaintiff is seeking the compel the doctor who treated Officer DiLeonardo to give testimony regarding her medical treatment of Officer DiLeonardo, her conversations with him, and any and all communications which occurred during this doctor-patient relationship. Any cost to our citizen's fundamental rights by protecting the privilege which exists between Officer DiLeonardo and his doctor, is clearly outweighed by both the public and private interests in maintaining the health and well-being of our law enforcement.

Even where a privilege with respect to physician-patient communications related to physical condition cannot be claimed, courts are still required to determine if the communications are protected by a federal constitutional right to privacy and if they are relevant and discoverable. *See United States v. University of the State University of New York at Stony Brook,* 575 F.Supp. 607 (E.D.N.Y. 1983); *Heilman v. Waldron,* 287 F.R.D. 467 (D. Minn. 2012). With regard to Officer DiLeonardo's privacy interests, the facts of this case are persuasive. Officer DiLeonardo was brought to the hospital not only to treat any physical wounds he may have had; but, pursuant to the rules, regulations and guidelines of virtually every police department in this nation, he was required to be seen by a medical professional as a result of discharging his firearm in the line of duty. The reason and rationale for these procedures are related to the trauma which may likely occur upon an officer's discharge of his weapon in the line of duty. Thus, Officer DiLeonardo's treatment at the hospital was not limited to treatment for his physical condition but was also treatment and observation for his mental health as a result of discharging his firearm. The questions asked, and conversation had, between doctor and

2

patient on the night of the incident are privileged communications recognized by the Supreme Court in *Jaffee v. Redmond.* 518 U.S. 1, 8-18, 116 S. Ct. 1923, 1927-32, 135 L. Ed. 2d 337 (1996).

Importantly, in *Jaffee*, the Supreme Court drew attention to the Senate's Report statement in adopting Rule 501 which specifically recognizes that Rule 501 "should be understood as reflecting the view that the recognition of a privilege based on a confidential relationship ... should be determined on a case-by-case basis." *Jaffee,* 518 U.S. at 8-18 quoting S. Rep. No. 93-1277, p.13 (1974) U.S. Code Cong. & Admin. News 1974, pp. 7051, 7059. Here, the nature of the hospital visit is distinct to an officer who has just discharged his weapon in the line of duty. The facts of this case not only warrant the case-by-case analysis dictated in the Senate's Report accompanying the enactment of Rule 501, but also warrant the considerations articulated by the court in establishing the psychotherapist-patient privilege in *Jaffee*. *Id*. There, the court recognized the importance of "an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears." *Id*. Because of the sensitive nature of the circumstances under which police officers are required to consult with medical professionals for trauma related to the discharge of a weapon, "disclosure of confidential communications made . . . may cause embarrassment or disgrace. For this reason, the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment." *Id*.

Importantly, protecting confidential communications between a doctor acting in this capacity and a police officer serves important private interests as well as promoting the broader public interests of making sure that the law enforcement community is able to continue to act in their capacity as defenders of our laws and protectors of our civil society while knowing that

3

they may be able to confidentially disclose and discuss all of the emotional, psychological and worrisome issues that arise from performing in the line of duty and discharging a firearm.

Thus, Officer DiLeonardo maintains that the privilege he asserts, "serves the public ends" (*see Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981)) and "serves the public interest by facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem. The mental health of our [police force], no less than its physical health, is a public good of transcendent importance" (*Jaffee, supra*).

> In contrast to the significant public and private interests supporting recognition of the privilege, the likely evidentiary benefit that would result from the denial of the privilege is modest. If the privilege were rejected, confidential conversations between [providers of trauma treatment and police officers] would surely be chilled, particularly when it is obvious that the circumstances that give rise to the need for treatment will probably result in litigation. Without a privilege, much of the desirable evidence to which litigants such as [plaintiff] seek access-for example, admissions against interest by a party-is unlikely to come into being. This unspoken "evidence" will therefore serve no greater truth-seeking function than if it had been spoken and privileged.

*Jaffe, supra.*

It is axiomatic that Officer DiLeonardo has neither affirmatively asserted his medical condition on the night of the incident giving rise to Plaintiff's claims nor has he asserted his medical condition on the night of the incident to excuse the conduct complained of by the Plaintiff. A defendant does not waive the physician-patient privilege merely by defending against a lawsuit, which is all Mr. DiLeonardo has done. *See Dillenbeck v. Hess*, 73 N.Y.2d 278, 289 (1989). His privacy interests in maintaining the confidences of his communications to a treating physician for possible trauma and other related injuries are critical to insuring proper

treatment for law enforcement and for the overall good of society in maintaining the health and welfare of our law enforcement community.

For all the foregoing reasons, Defendant Officer DiLeonardo moves this Court for an Order quashing the subpoena requesting the deposition testimony of the medical provider who treated Officer DiLeonardo on the night of the incident giving rise to Plaintiff's claims.

Dated: Garden City, New York
      March 1, 2013

BARKET MARION EPSTEIN & KEARON

By: _____
    Amy B. Marion