**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
THOMAS M. MOROUGHAN,

                     Plaintiff,                    **DECISION**
                                                        **AND ORDER**
   -against-

                                                         CV 12-512 (JFB) (AKT)

THE COUNTY OF SUFFOLK, SUFFOLK
COUNTY POLICE DEPARTMENT,
SUFFOLK DETECTIVES RONALD TAVARES,
CHARLES LESER, EUGENE GEISSINGER,
NICHOLAS FAVATTA, and ALFRED CICCOTTO,
DETECTIVE/SGT. WILLIAM J. LAMB, SGT. JACK
SMITHERS, SUFFOLK POLICE OFFICERS WILLIAM
MEANEY, ENID NIEVES, CHANNON ROCCHIO,
and JESUS FAYA and SUFFOLK JOHN DOES 1-10,
THE COUNTY OF NASSAU, NASSAU COUNTY
POLICE DEPARTMENT, SGT. TIMOTHY MARINACI,
DEPUTY CHIEF OF PATROL JOHN HUNTER,
INSPECTOR EDMUND HORACE, COMMANDING
OFFICER DANIEL FLANAGAN, DETECTIVE/SGT.
JOHN DEMARTINIS, NASSAU POLICE OFFICERS
ANTHONY D. DILEONARD, EDWARD BIENZ
and JOHN DOES 11-20,
                              Defendants.
----------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

       Plaintiff's counsel filed a letter with this Court on February 14, 2013 [DE 65] attaching a proposed judicial subpoena to be served on Dr. Beverly Kraszewski, who provided medical treatment to Defendant Police Officer Anthony DiLeonardo ("Officer DiLeonardo") on February 27, 2011, in the aftermath of the incident underlying the Amended Complaint in this action. On March 19, 2013, Officer DiLeonardo, by his counsel, moved for an order quashing the subpoena which directed Dr. Beverly Kraszewski to appear and give testimony with respect to her treatment of Officer DiLeonardo at Huntington Hospital on February 27, 2011. DE 72-73.

Plaintiff opposes the motion. DE 74-75. For the following reasons, Officer DiLeonardo's motion is DENIED.

I. **BACKGROUND**

Plaintiff brings this action alleging, *inter alia*, § 1983 conspiracy, false arrest, malicious prosecution, excessive force, and violations of Plaintiff's Fifth and Sixth Amendment rights. *See generally* Am. Compl. [DE 34]. Plaintiff's claims stem from an incident that occurred on February 27, 2011, in which Officer DiLeonardo allegedly shot Plaintiff after a verbal altercation on Oakwood Road in the Town of Huntington, Suffolk County. Am. Compl. ¶¶ 36-52. Plaintiff maintains that Officer DiLeonardo and Police Officer Edward Bienz ("Officer Bienz") were intoxicated in the early morning of the shooting. Am. Compl. ¶¶ 104-108. According to the Amended Complaint, Officers DiLeonardo and Bienz engaged in a conspiracy to cover up their intoxication in order to shield themselves from possible criminal and/or departmental sanctions, and, to that end, they submitted false testimony and reports. Am. Compl. ¶¶ 109-137, 184-199. On the date of the shooting, Officer DiLeonardo received treatment for his physical injuries at Huntington Hospital from Dr. Beverly Kraszewski. Pl.'s Mem. of Law in Opp. to Officer DiLeonardo's Mot. to Quash ("Pl.'s Opp.") [DE 71, 75], at 5.[1] Officer DiLeonardo maintains that his consultation with Dr. Kraszewski was not limited to a physical examination, but that she also treated and observed him in relation to his mental health since he had discharged his firearm in the line of duty. Mem. of Law in Supp. of Officer DiLeonardo's Mot. to Quash ("Def.'s Mem.") [DE 73], at 2.

At a Status Conference held before this Court on February 5, 2013, the attorneys for both Plaintiff and for Officer DiLeonardo represented that Officer DiLeonardo had previously signed

---

[1] Plaintiff submitted two memoranda in opposition; however, the memoranda appear to be identical. *See* DE 71, 75.

Health Insurance Portability and Accountability Act ("HIPPA") authorization forms permitting the release of certain of his medical records. DE 61. However, Officer DiLeonardo refused to sign a release allowing Dr. Kraszewski to discuss his treatment, effectively preventing Plaintiff's counsel from deposing Dr. Kraszewski. *Id.* Notwithstanding Officer DiLeonardo's restricted HIPAA release, Plaintiff's counsel stated that he intended to subpoena such testimony, and that Huntington Hospital indicated it would accept a subpoena from the Court for that purpose. *Id.* Counsel for Officer DiLeonardo noted that she would move to quash the subpoena on the grounds of relevance and physician-patient privilege. *Id.* The Court set a briefing schedule to address the issue, and the present motion followed.[2]

The subpoena is described as a "judicial subpoena directing Dr. Beverly Kraszewski to appear and give testimony pertaining to Anthony DiLeonardo in relation to his February 27, 2011 treatment at Huntington Hospital." Aff. of Amy B. Marion in Supp. of Officer DiLeonardo's Mot. to Quash ("Marion Aff.") [DE 72] ¶ 2; Aff. of Anthony M. Grandinette in Opp. to Officer DiLeonardo's Mot. to Quash ("Grandinette Aff.") [DE 74] ¶ 2.

## II.     LEGAL STANDARD

The burden of persuasion on a motion to quash a subpoena is borne by the party moving to quash. *See John Wiley & Sons, Inc. v. Doe Nos. 1-30*, 284 F.R.D. 185, 189 (S.D.N.Y. Sept. 19, 2012) (citing *Pegoraro v. Marrero*, No. 10 Civ. 0051, 2012 WL 1948887, at *4 (S.D.N.Y. May 29, 2012); *Ford Motor Credit Co. v. Meehan*, No. CV 05-4807, 2008 WL 2746373, at *5 (E.D.N.Y. July 11, 2008) ("The burden of persuasion in a motion to quash a subpoena … is borne by the movant.") (citing *Sea Tow Int'l, Inc. v. Pontin*, 246 F.R.D. 421, 424

---

[2]     Apparently, Officer Beinz is not asserting the existence of a physician-patient privilege regarding his treatment on the morning of February 27, 2011. *See* Pl.'s Opp. at 2 n.1. Officer Bienz has provided an executed HIPPA release specifically authorizing Dr. Kraszewski and North Shore LIJ nursing staff to testify at a deposition concerning his treatment. *Id.*; North Shore LIJ HIPPA Release, annexed as Ex. 4 to Pl.'s Opp.

(E.D.N.Y. 2007)). Further, "[a] determination to grant or deny … a motion to quash a subpoena is discretionary." *John*, 284 F.R.D. 185, 189 (citing *Pegoraro*, 2012 WL 1948887, at *4); *see In re Subpoena Issued to Dennis Friedman,* 350 F.3d 65, 68 (2d Cir. 2003); *Solomon v. Nassau County*, 274 F.R.D. 455, 460 (E.D.N.Y. 2011) ("Motions to quash subpoenas under the Rules are 'entrusted to the sound discretion of the district court.'") (quoting *In re Fitch, Inc.,* 330 F.3d 104, 108 (2d Cir. 2003)); *Libaire v. Kaplan*, 760 F. Supp. 2d 288, 291 (E.D.N.Y. 2011) ("The decision whether to quash or modify a subpoena is committed to the sound direction of the trial court.") (citations omitted). Further, as a general matter, a district court has broad latitude to determine the scope of discovery and to manage the discovery process. *See, e.g., EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012) (citing *In re Agent Orange Prod. Liab. Litig.,* 517 F.3d 76, 103 (2d Cir. 2008)).

### III. DISCUSSION

#### A. Summary of Officer DiLeonardo's Arguments

Officer DiLeonardo first notes that, while New York laws regarding privilege are not controlling in federal civil rights actions under § 1983, this Court should consider general federal privacy rights and important state law privacy interests. Def's Mem. at 1-2. To that end, Officer DiLeonardo argues that the privilege which exists between Officer DiLeonardo and his doctor is important to both the public and private interests in maintaining the health and wellbeing of law enforcement. Def.'s Mem. at 2. Further, Officer DiLeonardo maintains that he was brought to Huntington Hospital not only to treat any physical wounds that he suffered as a result of the incident on February 27, 2011, but, "pursuant to the rules, regulations and guidelines of virtually every police department in this nation." *Id.* Counsel adds that because Officer DiLeonardo discharged his firearm in the line of duty, he was also required to be seen by a medical

4

professional. *Id.* Thus, Officer DiLeonardo contends, his treatment at Huntington Hospital was not limited to treatment for his physical condition, but was also "treatment and observation for his mental health" because he discharged his firearm. *Id.* Officer DiLeonardo claims that the material Plaintiff seeks based on the subpoena at issue here constitutes privileged communications pursuant to the Supreme Court's decision in *Jaffee v. Redmond*, 518 U.S. 1, 8-18, 116 S. Ct. 1923, 1927-32, 135 L. Ed. 2 337 (1996). *Id.* at 2-3. Counsel does not appear to assert any arguments with respect to relevancy.

### B.     Summary of Plaintiff's Arguments

Plaintiff argues that Officer DiLeonardo cannot assert a claim of privilege with respect to Dr. Kraszewski's treatment because *Jaffee* applies only to communications between a licensed psychotherapist and her patient, and that there is no federal physician-patient privilege. Pl.'s Opp. at 2. Noting that Dr. Kraszewski is a Doctor of Osteopathy, Plaintiff's counsel submits that Dr. Kraszewski treated Officer DiLeonardo for his physical injuries and that she is not licensed to provide psychiatric treatment or counseling. *Id.* at 5. Further, Plaintiff also points out that New York state laws regarding privilege are not controlling in federal civil rights actions, and, consequently, no physician-patient privilege applies here. *Id.* at 2. Asserting that strong policy reasons exist why federal courts do not recognize state law physician-patient privileges — particularly where that claim is being asserted by state authorities — counsel states that in any case, Officer DiLeonardo has not met his burden of justifying the application of such privilege. *Id.* at 2-3, 6-9. Further, Plaintiff's counsel contends that, even if this Court were to find that New York privilege laws apply, Officer DiLeonardo has waived any such privileges because he has already provided a release for medical records concerning his treatment at Huntington Hospital.

5

*Id.* at 10-12. Those records include an ambulance report, hospital records, and Dr. Kraszewski's notes. *Id.*

Finally, Plaintiff asserts that Dr. Kraszewski's testimony is relevant to this case because (i) Dr. Kraszewski treated Officer DiLeonardo after he was admitted to Huntington Hospital; and (ii) she has first-hand knowledge whether he was intoxicated that morning. *Id.* at 12-14. For example, Plaintiff points to Dr. Kraszewski's statement, noted in the records of the Suffolk County Police Department, that "[t]his is great you can get drunk[,] shoot someone and still walk out the same day." [3] *Id.* at 13; Suffolk County Police Department Record, annexed as Ex. 9 to Pl.'s Opp., at 13. Therefore, Plaintiff claims, Dr. Kraszewski's testimony regarding her treatment of Officer DiLionardo is relevant "in order to establish Plaintiff's claims that Defendant DiLeonardo was intoxicated on the morning of February 27, 2011, and that the defendants falsified their statements and records as part of their conspiracy to keep this fact concealed." *Id.* Plaintiff's counsel further argues that Officer DiLeonardo cannot now claim physician-patient privilege in order to conceal his intoxication and avoid liability. *Id.* at 3.

### C. The Court's Findings

#### 1. *The Testimony Plaintiff Seeks is Relevant*

As a threshold matter, the Court will address whether the information Plaintiff seeks is relevant. Rule 26 of the Federal Rules of Civil Procedure provides for the discovery of relevant, nonprivileged information that "appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). Under the Federal Rules of Evidence, "[e]vidence is relevant if (a) it has a tendency to make a fact more or less probable than it would

---

[3] Plaintiff states that the medical records already obtained from Huntington Hospital reveal that on the morning of February 27, 2011, hospital staff noted that Officer DiLeonardo was "slurring words at times" and that there was a "smell of alcohol on [his] breath." Pl.'s Opp. at 4; Pl.'s Opp., Ex. 7 (Huntington Hospital Records).

be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401; *see, e.g., U.S. v. Quattrone*, 441 F.3d 153, 188 (2d Cir. 2006) ("The threshold relevance inquiry requires only that evidence have some tendency to make a fact of consequence more or less probable than it would without the evidence.") (internal quotations omitted). "Relevance" under Rule 26 "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case." *Oppenheimer Fund, Inc.*, 437 U.S. 340, 351 (1978); *Barrett v. City of New York*, 237 F.R.D. 39, 40 (E.D.N.Y. 2006) (noting that the information sought "need not be admissible at trial to be discoverable.").

Based on the foregoing principles, the testimony Plaintiff seeks is clearly relevant. Testimony from Dr. Kraszewski could help to establish that it is more probable Defendant DiLeonardo was intoxicated on the morning of February 27, 2011 than such fact would be without her testimony. That fact clearly is "of consequence" in ultimately determining this action. Therefore, Plaintiff's subpoena of Dr. Kraszewski for a deposition is "reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b); *see* FED. R. EVID. 401; *Oppenheimer Fund*, 437 U.S. at 351; *Hoar,* 882 F.2d at 687; *Quattrone*, 441 F.3d at 188.

However, Rule 26 provides for the discovery of relevant, *nonprivileged* information. *See* FED. R. CIV. P. 26(b)(1) (emphasis added). Under Rule 45, the Court may quash or modify a subpoena where it "requires disclosure of privileged or other protected matter, if no exception or waiver applies." FED. R. CIV. P. 45(c)(3)(A)(iii). Therefore, the question remains whether the subpoena at issue here seeks privileged information.

7

### *2. No Federal Privilege Applies*

In cases arising under federal law, privileges against disclosure are governed by principles of federal law. *See, e.g., Michelman v. Ricoh Americas Corp.*, No. 11-CV-3633, 2013 WL 664893, at *3 n.1 (E.D.N.Y. Feb. 22, 2013) (citing *Nat'l Abortion Fed'n v. Ashcroft,* No. 03 Civ. 8695, 2004 WL 555701, at *6 (S.D.N.Y. Mar. 19, 2004); *In re Zyprexa Products Liab. Litig.,* 254 F.R.D. 50, 52 (E.D.N.Y. 2008) ("[E]ven where a federal question case contains pendent state law claims, the federal law of privileges still obtains.")). In general, HIPPA prevents health care providers from disclosing "individually identifiable health information." 45 C.F.R. § 164.514(a), (b); *Ryan v. Staten Island University Hosp.*, No. 04-CV-266, 2006 WL 3497875, at *5-6 (E.D.N.Y. Dec. 5, 2006). However, such information may be disclosed in response to "legal process, warrant, subpoena, order, or other legal process issued by a grand jury or a judicial or administrative tribunal." 45 C.F.R.§ 164.514(h)(iii)(B)); *Ryan*, 2006 WL 3497875, at *6.

While the Supreme Court in *Jaffee* specifically recognized a federal psychotherapist-patient privilege, Federal Courts, in contrast, do not recognize a physician-patient privilege. *See Michelman*, 2013 WL 664893, at *3 (noting that, while plaintiff relied heavily on federal law governing psychotherapist-patient privilege to prevent a release of his medical records, the doctor at issue was a cardiologist, and "[n]o physician-patient privilege exists under federal common law") (quoting *Zyprexa*, 254 F.R.D. at 52) (alteration in original); *Sobel v. Community Access, Inc.*, No. 03 Civ. 5642, 2007 WL 2076977, at *1 n.1 (S.D.N.Y. July 18, 2007) (noting that federal courts do not recognize a physician-patient privilege); *Kunstler v. City of New York*,

No. 04 CIV 1145, 2006 WL 2516625 at *6 n. 7 (S.D.N.Y. Aug. 29, 2006) (same).[4] The Supereme Court held in *Jaffee* that confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment, or a licensed social worker made in the course of psychotherapy, are protected from compelled disclosure. *Jaffee*, 518 U.S. at 15. Importantly, the Court in *Jaffee* specifically distinguished between treatment by a psychotherapist or social worker and treatment by a medical, non-mental health provider. As the Court observed,

> [t]reatment by a physician for physical ailments can often proceed successfully on the basis of a physical examination, objective information supplied by the patient, and the results of diagnostic tests. Effective psychotherapy, by contrast, depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears. Because of the sensitive nature of the problems for which individuals consult psychotherapists, disclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace. For this reason, the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment.

*Id.* at 10. Courts in this Circuit have interpreted the protections outlined in *Jaffee* to apply only to psychotherapists and other mental health professionals, and not to physicians or other non-mental health providers. *See, e.g., U.S. v. Wilson*, No. 04-CR-1016, 2012 WL 3890951, at *4 (E.D.N.Y. Sept. 7, 2012) (pointing out that the Court in *Jaffee* recognized a privilege extending to "communications in the course of psychotherapy between a patient and licensed mental health professionals, including psychiatrists, psychologists, and social workers … but not to non-mental health providers."); *E.E.O.C. v. Nichols Gas & Oil, Inc.*, 256 F.R.D. 114, 118-19 (W.D.N.Y.

---

[4] The advisory committee notes to the Federal Rules of Evidence Proposed Rule 504 state that "[t]he rules contain no provision for a general physician-patient privilege. While many states have by statue created the Privilege, the exceptions which have been found necessary in order to obtain information required by the public interest or to avoid fraud are so numerous as to leave little if any basis for the privilege." FED. R. EVID. 504 advisory committee's note.

2009) (noting that the Court in *Jaffee* explicitly distinguished between treatment by a psychotherapist and treatment by a medical, non-mental health provider, and declining to protect medical records from production "even if the treatment sought from the medical provider was a referral to a mental health professional or a prescription for medication to treat depression or anxiety"); *Bruno v. CSX Transp., Inc.*, 262 F.R.D. 131, 133 (N.D.N.Y. 2009) (*Jaffee* specifically recognized a psychotherapist-patient privilege "but explicitly distinguished that treatment situation from treatment by a medical, non-mental health provider") (internal citations and quotations omitted); *Kuntsler v. City of New York*, No. 04 CIV 1145, 2006 WL 2516625, at *6 (S.D.N.Y. Aug. 29, 2006) (noting that the Court in *Jaffee* adopted the psychotherapist-patient privilege despite its "rejection of a parallel physician-patient privilege").[5]

The primary issue, then, is whether Dr. Kraszewski is a licensed psychotherapist or social worker, or a non-mental health provider. Officer DiLeonardo maintains that he was brought to the hospital not only to treat any physical wounds that he suffered as a result of the incident on February 27, 2011, but, "pursuant to the rules, regulations and guidelines of virtually every police department in this nation," to be seen by a medical professional because he discharged his firearm in the line of duty. *Id.* Thus, Officer DiLeonardo argues, his treatment at the hospital was not limited to treatment for his physical condition, but was also "treatment and observation for his mental health" because he had discharged his firearm. *Id.* Plaintiff argues that Dr. Kraszewski (i) is a Doctor of Osteopathy; (ii) is not licensed to provide psychiatric treatment or counseling; and (iii) treated Officer DiLeonardo for his physical injuries only. Pl.'s Opp. at 5.

---

[5] As Plaintiff correctly points out, Officer DiLeonardo's counsel misconstrues (and misquotes) *Jaffee* in the application for relief. For example, Officer DiLeonardo quotes *Jaffee* as stating that "[t]he mental health of our [police force] … is a public good of transcendent importance." Def.'s Mem. at 4 (second alteration in original). However, *Jaffee* states that "[t]he mental health of our ***citizenry*** … is a public good of transcendent importance." *Jaffee*, 518 U.S. at 11 (emphasis added).

Significantly, Officer DiLeonardo does not cite any specific police department policy regarding mental health evaluations for officers who discharged their firearm in the line of duty. Neither does Officer DiLeonardo attest, by affirmation or otherwise, to any consultation with Dr. Kraszewski regarding his mental health. Nor does Officer DiLeonardo maintain that Dr. Kraszewski is a licensed psychotherapist or social worker.

None of the parties introduced any documentation setting forth Dr. Kraszewski's credentials. A basic internet search reveals that Dr. Kraszewski is a Medical Doctor who is board certified in emergency medicine. *See, e.g.,* VITALS, http://www.vitals.com/doctors/ Dr_Beverley_ Kraszewski.html#axzz2SpUfDYOJ; HEALTHGRADES, http://www.healthgrades.com/physician/dr-beverley-kraszewski-silverman-3gfjp. Plaintiff has submitted medical records confirming that Officer DiLeonardo was treated by Dr. Kraszewski for his physical injuries. For example, the ambulance report from the date of the incident states that Officer DiLeonardo was found with his arm bleeding and that he may have been struck by a bullet. *See* Ambulance Report, Ex. 6 to Pl.'s Opp. Other medical records reflect that Dr. Kraszewski ordered a radiograph of Officer DiLeonardo's pelvis, chest, arm, hand and shoulder, as well as CT scans of the spine and head. *See* Pl.'s Opp., Ex. 7. Dr. Kraszewski is listed as the attending physician on the medical form which describes Officer DiLeonardo as having a shoulder contusion as well as finger and forearm lacerations. *Id.* The form states that Officer DiLeonardo was discharged at 6:30 a.m. and received instructions on how to treat his physical injuries. *Id.*

Nothing in any of the medical records supplied to the Court indicates that Dr. Kraszewski (or anyone else) provided Officer DiLeonardo with any mental health services or counseling. Further, nothing in the medical records suggests that Dr. Kraszewski is a licensed

psychotherapist or social worker or that she conducted anything akin to psychotherapy for purposes of diagnosing and treating Officer DiLonardo. Therefore, there is no evidence of any kind of communications which the Court in *Jaffee* sought to protect. As such, no Federal privilege applies to protect the subpoenaed testimony at issue here. This conclusion, however, does not end the discussion. The Court must still examine whether any state law privileges might apply under these circumstances.

### 3. *No State Law Privilege Applies*

New York state law does recognize a physician-patient privilege. *Madden v. Creative Services, Inc.*, 24 F.3d 394, 396 (2d Cir. 1994) ("New York recognizes a cause of action for a patient whose physician-patient privilege has been breached by the physician.") (collecting cases); *In re* Doe, 711 F.2d 1187, 1197 n. 6 (2d Cir. 1993) (noting refusal of New York courts to compel nursing home patients' medical records on the basis of the physician-patient privilege); *Boctor v. Czekus*, No. 10-CV-3072011 WL 4954257, at *1 (W.D.N.Y. Oct. 17, 2011) (New York's physician-patient privilege ordinarily shields medical records from public disclosure); *Dilworth v. Goldberg*, No. 10 Civ. 2224, 2011 WL 3501869, at *28 (S.D.N.Y. July 28, 2011) (discussing physician's duty to protect patient's confidential health information); *Alarir v. Billetdeaux*, No. 07 Civ. 1300, 2007 WL 4047400, at *2-3 (S.D.N.Y. Nov. 13, 2007) (discussing New York's doctor-patient privilege); *Webb v. Walsh*, No. 02 CV 6629, 2005 WL 3388604, at *9 (E.D.N.Y. Dec. 12, 2005) (same).

However, and as indicated, although New York state recognizes a physician-patient privilege, "state privilege laws do not govern in federal question cases." *Bruno v. CSC Transp., Inc.*, 262 F.R.D. 131, 133 (N.D.N.Y. 2009) (citing *Ruszkowski v. Kaleida Health Sys.,* No. 06-CV-715S, 2007 WL 4380160, at *2 (W.D.N.Y. Dec.13, 2007); *Oliphant v. Department of*

*Transp.*, 171 Fed. App'x 885, 888 n.2 (2d Cir. 2008) (Federal privilege law generally applies to all federal question cases); *Zyprexa*, 254 F.R.D. at 52 ("[I]t is axiomatic that state privilege laws do not govern in federal questions cases."); *Sparks v. Seltzer*, No. 05-CV-1061, 2006 WL 2358157, at *5 (E.D.N.Y. Aug. 14, 2006) ("In federal civil rights cases, decisions of privilege should be determined by federal law.").

Notwithstanding the foregoing principles, however, "state laws may underscore important privacy interests that the Court should consider." *Sparks*, 2006 WL 2358157, at *5 (citing *King v. Conde,* 121 F.R.D. 180, 187 (E.D.N.Y. 1988) and *United States v. King*, 73 F.R.D. 103, 105 (E.D.N.Y.1976)); *see Moore v. The City of New York*, No. 11-CV-5083, 2012 U.S. Dist. LEXIS 84110, at *9-10 (S.D.N.Y. June 15, 2012) ("[T]he policies underlying state evidentiary privileges must still be given serious consideration, even if they are not determinative.") (citing *Burka v. New York City Transit Auth*., 110 F.R.D. 660, 664 (S.D.N.Y. 1986)).

Plaintiff argues that, in order for state privilege laws to apply, Officer DiLeondardo must make a "substantial threshold showing" of specific harm which would result from such disclosure. Pl.'s Opp. at 2-3, 6-9 (citing *Sparks*, 2006 WL 2358157, at *5). Once that threshold is met, the Court can conduct a balancing test weighing Officer DiLeonardo's privacy interest against the Plaintiff's interest in disclosure. *See, e.g., McKenna*, 2007 WL 2071603; *Wisniewski*, 2007 WL 1120464, at *2; *Moore*, 2012 U.S. Dist. LEXIS 84110, at *8; *King,* 121 F.R.D. at 189.

The Court notes that many of the cases discussing the "substantial threshold showing" requirement and subsequent balancing test deal with a police department's claims of law enforcement privilege or other privileges to protect the production of purportedly confidential police investigation reports, police personnel files, or other police documents. *See, e.g., Dorsett*

13

*v. County of Nassau*, 762 F. Supp. 2d 500, 531 (E.D.N.Y. 2011) (discussing substantial threshold showing requirement in the context of privileges asserted with respect to police personnel files); *Conte v. County of Nassau*, 2009 WL 1362784, at *7 (E.D.N.Y. May 15, 2009) (discussing substantial threshold showing requirement with respect to, *inter alia*, police investigation and complaint documents purportedly protected by the law enforcement privilege); *Wisniewski*, 2007 WL 1120464, at *2 (discussing substantial threshold showing requirement in the context of civilian complaints against the police).

However, the court in *Sparks* applied the "substantial threshold showing" test to a dispute over the refusal of non-party Mental Hygiene Legal Service ("MHLS") to allow a former employee to be deposed. *Sparks*, 2006 WL 2358157, at *1. To prevent disclosure, MHLS cited, *inter alia*, New York State's Mental Hygiene Law and its related regulations protecting patient information from disclosure. *Sparks*, 2006 WL 2358157, at *1. Similar to the cases dealing with purportedly privileged police department documents, the court in *Sparks* noted that "the party seeking to invoke the privilege bears the burden of justifying its application." *Sparks*, 2006 WL 2358157, at *5 (citing *King,* 121 F.R.D. at 189). The Court found that MHLS was required to "do more than alert the court to the state privilege law or the generalized policies which support it." *Sparks*, 2006 WL 2358157, at *5 (citing *King,* 121 F.R.D. at 189). Rather, the Court required MHLS to "make a 'substantial threshold showing' of a specific harm that the organization should expect as a result of disclosure and how the disclosure will cause that harm." *Sparks*, 2006 WL 2358157, at *5 (citing *Unger v. Cohen*, 125 F.R.D. 67, 69 (S.D.N.Y. 1989); *King,* 121 F.R.D. at 189-190; *Kelly v. City of San Jose,* 114 F.R.D. 653, 653 (N.D. Cal. 1987). Absent such a showing, the court found, the frequency with which the privilege could be invoked could be harmful to the judicial process, and, as a practical matter, the court cannot balance the

14

costs and benefits of disclosure. *Sparks*, 2006 WL 2358157, at *5. The court ultimately ordered the deposition of the employee at issue, finding no substantial threshold showing of harm, and noting that "[s]tate authorities cannot insulate themselves from federal law by creating privileges that frustrate a plaintiff's attempt to pursue federal claims." *Sparks*, 2006 WL 2358157, at *5.

Even if Officer DiLonardo is not required to make a substantial threshold showing of harm as noted, the burden of persuasion on a motion to quash is borne by the party moving to quash and a determination to grant or deny a motion to quash is within the Court's sound discretion. *See, e.g., John*, 284 F.R.D. at 189, *Pegoraro*, 2012 WL 1948887, at *4. The Court finds that Officer DiLeonardo has not met this burden. Officer DiLeonardo has not made a convincing showing that Dr. Kraszewski's testimony regarding his treatment at Huntington Hospital on the day of the underlying incident should be protected from disclosure. In wholly conclusory language, Officer DiLeonardo maintains that "[a]ny cost to our citizen's fundamental rights by protecting the privilege which exists between Officer DiLeonardo and his doctor, is clearly outweighed by both the public and private interests in maintaining the health and well-being of our law enforcement." Def.'s Mem. at 2. Speculative and generalized statements such as this are not persuasive to the Court, neither under the general burden of persuasion Officer DiLeonardo must meet with respect to his motion to quash, nor under the heightened "substantial threshold showing" of specific harm. *See, e.g., Sparks*, 2006 WL 2358157, at *6.

Further, the Court notes that "[t]o justify withholding of evidence in a civil rights action, a claim of privilege 'must be so meritorious as to overcome the fundamental importance of a law meant to insure each citizen from unconstitutional state action.'" *Unger*, 125 F.R.D. at 69 (quoting *Skibo v. City of New York,* 109 F.R.D. 58, 61, (E.D.N.Y. 1985); *Sparks*, 2006 WL 2358157, at *6. Civil rights plaintiffs in particular possess a "compelling entitlement" to

15

discover information relevant to their claims.  *See Moore*, 2012 U.S. Dist. LEXIS 84110, at *9-10 (plaintiffs in civil rights actions possess a "compelling entitlement to discover relevant information necessary to ensure that through the adversarial process the truth emerges, and justice is done") (citing *Smith v. Goord*, 222 F.R.D. 238, 239-40 (N.D.N.Y. 2004)); *King*, 121 F.R.D. at 187 (noting important federal interests in broad discovery and truth-seeking, and in vindicating important federal substantive policy such as §1983); *Floyd v. City of New York*, 739 F. Supp. 2d 376, 382 (S.D.N.Y. 2010) (noting that the public has a profoundly important interest "in giving force to the federal civil rights law" and that suits brought under §1983 should "be resolved by a determination of the truth rather than by a determination that the truth shall remain hidden"); *Kitevski v. City of New York*, No. 04-CV-7402, 2006 WL 680527, at *3 (S.D.N.Y. Mar. 16, 2006) (noting that the government has a vital interest in upholding civil rights, and that "impediments to factfinding in a § 1983 case are not favored.").  The Court in its discretion will therefore not apply New York privilege law to this case.[6]

## IV.    CONCLUSION

Based on the foregoing principles, Officer DiLeonardo's motion to quash is DENIED.  Plaintiff is permitted to issue the proposed subpoena directing Dr. Kraszewski to appear and give testimony pertaining to Officer DiLeonardo in relation to his February 27, 2011 treatment at Huntington Hospital.  Plaintiff is directed to submit a proposed subpoena to the Court for signature within seven (7) days of the date of this Order.

**SO ORDERED:**

Dated:  Central Islip, New York
        August 13, 2013

---

[6]    Because the Court declines to apply New York privilege rules in this case, the Court need not examine whether Officer DiLeonardo has waived any privilege under New York law.

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
United States Magistrate Judge