UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
THOMAS M. MOROUGHAN,

                Plaintiff,

    -against-

THE COUNTY OF SUFFOLK, SUFFOLK
COUNTY POLICE DEPARTMENT,
SUFFOLK DETECTIVES RONALD TAVARES,
CHARLES LESER, EUGENE GEISSINGER,
NICHOLAS FAVATTA, and ALFRED CICCOTTO,
DETECTIVE/SGT. WILLIAM J. LAMB, SGT. JACK
SMITHERS, SUFFOLK POLICE OFFICERS WILLIAM
MEANEY, ENID NIEVES, CHANNON ROCCHIO,
and JESUS FAYA and SUFFOLK JOHN DOES 1-10,
THE COUNTY OF NASSAU, NASSAU COUNTY
POLICE DEPARTMENT, SGT. TIMOTHY MARINACI,
DEPUTY CHIEF OF PATROL JOHN HUNTER,
INSPECTOR EDMUND HORACE, COMMANDING
OFFICER DANIEL FLANAGAN, DETECTIVE/SGT.
JOHN DEMARTINIS, NASSAU POLICE OFFICERS
ANTHONY D. DILEONARD, EDWARD BIENZ
and JOHN DOES 11-20,

                            Defendants.
----------------------------------------------------------------X

**DECISION AND ORDER**

CV 12-512 (JFB) (AKT)

A. KATHLEEN TOMLINSON, Magistrate Judge:

      The Police Benevolent Association of the Nassau County Police Department ("PBA") moves by letter-motion[1] to intervene in this action for the limited purpose of enforcing the Court's May 18, 2012 Stipulation and Order of Confidentiality [DE 26] ("Confidentiality Order"). *See* PBA Mot. [DE 94]. Specifically, the PBA is concerned about information published in *Newsday* pertaining to an incident which occurred in Suffolk County on

---

[1]     Although the motion here was not made on notice as required under the Federal Rules, *see* Fed. R. Civ. P. 24(c), the Court, in its discretion, will consider the PBA's submission.

February 27, 2011, involving certain Nassau County Police Officers. *Id.* Notwithstanding the Confidentiality Order, the PBA maintains *Newsday* published a lengthy article which was based on information contained in a Nassau County Internal Affairs Unit Report ("IAU Report") regarding the underlying incident. *See id.* Plaintiff opposes the motion to intervene. Pl.'s Opp. [DE 97]. The Court has carefully examined and considered the parties' arguments. For the reasons which follow, the motion to intervene is DENIED.

**I.    BACKGROUND**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging, *inter alia*, conspiracy, false arrest, malicious prosecution, excessive force, and violations of Plaintiff's Fifth and Sixth Amendment rights. *See generally* Am. Compl. [DE 34]. Plaintiff's claims arise from the February 27, 2011 inclident in which Police Officer Anthony DiLeonardo ("Officer DiLeonardo") allegedly shot Plaintiff after a verbal altercation on Oakwood Road in the Town of Huntington, Suffolk County. Am. Compl. ¶¶ 36-52. Plaintiff maintains that Officer DiLeonardo and Police Officer Edward Bienz ("Officer Bienz") were intoxicated in the early morning of the shooting. Am. Compl. ¶¶ 104-108. According to the Amended Complaint, Officers DiLeonardo and Bienz engaged in a conspiracy to cover up their intoxication in order to shield themselves from possible criminal and/or departmental sanctions, and, to that end, submitted false testimony and reports. Am. Compl. ¶¶ 109-137, 184-199. Plaintiff also asserts claims against the Nassau and Suffolk County Police Departments and a number of individual Nassau County and Suffolk County police officers, detectives, and sergeants.[2] *See generally* Am. Compl.

---

[2]    All of the Nassau County Defendants are jointly represented by the Nassau County Attorney's Office, with the exception of Officer DiLeonardo, who is represented by private counsel.

  The Nassau County Internal Affairs Unit conducted an investigation into the events of February 27, 2011, and issued a report of its findings. The IAU Report is protected from disclosure to non-parties pursuant to the Confidentiality Order submitted by the parties on May 17, 2012 and "so ordered" by the Court on May 18, 2013. *See* DE 26.

  On June 23, 2013, *Newsday* published an article referencing the IAU Report and stating that *Newsday* possessed the entire Report. The following day, Plaintiff's counsel submitted a letter explaining how he believed *Newsday* had come into possession of the Report. DE 93. When Plaintiff's counsel filed the Amended Complaint, he attached the IAU Report as an exhibit to the pleading. *See* DE 34-37. The Amended Complaint also referenced elements of the IAU Report in the body of the pleading. *See* DE 34. Subsequent to the filing of the Amended Complaint, on December 7, 2012 the Nassau County Defendants objected to Plaintiff's disclosure of the IAU Report. DE 45. The Court held a conference with the parties on December 13, 2012, and directed the Plaintiff to (i) withdraw the Amended Complaint and attached exhibits, (ii) redact any references to information contained in the IAU Report in the Amended Complaint, and (iii) re-file the redacted Amended Complaint. DE 51.

  Plaintiff's counsel subsequently appeared at the Clerk's Office on December 17, 2012, at which time he filed the redacted Amended Complaint. DE 93. Plaintiff's counsel represents that he also believed the first Amended Complaint attaching the IAU Report and containing references to the Report [DE 34] "had been sealed/withdrawn." *Id.* However, the first Amended Complaint remained on the docket. *Id.* Plaintiff's counsel maintains that *Newsday* obtained information from the IAU Report on the public docket because the first Amended Complaint and the exhibits attached to it (including the IAU Report) were never withdrawn or placed under seal. *See id.* Plaintiff's counsel also notes that he included the IAU Report as an exhibit to a motion

filed in state court. However, counsel affirms that his office "went to great lengths to ensure it was confidential" and the IAU Report attached to the state court motion was placed under seal. *See* DE 93.

After reading the *Newsday* article, Plaintiff's counsel contends, he immediately contacted the Clerk's Office on June 24, 2013, and requested that the first Amended Complaint and the attached IAU report be placed under seal. *Id.* Apparently, the Amended Complaint [DE 34] was, in fact, placed under seal at that time. The next day, June 25, 2013, the PBA filed the instant letter-motion to intervene for the limited purpose of enforcing the Court's May 18, 2012 Confidentiality Order with respect to the IAU Report. PBA Mot. [DE 94]. Later that day, the Court held a telephone conference with the parties regarding the disclosure of the IAU Report. DE 96. At the conference, attorneys for the Suffolk and Nassau County Defendants, as well as counsel for Officer DiLeonardo, all expressed their serious concerns over the disclosure of the IAU Report. *See generally* Transcript of the June 25, 2013 Telephone Conference ("June 25 Tr.") [DE 95]. The Court drew the attention of Plaintiff's counsel to the language of the Court's December 13, 2012 Order, as follows:

> I met with counsel today to resolve the Nassau County defendants' motion to seal plaintiff's Amended Complaint [DE 45]. Although the entire Amended Complaint cannot and should not be sealed, the pleading should have been redacted before the document was filed on ECF in order to comply compliance with the Stipulation and Order of Confidentiality executed by the parties and "so ordered" by the Court on May 18, 2012 . . . Section 2(e) of that Stipulation states that "Portions of each document furnished hereunder consist of confidential information to be protected by this Stipulation and Order and may consist of information not previously disclosed, part of the public record or duplicated from an underprivileged source and made part of the IAB file. It is not the intent of the parties to make otherwise unprivileged documents privileged merely by their existence within the IAB file."

4

> . . . The Amended Complaint contains confidential information from the Nassau County Internal Affairs Unit ("IAU") investigation report of the incident underlying this litigation. Plaintiff's counsel is directed to withdraw the Amended Complaint currently filed on ECF [DE 34]. Counsel is then directed to file the properly redacted pleading (i.e., compliant with the Stipulation) on ECF. The unredacted pleading is to be filed under seal with in the Clerk's Office. Plaintiff's counsel is further instructed to submit an unredacted Amended Complaint to Judge Bianco's Chambers and one to my Chambers as well. To the foregoing extent, the motion of counsel for the Nassau County defendants is granted.

*Id.* at 5:18-6:24. Plaintiff's counsel apologized for his failure to ensure that the IAU Report was removed from the public docket. *See* June 25 Tr. 16:7-11. Counsel for the Plaintiff also affirmatively represented that he did not turn over the IAU Report or any of its contents to *Newsday*. *See* June 25 Tr. 39:14-16. Counsel agreed to contact *Newsday* to request that the article containing references to the Report be removed from *Newsday's* website. *See id.* 36:7-9.

Further, based upon the representations of counsel for the Nassau County Defendants during the June 25, 2013 conference, the Court reviewed the docket and confirmed that portions of the IAU Report which were attached to the first Amended Complaint but entered as separate docket entries [DE 35-37] remained unsealed and were accessible on the public docket. *See id.* 28:11-24. Since none of the parties had acted, the Court took immediate steps to seal those entries, which were, in fact, sealed during the conference. *Id.* 29:8-12, 34:12-13.

Two attorneys from the Nassau County Police Department Legal Bureau also attended the June 25, 2013 telephone conference. DE 95. One of those attorneys, Tatum Fox, stated her "grave concerns" over the release of the Report:

> MS. FOX: . . . I have grave concerns. We go to the highest level to keep these documents confidential. That's critical to serve the objective of Internal Affairs. And for a confidentiality order to just be undermined and for this to occur, it causes a great concern for the

5

> next case and the case after that and how we can actually serve to protect confidential documents.
>
> THE COURT: Well, your concerns are heard and understood and believe me, you're not alone on this call. I suspect it's an issue shared by everyone. I can tell you it's of grave significance to the Court at this point.

June 25 Tr. 35:8-18.

Subsequent to the June 25, 2013 telephone conference, counsel for Defendant DiLeondardo requested an evidentiary hearing to determine whether sanctions are warranted with respect to the disclosure of the IAU Report. DE 106. That request is separately pending before the Court.

## II.     LEGAL STANDARD

Rule 24(a)(2) of the Federal Rules of Civil Procedure provides that

> [u]pon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

*See* Fed. R. Civ. P. 24(a)(2). To intervene as of right pursuant to Rule 24(a)(2), a movant must show that (1) the application is timely; (2) the applicant claims an interest relating to the subject matter of the action; (3) the protection of the interest may as a practical matter be impaired by the disposition of the action; and (4) the interest is not adequately protected by an existing party. *See*

*R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006); *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 128-29 (2d Cir. 2001); *St. John's Univ., N.Y. v. Bolton*, 450 Fed. App'x 81, 83 (2d Cir. 2011). [3]

### A. Whether the Application is Timely

Whether a motion to intervene is timely is "within the sound discretion of the trial court from all the circumstances." *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994); *Republic of Philippines v. Christie's*, No. 98 Civ. 3871, 2000 WL 1056300, at *2 (S.D.N.Y. Aug. 1, 2000). Here, the Court finds that the application is timely since it was filed only two days after the *Newsday* article containing references to the IAU Report was published. *See, e.g., Dorsett v. County of Nassau*, 283 F.R.D. 85, 91 (E.D.N.Y. 2012) (finding application to intervene timely where PBA moved to intervene just two weeks after it had notice of its interest in the action).

### B. Whether the Applicant Claims an Interest Relating to the Subject Matter of the Action

To have an interest relating to the subject matter of an action, a party must have an interest in the controversy that is "direct, substantial, and legally protectable." *United States v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411, 415 (2d Cir. 2001)). The PBA argues that it has an interest relating to the subject matter of this action because (i) the Nassau County Police Officers listed in the IAU Report are PBA members who have been (or may be) subject to disciplinary

---

[3] The PBA seeks intervention as of right under Rule 24(a)(2). *See* PBA Mot. at 3. Even if the PBA's letter-motion could be construed as seeking permissive intervention, Courts typically consider the same four factors whether a motion for intervention is "of right" under Fed. R. Civ. P. 24(a) or "permissive" under Fed. R. Civ. P. 24(b). *See Peterson v. Islamic Republic of Iran*, 290 F.R.D. 54, 57 (S.D.N.Y. 2013) (citing *R Best Produce*, 467 F.3d at 240 and *Hnot v. Willis Group Holdings, Ltd.*, 234 Fed. App'x 13, 14 (2d Cir. 2007)).

charges; and (ii) Section 50(a) of New York State Civil Rights Law limits disclosure of personnel records in order to protect police officers. PBA Mot. at 2.

The Court finds that the PBA does have an interest in maintaining the confidentiality of the IAU Report. The Second Circuit has recognized important privacy interests in police reports under the "law enforcement privilege," an outgrowth of the executive privilege recognized at common law. *See, e.g., In re City of New York*, 607 F.3d, 923, 940, 941, n.18 (2d Cir. 2010). The law enforcement privilege serves to "prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *In re City of New York*, 607 F.3d at 941-42 (citing *In re Dep't of Investigation of the City of New York*, 856 F.2d, 481, 484 (2d Cir. 1988)). Clearly, the PBA here has an interest in protecting information which would undermine the privacy of police officers in the investigation or potentially endanger law enforcement personnel, among other things. *See In re City of New York*, 607 F.3d at 948-949; *Dep't of Investigation*, 856 F.2d at 484. Based on the foregoing analysis, the Court finds that the PBA has an interest in maintaining the confidentiality of the IAU Report.

  **C.**  **Whether the Protection of the Interest May be Impaired by the Disposition of the Action**

The PBA does not specifically state what relief it may seek if it is permitted to intervene in order to protect its interest in the non-disclosure of the IAU Report. The PBA argues in a general fashion that "the disposition of this matter will prevent the PBA from being able to protect its interests." PBA Mot. at 2. According to the PBA, the Confidentiality Order prohibits the IAU Report from being disclosed to the media, and if the PBA is denied the right to enforce the terms of the Confidentiality Order, it will be unable to protect its interest in non-disclosure.

*Id.* The PBA maintains that the Confidentiality Order will be rendered "entirely ineffectual if the disclosure remains wholly unchecked." *Id.*

Disclosure here has not remained "wholly unchecked" by any means. In addition to the immediate remedial measures undertaken by Plaintiff's counsel after learning of the disclosure of the IAU Report outlined in Plaintiff's June 24, 2013 letter to the Court, further remedial measures were agreed upon by the parties and the Court and were undertaken immediately during the June 25, 2013 telephone conference. At the conference, docket entries containing portions of the IAU Report as exhibits to the original Amended Complaint were sealed. As of the date of that conference, all references to information contained in the IAU Report have been sealed and are no longer available on the public docket.

Further, with respect to Plaintiff's filing of the IAU Report in state court, Plaintiff's counsel confirms in his opposition to the instant motion that he communicated with Tom Hancock, Chief Clerk of Special Term at the state court. Mr. Hancock informed counsel that (i) the state court file is marked "sealed;" (ii) Mr. Hancock is in possession of the Confidentiality Order; (iii) Mr. Hancock's entire staff is aware of the Confidentiality Order; and (iv) the Confidentiality Order will be complied with in its entirety. Pl.'s Opp. at 2.

As noted, the PBA has sought to intervene on a "limited" basis to enforce the Confidentiality Order. Attorneys from the Legal Department of the Nassau County Police Department were present at the June 25, 2013 telephone conference addressing the disclosure of the IAU Report. Attorney Tatum Fox voiced her concerns on the record. Since the parties have now complied with the Confidentiality Order and the IAU Report is now filed under seal, the Court is unclear how the PBA retains an interest in enforcing the terms of the Confidentiality Order that is not currently covered by counsel already in this case. Effectively, with the

exception of a potential evidentiary hearing regarding the Report's disclosure, any enforcement of the Confidentiality Order with respect to the IAU Report is currently moot. As such, the Court finds that the PBA has not sufficiently articulated the circumstances under which its interests would be impaired by the disposition of this action.

### D. Whether the Interest is Adequately Protected by an Existing Party

The PBA argues that the parties in this action cannot sufficiently protect their interests in preventing disclosure of the IAU Report. PBA Mot. at 2. For example, the PBA maintains that Plaintiff's counsel failed to abide by the Confidentiality Order by (i) filing the IAU Report on ECF with the Amended Complaint; and (ii) filing the IAU report in state court. *Id.* Further, the PBA argues that the Nassau County Defendants failed to object to the IAU Report for 47 days – the time between Plaintiff's filing of the Report with the Amended Complaint and Nassau County's December 7, 2012 letter objecting to the disclosure of the Report. *Id.* at 2-3. Finally, the PBA contends that "all counsel failed to follow-up on the matter" because the IAU Report remained unsealed on the docket (at least at the time of the filing of the PBA's letter-motion). *Id.* at 3.

The Court is cognizant of the course of events and the concerns raised by the PBA as to the slow reaction time to a significant breach of the parties' negotiated Confidentiality Order. Notwithstanding these concerns, the Court finds that the PBA's interests are adequately protected by the parties to this action, particularly by counsel from the Legal Department of the Nassau County Police Department, as well as by the attorney representing Officer DiLeonardo and the attorneys for Nassau and Suffolk Counties who represent the individually named police officers in this action – all of whom have a vested interest in protecting the information which has been designated "confidential" in this lawsuit. "Adequate representation by existing parties

is presumed when a potential intervenor and an existing party share the same 'ultimate objective' in the litigation." *Gulino v. Bd. Of Educ.*, No. 96 CV-08414, 2009 WL 2972997, at *3 (S.D.N.Y. Sept. 17, 2009) (citing *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001)). Here, the "ultimate objective" of respective counsel for all of the Defendants is to provide the most effective representation and defenses available to the Defendants. In regard to the more limited category of the IAU Report in the context of this litigation, the common objective is to prevent disclosure pursuant to the Confidentiality Order.

Given the heightened sensitivity to this issue by all counsel, it is highly unlikely that the circumstances giving rise to this application will be repeated. Clearly, the Suffolk and Nassau County Police Departments seek to prevent disclosure of the IAU Report in order "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *In re City of New York*, 607 F.3d at 941-42; *In re Dep't of Investigation*, 856 F.2d at 484. Further, since many of the individually named defendants are police officers, both Counties and the County Police Departments share the same concerns as the PBA regarding the release of the IAU Report, *i.e.*, concerns over the release of information regarding officers who have been or may be subject to disciplinary charges and concerns regarding the disclosure of police personnel records. Indeed, counsel for Officer DiLeonardo has moved for an evidentiary hearing to determine whether sanctions should be imposed for the disclosure of the Report. *See* DE 106. In any case, the Court is hard-pressed to find that the existing parties, particularly Nassau and Suffolk Counties and their respective Police Departments as well as the individual

police officer Defendants do not share the same 'ultimate objective' in keeping the IAU Report confidential.

## III. CONCLUSION

For all of the foregoing reasons, the PBA's Motion to Intervene is DENIED.

**SO ORDERED:**

Dated: Central Islip, New York
December 20, 2013

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
United States Magistrate Judge