THOMAS M. MOROUGHAN,

Plaintiff,

VERSUS

THE COUNTY OF SUFFOLK, ET AL.,

Defendants.
_____

**MEMORANDUM AND ORDER**
April 10, 2015
_____

JOSEPH F. BIANCO, District Judge:

Thomas M. Moroughan ("plaintiff") brings this civil rights action pursuant to 42 U.S.C. § 1983 ("Section 1983") and New York law against: the County of Suffolk; the Suffolk County Police Department ("SCPD"); SCPD Detectives Ronald Tavares, Charles Leser, Eugene Geissinger, Nicholas Favatta, and Alfred Ciccotto; SCPD Detective/Sergeant William J. Lamb; SCPD Sergeant Jack Smithers; SCPD Officers William Meaney, Enid Nieves, Channon Rocchio, and Jesus Faya; and Suffolk John Does 1-10 (collectively, the "Suffolk defendants"); the County of Nassau; Nassau County Police Department ("NCPD"); NCPD Sergeant Timothy Marinaci; NCPD Inspector Edmund Horace; NCPD Commanding Officer Daniel Flanagan; NCPD Detective/Sergeant John DeMartinis' NCPD Officer Edward Bienz; and Nassau John Does 1-10 (collectively, the "Nassau defendants"); NCPD Chief of Patrol John Hunter; and NCPD Officer Anthony D. DiLeonardo (collectively, with the Suffolk defendants, the Nassau defendants, and Hunter, "defendants"). Plaintiff's action arises from an incident during which plaintiff alleges DiLeonardo, while off-duty and intoxicated, unlawfully shot and beat plaintiff, subsequent to which defendants allegedly conspired to violate plaintiff's constitutional rights by falsely arresting, prosecuting, and imprisoning plaintiff while shielding DiLeonardo and Bienz (who was also present at the scene of the shooting) from investigation or prosecution for their alleged criminal acts.

Plaintiff presently moves to amend his complaint, pursuant to Federal Rule of Civil Procedure 15(a)(2), to: (a) assert a *Monell* claim against the County of Nassau for an unlawful policy and custom of falsifying reports regarding the use of deadly force by NCPD employees; (b) allege plaintiff's compliance with the notice of claim requirements of New York General Municipal Law § 50-e; (c) limit and specify which defendants are subject to each respective cause of action; and (d) allege a

cause of action against the Nassau and Suffolk defendants for violating his right to counsel under New York law.

The Nassau defendants oppose the aspects of the motion concerning the addition of the *Monell* claim and right to counsel claims, and the amendment of the existing claims to limit and specify the defendants against whom they are asserted. The bulk of the Nassau defendants' argument focuses, however, on the addition of the *Monell* claim. They argue that the motion to amend should be denied because: (a) plaintiff has failed to demonstrate good cause for the delay in bringing his motion to amend; (b) plaintiff has failed to demonstrate that the Nassau defendants will not be unduly prejudiced by the addition of the *Monell* claim; and (c) plaintiff has failed to demonstrate the proposed *Monell* claim is not futile, because he failed to plead any causal connection between the "policy and custom" alleged in the *Monell* claim and plaintiff's constitutional injuries. The other defendants did not file oppositions to the motion.

For the following reasons, the Court grants plaintiff's motion to amend. As a threshold matter, plaintiff has demonstrated "good cause" in failing to assert a *Monell* claim earlier – namely, plaintiff was not aware of the allegations relating to other Deadly Force Emergency Response Team ("DFRT") reports on officer-involved shootings until a *Newsday* article was published in November 2013. Moreover, it was not unreasonable for plaintiff to investigate those allegations for nine months before seeking to amend the pleading to add a *Monell* claim. For the same reasons, the Court finds that there was no undue delay in bringing the motion. In addition, given the stage of this litigation (with substantial discovery outstanding), the Nassau defendants have not demonstrated prejudice that would warrant denial of the motion. Finally, although the Nassau defendants argue that the amendment would be futile, the Court disagrees; rather, the Court concludes that the allegations in the proposed amended complaint set forth a plausible *Monell* claim arising from an alleged policy and custom of the DFRT to cover up misconduct by NCPD personnel by intentionally failing to investigate incidents properly, and falsifying reports to the NCPD commissioner by omitting damaging evidence to support conclusions in favor of NCPD personnel.

I. BACKGROUND

A. Factual Allegations

1. The February 26, 2011 Incident

The Court summarizes the following relevant facts taken from the proposed second amended complaint ("SAC") for the purposes of this opinion. These are not findings of fact by the Court; instead, the Court assumes these facts to be true for purposes of deciding the pending motion.

Plaintiff alleges that, while working as a cab driver during the early morning hours of February 26, 2011, he was driving near Huntington Village, NY, when he was tailgated and then cut off by two civilian vehicles being driven erratically by NCPD officers DiLeonardo and Bienz, accompanied by their respective significant others.[1] (SAC ¶¶ 36-46.) Plaintiff's girlfriend was also accompanying him as a passenger at the time. (*Id.* ¶ 40.) Plaintiff later observed the two vehicles parked on the side of the road, and stopped to initiate a verbal confrontation with

---

[1] Plaintiff alleges that the NCPD Internal Affairs Bureau ("IAB") investigation concluded that DiLeonardo and Bienz were intoxicated, unfit for duty, and guilty of driving while impaired by alcohol at the time of the incident. (SAC ¶ 113.) According to their alleged statements to IAB, Bienz and DiLeonardo had each had approximately six to eight alcoholic drinks earlier in the evening. (*Id.* ¶¶ 107-08.)

DiLeonardo and Bienz over their erratic driving. (*Id.* ¶¶ 48-50.) Plaintiff alleges that, during the verbal confrontation, DiLeonardo and Bienz exited their vehicles, causing plaintiff to decide to drive away in fear of his physical safety. (*Id.* ¶¶ 50-52.) Plaintiff alleges that, at some point during the verbal confrontation, DiLeonardo unholstered a revolver loaded with five rounds from an ankle holster, possibly concealing it from view by holding it at his side. (*Id.* ¶¶ 55-56.)

As plaintiff drove his car in reverse about thirty to forty-five feet and initiated a U-turn, DiLeonardo and Bienz allegedly continued to advance on his vehicle, with DiLeonardo positioning himself between the officers' two vehicles. (*Id.* ¶¶ 52-56.) DiLeonardo then allegedly fired all five rounds from his revolver at plaintiff, three of which struck the car, and two of which hit plaintiff in his chest and left arm. (*Id.* ¶ 57.) After plaintiff stopped the car because of the shooting, DiLeonardo then allegedly broke the cab's driver side window and struck plaintiff with the butt of his revolver, breaking his nose, and then opened the driver's side door of plaintiff's cab and struck plaintiff several times on his head. (*Id.* ¶¶ 60-61.) Plaintiff then allegedly put the car in reverse and fled the scene, driving directly to the hospital for treatment from the attack while his girlfriend called 911. (*Id.* ¶¶ 64-69.) Plaintiff alleges that he thought he heard DiLeonardo yell that he was a police officer while plaintiff drove away after the shooting, but did not believe that his attacker could be a police officer. (*Id.* ¶ 65.)

2. Questioning by Police at the Hospital

Shortly after arriving at the hospital that morning, plaintiff was questioned by unknown NCPD detectives. (*Id.* ¶¶ 75-76.) Plaintiff alleges that he told the detectives that he did not want to speak with them at that time and requested to speak to his attorney, but the detectives denied his requests, telling him that "suspects need lawyers, not victims," and that lawyers were only an impediment. (*Id.* ¶¶ 76-79.) The interview was interrupted so that plaintiff's injuries could be treated; after it recommenced, plaintiff alleges he again requested to speak to his lawyer, and was again rebuffed. (*Id.* ¶¶ 80-82.) After the interview ended, plaintiff allegedly asked SCPD Officer Meaney to allow him to speak to his attorney, but Meaney denied the request as forbidden by his supervisors. (*Id.* ¶¶ 85.)

Several hours later, plaintiff was interviewed by SCPD Detectives Tavares and Leser. (*Id.* ¶¶ 86-87.) Plaintiff again allegedly requested to speak to his attorney, but the SCPD detectives told him he was not in trouble and he did not need a lawyer, and that if he did not speak to them immediately without his lawyer, the assailant would go free. (*Id.* ¶¶ 91-92.) Tavares and Leser then wrote out a statement about the incident, which plaintiff alleges contained false and misleading facts concocted by the defendants to support a false "confession" by plaintiff; plaintiff alleges that he signed the statement without reading it, relying on the detectives' assertion that the perpetrator of the shooting would be arrested based on the statement. (*Id.* ¶¶ 93-98.) Plaintiff never spoke to his attorney, and he alleges that he was never read his *Miranda* rights. (*Id.* ¶ 95.) After initialing and signing the statement, plaintiff was arrested. (*Id.* ¶¶ 97-98)

3. The County of Nassau DFRT Investigation

Plaintiff alleges that the NCPD investigation of DiLeonardo and Bienz was initially conducted by the NCPD DFRT, in accordance with the NCPD's regulations on officer-involved shootings. (*Id.* ¶ 115.) Plaintiff alleges that Horace, the initial DFRT investigator on the scene, interviewed

3

DiLeonardo, Bienz, and their respective significant others (who had arrived at the hospital shortly after plaintiff) early that morning. (*Id.* ¶ 118.)[2] Plaintiff alleges that Horace and Hunter (who arrived shortly thereafter to assist in the investigation) made false and misleading statements to the NCPD IAB and in the DFRT memorandum on the incident—including that DiLeonardo and Bienz were sober and otherwise fit for duty at the time of the incident, and that they had acted within departmental guidelines—all of which the NCPD IAB allegedly later found to be untrue. (*Id.* ¶¶ 118-23.) Hunter submitted the DFRT report to the NCPD commissioner later on the day of the incident. (*See id.*, Ex. H at 211-12 (DFRT Report dated Feb. 27, 2011).)

Plaintiff alleges that the DFRT investigators intentionally failed to investigate and report accurate findings in order to protect DiLeonardo and Bienz from punishment, and to further a conspiracy to falsely arrest and maliciously prosecute plaintiff in order to cover up the incident and shift the blame to him. (*Id.* ¶¶ 124-25.) Plaintiff alleges that all of the DFRT investigators later questioned by the NCPD IAB about the incident and the investigation "lied in sworn statements as to their observations and actions." (*Id.* ¶ 124.) Plaintiff alleges that it was the policy and custom of the DFRT to cover up misconduct by NCPD personnel by intentionally failing to investigate incidents properly, and falsifying reports to the NCPD commissioner by omitting damaging evidence to support conclusions in favor of NCPD personnel. (*Id.* 187-94.) Plaintiff alleges that, since 2006, the DFRT has found that every NCPD officer involved in a shooting was justified in using deadly force and that the officer was fit for duty, despite evidence to the contrary, citing several examples of incidents which were later determined to have been unjustified in subsequent legal proceedings. (*Id.* ¶¶ 195-204.) Plaintiff alleges that this policy and custom—of which the County of Nassau allegedly was aware through numerous complaints or lawsuits by victims, and to which it was indifferent—led to the conspiracy to cover up the February 26, 2011 incident, protect DiLeonardo and Bienz, and falsely arrest and maliciously prosecute plaintiff. (*Id.* at 205-14.)

B. Procedural Background

Plaintiff commenced this action on February 3, 2012. Plaintiff filed his first amended complaint on October 22, 2012. Defendant DiLeonardo answered the amended complaint and cross-claimed on December 17, 2012. The Suffolk defendants answered the amended complaint and cross-claimed on December 21, 2012. The Nassau defendants and Hunter answered the amended complaint and cross-claimed on January 7, 2014. Plaintiff moved to amend again on November 18, 2014. The Nassau defendants opposed on January 19, 2015. Plaintiff replied on February 12, 2015. The Court held oral argument on March 2, 2015. The matter is fully submitted.

II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 15 applies to motions to amend the pleadings once the time for amending a pleading as of right has expired. "The court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a); a motion to amend should be denied "only for reasons

---

[2] Plaintiff alleges that hospital staff noted the odor of alcohol and impaired faculties of DiLeonardo and Bienz that morning, and that, according to multiple witnesses, a doctor stated that DiLeonardo was visibly intoxicated and she wanted to draw his blood (which he refused). (*Id.* at 109-11.) Plaintiff alleges multiple NCPD and SCPD officers, including the DFRT investigators, were aware of these observations but intentionally withheld that information in their reports. (*Id.* at 111-12.)

4

such as undue delay, bad faith, futility of the amendment or prejudice to the other party." *Crippen v. Town of Hempstead*, No. 07-CV-3478 (JFB)(ARL), 2013 WL 2322874, at *1 (E.D.N.Y. May 22, 2013); *see Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (per curiam) ("[M]otions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party.").[3]

### III. DISCUSSION

The Nassau defendants first argue that the motion to amend should be denied because plaintiff has failed to demonstrate good cause for and a lack of undue prejudice caused the delay in bringing his motion to amend. The Nassau defendants further argue that the Court should deny the amendment to include a municipal liability claim against Nassau County under Section 1983 and *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), because plaintiff failed to demonstrate the proposed *Monell* claim is not futile, based on plaintiff's purported failure to plead any causal connection between the "policy and custom" alleged in the *Monell* claim and plaintiff's constitutional injuries. The Court addresses each contention in turn.

#### A. Undue Delay and Prejudice

The Nassau defendants argue that because of plaintiff's undue delay in making this motion to amend, it should be denied as untimely. The Nassau defendants rely on Magistrate Judge A. Kathleen Tomlinson's issuance of a Case Management and Scheduling Order setting deadlines in this case on April 9, 2012 (*see* ECF No. 14), which stated that the deadline to file a request for a pre-motion conference before moving to amend the complaint was July 18, 2012. Plaintiff requested such a conference before his first motion to amend. (*See* ECF No. 20.) After the first amended complaint was filed on October 12, 2012, the Nassau defendants note that none of Magistrate Judge Tomlinson's subsequent orders extended the deadline to amend the complaint; pointing to language in the Case Management and Scheduling Order stating that "deadlines in this order will be enforced, and will be modified only upon a timely showing of good

---

[3] The Nassau defendants argue that the motion should instead be reviewed "under the more stringent standard" of Federal Rule of Civil Procedure 16(b), because plaintiff filed the motion after the deadline set by Magistrate Judge Tomlinson. (Nassau County Defs. Mem. in Opp'n ("Opp'n"), ECF No. 165, at 3.) The Nassau defendants, however, misunderstand the relationship between Rules 15(a) and 16(b). As the Second Circuit elucidated in one of the cases the Nassau County defendants cite in their brief, *Kassner v. 2nd Avenue Delicatessen, Inc.*, Rule 15(a)'s lenient standard governs the amendment of pleadings, but Rule 16(b) allows district courts the ability (but does not require them) to deny a motion to amend if a deadline to amend a pleading has passed and the moving party has not demonstrated "good cause" for the delay. 496 F.3d 229, 242-43 (2d Cir. 2007) (citing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339-40 (2d Cir. 2000)); *see also Calabro v. Stone*, No. CV 2003-4522 (CBA) (MDG), 2005 WL 327547, at *1 (E.D.N.Y. Jan. 27, 2005) (noting that, while Rule 15(a)'s liberal amendment standard should be balanced with Rule 16(b)'s "good cause" standard for modifying deadlines, "the Second Circuit in *Parker* did not mandate that the 'good cause' standard automatically apply in every case, but rather, upheld a trial court's discretion to deny a late application for failing to meet the 'good cause' requirement under Rule 16(b)"), *report and recommendation adopted*, No. 03 CV 4522 (CBA), 2005 WL 563117 (E.D.N.Y. Feb. 25, 2005). Therefore, the Nassau defendants' argument that a more stringent standard necessarily applies to the case at bar is incorrect. In any event, plaintiff satisfies the "good cause" standard for the reasons discussed herein.

5

cause," they argue that this motion is, therefore, untimely. (Opp'n at 4-5.)

Because of this delay, the Nassau defendants further argue that plaintiff "failed to demonstrate that Opposing Defendants will not suffer undue and extreme prejudice if Plaintiff's untimely, proposed amendments are permitted to go forward." (*Id.* at 15.) The Nassau defendants argue that the motion causes prejudice because of the delay in bringing the *Monell* claim more than two years after the deadline to amend had passed, and almost two years after three of the four DFRT members had been deposed by plaintiff. (*Id.*) They argue that allowing the *Monell* claim to go forward will "likely" require further discovery, including additional depositions. (*Id.*) Finally, they argue that plaintiff's *Monell* claim is brought in bad faith.[4]

Plaintiff argues in response that he was unable to bring his *Monell* claim prior to the expiration of Magistrate Judge Tomlinson's deadline because he was unaware of an alleged DFRT policy and custom before the publication of an investigative report on the DFRT by *Newsday* in November 2013, which disclosed previously unknown DFRT reports that allegedly covered up other officer-involved shootings. (*See, e.g.* Pl.'s Reply Mem. of Law ("Reply"), ECF No. 170, at 5.) The Nassau defendants noted in their briefing and at oral argument that counsel for plaintiff was quoted in the November 17, 2013 article on the DFRT; plaintiff responds that his counsel's involvement in the article was only to discuss the facts relating to the shooting of plaintiff, and that the article's author drew the connection to other officer-involved shootings. (*Id.* at 5-6.) The Nassau defendants assert that, even if plaintiff's contention is true, there was still a nine month delay from the publication of the article before the motion to amend was filed. (Opp'n at 13.) Plaintiff counters that, without follow-up investigation by counsel on the other officer-involved shootings and related allegations disclosed in the article, he "could not have asserted a substantiated and non-frivolous *Monell* claim based upon the actions of the DFRT members." (Reply at 6.)

The Court finds no undue delay in bringing the motion, or prejudice to the Nassau defendants caused by the timing of the motion. Regardless of the deadlines set by Magistrate Judge Tomlinson, "[m]ere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981); *Commander Oil Corp. v. Barlo Equip. Corp.*, 215 F.3d 321, 333 (2d Cir. 2000) (affirming grant of motion to amend after seven-year delay, where defendant did not show prejudice). The Nassau defendants have not demonstrated that plaintiff's delay in pleading the *Monell* claim was undue; plaintiff explains that the facts alleged in his original and first amended complaints did not support a *Monell* claim, and that the *Newsday* article brought new information to light. The Nassau defendants have not provided any basis to conclude that plaintiff possessed this information regarding other officer-involved shootings prior to the *Newsday* article. Moreover, a nine-month period between the publishing of the article and the motion to amend is not unreasonable to allow for further investigation by plaintiff before making the motion.[5]

Furthermore, plaintiff also correctly argues that the burden is on the party opposing the motion to amend to demonstrate

---

[4] The locus of the Nassau defendants' "bad faith" argument is the same as their argument that the *Monell* claim is futile, which the Court addresses *infra*.

[5] The Court further finds that this discovery of a possible policy and custom involving other officer-involved shootings (then previously unknown)

that it would be prejudiced by the amendment, not on the movant. *See, e.g.*, *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (amendment should be allowed in the absence of the nonmovant demonstrating prejudice or bad faith) (citing *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)). To determine whether a proposed amendment would prejudice the nonmovant, the Second Circuit has stated that courts should "consider whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block*, 988 F.2d at 350. Here, the Nassau defendants offer no argument to demonstrate undue prejudice other than the possibility that discovery could be extended, or that certain individuals on the DFRT might have to be deposed again. (Opp'n at 14-17.) This conclusory assertion, even if assumed *arguendo* to be true, is insufficiently prejudicial to deny the motion to amend under the circumstances of this case, even when combined with the potential delay in resolving the case. *See, e.g. State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*, 246 F.R.D. 143, 149 (E.D.N.Y. 2007) (finding that "[t]he burden of conducting additional discovery does not automatically constitute undue prejudice," especially when the case is "nowhere near resolution") (citing *United States v. Cont'l Ill. Nat. Bank and Trust Co. of Chi.,* 889 F.2d 1248, 1255 (2d Cir. 1989) ("The adverse party's burden of undertaking [additional] discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading.")). This case is distant from its resolution—the parties have not filed motions for summary judgment, substantial discovery remains to be done, and it is unclear which individuals, if any, would need to be re-deposed in light of the addition of the *Monell* claim.

In short, the defendants have failed to demonstrate undue delay or prejudice.[6]

### B. <u>Futility</u>

The Court next turns to the Nassau defendants' argument that plaintiff's motion to amend should be denied because the *Monell* claim is "futile." "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (citing *Dougherty v. N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)); *Crippen*, 2013 WL 2322874, at *1 (the legal standard for evaluating the futility of an amendment is the same as in the context of a Rule 12(b)(6) motion); *see also Panther Partners Inc. v. Ikanos Comm'cns, Inc.*, 347 F. App'x 617, 622 (2d Cir. 2009) ("Granting leave to amend is futile if it appears that plaintiff cannot address the deficiencies identified by the court and allege facts sufficient to support the claim. . . . [C]ourts may consider all possible amendments when determining futility." (internal citations omitted)).

---

represents "good cause" for the motion being filed after the deadline set by Magistrate Judge Tomlinson, under Rule 16(b) and *Kassner*, 496 F.3d at 242-43.

[6] To the extent the Nassau County defendants argue that there was undue delay or prejudice with respect to the other aspects of the proposed amended complaint, *i.e,* limiting and specifying the defendants against whom each claim is asserted and asserting the claim for violation of the right to counsel, the Court disagrees. The Nassau County defendants do not offer any support for their opposition other than stating that the delay in making these amendments causes them some unspecified prejudice. (Opp'n at 14-15.) For the same reasons the Court discussed with respect to the *Monell* claim, the Court rejects this argument.

In reviewing a motion to dismiss pursuant to Rule 12(b)(6) (and therefore a motion to amend), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g.*, *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth two principles for a district court to follow in deciding a motion to dismiss. 556 U.S. 662 (2009). First, district courts must "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

Under *Monell*, a municipal entity may be held liable under Section 1983 where a plaintiff demonstrates that the constitutional violation complained of was caused by a municipal "policy or custom." *Monell*, 436 U.S. at 694–95; *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733–36 (1989) and *Monell*, 436 U.S. at 692–94). To prove a *Monell* claim, a plaintiff must show: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 140 (2d Cir. 2010) (citations omitted). "The policy or custom need not be memorialized in a specific rule or regulation." *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (citing *Sorlucco v. N.Y. City Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992)). However, a municipal entity may only be held liable where the entity *itself* commits a wrong; "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691.

In this case, plaintiff alleges that the DFRT policy or custom of falsifying reports on officer-involved shootings, covering up NCPD misconduct to protect officers from sanction, and incriminating civilian victims to shift blame from police personnel proximately caused plaintiff's arrest and malicious prosecution. (*See* SAC ¶¶ 187-214) The Nassau defendants argue, in essence, that plaintiff's *Monell* claim is futile because he does not adequately allege a "causal connection" (*i.e.* the second element of the three laid out in *Torraco*) between the alleged unconstitutional policy or custom on the part of Nassau County and the injuries to plaintiff here caused by his false arrest and malicious prosecution. (Opp'n at 17-24.) *See Sarus v. Rotundo*, 831 F.2d 397, 400 (2d Cir. 1987) ("To recover against the municipality, it must be demonstrated that the official policy in question constitutes the moving force of the constitutional violation.") (internal quotation marks omitted). The Nassau defendants argue that the DFRT's alleged policy and custom is insufficiently related to plaintiff's constitutional injuries, *i.e.* the false arrest and malicious prosecution. The Nassau defendants assert that, because plaintiff

8

"seeks to limit" his Section 1983 claims for false arrest and malicious prosecution "as against defendants DiLeonardo and Bienz only," an administrative report prepared by the DFRT for the NCPD commission regarding the conduct of the NCPD officers after the shooting occurred could not be related to the arrest and prosecution of plaintiff in Suffolk County. (Opp'n at 22-23.) The Nassau defendants stress that plaintiff does not allege that anyone from Suffolk County saw or relied on the DFRT report, only that allegedly false statements by DiLeonardo and Bienz supported the Suffolk County defendants' arrest and prosecution of plaintiff; therefore, they argue, plaintiff has failed to plead a causal connection between the purported policy or custom of the DFRT and plaintiff's constitutional injuries. (*Id.*)

The Court finds the Nassau defendants' argument entirely unpersuasive. Plaintiff alleges in the proposed SAC that, among other things, the DFRT investigators conspired with DiLeonardo, Bienz, and the Suffolk County defendants to shield DiLeonardo and Bienz from civil and criminal sanctions by fabricating the investigation of the incident and withholding evidence (particularly of the officers' intoxication). (SAC ¶ 209-11.) This conspiracy, plaintiff alleges, resulted in the obfuscation of the officers' true role in precipitating the shooting, leading to the arrest and malicious prosecution of plaintiff.

(*Id.*) Plaintiff alleges that if the DFRT had accurately summarized the evidence in its report filed with the NCPD commissioner on the day of the incident—rather than operating under its policy or custom of shielding officers from sanction by falsifying investigations—plaintiff would not have been charged with two offenses and subjected to a malicious prosecution lasting over three months, or at least the charges would have been dismissed immediately. (*Id.* ¶ 212.) At this early stage in the litigation where the Court accepts the factual allegations set forth in the complaint as true and draws all reasonable inferences in favor of the plaintiff, these allegations clearly and plausibly allege causation between (a) the DFRT's alleged policy or custom of inadequately investigating officer-involved shootings and submitting false reports to shield the officers from punishment; (b) the investigation of DiLeonardo and Bienz for the incident involving plaintiff; and (c) the subsequent prosecution of plaintiff for that incident by Suffolk County.[7]

Therefore, plaintiff's proposed SAC alleges a policy or custom on the part of Nassau County which proximately caused his constitutional rights to be violated. Accordingly, it would not be futile to amend the complaint to include the *Monell* claim, and no other grounds exist to deny leave to amend.[8]

---

[7] The Nassau defendants also argue that this alleged policy and custom could not have caused plaintiff's constitutional injuries because the regulation under which the DFRT operates ("ADM 1221") does not require the DFRT to: (a) investigate officer-involved shootings that occur outside Nassau County; (b) report findings to anyone other than the NCPD commissioner; (c) conduct an ongoing investigation of the shooting after the submission of the preliminary report, or make any amendments to that report's conveyance of the "basic information regarding the shooting incident." (Opp'n at 23.) This argument is unavailing for the same reasons as discussed *supra*; regardless of the limitations under which defendants assert the DFRT operated, plaintiff's allegations (if proven) could support a reasonable inference that, if the DFRT investigators had accurately reported the facts to the NCPD commissioner in the preliminary report, the NCPD commissioner would have shared that information with the Suffolk County authorities and either prevented or curtailed plaintiff's alleged malicious prosecution. Thus, plaintiff has plausibly alleged causation.

[8] The Nassau defendants also make a cursory argument that somehow the *Monell* claim regarding the preparation of the DFRT report "does not relate back

## IV. CONCLUSION

For the foregoing reasons, the Court grants plaintiff's motion to amend. Plaintiff shall file and serve the amended complaint within fourteen (14) days.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: April 10, 2015
Central Islip, NY

\*\*\*

Plaintiff is represented by Anthony Grandinette and Mirel Fisch of The Law Office of Anthony M. Grandinette, 114 Old Country Road, Suite 420, Mineola, NY 11501. The Nassau defendants are represented by Christopher Clarke, Peter Johnson, and Joanne Filiberti of Leahey & Johnson, 120 Wall Street, Suite 2220, New York, NY 10005, and Liora Ben-Sorek and Michael Ferguson of the Nassau County Attorney's Office, One West Street, Mineola, NY 11501. The Suffolk defendants are represented by Brian C. Mitchell of the Suffolk County Department of Law - County Attorney, 100 Veterans Memorial Highway, P.O. Box 6100, Hauppauge, NY 11788. DiLeonardo is represented by Amy Marion, Bruce Barket, and Kevin Kearon of Barket Marion Epstein & Kearon LLP, 666 Old Country Road, Suite 700, Garden City, NY 11530. Hunter is represented by Francis Schroeder and Laura Endrizzi of Congdon, Flaherty, O'Callaghan, Reid, Donlon, Travis, 333 Earle Ovington Boulevard, 5th Floor, Uniondale, NY 11553.

---

to the original complaint," and therefore is barred on statute of limitations grounds. (Opp'n at 24.) The Court, however, does not find this argument to be persuasive because: (a) the Nassau defendants do not argue that the *Monell* claim did not arise out of the conduct alleged in the original or first amended complaints, and indeed could not so argue because even in the original complaint plaintiff alleged facts sufficient to provide notice to defendants of the conduct out of which the *Monell* claim arises, including that some defendants "submitted false reports regarding the foregoing events to avoid criminal, civil, and administrative responsibility for the mistreatment, false arrest, and injuries to Moroughan" (Compl., ECF No. 1, ¶ 103); and (b) the Nassau defendants only cite one case, *Weinstein v. Garden City Union Free Sch. Dist.*, No. 11-CV-2509 (AKT), 2013 WL 5507153 (E.D.N.Y. Sept. 30, 2013), in support of their argument, which upon review appears to be inapposite. Thus, the Court also rejects this argument and concludes the *Monell* claim clearly relates back to the original complaint.