**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

THOMAS M. MOROUGHAN,

                Plaintiff,

      -against-

THE COUNTY OF SUFFOLK, SUFFOLK
COUNTY POLICE DEPARTMENT,
SUFFOLK DETECTIVES RONALD
TAVARES, CHARLES LESER, EUGENE
GEISSINGER, NICHOLAS FAVATTA, and
ALFRED CICCOTTO, DETECTIVE/SGT.
WILLIAM J. LAMB, SGT. JACK SMITHERS,
SUFFOLK POLICE OFFICERS WILLIAM
MEANEY, and JESUS FAYA and SUFFOLK
JOHN DOES 1-10, THE COUNTY OF NASSAU,
NASSAU COUNTY POLICE DEPARTMENT,
SGT. TIMOTHY MARINACI, DEPUTY CHIEF
OF PATROL JOHN HUNTER, INSPECTOR
EDMUND HORACE, COMMANDING OFFICER
DANIEL FLANAGAN, DETECTIVE/SGT. JOHN
DEMARTINIS, NASSAU POLICE OFFICERS
ANTHONY D. DILEONARDO, EDWARD BIENZ
and JOHN DOES 11-20,

                  Defendants.

-----------------------------------------------------------------X

**MEMORANDUM
AND ORDER**

CV 12-512 (JFB) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

      Presently before the Court in this Section 1983 action are documents related to the initial

Grand Jury proceeding underlying this matter, which were provided for *in camera* review by the

Suffolk County District Attorney's Office ("the DA's Office") pursuant to the Court's March 31,

2014 Order [DE 125].

## I.  PROCEDURAL BACKGROUND

On May 22, 2013, Suffolk County Assistant District Attorney ("ADA") Anne E. Oh moved to quash a subpoena served by Plaintiff's counsel and signed by this Court seeking the following documents:

> [a]ll documents from District Attorney files related to the criminal arrest of Thomas M. Moroughan on February 27, 2011 not previously disclosed . . . including all documents, including notes, memorandum, records, etc., including a physical copy of all grand jury subpoenas themselves (excluding the documents returned thereto to which you assert a privilege).  Any documents which exist and are not produced should be identified on a separate privilege log which should be produced with the subpoenaed materials.

DE 87.  The DA's Office argued that the notes, memorandum and records Plaintiff seeks are protected by the law enforcement privilege.  *See id.* at 2-3.  In particular, the DA's Office "maintain[ed] that the Detective Investigator's notes are protected under this privilege since the documents contain information that (1) undermines the confidentiality of sources; (2) would endanger witnesses and law enforcement personnel and (3) would undermine the privacy of individuals involved in the investigation."  *Id.* at 2.  In light of the fact that this case involves the investigation of a shooting by an off-duty police officer,  the DA's Office asserted that "[t]he privacy of the third party witnesses and the integrity of the investigation performed by the District Attorney's Office would be jeopardized by disclosure of the investigator's notes."  *Id.* The DA's Office further argued that Plaintiff had failed to show "that the information sought is not available through other discovery or other sources" and did not "assert[] a particularized compelling need" for the privileged information.  *Id.* at 3.  Finally, in a supplemental submission, ADA Oh pointed out that the DA's Office had opened a new Grand Jury investigation into the

incidents underlying this lawsuit, thereby providing an additional basis for the Court to quash the subpoena. DE 101.[1]

Plaintiff opposed the motion and urged the Court to compel the DA's Office to produce its investigative file "up to the date [the D.A.'s Office] empaneled the special Grand Jury investigation" for an *in camera* review. DE 124 at 4. According to Plaintiff, the law enforcement privilege does not apply to these documents because (1) the DA's criminal investigation of Plaintiff has been closed for nearly two years; (2) there is no reason to believe confidential sources are involved; (3) the identities of the witnesses to the shooting are known to all parties; (4) plaintiff is not interested in publicizing any unique or specialized investigative techniques; and (5) the information sought is highly relevant to Plaintiff's case, and cannot be obtained from other sources, and so plaintiff has a "particularized need" for the information sought. DE 90 at 2. Further, Plaintiff argued that the DA's Office should be required to produce a privilege log, since Plaintiff is "unaware of what specific materials the District Attorney claims to be protected, or by what specific privilege." *Id.* Finally, Plaintiff contended that, even if a new investigation has been re-opened, the empaneling of a new grand jury can never transform investigatory and factual records into grand jury records. DE 104.

In the March 31, 2014 Order, the Court, *inter alia*, denied the motion to quash by ADA Oh. DE 125 at 8. However, the Court "direct[ed] that all of the documents responsive to the

---

[1]      With respect to Plaintiff's request for a copy of all grand jury subpoenas, the DA's Office argued that Plaintiff should first make his application to the state court that supervised the grand jury process. DE 87 at 2. Plaintiff agreed, *see* DE 90 at 3, and subsequently filed a motion in State Supreme Court seeking the disclosure of Grand Jury materials. On June 28, 2013, the Hon. Martin Efman, Justice of the New York State Supreme Court, Suffolk County, ordered the disclosure of "all documents that were obtained pursuant to a Grand Jury subpoena duces tecum." DE 124, Ex. A. However, Justice Efman denied Plaintiff's application "for all other materials referenced in the moving papers on the basis that the request is overly broad and no showing has been made that the same is related to a Grand Jury proceeding contemplated by Article 190 of the New York State Criminal Procedure Law." *Id.*

subpoena" be sent to this Court for an *in camera* review.  *Id.*  The Court noted that, not having

seen the documents, it was "unable to make a determination based on the information presented

to date whether the law enforcement privilege applies to each of the documents at issue."  *Id.*

The DA's Office subsequently produced the disputed documents to the Court for *in camera*

review.

## II.  PLAINTIFF'S MARCH 5, 2015 SUBMISSION

On March 5, 2015, while the Court's *in camera* review was still pending, Plaintiff filed a

letter to advise the Court of a development related to the second Special Grand Jury proceeding,

which the DA's Office cited as grounds for withholding the subject files.  DE 172.  Plaintiff

noted that, during a February 12, 2015 video interview with Long Island News 12, Suffolk

County District Attorney Thomas Spota ("DA Spota") "publically announced that the Special

Grand Jury proceeding term expired and that his Office has abandoned the prosecution related to

the shooting of Thomas Moroughan."  *Id.*  In light of this development, Plaintiff asserts that the

legal argument advanced by the DA's Office concerning the pendency of the Special Grand Jury

investigation "is no longer applicable to this case."  *Id.*  ADA Oh did not file a response to

Plaintiff's letter.

## III.  THE COURT'S *IN CAMERA* REVIEW OF THE DA'S FILES

### A.  The Law Enforcement Privilege

The applicable law regarding the "law enforcement privilege" is set forth in the now

well-recognized decision of the Second Circuit in *In re City of New York*, 607 F.3d 923 (2d Cir.

2010).  There, "[t]he Court of Appeals provided a set of guidelines to analyze claims of law

enforcement privilege."  *Dorsett v. County of Nassau*, 762 F. Supp. 2d 500, 520 (E.D.N.Y. 2011)

(citing *In re City of New York*, 607 F.3d at 948).  "First, the party asserting the law enforcement

privilege bears the burden of showing that the privilege indeed applies to the documents at issue." *Id.* This is accomplished by demonstrating "that the documents contain information that the law enforcement privilege is intended to protect." *Id.* (quoting *In re City of New York* 607 F.3d at 948). "The law enforcement privilege encompasses: (1) information pertaining to law enforcement techniques and procedures; (2) information that undermines the confidentiality of sources; (3) information that would endanger witnesses and law enforcement personnel; (4) information that would undermine the privacy of individuals involved in an investigation; or (5) information that would seriously impair the ability of law enforcement agencies to conduct future investigations." *Id.* (citing *In re City of New York*, 607 F.3d at 948*; Morrissey v. City of New York,* 171 F.R.D. 85, 90 (S.D.N.Y.1997)); *United States v. Amodeo,* 44 F.3d 141, 147 (2d. Cir. 1995). "The applicability of the privilege does not hinge on whether an investigation has been concluded or is still ongoing." *Id.* (quoting *In re New York City,* 607 F.3d at 944 (finding that an investigation "need not be ongoing . . . as the ability of a law enforcement agency to conduct future investigations may be seriously impaired if certain information is revealed to the public")).

Although a "strong presumption" exists against lifting the law enforcement privilege if it applies, the privilege is qualified, not absolute, and the district court must balance the public interest in nondisclosure against the need of a particular litigant for access to the privileged information. *See In re City of New York*, 607 F.3d at 945. To lift the privilege, the party seeking the information must show: (1) that the suit is non-frivolous and brought in good faith; (2) that the information sought is not available through other discovery or from other sources; and (3) that the party has a compelling need for the privileged information. *Id.* (citing *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1343 (D.C. Cir. 1984)). "Whether the

showing of relevance and need rises to the requisite level is a discretionary determination that must be made on a case-by-case basis." *Kitevski v. City of New York*, No. 04 Civ. 7402, 2006 WL 680527, at *3 (S.D.N.Y. Mar. 16, 2006) (citing *Herman v. Crescent Publ'g Group, Inc.*, No. 00 Civ. 1665, 2000 WL 1371311, at *2 (S.D.N.Y. Sept. 21, 2000)). If the presumption against disclosure is successfully rebutted, only then will the court weigh the interest in non-disclosure against the need for access to the privileged information. *See In re City of New York*, 607 F.3d at 948. Lastly, the Second Circuit noted that "[t]o access both the applicability of the privilege and the need for the documents, the district court must ordinarily review the documents in question." *Id*.

### B. Analysis

The Suffolk County DA's Office has made available to the Court certain documents *in camera* so that the Court can ascertain whether they are protected from disclosure by the law enforcement privilege. The documents submitted were presented in five manually bound volumes. The first volume is entitled "Documents Previously Provided To County Attorney and Received by Mr. Grandinette Pursuant to Stipulation to Unseal." The Court presumes that this volume was provided for context only as to what had previously been produced and the Court finds that no further discussion is required as to this volume. The second volume is entitled "Documents Not Previously Provided to County Attorney and Not Received By Mr. Grandinette Pursuant to Stipulation to Unseal." Volumes III, IV and V are considerably smaller and consist of pages of the police investigator's spiral notebooks.

As this Court discussed previously, Plaintiff brings this Section 1983 action alleging, among other things, conspiracy, false arrest, malicious prosecution, excessive force, and violations of Plaintiff's Fifth and Sixth Amendment rights. *See* December 20, 2013 Decision

Order [DE 118]. Plaintiff's claims arise from the February 27, 2011 incident in which Police Officer Anthony DiLeonardo allegedly shot Plaintiff after a verbal altercation on Oakwood Road in the Town of Huntington, Suffolk County. *Id*. Plaintiff maintains that Officer DiLeonardo and Police Officer Edward Bienz were intoxicated in the early morning of the shooting. According to the Plaintiff, Officers DiLeonardo and Bienz engaged in a conspiracy to cover up their intoxication in order to shield themselves from possible criminal and/or departmental sanctions, and, to that end, submitted false testimony and reports. *Id*. Plaintiff has also asserted claims against the Nassau and Suffolk County Police Departments and the number of individual Nassau County and Suffolk County police officers, detectives and sergeants.

During the course of the investigations which followed the underlying incident, an investigating officer took notes of interviews with witnesses who either saw what happened on the day of the incident or had information concerning events before and after the shooting. These are the entries contained in Volumes III, IV and V of the materials produced by the Suffolk County DA's Office. ADA Oh asserts that these documents are protected from disclosure by the law enforcement privilege. This argument requires the Court to consider whether the societal interest in preserving confidentiality of these notes overrides Plaintiff's demand to examine them to prosecute his claims.

Applying the factors set forth in *In re City of New York*, the Court makes the following findings. The law enforcement privilege is a "qualified privilege;" thus, there is a need to balance the public interest in nondisclosure against the need of the particular litigant for access to the privileged information. *See Conte v. County of Nassau*, No. CV 06-4746, 2009 WL 1362784, at *7 (E.D.N.Y. May 15, 2009) (citing *MacNamara v. City of New York*, 249 F.R.D. 70, 79 (S.D.N.Y. 2008)). "In balancing these interests, the burden of persuasion resides with the

party seeking to prevent disclosure." *Conte*, 2009 WL 1362784, at *7 (citing *MacNamara*, 249 F.R.D. at 79). With regard to the investigator's notes, the DA's Office essentially recites the components of the law enforcement privilege and not significantly more. There are no specifics as to how and why disclosing these documents would jeopardize or interfere with current or future investigations and prosecutions. *See Conte*, 2009 WL 1362784, at *8.

In this Court's view, a weighing of the factors set forth in *In re City of New York* compels disclosure. First, the information at issue in Volumes III, IV, and V is purely factual, not evaluative. *See Conte*, 2009 WL 1362784, at *8; *Waters v. United States Capital Police Bd.*, 218 F.R.D. 323, 324 (D.D.C. 2003). Second, neither Anthony DiLeonardo nor Edward Bienz − nor Plaintiff for that matter − are defendants in a criminal case. Any departmental discipline against the officers has already taken place and any grand jury proceedings have since terminated. The Court has no reason to doubt that Plaintiff and his counsel brought this action in good faith. Further, there are no law enforcement techniques or strategies disclosed in these notes. Nor does the Court find any information in Volumes III, IV or V which would impair the ability of a law enforcement agency to conduct future investigations. Instead, these are notes taken by a trained police investigator regarding interviews with witnesses to the events alleged in the complaint. It is therefore hard to overestimate the importance of the notes to the plaintiff since they go directly to the claims asserted in the complaint. Likewise, the notes have significant value for impeachment purposes if the witnesses testify inconsistently with what the notes show they told the investigator. Their substantial value to the plaintiff, then, outweighs other pertinent considerations and compels their disclosure. Moreover, the information in the notes is not available from other sources when accounting for the timing of the notes as well as the investigator's taking down what he is hearing. Plaintiff has satisfied the Court that he has a

compelling need for these notes.  *See Floyd v. City of New York*, 739 F. Supp. 2d 376, 381 (S.D.N.Y. 2010) (citing *In re City of New York*, 607 F.3d at 498).

Having reviewed the police investigator's notes, the Court further finds that there appear to be some entries which are not related to the specific investigation of the incidents of February 27, 2011 and their aftermath, but rather to another non-related incident.  To the extent that is the case, the DA's Office can redact those portions and produce the rest to Plaintiff's counsel.  The documents are to be disclosed to Plaintiff's counsel within 14 days of this Order.

As to Volume II, the Court finds that the bulk of these documents are not protected by the law enforcement privilege.  This volume encompasses documents such as the hospital/medical records of Plaintiff Moroughan, Anthony DiLeonardo and Edward Bienz as a result of the underlying incident; fact-finding documents that do not contain mental impressions, strategies or opinions of the reporting party; certifications of medical records; a Newsday article; NYSID sheets, etc.  The Court is providing Sealed Attachment 1 to this Memorandum and Order setting forth which documents are to be produced from Volume II because they are *not* privileged and which are not to be produced because they are either privileged or irrelevant to this action.  The Court notes that there are no bates numbers on any of these pages, nor any identifying marks which would permit the Court to readily convey the identity of the individual documents.  Therefore, the Court has reviewed the documents *seriatim* and the bullet points in Attachment 1 track the pages.  Attachment 1 is being filed under seal.  The Court is directing the Suffolk County DA's Office to produce the documents designated for disclosure within 14 days of this Order.

The Court is further directing the parties to add an amendment to their Stipulation and Order of Confidentiality immediately which covers the documents the Court has directed the DA's Office to produce pursuant to this Order.

**SO ORDERED:**

Dated: Central Islip, New York
　　　 May 20, 2015

                                    /s/ A. Kathleen Tomlinson
                                    A. KATHLEEN TOMLINSON
                                    United States Magistrate Judge