**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
THOMAS M. MOROUGHAN,

                              Plaintiff,

        -against-

THE COUNTY OF SUFFOLK, SUFFOLK
COUNTY POLICE DEPARTMENT,
SUFFOLK DETECTIVES RONALD TAVARES,
CHARLES LESER, EUGENE GEISSINGER,
NICHOLAS FAVATTA, and ALFRED CICCOTTO,
DETECTIVE/SGT. WILLIAM J. LAMB, SGT.
JACK SMITHERS, SUFFOLK POLICE OFFICERS
WILLIAM MEANEY, ENID NIEVES, CHANNON
ROCCHIO, and JESUS FAYA and SUFFOLK
JOHN DOES 1-10, THE COUNTY OF NASSAU,
NASSAU COUNTY POLICE DEPARTMENT,
SGT. TIMOTHY MARINACI, DEPUTY CHIEF OF
PATROL JOHN HUNTER, INSPECTOR EDMUND
HORACE, COMMANDING OFFICER DANIEL
FLANAGAN, DETECTIVE/SGT. JOHN
DEMARTINIS, NASSAU POLICE OFFICERS
ANTHONY D. DILEONARDO, EDWARD BIENZ
and JOHN DOES 11-20,

                              Defendants.

**MEMORANDUM AND ORDER**

CV 12-512 (JFB) (AKT)

-----------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PROCEDURAL BACKGROUND**

In a previous Order [DE 217], this Court deferred ruling on the motion brought by counsel for the Nassau County defendants to quash the subpoena served on non-party Det. Sgt. Jo-Ann Distler ("Sgt. Distler") (1) to appear for a deposition, and (2) to produce her investigative notes related to the Internal Affairs Unit ("IAU") Report she prepared. *See generally* DE 188. In deferring the ruling, the Court pointed out the following:

> According to Plaintiff, the County has failed to show that the law enforcement privilege applies here, or that the discovery Plaintiff seeks from Sgt. Distler would be cumulative and unduly burdensome. DE 194 at 1-2. Plaintiff states that he "seeks to depose Distler to establish the trustworthiness of her IAU Report in order to lay a foundation for its admissibility at trial," and that he seeks "her investigative notes for an identical purpose, but also because her investigatory notes taken contemporaneously with her investigation contain factual statements given by the witnesses, as well as the named defendants, close in time to the events in this case." *Id.* at 2. Plaintiff further notes that DiLeonardo has "already indicated that he will oppose the introduction of the IAU Report." *Id.* Specifically, DiLeonardo's attorney, Bruce Barket, "challenged Distler, publicly stating that her report was 'virtually worthless,' and that she 'had never previously investigated a use-of-force case.'" *Id.* (citation omitted). Accordingly, Plaintiff maintains that he "has a compelling need to depose Distler to solicit testimony as to her training, experience, and competence as it relates to this investigation, and as to the factual history of the investigation, such as when and the manner in which she interviewed witnesses, and her assessment of their credibility to the extent it influenced her findings." *Id.*
>
> Having considered the arguments presented by Plaintiff's counsel and the County, the Court requires further information before it can rule on the County's motion to quash. Specifically, the Court needs to know whether the other parties in this action (*i.e.*, Defendant DiLeonardo, Defendant John Hunter, and the Suffolk County defendants) are challenging or intend to challenge (1) the admissibility of the IAU Report based on its "trustworthiness," and/or (2) Sgt. Distler's "training, experience, and competence." *See* DE 194 at 2. The Court notes that it is not considering other arguments regarding the admissibility the IAU Report at this time, and is only interested in ascertaining whether these parties intend to challenge the "trustworthiness" of the IAU Report based on Sgt. Distler's alleged lack of "training, experience, and competence." The Court is directing counsel for DiLeonardo, Hunter, and the Suffolk County defendants to provide a written statement addressing these issues to the Court within seven (7) days of entry of this Order.

DE 217 at 3-4.

Counsel for defendant Deputy Chief of Control John Hunter subsequently informed the Court that he was reserving defendant Hunter's right to challenge the admissibility of the Nassau

County IAU Report pursuant to Fed. R. Evid. 803(8)(B). *See* DE 218. Likewise, counsel for the Suffolk County defendants stated that his clients would be challenging the admissibility of the document:

> . . . the County defendants wish to advise the Court that we intend to object to the admissibility of the Nassau IAB report on several grounds, among them that it lacks "trustworthiness" as per F.R.E. 803(8)(B). While the County believes there are a number of reasons that the report lacks trustworthiness, we anticipate that the level of Sgt. Distler's "training and experience" will be among the factors to be considered in making that determination.

DE 219.

## II. THE PARTIES' POSITIONS

The Internal Affairs Report has already been produced, subject to the terms of the operative Stipulation and Order of Confidentiality in effect in this case. Defendants argue that Det. Sgt. Distler is not a party to this action and "[t]o the extent Plaintiff would be entitled to procure discovery of facts from Det. Sgt. Distler, all of which are contained in the IAU Report, there remains no need to compel production of her notes or her appearance at deposition. Plaintiff is not entitled to any information from Det. Sgt. Distler that reveals her personal opinion as such evaluative information is cloaked by privilege." Nassau County Defendants' June 15, 2015 Letter Motion to Quash (DE 188) at 2. In addition, defendants maintain that Det. Sgt. Distler's testimony and investigation notes "are protected by the qualified law enforcement privilege because Det. Sgt. Distler's testimony and her investigation notes are intimately tied to her IAU Report." *Id.* at 3. Defendants' counsel goes on to assert that the "testimony and investigation notes indisputably include 'information pertaining to law enforcement techniques and procedures.'" *Id.* (quoting *In re City of New York*, 607 F.3d 923, 948 (2d Cir. 2010)).

Plaintiff's intention, based upon a meet-and-confer between the parties, is, according to Nassau County defendants' counsel, to seek out Det. Sgt. Distler's opinion of the "credibility of the individuals she interviewed and to challenge comments purportedly made by counsel for Defendant DiLeonardo that Det. Sgt. Distler is unreliable and inexperienced. *Id*. Defendants' counsel maintains that plaintiff is not seeking to elicit facts, "but rather privileged opinions and evaluations." *Id*.

In opposing the motion, plaintiff's counsel argues that the Nassau County defendants have failed to demonstrate that the law enforcement privilege is applicable in these circumstances. Plaintiff's June 26, 2016 Letter Opposition to Motion to Quash (DE 194) at 1. Plaintiff's counsel first points out that the burden is on the Nassau County defendants to demonstrate that the law enforcement privilege applies since they are the ones asserting the privilege. *Id.* After summarizing the factors set forth by the Second Circuit in *In re City of New York*, plaintiff's counsel contends that defendants have made no such showing and have "merely stated in conclusory fashion by quoting the buzz words contained in *In re City of New York* that 'Det. Sgt. Distler's testimony and investigation notes include information pertaining to law enforcement techniques and procedures.'" *Id*. (quoting *In re City of New York*, 607 F.3d at 944). Counsel then states that assuming *arguendo* the privilege does apply, the privilege is qualified and is overcome by plaintiff's compelling need for the disclosure. *Id*. at 2. Plaintiff seeks the notes "because [Distler's] investigatory notes taken contemporaneously with her investigation contain factual statements given by witnesses, as well as named defendants, closer in time to the events in this case." *Id*. Counsel goes on to add that because defendant DiLeonardo's attorney has already challenged Distler's report as "virtually worthless" and also emphasized that this was

4

Distler's first use-of-force investigation, plaintiff has a compelling need to depose Distler. *Id.* That compelling need, according to plaintiff's counsel, is directed to soliciting testimony "as to [Distler's] training, experience, and competence as it relates to this investigation, and as to the factual history of this investigation such as when and the manner in which she interviewed witnesses, and her assessment of their credibility to the extent it influenced her findings, which are essential to Plaintiff and not duplicative." *Id.* Plaintiff's counsel further asserts that the investigative notes may "reflect relevant evidence not contained in the Report, or facts which may lead to the discovery of additional evidence." *Id.* The IAU Report, plaintiff maintains, does not contain statements witnesses gave to Distler, but rather contains Distler's summaries of those interviews. As such, plaintiff's counsel argues that he "cannot use Distler's interview summaries to impeach witnesses should the need arise, as the witnesses did not prepare the summaries." *Id.*

Having reviewed *in camera* the folder produced by the Nassau County defendants containing the notes at issue, the Court now turns to its findings.

### III.  DISCUSSION

#### A.  The Court's Scope of Review

The Court points out that it is not making any determination as to the admissibility of the Nassau County Internal Affairs Report. That decision will be made by Judge Bianco at the appropriate time. However, based upon the existing record, including the statements by the defendants that they intend to challenge the IAU Report, the Report is relevant to the claims and defenses raised in this case. As a consequence, so are the investigative notes of Sgt. Distler from which the Internal Affairs Report was prepared. The IAU Report and the investigative notes go directly to the core issues in this case involving the conduct of the plaintiff at the time of the

5

underlying incident as well as the conduct of the two off-duty police officers who are named as defendants here. Having determined that the investigative notes are relevant, the issue for the Court here is whether Sgt. Distler's investigative notes are discoverable.

"Federal Rule of Civil Procedure 45(d)(3)(A)(iii) provides that, on a timely motion, a court may quash or modify a subpoena that 'requires disclosure of privileged or other protected matter, if no exception or waiver applies[.]'" *Schomberg v. New York City Police Dept.*, 298 F.R.D. 138, 141 (S.D.N.Y. 2014). At the outset, the Court points out that none of the parties has cited any case directly on point with the circumstances underlying this motion, namely, whether the investigative notes taken by a police officer charged with the responsibility of conducting an Internal Affairs investigation – and from which notes the Internal Affairs Report was composed -- are discoverable. Nor has the Court been able to find any such case.[1] The Nassau County defendants contend that "plaintiff is already in possession of all of the factual information Sgt. Distler was privy to, as reflected in the exhaustive IAU Report. . . ." DE 188 at 2. Further, counsel for these defendants argues that granting the Plaintiff's motion would be unduly burdensome on Sgt. Distler, a non-party, and duplicative of information contained in the IAU Report as well as information Plaintiff's counsel has gathered at his own depositions of other fact witnesses. DE 188.

---

[1] The Court takes note of the fact that in *Schomberg*, the court pointed out that the police department investigative file at issue likely contained the NYPD Internal Affairs Bureau investigative officers' reports, detective and *police investigator notes*, complaint report, complaint follow-up reports completed by other officers, etc. The court found that the documents were relevant and not protected by work product privilege. *Schomberg*, 298 F.R.D. at 142 (emphasis added).

The Court does not agree that the production of the notes at issue here would be unduly burdensome. Having reviewed the notes *in camera*, the Court finds that producing fewer than 86 pages of notes is hardly "burdensome" under any standard. As to a deposition of Sgt. Distler, the time expended in being deposed may be an inconvenience to the witness, but it is not unduly burdensome. Likewise, the fact that an "investigative file will contain some overlap with [police department] documents does not, by itself, justify denial of Plaintiff's motion" to compel production. *Schomberg*, 298 F.R.D. at 142.

B.     **Are the Investigative Notes Protected by a Privilege?**

The Court has carefully reviewed Sgt. Distler's investigative notes and finds that they are primarily factual statements related to the events at issue in this case. Although the defendants have not asserted work product privilege, the Court points out that facts are not protected by work product privilege. Moreover, "courts have regularly held that in cases of alleged police misconduct, plaintiffs have a substantial need to discover statements that the officers made to prosecutors." *Abdell v. City of New York,* No. 05 Civ. 8453, 2006 WL 2664313 at *7 (S.D.N.Y. Sept. 14, 2006). The Court concurs that the plaintiff has had access to some form of those statements by virtue of the disclosure of the IAU Report. Had defendants' motion argued that the investigative notes are not discoverable based on an assertion of work product privilege, the motion would be ineffective since the notes contain factual accounts only and plaintiff would be entitled to review the underlying notes from which those statements were drawn to see, among other things, if the information is consistent, objective and complete. Plaintiff would be permitted to do so in light of the fact that the notes do not contain any information revealing Sgt. Distler's theory of the case, nor do they contain any evaluation of the witnesses' statements or

7

any police department strategy. *See Mercy v. Suffolk County*, 93 F.R.D. 520, 522 (E.D.N.Y. 1982); *Marsh v. Safir*, No. 99 CIV. 8605, 2000 WL 460580, at * 17 (S.D.N.Y. Apr. 20, 2000). These notes were prepared in the ordinary course of business pursuant to the Internal Affairs Unit's duty to investigate the plaintiff's Complaint. Consequently, they are not shielded from discovery as work product. *Mercy,* 93 F.R.D. at 522.

As to the assertion of a qualified law enforcement privilege, counsel for the Nassau County defendants maintains that "Det. Sgt. Distler's testimony and investigation notes indisputably include 'information pertaining to law enforcement techniques and procedures.'" DE 188 (quoting *In re City of New York*, 607 F.3d at 948). Notably, the Second Circuit reaffirmed its recognition of the law enforcement privilege in *In re City of New York,* 607 F.3d at 944–45. In so doing, the Court of Appeals provided a set of guidelines to analyze assertions of law enforcement privilege. *Id.* at 948. "First, the party asserting the law enforcement privilege bears the burden of showing that the privilege indeed applies to the documents at issue." *Id.*; *King v. Conde*, 121 F.R.D. 180, 189 (E.D.N.Y. 1988). A threshold showing of privilege "must explain the reasons for nondisclosure with particularity, so that the court can make an intelligent and informed choice as to each requested piece of information." *King v. Conde*, 121 F.R.D. at 189. This is accomplished by demonstrating "that the documents contain information that the law enforcement privilege is intended to protect." *Id.* The law enforcement privilege encompasses: (1) information pertaining to law enforcement techniques and procedures; (2) information that undermines the confidentiality of sources; (3) information that would endanger witnesses and law enforcement personnel; (4) information that would undermine the privacy of individuals involved in an investigation; or (5) information that would seriously impair the

8

ability of law enforcement agencies to conduct future investigations. *In re City of New York,* 607 F. 3d at 948; *see also United States v. Amodeo,* 44 F.3d 141, 147 (2d Cir. 1995); *Dorsett v. County of Nassau,*[2] 762 F. Supp. 2d 500, 520 (E.D.N.Y. 2011) (citing *In re City of New York*, 607 F.3d at 948), *aff'd* 800 F. Supp.2d 453, *aff'd sub nom, Newsday LLC v. County of Nassau*, 730 F.3d 156 (2d Cir. 2013); *Morrissey v. City of New York,* 171 F.R.D. 85, 90 (S.D.N.Y.1997).

Although a "strong presumption" exists against lifting the law enforcement privilege if it applies, the privilege is qualified, not absolute, and the district court must balance the public interest in nondisclosure against the need of a particular litigant for access to the privileged information. *See In re City of New York*, 607 F.3d at 948; *Conte v. County of Nassau*, No. CV 06-4746, 2009 WL 1362784, at *7 (E.D.N.Y. May 15, 2009) (citing *MacNamara v. City of New York*, 249 F.R.D. 70, 79 (S.D.N.Y. 2008)). "In balancing these interests, the burden of persuasion resides with the party seeking to prevent disclosure." *Conte*, 2009 WL 1362784, at *7 (citing *MacNamara*, 249 F.R.D. at 79).

To lift the privilege, the party seeking the information must show: (1) that the suit is non-frivolous and brought in good faith; (2) that the information sought is not available through other discovery or from other sources; and (3) that the party has a compelling need for the privileged information. *Id.* (citing *Friedman v. Bache Halsey Stuart Shields, Inc.,* 738 F.2d 1336,

---

[2] Defendants' counsel cites this Court's decision in *Dorsett*, asserting that the Court "recognized the applicability of the law enforcement privilege with regard to production of an NCPD Internal Affairs report." DE 188 at 3, n.3. While that statement is accurate, it does not take into account the factual context differences between *Dorsett* and the instant case. In *Dorsett*, the IAU Report had already been produced to the actual parties to the litigation. The dispute arose after that production when plaintiff's counsel sought to announce the contents of the IAU Report to the public at a press conference. The Court restricted access to the IAU Report to the actual parties in the litigation. *Dorsett*, 762 F. Supp. 2d at 537.

1343 (D.C. Cir. 1984)). "Whether the showing of relevance and need rises to the requisite level is a discretionary determination that must be made on a case-by-case basis." *Kitevski v. City of New York*, No. 04 Civ. 7402, 2006 WL 680527, at *3 (S.D.N.Y. Mar. 16, 2006) (citing *Herman v. Crescent Publ'g Group, Inc.*, No. 00 Civ. 1665, 2000 WL 1371311, at *2 (S.D.N.Y. Sept. 21, 2000)). If the presumption against disclosure is successfully rebutted, only then will the court weigh the interest in non-disclosure against the need for access to the privileged information. *See In re City of New York*, 607 F.3d at 948. Lastly, the Second Circuit noted that "[t]o assess both the applicability of the privilege and the need for the documents, the district court must ordinarily review the documents in question." *Id*.

With these factors in mind, the Court turns to the documents it reviewed *in camera* which comprise Sgt. Distler's investigative notes. For the most part, these notes are a compilation of what people said to Sgt. Distler. The notes, identified as Bates-numbered documents 0001-00086, are hand-written and not all of them appear to be in exact chronological order as presented. The statements made to Sgt. Distler relate specifically to the facts underlying the incident at issue here. For example, the Court directs the parties' attention to Bates-numbered document 0001-0002, dated "7/20/11" with the heading "Phone Interview of Risco Lewis," followed by a cell phone number. The remainder of the two pages of notes contains factual information Sgt. Distler obtained during this interview of Plaintiff's godmother. There are no impressions, opinions or evaluations of that information expressed by Sgt. Distler anywhere in the two pages. The same is true regarding the notes of interviews with other witnesses,[3] some of

---

[3] One exception is reflected at the bottom of page 00078, starting with the phrase "Suffolk Homicide - Day of - . . ." The Court finds that the remainder of that page contains privileged information..

which contain phrases or statements placed in quotation marks: 00015-16 (10/6/11 interview of Dennis Dobrochasan); 00019-25 (12/14/11 interview of Inspector Horace); 00028-29 (notes of Distler's 1/25/12 phone call with Sgt. Lynch re: his interviews of various SCPD officers). Many of the subsequent pages contain Sgt. Distler's notes from conversations with other police personnel who had interviewed witnesses, including civilians and police officers, as well as defendants DiLeonardo and Bienz (*e.g.*, Distler's notes from 7/13/11 interview with Investigator Palumbo regarding his interviews of DiLeonado, Bienz, Sophia Cornia [00067-75, 00076-78]; Distler's notes of 3/16/12 interview of Anthony DiLeonardo in presence of his attorney, Amy Marion, Lt. Ralph Hoffman and PBA representative Purcell [00082-86]).

Many of the other pages contain lists compiled by Sgt. Distler of names – and in some instances phone numbers and/or addresses – of police personnel or civilian witnesses. The Court points out the following examples: 00010, with a hand-written date of "2/27/11" (a list of names of individual SCPD officers under the heading "Oakwood Dr.," followed by the initials "RMP" and a number – some are identified as "homicide" and some as "2nd Pct"); 00011, with a hand-written date of 2/27/11 (a list of police officers under the heading "Huntington Hospital," with each name followed by the designation "RMP" and a number; 0004 (a list of individuals Sgt. Distler contacted or was attempting to contact and for whom she left phone messages); 0009 (an apparent master list of phone numbers, including those of the attorneys for each of the parties); 00076 (list entitled "People Present at Huntington Hospital 2/27/11," broken down by SCPD, NCPD, Homicide Squad and Civilians). Pages 00048 through 00052 contain a chart of "Activities" and "Time" which appears to be Sgt. Distler's form log of activity which tracks her

11

actions related to the investigation, starting with June 11, 2011 when she was assigned the case and continuing to the last entry on March 26, 2012.

As to the foregoing materials, the Court finds as follows: (1) the law enforcement privilege does not apply since the documents do not include any discernible information pertaining to law enforcement techniques and procedures, but rather consist of fact-based witness statements and information compilations which do not contain conclusions, mental impressions or credibility evaluations; (2) the defendants' reasons for non-disclosure are not explained with particularity (see *King v. Conde*); (3) the documents do not contain information which undermines the confidentiality of sources since these sources are likely known to the Plaintiff based on information that has already been produced; (4) the defendants do not assert – and the Court's review of the documents does not provide any basis to conclude – that the information would endanger witnesses and law enforcement, particularly since the criminal prosecution related to this case ended several years ago; (5) no information has been presented to demonstrate that (a) the privacy of any individual involved in the investigation would be undermined, particularly since the bulk of witnesses are police personnel or (b) there would be a serious impairment of the ability of law enforcement agencies to conduct future investigations. "In order to sustain the privilege, a party 'must make a clear and specific evidentiary showing of the nature and extent of the harm that is likely to be encountered if disclosure is permitted, and they may not rely simply on generalized reiterations of the policies underlying the privilege.'" *MacNamara v. City of New York,* No. 04 Civ. 9216, 2007 WL 1169204, at *5 (S.D.N.Y. Apr. 20, 2007) (quoting *Kunstler v. City of New York,* 2005 WL 2656117, at *1 (S.D.N.Y. Oct. 18, 2005). The

Nassau County defendants have not met their burden here. *See Coleman v County of Suffolk*, 174 F. Supp. 3d 747, 756 (E.D.N.Y. 2016), *aff'd,* 685 F. App'x 69 (2d Cir. 2017).

Likewise, the Court points out that other courts have consistently treated witness statements as factual rather than opinion work product, even where those statements have been summarized by counsel. *Abdell,* 2006 WL 2664313, at *6; s*ee also Johnson v. Bryco Arms,* Nos. 03 CV 2582, 02 CV 3029, 2005 WL 469612, at *5 (E.D.N.Y. March 1, 2005); *SR International Business Insurance Co. v. World Trade Center Properties LLC,* No. 01 Civ. 9291, 2002 WL 1455346, at *7 (S.D.N.Y. July 3, 2002); *United States v. Weissman,* No. S1 94 Cr. 760, 1995 WL 244522, at *9-10 (S .D.N.Y. April 26, 1995); *Securities and Exchange Commission v. Thrasher,* No. 92 Civ. 6987, 1995 WL 46681, at *6 (S.D.N.Y. Feb. 7, 1995). In this Court's view, weighing the factors set forth in *In re City of New York* in the context of the specific circumstances of the instant case compels disclosure.

Even if the privilege did apply, plaintiff has overcome the presumption by demonstrating a substantial need for the notes. These are notes taken by a police investigator for purposes of conducting an investigation and preparing an IAU Report (which has already been produced) regarding interviews with witnesses to the events alleged in the Complaint. It is therefore hard to overestimate the importance of the notes to the plaintiff since they go directly to the claims asserted in the Complaint. Likewise, the notes have significant value for impeachment purposes if the witnesses testify inconsistently with what the notes show they told Sgt. Distler. Their substantial value to the plaintiff, then, outweighs other pertinent considerations and compels their disclosure. Moreover, this information is not available from other sources when accounting for the timing of the notes as well as the investigator's taking down what she was hearing. *See*

13

*Johnson,* 2005 WL 469612, at *5 (ability to take deposition does not obviate need for disclosure of prior statement); *Doubleday v. Ruh,* 149 F.R.D. 601 at 608 (E.D. Cal. 1993) (substantial need for notes of prior statements because "the passage of time and the present, potential bias of the defendants may color recollections such that what was said at the time cannot be accurately deciphered" through depositions); *Boyd v. City and County of San Francisco,* No. C-04-5459, 2006 WL 1141251, at *4 (N.D. Cal. May 1, 2006) (in a case involving allegations of excessive force, "the identities and contemporaneous statements of witnesses are likely to provide the best evidence of excessive force").

Just because the statements were summarized rather than transcribed verbatim does not mean they necessarily reflect the thought processes of the person who took them – in this case, Sgt. Distler. The Second Circuit rejected a similar contention in *In re John Doe Corp.*, 675 F.2d 482 (2d Cir. 1082). There, the government sought production of notes written by counsel in the course of interviewing corporate employees. Rather than word-for-word declarations by the employees, the notes consisted of the employees' statements in "paraphrased, abbreviated form." *Id.* at 493. The Court of Appeals rejected the corporation's argument that the notes reflected the mental processes of counsel and ordered disclosure. *Id.*; *Abdell*, 2006 WL 266-4313 at *4 (". . . lower courts have consistently treated witness statements as factual rather than opinion work product, even where those statements have been summarized by counsel").

Plaintiff has satisfied the Court that he has a compelling need for these notes. *See Floyd v. City of New York*, 739 F. Supp. 2d 376, 381 (S.D.N.Y. 2010) (citing *In re City of New York*, 607 F.3d at 498). He has successfully rebutted the strong presumption against lifting the privilege. The information contained in Sgt. Distler's investigative notes is not available through

14

other discovery or from other sources. *Id*. at 384. Moreover, counsel for the Nassau County defendants as well as counsel for defendant Hunter have made it clear that they intend to challenge the IAU Report at trial on grounds of trustworthiness, among other things. *See* DE 218, 219. Plaintiff is entitled to test this defense. It would be disingenuous for the defendants to try to discredit the level of training and experience of Sgt. Distler and the trustworthiness of the IAU Report but yet deny plaintiff the opportunity to test the validity of those arguments. *See Groark v. Timek*, 989 F. Supp.2d 378, 393-94 (D.N.J. 2013) (finding plaintiff entitled to test whether evaluations of the complaints against the police officers were "real"). The Nassau County defendants shall therefore produce Sgt. Distler's investigative notes, subject to the Stipulation and Order of Confidentiality already in place in this case.

On the other hand, there are a handful of documents contained in the materials presented by the defendants which the Court finds ***are privileged*** and therefore not subject to production. Specifically, the Court directs that the following documents ***not*** be produced to the Plaintiff: 0007 (<u>draft</u> application by the People to dismiss); 00062-66 (evaluation meeting with Suffolk County DA investigators). In addition, the bottom of page 78 is to be redacted (as pointed out in footnote 2 above) before the remaining portion of the page is produced.

The Court is also permitting plaintiff to conduct a deposition of Sgt. Distler. In the Court's March 31, 2016 Order, plaintiff's counsel was directed to "provide a bullet-point list setting forth the specific topics he intends to address at any prospective deposition of Sgt. Distler, should the deposition be permitted." DE 217. Plaintiff's counsel submitted a two-page list [DE 220] which the Court has reviewed. The list is overly broad and contains certain areas of questioning which go well beyond the scope of Sgt. Distler's investigation and her notes. The

15

Court will not permit plaintiff's counsel to venture into such areas. In particular, plaintiff's counsel will not be permitted to question Sgt. Distler about her "impressions" of any witness nor her "evaluation" of any witness, nor her assessment of the credibility of any witness. These areas are privileged and not open to examination. Counsel may, however, inquire into Sgt. Distler's educational background, employment history, training and experience at the Nassau County Police Department and her promotional history there (covered in items 1 - 3 of DE 220). The Court finds questioning regarding her assignment to the Internal Affairs Unit and her assignment to the Moroughan investigation in particular to be relevant and open to examination (items 4, 6a and 6b). Because the defendants have confirmed that they intend to challenge the trustworthiness of the IAU Report, including the level of Sgt. Distler's "training and experience" [DE 218, 219], plaintiff's counsel will be permitted to inquire as to the number of Sgt. Distler's prior investigative reports (item 5). Likewise, counsel may inquire regarding the factual history of the investigation, the individuals with whom Sgt. Distler spoke and what she learned (item 6c). However, for the reasons stated above concerning privileged information, plaintiff's counsel will ***not*** be permitted to inquire into the areas he has listed following the designation "Note" in the second portion of item 6c. The Court will permit counsel to inquire of Sgt. Distler regarding items 6d through 6k. Items 7, 8 and 9 will be addressed in a separate Order. As to duration, the Court will enforce the presumptive 7-hour limit set forth in the Federal Rules of Civil Procedure and all counsel are on notice that this time will not be extended.

## IV. CONCLUSION

The motion brought by the Nassau County defendants to quash the subpoena served on non-party Sgt. Jo-Ann Distler is hereby DENIED, in part, and GRANTED, in limited part.

Defendants shall produce non-party Distler's investigative notes (with the exceptions noted above) by February 20, 2018. Sgt. Distler's deposition is to be completed no later than March 20, 2018.

**SO ORDERED:**

Dated: Central Islip, New York
February 5, 2018

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
United States Magistrate Judge