

**POLICE DEPARTMENT**
**COUNTY OF NASSAU, NEW YORK**

INTERNAL CORRESPONDENCE

| | | |
|---|---|---|
| DATE: | March 30, 2014 | SNCC NO: |
| TO: | Commissioner of Police | |
| FROM: | Inspector Michael G. Studdert, Hearing Officer | |
| SUBJECT: | CASE NUMBER 8118- CHARGES AND SPECIFICATIONS- POLICE OFFICER ANTHONY DILEONARDO, SERIAL NUMBER 9013, SHIELD NUMBER 3632, THIRD PRECINCT | |

This matter involves Charges and Specifications brought against Police Officer Anthony DiLeonardo, Serial Number 9013, Shield Number 3632, Third Precinct, in Case Number 8118 for violation of the Rules and Regulations of the Nassau County Police Department ("NCPD"). Police Officer DiLeonardo is charged with three violations of the Rules and Regulations arising out of an incident that occurred at 0115 hours on February 27, 2011 on Oakwood Road and Tippen Drive, Huntington, New York.

PROCEDURAL HISTORY

1. Police Officer DiLeonardo was served with Charges and Specifications for Case Number 8118 on August 22, 2012 (See Exhibit 19). On August 28, 2012, Police Officer DiLeonardo's attorney entered a plea of "Not Guilty" by way of a notification signed by Police Officer DiLeonardo and submitted by his attorney. A hearing was scheduled for this matter on December 4, 2012 and the parties were notified of that date. The hearing was adjourned on that date at the request of the Department and rescheduled to February 10, 2014, with notification of the new date to the parties. Officer DiLeonardo's attorney requested an adjournment at that time. That request was granted and the hearing was rescheduled to March 10, 2014, with notice of the new date given to both parties.

2. The hearing did in fact commence on March 10, 2014. The hearing continued on March 11, 2014 and was then adjourned at the request of the Respondent to March 19, 2014 in order to accommodate prior commitments and court appearances required of the respondent's attorney, Mr. Barket. The Hearing was conducted at Nassau County Police Department Headquarters, 1490 Franklin Avenue, Mineola, New York. The Nassau County Police Department was represented by Leslie Hiller, Esq., of the Nassau County Police Department's Legal Bureau. The respondent, Police Officer DiLeonardo, was represented by Bruce Barket, Esq., of Barket, Marion, Epstein & Kearon, LLP. Police Officer DiLeonardo's attorney and his union (PBA) representative were present each day of the proceeding. In fact, on the last day of testimony the proceeding was delayed so that the Union representative could be present with Police Officer DiLeonardo (Tr. p. 262). Although the Charges and Specifications in this case contained thirteen (13) charges of violations of the Rules and Regulations of the NCPD, the Department only presented three of the charges (Counts 3, 4 and 11). Therefore, only those three violations were the subject of this hearing. The remaining counts were dismissed by the Department.

3. The disciplinary case against Police Officer DiLeonardo was conducted pursuant to NYS Civil Service Law §75. The administrative disciplinary case proceeded in a manner consistent with the Rules and Regulations of the NCPD. The Nassau County Administrative Code provides that a member of the Department is subject to discipline for violations of the Rules and Regulations of the NCPD. Prior to taking testimony I reminded the parties that the hearing which was about to take place was an administrative proceeding and not criminal or civil litigation. The parties were advised that hearsay evidence would be accepted and that I would be applying the substantial evidence standard. Police Officer DiLeonardo, by way of service of the Charges and Specifications, was provided with adequate notice regarding the nature of the alleged violations of the Rules and Regulations which were pending against him. Moreover, both parties had been provided adequate notice of the hearing date in order to prepare and to secure and notify any potential witnesses they wished to call. In fact, the record reflects that Mr. Barket served subpoenas on several witnesses (Tr. p. 16), but ultimately did not request that they testify. The parties were permitted to conduct cross examination of witnesses and make objections. Both parties were given ample opportunity to set forth their respective positions on the record. Although this was not a formal judicial proceeding, it did comply with the standards set forth in the NY State Administrative Act. Consequently, I reject Mr. Barket's position that the proceeding which was held was "tantamount to having no hearing at all." (Resp. Brief p. 1).

4. At the conclusion of testimony I advised the parties that I would accept additional submissions and leave the record open until March 26, 2014. Both parties declined an opportunity to make a closing statement and requested an opportunity to submit briefs. The parties were informed that closing briefs were to be submitted jointly on April 4, 2014.

5. I received submissions from the Department and the Respondent on March 26, 2014. The Department's submissions included an affidavit from Det. Sgt. Jo Ann Distler, a deposition of Officer Anthony DiLeonardo, and curriculum vitae of George G. Krivosta. Mr. Barket's submission was a report prepared by Mr. Joseph F. Zoghi. There were numerous emails between the parties regarding the submissions and additional requests and objections made by the parties. In order to maintain a clear record I requested that the parties send one joint email setting forth any outstanding issues which required a determination or ruling from me. A printout of that joint email, reflecting the parties' objections and positions on the submissions as well as my determination thereof, has been printed and added to the record.

6. On April 3, 2014, Mr. Barket requested that the deadline for submission of the briefs be extended from April 4, 2014 to April 9, 2014. His request was granted.

7. On April 9, 2014, the briefs were jointly submitted. This memorandum, setting forth my findings and recommendations is submitted following the hearing which was conducted as outlined above and after review and evaluation of the testimony, the evidence presented and the briefs submitted by the parties.

8. The Respondent argues that the Department has pre-determined the result of this hearing and that result is "driven by media accounts and the interim commissioner's need to look like a disciplinarian." (Resp. Brief p. 2). As I indicated throughout the hearing, I have remained neutral and have had no conversations with Acting Commissioner Krumpter regarding the Charges and Specifications pending against Police Officer DiLeonardo or this administrative hearing. My decision was reached after a review of the testimony, evidence, submissions and submitted briefs.

9. I have not spoken with the media about this proceeding or my role as a hearing officer. As I indicated during the hearing, I understand my obligation to evaluate the testimony and the evidence and reach my own independent conclusions (Tr. pp227-228). Moreover, there is no evidence that any member of the Department leaked any information to any media outlet regarding this hearing.

## WITNESSES CALLED AND EVIDENCE PRESENTED

10. Despite the fact that there is some contradiction and inconsistencies in the statements that were offered into evidence, it is not impossible to conclude what actually occurred on the date of the incident after reviewing all of the testimony and the evidence. I have considered the possible motivations for the varying statements and have endeavored in my duty as the hearing officer to weigh the testimony and evidence and to make determinations about the credibility of the witnesses and the accuracy of their statements.

11. The Department called Det. Sgt. JoAnne Distler, currently assigned to the Internal Affairs Unit, as its only witness. The Department presented evidence detailing Det. Sgt. Distler's training and experience by way of testimony and an affidavit. Det. Sgt. Distler testified regarding the Internal Affairs investigation relating to the three charges which are the subject of this hearing. After receiving evidence with regard to her training and experience and having had the opportunity to observe her demeanor during testimony, I find Det. Sgt. Distler's testimony to be reliable and credible. I find that Det. Sgt. Distler is qualified to testify regarding the Rules and Regulations of the NCPD and investigations into violations thereof. I further find that Det. Sgt. Distler is qualified to testify regarding the facts of the investigation into the alleged violations of the Rules and Regulations by Office DiLeonardo which were the subject of this hearing.

12. The Respondent did not present any witnesses at the hearing. The Respondent did request to bring in an unnamed witness on the final day of testimony but did not have a witness present. The Respondent, aware of the nature of the allegations against him since the service of the Charges and Specifications and having had adequate notice of the hearing date had not made arrangements to have the witness present. Further, the hearing began on March 10, 2014 and continued through March 19, 2014 during which time the Respondent could have produced a witness but did not. Rather, the Respondent's attorney indicated on the last day of testimony that he "began to look at the calling of and expert" (Tr. p. 270) and went on to state that whether or not he did in fact retain or call this witness would depend not on the importance of the proposed testimony, but rather on the cost of one witness versus another one. (Tr. p. 271). Additionally, the Respondent indicated that he was requesting an adjournment to possibly call a witness to testify regarding police shootings. As this hearing was a proceeding to determine whether or not the Respondent violated the Rules and Regulations of the NCPD, I did not believe that a witness called to testify with regard to tactical operations, and not violations of the Rules and Regulations of the NCPD, would be relevant.

13. The Respondent did submit the affidavit of Joseph Zogbi, a retired New York City Police Department member, in support of his position. However, it must be noted that after a review of Mr. Zogbi's resume, I find that he would be unable to testify with regard to the Rules and Regulations of the NCPD or violations thereof. Additionally, it is important to note that Mr. Zogbi relies on and cites to sections of the IAU report which are not in evidence. Both Mr. Zogbi's report and the Respondent's brief rely on facts contained in the Deadly Force Response Team report. The Deadly Force Response Team report is a preliminary report that was prepared shortly after the incident and without the benefit of a complete and thorough investigation.

3

FACTS:

14. After listening to and reviewing the testimony in this case and evaluating the evidence presented I make the following findings of facts:

15. On February 27, 2011, at 0115 hours, while off duty in Huntington Station, N.Y., Officer DiLeonardo, accompanied by his girlfriend Sophia Cornia, was driving a 2011 white Infiniti. Officer Bienz, accompanied by his wife Jillian Bienz, was operating a 2008 blue Acura. They were on their way home from a night out in Huntington. Officer DiLeonardo was following Officer Bienz. Officer Bienz made a wrong turn and they got lost in Huntington Station. Officer Bienz pulled over to the side of the road on Oakwood Rd. in the vicinity of Tippen Drive, Huntington Station, N.Y. Officer DiLeonardo pulled over behind Officer Bienz's vehicle. Just prior to pulling over, there was some type of a road rage incident between Officer DiLeonardo and a white Toyota Prius taxi cab being driven by Thomas Moroughan ("Moroughan"). Moroughan's girlfriend, Kristie Mondo, was a passenger in that taxi. It is my finding that Police Officer DiLeonardo's continued escalation of this road rage incident, as outlined below, led to the charges which are the subject of this hearing.

16. Within a minute of the officers pulling over, the taxi cab being operated by Moroughan, pulled along side the Infiniti being driven by PO DiLeonardo. Moroughan and Officer DiLeonardo then engaged in a verbal confrontation.

17. There are conflicting statements as to whether Officer DiLeonardo had exited his vehicle prior to the cab pulling up. However, at some point both Moroughan and Officer DiLeonardo exited their vehicles and continued the argument over the hood of the white taxi cab. As the argument escalated, everyone at the scene, including Police Officer Bienz exited their vehicles with exception of Kristie Mondo who remained inside the taxi.

18. Moroughan reentered his vehicle and backed it up 30 to 45 feet. The verbal argument between Moroughan and Officer DiLeonardo continued as Moroughan backed up his vehicle. Officer DiLeonardo, who remained outside of his vehicle, chose to escalate the situation by removing his off duty weapon from his ankle holster. Officer DiLeonardo walked towards the taxi which was in the travel lane of Oakwood Road. As Officer DiLeonardo walked towards the cab he fired five shots at the windshield of the taxi. The windshield of the taxi was struck with bullets three times. Two shots struck Moroughan, one in the chest and one in the arm. Moroughan was unarmed and there is nothing in the record to indicate that Moroughan had engaged in criminal activity or had a prior criminal history. Following the shooting, the cab moved forward a short distance and came to a stop 20 to 25 feet from Officer DiLeonardo. Officer DiLeonardo did not seek cover or attempt to order the driver out of the taxi. Rather, Officer DiLeonardo escalated this situation even further. Officer DiLeonardo ran up to the driver's side of the taxi, which was not moving and smashed the driver's side window with his weapon in his right hand, causing it to shatter. Officer DiLeonardo smashed Moroughan in the nose with the butt of his gun, and punched him in the face numerous times, fracturing his left nasal bone.

19. Officer DiLeonardo opened the driver's door to the cab and attempted to pull Moroughan out. During the struggle with Moroughan, Police Officer DiLeonardo lost his gun in the cab. That weapon was eventually recovered on the left rear passenger floor area of the taxi by the Suffolk County Police Department. Moroughan, while Officer DiLeonardo was attempting to pull him out of the taxi, put the taxi in reverse and backed up, knocking Police Officer DiLeonardo to the ground and bumping Police Officer Bienz causing him to hit the ground. Moroughan drove himself to the hospital.

4

FINDINGS

20. The following is my analysis and finding with regard to each of the three charges before me:

**Charge 3: Violation of Article 5, Rule 2, Subdivision 1:** On February 27, 2011, at about 0115 hours, at Oakwood Road and Tippen Drive, Huntington, New York, Police Officer DiLeonardo, while off duty, did engage in unlawful conduct, in that Police Officer DiLeonardo without justification struck Thomas Moroughan in the face with his .38 caliber Smith & Wesson revolver. The blow broke Mr. Moroughan's nose, caused him substantial pain and required medical treatment at a hospital. At the time of the incident Mr. Moroughan was sitting in the driver's seat of a stopped Toyota Prius, New York Registration Number # 13100TY. Pursuant to New York State Penal Law § 120.05(2), Police Officer DiLeonardo's actions constitute the crime of Assault in the Second Degree, which is a Class D felony. This is in violation of Article 5, Rule 2, Subdivision 1.

The findings of facts as outlined above detail the actions of Police Officer DiLeonardo which support the finding of this violation of the Rules and Regulations of the NCPD. Additionally, it should be noted that in his statement, Officer DiLeonardo admits striking Thomas Moroughan in the nose with the butt of his gun. (See Exhibit 7). Moroughan, in his statement to the Suffolk County Police Department, stated that Officer DiLeonardo "came up to my driver's window and smashed his gun busting my window and hitting me in the face." (See Exhibit 10). As a result of Officer DiLeonardo punching him in the face numerous times and smashing him in the nose with the butt of his gun, Moroughan sustained a broken nasal bone (See Exhibit 18). The actions of Officer DiLeonardo were unlawful, a violation of the Rules and Regulations of the NCPD and his actions could have been charged as a violation of NYS Penal Law.

**Charge 4. Violation of Article 5, Rule 2, Subdivision 1:** On February 27, 2011, at about 0115 hours, at Oakwood Road and Tippen Drive, Huntington, New York, Police Officer DiLeonardo, while off duty, did engage in unlawful conduct, in that Police Officer DiLeonardo intentionally caused damage in excess of one thousand five hundred dollars ($1500.00) to a 2010 Toyota Prius, New York State Registration Number # 13100TY, being operated by Thomas Moroughan. Police Officer DiLeonardo fired his .38 caliber Smith & Wesson revolver five (5) times at the taxi being driven by Moroughan. Three of the shots entered the passenger compartment. Once the taxi stopped moving Police Officer DiLeonardo then broke the driver's side window with his revolver. Pursuant to New York State Penal Law § 145.10, Police Officer DiLeonardo's actions constitute the crime of Criminal Mischief in the Second Degree which is a Class D felony. This is in violation of Article 5, Rule 2, Subdivision 1.

The findings of facts as set forth above detail the actions of Police Officer DiLeonardo which support the finding of this violation of the Rules and Regulations of the NCPD. Additionally, in his statement, Officer DiLeonardo admits he fired his weapon at the driver (See Exhibit 7, ¶33). He also states "that my shots damaged the windshield."(See Exhibit 7, ¶ 39) Mr. Eric Klug, in his statement to Sgt. Distler states, "I saw a man with a gun walking towards a white car which was stopped in the middle of the road. The man with the gun was shooting his gun at the windshield of the car." (See Exhibit 12.) In his statement to Sgt. Distler, Officer Bienz stated he "saw Anthony DiLeonardo run up to the driver's side of the cab and begin smashing the driver's window with his weapon in his right hand causing it to shatter." (See Exhibit 13, ¶ 9). The damage to the cab, operated by Moroughan, included three bullet holes to the windshield and a shattered driver's side window (See Exhibits 2,3,6). Sgt. Distler testified that she interviewed the owner of the cab, Mr. Boris Goldstein and that he stated it was a couple of thousand dollars to repair the vehicle. (Tr. pp116-117.). The actions taken by Officer DiLeonardo were

5

unlawful, a violation of the Rules and Regulations of the NCPD and his actions could have been charged as a violation of NYS Penal Law.

**Charge 11. Violation of Article 8, Rule 12, and Subdivision 2:** On February 27, 2011, at about 0115 hours, at Oakwood Road and Tippen Drive, Huntington, New York, Police Officer DiLeonardo did not properly safeguard his uniforms and equipment and any other Department property issued for or assigned for his use in that Police Officer DiLeonardo after using his .38 caliber Smith & Wesson revolver in physical confrontation with Thomas Moroughan the driver of a 2010 Toyota Prius, dropped said revolver inside Mr. Moroughan's vehicle. This weapon remained in the taxi while Moroughan drove himself to the hospital and was later recovered by Suffolk County PD from the rear passenger floor of the taxi. This is in violation of Article 8, Rule 12, and Subdivision 2.

The finding of facts as set forth above detail the actions of Police Officer DiLeonardo which support the finding of the violation of this Rule and Regulation of the NCPD. Additionally, in his statement to Sgt. Distler, Officer Bienz states "I ran towards the cab with the intention of helping Anthony secure his weapon." (See Exhibit 13 ¶ 9). Officer Bienz also states that while standing on the sidewalk at some point Officer DiLeonardo told him "that he lost his gun in the cab." (See Exhibit 13 ¶ 10). Officer Bienz states he was treated at Huntington Hospital, and then was placed in a room by himself at the hospital. Officer Bienz states that Police Officer DiLeonardo came to his room and spoke to him briefly. Officer Bienz states that at this time Officer DiLeonardo told him again "that he lost his gun in the cab." (See Exhibit 13 ¶12). Officer DiLeonardo's .38 caliber Smith & Wesson revolver was later recovered by the Suffolk County Police Department on the left rear passenger floor area of the cab. (See Exhibits 6, 20) The actions of Officer DiLeonardo were a violation of the Rules and Regulations of the NCPD.

21. Based on the findings of facts outlined above, I find there is substantial evidence in the record to support the following findings:

Charge 3. I find Police Officer Anthony DiLeonardo violated Article 5, Rule 2, Subdivision 1 of the Rules and Regulations of the Nassau County Police Department.

Charge 4. I find Police Officer Anthony DiLeonardo violated Article 5, Rule 2, Subdivision 1 of the Rules and Regulations of the Nassau County Police Department.

Charge 11. I find Police Officer Anthony DiLeonardo violated Article 8, Rule 12, Subdivision 2 of the Rules and Regulations of the Nassau County Police Department.

## RECOMMENDATION

As a police officer, Officer DiLeonardo must command the absolute confidence and respect of the public he serves. Police Officer Anthony DiLeonardo's actions, on February 27, 2011 at 0115 hours, reflect unfavorably upon his moral character and fitness for public service; he has brought discredit to the Nassau County Police Department. His own actions have made it impossible for him to carry out his duties as a Nassau County Police Officer.

There is substantial evidence that Officer DiLeonardo violated the Rules and Regulations of the Nassau County Police Department and his Oath of Office. In light of the egregious nature of these violations the only appropriate punishment in this case is termination.

*Michael G. Studdert*
Michael G. Studdert
Inspector

APPROVED

Office of Commissioner of Police



**POLICE DEPARTMENT
COUNTY OF NASSAU, NEW YORK**

INTERNAL CORRESPONDENCE

| | | |
|---|---|---|
| **DATE:** | May 5, 2014 | SNCC NO: 4360 |
| **TO:** | Commanding Officer, Internal Affairs Unit | |
| **FROM:** | Commissioner of Police | |
| **SUBJECT:** | In the Matter of Police Officer Anthony DiLeonardo, Serial Number 9013, Disciplinary Case Number 8118 | |

    I have reviewed the administrative record and the transcript of proceedings of Police Officer Anthony DiLeonardo's Departmental Disciplinary Hearing, Disciplinary Case Number 8118. The hearing was held on March 10, 2014, March 11, 2014 and March 19, 2014, at the Nassau County Police Department Headquarters.

    Upon my review, I have decided to adopt and endorse the written findings of fact and recommendation dated March 30, 2014, of Inspector Michael G. Studdert, hearing officer at the disciplinary proceedings. It is Inspector Studdert's recommendation after hearing the arguments and examining the documentary evidence submitted at the hearing that Police Officer DiLeonardo should be terminated and separated from service with the Nassau County Police Department.

    Pursuant to New York State Civil Service Law § 75 and Nassau County Administrative Code § 8-13, you are directed to terminate and separate from service, Police Officer Anthony DiLeonardo, Serial Number 9013.

Thomas C. Krumpter
Acting Commissioner of Police

DOCUMENT: N:\Admin\WPDOCS\Santiago\Discipline\Notice of Termination to CO-IAU.doc