UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

THOMAS M. MOROUGHAN,                                    Docket # 12 CV 512
                                                       (JFB) (AKT)

                              Plaintiff,

        -against-

THE COUNTY OF SUFFOLK, SUFFOLK COUNTY          **REPLY DECLARATION**
POLICE DEPARTMENT, SUFFOLK DETECTIVES          **IN SUPPORT OF**
RONALD TAVARES, CHARLES LESER, EUGENE          **MOTION FOR**
GEISSINGER, NICHOLAS FAVATTA, and ALFRED       **SUMMARY JUDGMENT**
CICCOTTO, DETECTIVE/SGT. WILLIAM J. LAMB,
SGT. JACK SMITHERS, SUFFOLK POLICE
OFFICERS WILLIAM MEANEY, and JESUS FAYA and
SUFFOLK JOHN DOES 1-10, THE COUNTY OF
NASSAU, NASSAU COUNTY POLICE
DEPARTMENT, SGT. TIMOTHY MARINACI,
DEPUTY CHIEF OF PATROL JOHN HUNTER,
INSPECTOR EDMUND HORACE, COMMANDING
OFFICER DANIEL FLANAGAN, DETECTIVE/SGT.
JOHN DeMARTINIS, NASSAU POLICE OFFICERS
ANTHONY D. DILEONARDO, POLICE OFFICER
EDWARD BIENZ and JOHN DOES 11-20,

                              Defendants.
------------------------------------------------------------------------X

        Christopher Delamere Clarke, an attorney duly admitted to practice in the United States

District Court for the Eastern District of New York declares, pursuant to 28 U.S.C. § 1746 that

the following is true and correct under the penalty of perjury, as follows:

        1.      The undersigned is a member of the law firm of Leahey & Johnson, P.C., and

hereby represents Defendants County of Nassau, Nassau County Police Department, Sgt.

Timothy Marinaci, Inspector Edmund Horace, Commanding Officer Daniel Flanagan,

Detective/Sgt. John DeMartinis and Police Officer Edward Bienz (collectively "Movants") in the

above captioned matter, and as such, is fully familiar with the facts and circumstances set forth

herein.

2.      This Reply Declaration and attached exhibit is being submitted in further support

of Movants' motion for summary judgment pursuant to Fed. R. Civ. P. 56.

3.      Attached hereto as **Exhibit BB** is a true copy of pages 44, 111-114, 185-192, 207-

208 of deposition testimony of Suffolk County Assistant District Attorney Rafael Pearl taken on

December 15, 2016 and February 17, 2017.

Dated: New York, New York
       July 11, 2019

                              Yours, etc.,

                              LEAHEY & JOHNSON, P.C.
                              Attorneys for Defendants
                              THE COUNTY OF NASSAU, NASSAU
                              COUNTY POLICE DEPARTMENT, SGT.
                              TIMOTHY MARINACI, INSPECTOR EDMUND
                              HORACE, COMMANDING OFFICER DANIEL
                              FLANAGAN, DETECTIVE SGT. JOHN
                              DEMARTINIS AND POLICE OFFICER
                              EDWARD BIENZ
                              120 Wall Street, Suite 2220
                              New York, New York 10005
                              (212) 269-7308

                    BY: *Christopher Delamere Clarke*
                         CHRISTOPHER DELAMERE CLARKE


To all parties and the Court via ECF

EXHIBIT BB

COPY

1                                                                    1

2       UNITED STATES DISTRICT COURT

3       EASTERN DISTRICT OF NEW YORK

4       ---------------------------------------x

5       THOMAS M. MOROUGHAN,

6                          Plaintiff,

7                                      Docket No.
                                       12-CV-0512
8
                        -against-
9
        THE COUNTY OF SUFFOLK, SUFFOLK COUNTY POLICE
10      DEPARTMENT, SUFFOLK DETECTIVES RONALD
        TAVARES, CHARLES LESER, EUGENE GEISSINGER,
11      NICHOLAS FAVATTA, and ALFRED CICCOTTO,
        DETECTIVE/SGT. WILLIAM J. LAMB, SGT. JACK
12      SMITHERS, SUFFOLK POLICE OFFICERS WILLIAM
        MEANEY, JESUS FAYA and SUFFOLK JOHN DOES
13      1-10, THE COUNTY OF NASSAU, NASSAU COUNTY
        POLICE DEPARTMENT, SGT. TIMOTHY MARINACI,
14      DEPUTY CHIEF OF PATROL JOHN HUNTER,
        INSPECTOR EDMUND HORACE, COMMANDING OFFICER
15      DANIEL FLANAGAN, DETECTIVE/SGT. JOHN
        DEMARTINIS, NASSAU POLICE OFFICERS ANTHONY
16      D. DILEONARDO, EDWARD BIENZ and JOHN DOES
        11-20,
17
                          Defendants.
18      ---------------------------------------x
                                 100 Veterans Highway
19                               Hauppauge, New York

20                               December 15, 2016
                                 9:20 a.m.
21

22            (CAPTION CONTINUED ON NEXT PAGE.)

23

24            Rich Moffett Court Reporting, Inc.
                 114 Old Country Road, Suite 630
25                  Mineola, New York 11501
                         516-280-4664

```
                          Raphael Pearl              44
 1
 2    familiar with him personally.
 3         Q     Do you know for whom he works
 4    within the Suffolk County Police Department?
 5         A     No.
 6         Q     Next.
 7         A     Suffolk Police Officer Meaney,
 8    I'm not familiar with.  Jesus Favatta, not
 9    familiar with.  Says next, Suffolk John Does
10    1 through 10.  Want me to keep going, County
11    of Nassau?
12         Q     Yes.
13         A     Sergeant Timothy Marinaci, I do
14    not know.  Deputy Chief of Patrol John
15    Hunter, I don't know.  Inspector Edmund
16    Horace, I don't know.  Commanding Officer
17    Daniel Flanagan, do not know.  Detective
18    Sergeant John DeMartinis, do not know.
19    Police officers Anthony DiLeonardo, Ed Bienz
20    and John Does.  Obviously, I only know
21    DiLeonardo and           Mr. Bienz from my
22    work on this case.
23         Q     During the course of your career
24    with the Suffolk County District Attorney's
25    Office, did you ever meet a Deputy Inspector
```

```
1                        Raphael Pearl              111
2            Q       We are trying to address this by
3    category.  So that may be easier.  Do you
4    have any idea of the actual date that the
5    DA's office took over your investigation?
6            A       No.
7            Q       I will show you what has been
8    previously marked as Plaintiff's Exhibit 25,
9    page number 1.  It's an IAB summary from the
10   Nassau County Police Department.  IAU number
11   is 27-2011.
12                   MR. SCHROEDER:  What is the page
13            number, Tony?
14                   MR. GRANDINETTE:  Page number 1.
15           Q       Have you ever seen the Nassau
16   County Internal Affairs Unit report in the
17   case?
18           A       No.
19           Q       You are not familiar with what
20   I'm about to show you.  I will ask you if
21   you want to take a look at what I marked
22   with a star?
23                   MR. MITCHELL:  Just ask does
24            that refresh his recollection about
25            the date instead of going through the
```

```
 1                    Raphael Pearl            112

 2          14 different layers because it might

 3          or might or might not.

 4                  MR. GRANDINETTE:  Off the

 5          record.

 6                  (Discussion off the record.)

 7          Q     Mr. Pearl, back on the record.

 8   Looking at what has been previously marked

 9   as Plaintiff's Exhibit 25, page 1, does that

10   refresh your recollection as to the date

11   that the DA's office assumed responsibility

12   for the investigation of this shooting?

13          A     No.

14                  MR. MITCHELL:  Objection to

15          form.  You can answer.

16          Q     Okay.  Although it doesn't

17   refresh your recollection, you do recognize

18   that according to at least the Nassau County

19   IAU report it says that on March 4, 2011 the

20   Suffolk County District Attorney's Office

21   informed the Suffolk County Police

22   Department that they were taking over the

23   investigation and the Suffolk County

24   Homicide Bureau was directed to stop

25   investigating the incident?
```

```
 1                    Raphael Pearl            113
 2                MR. SCHROEDER:  Objection to
 3          form.
 4                MR. MITCHELL:  Objection to
 5          form.  I stipulate the document speaks
 6          for itself.
 7          Q      That is what was said?
 8          A      Yes.
 9          Q      Is your knowledge of the case
10     consistent with that statement?
11                MR. MITCHELL:  Objection to
12          form.  You can answer.
13          A      Sure.  The date?
14          Q      It's consistent with --
15          A      It's consistent with March 4th.
16     It could be around March 4th.  Not that
17     whole sentence.
18          Q      On or about March 4th your
19     office took over the investigation of the
20     case?
21          A      Yes.
22          Q      To your knowledge, was the
23     Suffolk County Homicide Squad directed to
24     stop investigating the case?
25          A      I don't know that.
```

```
 1                        Raphael Pearl              114
 2         Q       Did you ever communicate with
 3    the Nassau County Internal Affairs Unit
 4    about their case?
 5         A       No.
 6         Q       Do you know if anyone or who, if
 7    anyone, from your office did communicate
 8    with Nassau County Internal Affairs?
 9              MR. MITCHELL:  Objection to
10         form.
11         A       No.  I don't know if anyone from
12    the office other than -- I won't speculate,
13    but Tony Palumbo might have spoken to the
14    Nassau County IAB.
15         Q       You have no personal knowledge
16    whether any member of the Suffolk IAD's
17    Office spoke with the Nassau County Internal
18    Affairs Unit?
19         A       No.
20              MR. SCHROEDER:  That's correct?
21              THE WITNESS:  That's correct,
22         sorry.
23         Q       I show you what has been marked
24    Plaintiff's Exhibit 146.  The first question
25    I want to ask you is do you recognize
```

```
 1                      Raphael Pearl              185

 2          form.

 3          A       Yes.

 4          Q       But she didn't tell you whether

 5     or not she ever communicated with him?

 6          A       Not that I recall.

 7          Q       Or whether he interfered with

 8     her ability to communicate with him?

 9          A       I don't recall that.  I don't

10     recall her saying anyone interfered with her

11     treating other than all the people in the

12     hospital were making it difficult to do her

13     work.

14          Q       Was the other individual Ed

15     Bienz that he was with?  Was DiLeonardo with

16     Officer Bienz?

17          A       No, it wasn't him.

18          Q       What else did she tell you

19     happened?

20          A       She spoke to Mr. DiLeonardo,

21     spoke to Mr. Bienz.  She spoke to

22     Mr. Moroughan.  She treated Mr. Moroughan.

23     I believe she also indicated that the

24     detectives wanted to speak to all the

25     parties included Mr. Moroughan in the
```

```
1                    Raphael Pearl              186
2          A      No.
3          Q      Were you present when
4    Mr. Moroughan was arrested?
5          A      No.
6          Q      Who told you Officer DiLeonardo
7    arrested Mr. Moroughan?
8          A      Sergeant Lamb.
9          Q      Did Officer DiLeonardo put
10   handcuffs on Mr. DiLeonardo?
11         A      I don't know.
12         Q      Did he take him into custody in
13   any way?
14         A      No.
15         Q      Where did Mr. DiLeonardo
16   allegedly arrest Mr. Moroughan?  Where did
17   he do that?
18         A      I don't know.
19         Q      Did he do that in the hospital?
20         A      Assume so, but I don't know.
21         Q      Was Mr. DiLeonardo a Suffolk
22   County Police Officer?
23         A      No.
24         Q      Was he a Town of Huntington
25   Police Officer?
```

1

2          A        No.

3          Q        Or Village of Huntington Police

4     Officer?

5          A        No.

6          Q        Was he on the Suffolk County

7     payroll?

8          A        Not that I'm aware.

9          Q        When he allegedly made this

10    arrest, was he acting on behalf of the

11    Suffolk County Police?

12         A        No.

13         Q        Was he acting on behalf of

14    Nassau County Police?

15         A        I don't know the answer to that.

16         Q        When did Officer Lamb or

17    Detective Lamb tell you that DiLeonardo

18    arrested Moroughan?

19         A        It would have been during the

20    phone call that early morning hours, late at

21    night, whatever date that was.

22         Q        Did you make any memorandum or

23    notation about that particular fact, that

24    particular phone call where he allegedly

25    said that DiLeonardo arrested him?

```
 1                     Raphael Pearl           188

 2         A      No.

 3         Q      Did you ask him any questions to

 4  follow up on that?

 5         A      Yes.

 6         Q      What did you ask Detective Lamb?

 7         A      How that process was working in

 8  conjunction with who was handling the

 9  arrest, who was handling the shooting.

10  There was a time where there was a

11  discussion of what unit in the Suffolk

12  County Police Department was handling what

13  aspect of the case.

14         Q      Did Officer DiLeonardo fill out

15  any of the Suffolk County paperwork required

16  to formalize the arrest?

17              MR. MITCHELL:  Objection to

18         form.  You can answer.

19         A      If you mean the felony

20  complaint, I don't believe so.

21         Q      Whatever paperwork was required,

22  this arrest was filled out by Suffolk County

23  Police Officers, right?

24              MR. MITCHELL:  Objection to

25         form.  You can answer.
```

```
 1                    Raphael Pearl            189
 2          A       There may have been a supporting
 3   deposition.
 4          Q       That was provided by Officer
 5   DiLeonardo?
 6          A       Yes, but I have to look at the
 7   charges.
 8          Q       There was a statement taken by
 9   Moroughan himself, correct?
10          A       Sorry?
11          Q       There was a statement taken by
12   Mr. Moroughan himself, correct?
13                  MR. GRANDINETTE:  Objection to
14          form.
15                  MR. MITCHELL:  You mean taken
16          of?
17          A       Yes, there's a statement taken
18   of Mr. Moroughan.
19          Q       That was signed by Mr.
20   Moroughan, correct?
21          A       As I recall, yes.
22          Q       Initialed in various places by
23   him as well, correct?
24          A       Yes.
25          Q       Who took that statement from
```

```
 1                 Raphael Pearl              190
 2     him?  Was it Officer DiLeonardo?
 3          A      No.
 4          Q      Was it Suffolk County Police
 5     Officers, correct?
 6          A      Yes.
 7          Q      Did Mr. Moroughan know he was
 8     under arrest when he gave that statement?
 9          A      Yes.
10          Q      Was he in handcuffs when he gave
11     that statement?
12          A      That I don't know.
13          Q      Who told Mr. Moroughan he was
14     under arrest when he gave that statement?
15     Do you know?
16          A      I don't know which detective.
17          Q      When you say that he knew he was
18     under arrest at that time, what is that
19     based upon?
20               MR. MITCHELL:  Objection to
21          form.  You can answer.
22          A      I believe he was Mirandized
23     before he gave the statement.
24          Q      Did Officer DiLeonardo Mirandize
25     him?
```

1                     Raphael Pearl            191

2          A        Not that I believe.

3          Q        Did Detective Lamb Mirandize

4    him?

5          A        I don't know Sergeant Lamb,

6    Detective Lesser.   Team 2 member.

7          Q        Would you believe it was a

8    Suffolk County Police Officer or Detective

9    that Mirandized Mr. DiLeonardo?

10         A        Yes.

11         Q        Certainly Mr. Bienz had nothing

12   to do with the arrest?

13         A        No.

14                  MR. MITCHELL:   I didn't hear the

15         question before that.   Not the one you

16         just asked.

17         Q        Did Officer Bienz have anything

18   to do with the alleged arrest?

19         A        Yes.

20         Q        He arrested him?

21         A        Yes.

22         Q        Did Officer Bienz arrest

23   Mr. Moroughan?

24         A        Sorry, Bienz.   Thinking

25   DiLeonardo.   Say that again.

1                      Raphael Pearl              192

2           Q       Did Officer Bienz arrest

3    Mr. DiLeonardo?

4           A       No.

5           Q       Did Officer Bienz shoot

6    Mr. Mr. Moroughan?

7           A       No.

8           Q       I will start again.  Did Officer

9    Bienz arrest Mr. Moroughan?

10          A       No.

11          Q       Did Officer Bienz shoot

12   Mr. Moroughan?

13          A       No.

14          Q       Did Officer Bienz assault

15   Mr. Moroughan?

16          A       No.

17          Q       Was Officer Bienz run over by

18   Mr. Moroughan?

19              MR. GRANDINETTE:  Objection to

20          form.

21          A       But for the way you describe it

22   run over, yes.

23          Q       Am I correct that Mr. Moroughan

24   was ultimately taken into custody and put

25   into handcuffs while sitting in an office in

294

1

2                       C E R T I F I C A T E

3      STATE OF NEW YORK          )

4                                 ) ss.:

5      COUNTY OF SUFFOLK          )

6

7              I, MARIA PELLICANE, a Notary

8      Public within and for the State of New

9      York, do hereby certify:

10             That RAPHAEL PEARL, the witness

11     whose deposition is hereinbefore set

12     forth, was duly sworn by me and that such

13     deposition is a true record of the

14     testimony given by such witness.

15             I further certify that I am not

16     related to any of the parties to this

17     action by blood or marriage; and that I

18     am in no way interested in the outcome

19     of this matter.

20             IN WITNESS WHEREOF, I have

21     hereunto set my hand this 31st day of

22     December, 2016.

23

24     _____

25              MARIA PELLICANE

```
 1                    Raphael Pearl              292

 2              A C K N O W L E D G M E N T

 3

 4     STATE OF NEW YORK   )
                           :ss
 5     COUNTY OF           )

 6

 7          I, RAPHAEL PEARL, hereby certify

 8     that I have read the transcript of my

 9     testimony taken under oath in my deposition

10     of December 15, 2016; that the transcript is

11     a true, complete and correct record of my

12     testimony, and that the answers on the

13     record as given by me are true and correct.

14

15

16                       _____

17                       RAPHAEL PEARL

18

19

20
       Signed and subscribed to before
21     me, this             day
       of                   , 2016.
22
       _____
23     Notary Public, State of New York

24

25
```

-COPY

1

1

2    UNITED STATES DISTRICT COURT

3    EASTERN DISTRICT OF NEW YORK

4    ---------------------------------------x

5    THOMAS M. MOROUGHAN,

6                   Plaintiff,

7                           Docket No.
                            12-CV-0512
8
9            -against-

     THE COUNTY OF SUFFOLK, SUFFOLK COUNTY POLICE
10   DEPARTMENT, SUFFOLK DETECTIVES RONALD
     TAVARES, CHARLES LESER, EUGENE GEISSINGER,
11   NICHOLAS FAVATTA, and ALFRED CICCOTTO,
     DETECTIVE/SGT. WILLIAM J. LAMB, SGT. JACK
12   SMITHERS, SUFFOLK POLICE OFFICERS WILLIAM
     MEANEY, JESUS FAYA and SUFFOLK JOHN DOES
13   1-10, THE COUNTY OF NASSAU, NASSAU COUNTY
     POLICE DEPARTMENT, SGT. TIMOTHY MARINACI,
14   DEPUTY CHIEF OF PATROL JOHN HUNTER,
     INSPECTOR EDMUND HORACE, COMMANDING OFFICER
15   DANIEL FLANAGAN, DETECTIVE/SGT. JOHN
     DEMARTINIS, NASSAU POLICE OFFICERS ANTHONY
16   D. DILEONARDO, EDWARD BIENZ and JOHN DOES
     11-20,
17
                   Defendants.
18   ---------------------------------------x
                    100 Veterans Highway
19                  Hauppauge, New York

20                  February 17, 2017
                    10:30 a.m.
21
22         (CAPTION CONTINUED ON NEXT PAGE.)

23

24         Rich Moffett Court Reporting, Inc.
          114 Old Country Road, Suite 630
25              Mineola, New York 11501
                   516-280-4664

Raphael Pearl                    207

1

2          A        That would sound consistent.

3          Q        Whether or not he consented, do

4     you know whether or not the hospital ever

5     did those tests?

6          A        Just can't recall.

7          Q        You looked at the copy of the

8     hospital record that was shown to you this

9     morning by Mr. Grandinette.  Did you see any

10    toxicology screening of Mr. Bienz that

11    night?

12         A        No, I did not.

13         Q        Did you consult with anyone with

14    the Nassau County District Attorney's office

15    before deciding to dismiss the charges

16    against Mr. Moroughan?

17         A        I did not.

18         Q        Did you consult with anyone from

19    the Nassau County Police Department before

20    deciding to dismiss the charges against

21    Mr. Moroughan?

22         A        I did not.

23         Q        Did you consult with Officer

24    DiLeonardo before deciding to dismiss the

25    charges against Mr. Moroughan?

```
 1                    Raphael Pearl          208
 2          A      No.
 3          Q      Do you know if District Attorney
 4   Spota consulted with anyone at Nassau County
 5   directing that the charges be dismissed?
 6          A      I don't know.
 7          Q      That was done independent of
 8   Nassau County, correct?
 9                 MR. MITCHELL:  Objection to
10          form.  You can answer.
11          A      I don't know.  I didn't have any
12   contact with Nassau County.
13          Q      Looking at the felony complaint,
14   this is Bates stamped 181.  There's a check
15   indicating that the arrest is based upon a
16   statement given by Officer DiLeonardo,
17   correct?
18          A      Yes, discharged based solely on
19   the information and belief of the statement
20   of Anthony DiLeonardo.
21          Q      Anthony DiLeonardo here is
22   identified as a police officer, correct?
23          A      Correct.
24          Q      That number next to the name, do
25   you know what that number refers to?
```

1                    Raphael Pearl              284

2                A C K N O W L E D G M E N T

3

4       STATE OF NEW YORK     )
                              :ss
5       COUNTY OF             )

6

7            I, RAPHAEL PEARL, hereby certify

8       that I have read the transcript of my

9       testimony taken under oath in my deposition

10      of February 17, 2016; that the transcript is

11      a true, complete and correct record of my

12      testimony, and that the answers on the

13      record as given by me are true and correct.

14

15

16                      _____

17                          RAPHAEL PEARL

18

19

20

        Signed and subscribed to before
21      me, this               day
        of                      , 2017.
22
        _____
23      Notary Public, State of New York

24

25

286

1

2                    C E R T I F I C A T E

3    STATE OF NEW YORK        )

4                             ) ss.:

5    COUNTY OF SUFFOLK        )

6

7               I, MARIA PELLICANE, a Notary

8         Public within and for the State of New

9         York, do hereby certify:

10              That RAPHAEL PEARL, the witness

11        whose deposition is hereinbefore set

12        forth, was duly sworn by me and that such

13        deposition is a true record of the

14        testimony given by such witness.

15              I further certify that I am not

16        related to any of the parties to this

17        action by blood or marriage; and that I

18        am in no way interested in the outcome

19        of this matter.

20              IN WITNESS WHEREOF, I have

21        hereunto set my hand this 6th day of

22        March, 2017.

23

24        ----------_Maui Pellu_____

25                  MARIA PELLICANE