EXHIBIT BB

 COPY

1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

-----------------------------------------x

THOMAS M. MOROUGHAN,

              Plaintiff,

                            Docket No.
                            12-CV-0512

         -against-

THE COUNTY OF SUFFOLK, SUFFOLK COUNTY POLICE
DEPARTMENT, SUFFOLK DETECTIVES RONALD
TAVARES, CHARLES LESER, EUGENE GEISSINGER,
NICHOLAS FAVATTA, and ALFRED CICCOTTO,
DETECTIVE/SGT. WILLIAM J. LAMB, SGT. JACK
SMITHERS, SUFFOLK POLICE OFFICERS WILLIAM
MEANEY, JESUS FAYA and SUFFOLK JOHN DOES
1-10, THE COUNTY OF NASSAU, NASSAU COUNTY
POLICE DEPARTMENT, SGT. TIMOTHY MARINACI,
DEPUTY CHIEF OF PATROL JOHN HUNTER,
INSPECTOR EDMUND HORACE, COMMANDING OFFICER
DANIEL FLANAGAN, DETECTIVE/SGT. JOHN
DEMARTINIS, NASSAU POLICE OFFICERS ANTHONY
D. DILEONARDO, EDWARD BIENZ and JOHN DOES
11-20,

              Defendants.
-----------------------------------------x

              100 Veterans Highway
              Hauppauge, New York

              December 15, 2016
              9:20 a.m.

       (CAPTION CONTINUED ON NEXT PAGE.)


      Rich Moffett Court Reporting, Inc.
       114 Old Country Road, Suite 630
         Mineola, New York 11501
            516-280-4664

familiar with him personally.

Q     Do you know for whom he works

within the Suffolk County Police Department?

A     No.

Q     Next.

A     Suffolk Police Officer Meaney,

I'm not familiar with.  Jesus Favatta, not

familiar with.  Says next, Suffolk John Does

1 through 10.  Want me to keep going, County

of Nassau?

Q     Yes.

A     Sergeant Timothy Marinaci, I do

not know.  Deputy Chief of Patrol John

Hunter, I don't know.  Inspector Edmund

Horace, I don't know.  Commanding Officer

Daniel Flanagan, do not know.  Detective

Sergeant John DeMartinis, do not know.

Police officers Anthony DiLeonardo, Ed Bienz

and John Does.  Obviously, I only know

DiLeonardo and          Mr. Bienz from my

work on this case.

Q     During the course of your career

with the Suffolk County District Attorney's

Office, did you ever meet a Deputy Inspector

```
 1                  Raphael Pearl            111
 2        Q        We are trying to address this by
 3   category.  So that may be easier.  Do you
 4   have any idea of the actual date that the
 5   DA's office took over your investigation?
 6        A        No.
 7        Q        I will show you what has been
 8   previously marked as Plaintiff's Exhibit 25,
 9   page number 1.  It's an IAB summary from the
10   Nassau County Police Department.  IAU number
11   is 27-2011.
12             MR. SCHROEDER:  What is the page
13         number, Tony?
14             MR. GRANDINETTE:  Page number 1.
15        Q        Have you ever seen the Nassau
16   County Internal Affairs Unit report in the
17   case?
18        A        No.
19        Q        You are not familiar with what
20   I'm about to show you.  I will ask you if
21   you want to take a look at what I marked
22   with a star?
23             MR. MITCHELL:  Just ask does
24         that refresh his recollection about
25         the date instead of going through the
```

          14 different layers because it might

          or might or might not.

               MR. GRANDINETTE:  Off the

          record.

               (Discussion off the record.)

          Q     Mr. Pearl, back on the record.

Looking at what has been previously marked

as Plaintiff's Exhibit 25, page 1, does that

refresh your recollection as to the date

that the DA's office assumed responsibility

for the investigation of this shooting?

          A     No.

               MR. MITCHELL:  Objection to

          form.  You can answer.

          Q     Okay.  Although it doesn't

refresh your recollection, you do recognize

that according to at least the Nassau County

IAU report it says that on March 4, 2011 the

Suffolk County District Attorney's Office

informed the Suffolk County Police

Department that they were taking over the

investigation and the Suffolk County

Homicide Bureau was directed to stop

investigating the incident?

2              MR. SCHROEDER:  Objection to

3         form.

4              MR. MITCHELL:  Objection to

5         form.  I stipulate the document speaks

6         for itself.

7         Q    That is what was said?

8         A    Yes.

9         Q    Is your knowledge of the case

10   consistent with that statement?

11             MR. MITCHELL:  Objection to

12        form.  You can answer.

13        A    Sure.  The date?

14        Q    It's consistent with --

15        A    It's consistent with March 4th.

16   It could be around March 4th.  Not that

17   whole sentence.

18        Q    On or about March 4th your

19   office took over the investigation of the

20   case?

21        A    Yes.

22        Q    To your knowledge, was the

23   Suffolk County Homicide Squad directed to

24   stop investigating the case?

25        A    I don't know that.

1

2        Q       Did you ever communicate with

3    the Nassau County Internal Affairs Unit

4    about their case?

5        A       No.

6        Q       Do you know if anyone or who, if

7    anyone, from your office did communicate

8    with Nassau County Internal Affairs?

9            MR. MITCHELL:  Objection to

10       form.

11       A       No.  I don't know if anyone from

12   the office other than -- I won't speculate,

13   but Tony Palumbo might have spoken to the

14   Nassau County IAB.

15       Q       You have no personal knowledge

16   whether any member of the Suffolk IAD's

17   Office spoke with the Nassau County Internal

18   Affairs Unit?

19       A       No.

20           MR. SCHROEDER:  That's correct?

21           THE WITNESS:  That's correct,

22       sorry.

23       Q       I show you what has been marked

24   Plaintiff's Exhibit 146.  The first question

25   I want to ask you is do you recognize

form.

A        Yes.

Q        But she didn't tell you whether
or not she ever communicated with him?

A        Not that I recall.

Q        Or whether he interfered with
her ability to communicate with him?

A        I don't recall that. I don't
recall her saying anyone interfered with her
treating other than all the people in the
hospital were making it difficult to do her
work.

Q        Was the other individual Ed
Bienz that he was with? Was DiLeonardo with
Officer Bienz?

A        No, it wasn't him.

Q        What else did she tell you
happened?

A        She spoke to Mr. DiLeonardo,
spoke to Mr. Bienz. She spoke to
Mr. Moroughan. She treated Mr. Moroughan.
I believe she also indicated that the
detectives wanted to speak to all the
parties included Mr. Moroughan in the

        A       No.

        Q       Were you present when
Mr. Moroughan was arrested?

        A       No.

        Q       Who told you Officer DiLeonardo
arrested Mr. Moroughan?

        A       Sergeant Lamb.

        Q       Did Officer DiLeonardo put
handcuffs on Mr. DiLeonardo?

        A       I don't know.

        Q       Did he take him into custody in
any way?

        A       No.

        Q       Where did Mr. DiLeonardo
allegedly arrest Mr. Moroughan?  Where did
he do that?

        A       I don't know.

        Q       Did he do that in the hospital?

        A       Assume so, but I don't know.

        Q       Was Mr. DiLeonardo a Suffolk
County Police Officer?

        A       No.

        Q       Was he a Town of Huntington
Police Officer?

1

2          A        No.

3          Q        Or Village of Huntington Police

4     Officer?

5          A        No.

6          Q        Was he on the Suffolk County

7     payroll?

8          A        Not that I'm aware.

9          Q        When he allegedly made this

10    arrest, was he acting on behalf of the

11    Suffolk County Police?

12         A        No.

13         Q        Was he acting on behalf of

14    Nassau County Police?

15         A        I don't know the answer to that.

16         Q        When did Officer Lamb or

17    Detective Lamb tell you that DiLeonardo

18    arrested Moroughan?

19         A        It would have been during the

20    phone call that early morning hours, late at

21    night, whatever date that was.

22         Q        Did you make any memorandum or

23    notation about that particular fact, that

24    particular phone call where he allegedly

25    said that DiLeonardo arrested him?

1

2          A      No.

3          Q      Did you ask him any questions to

4    follow up on that?

5          A      Yes.

6          Q      What did you ask Detective Lamb?

7          A      How that process was working in

8    conjunction with who was handling the

9    arrest, who was handling the shooting.

10   There was a time where there was a

11   discussion of what unit in the Suffolk

12   County Police Department was handling what

13   aspect of the case.

14         Q      Did Officer DiLeonardo fill out

15   any of the Suffolk County paperwork required

16   to formalize the arrest?

17              MR. MITCHELL:  Objection to

18         form.  You can answer.

19         A      If you mean the felony

20   complaint, I don't believe so.

21         Q      Whatever paperwork was required,

22   this arrest was filled out by Suffolk County

23   Police Officers, right?

24              MR. MITCHELL:  Objection to

25         form.  You can answer.

          A      There may have been a supporting
deposition.

          Q      That was provided by Officer
DiLeonardo?

          A      Yes, but I have to look at the
charges.

          Q      There was a statement taken by
Moroughan himself, correct?

          A      Sorry?

          Q      There was a statement taken by
Mr. Moroughan himself, correct?

               MR. GRANDINETTE:  Objection to
          form.

               MR. MITCHELL:  You mean taken
          of?

          A      Yes, there's a statement taken
of Mr. Moroughan.

          Q      That was signed by Mr.
Moroughan, correct?

          A      As I recall, yes.

          Q      Initialed in various places by
him as well, correct?

          A      Yes.

          Q      Who took that statement from

2    him?  Was it Officer DiLeonardo?

3         A      No.

4         Q      Was it Suffolk County Police

5    Officers, correct?

6         A      Yes.

7         Q      Did Mr. Moroughan know he was

8    under arrest when he gave that statement?

9         A      Yes.

10        Q      Was he in handcuffs when he gave

11   that statement?

12        A      That I don't know.

13        Q      Who told Mr. Moroughan he was

14   under arrest when he gave that statement?

15   Do you know?

16        A      I don't know which detective.

17        Q      When you say that he knew he was

18   under arrest at that time, what is that

19   based upon?

20             MR. MITCHELL:  Objection to

21        form.  You can answer.

22        A      I believe he was Mirandized

23   before he gave the statement.

24        Q      Did Officer DiLeonardo Mirandize

25   him?

        A       Not that I believe.

        Q       Did Detective Lamb Mirandize
him?

        A       I don't know Sergeant Lamb,
Detective Lesser.  Team 2 member.

        Q       Would you believe it was a
Suffolk County Police Officer or Detective
that Mirandized Mr. DiLeonardo?

        A       Yes.

        Q       Certainly Mr. Bienz had nothing
to do with the arrest?

        A       No.

                MR. MITCHELL:  I didn't hear the
        question before that.  Not the one you
        just asked.

        Q       Did Officer Bienz have anything
to do with the alleged arrest?

        A       Yes.

        Q       He arrested him?

        A       Yes.

        Q       Did Officer Bienz arrest
Mr. Moroughan?

        A       Sorry, Bienz.  Thinking
DiLeonardo.  Say that again.

         Q       Did Officer Bienz arrest

Mr. DiLeonardo?

         A       No.

         Q       Did Officer Bienz shoot

Mr. Mr. Moroughan?

         A       No.

         Q       I will start again.  Did Officer

Bienz arrest Mr. Moroughan?

         A       No.

         Q       Did Officer Bienz shoot

Mr. Moroughan?

         A       No.

         Q       Did Officer Bienz assault

Mr. Moroughan?

         A       No.

         Q       Was Officer Bienz run over by

Mr. Moroughan?

                 MR. GRANDINETTE:  Objection to

         form.

         A       But for the way you describe it

run over, yes.

         Q       Am I correct that Mr. Moroughan

was ultimately taken into custody and put

into handcuffs while sitting in an office in

C E R T I F I C A T E

STATE OF NEW YORK          )

                          ) ss.:

COUNTY OF SUFFOLK          )


        I, MARIA PELLICANE, a Notary
Public within and for the State of New
York, do hereby certify:
        That RAPHAEL PEARL, the witness
whose deposition is hereinbefore set
forth, was duly sworn by me and that such
deposition is a true record of the
testimony given by such witness.
        I further certify that I am not
related to any of the parties to this
action by blood or marriage; and that I
am in no way interested in the outcome
of this matter.
        IN WITNESS WHEREOF, I have
hereunto set my hand this 31st day of
December, 2016.

        ----------------------------
                MARIA PELLICANE

A C K N O W L E D G M E N T

STATE OF NEW YORK    )
                     :ss
COUNTY OF            )


        I, RAPHAEL PEARL, hereby certify

that I have read the transcript of my

testimony taken under oath in my deposition

of December 15, 2016; that the transcript is

a true, complete and correct record of my

testimony, and that the answers on the

record as given by me are true and correct.




                         _____

                         RAPHAEL PEARL




Signed and subscribed to before
me, this            day
of                    , 2016.

_____
Notary Public, State of New York



UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

------------------------------------------x

THOMAS M. MOROUGHAN,

        Plaintiff,

                      Docket No.
                      12-CV-0512

      -against-

THE COUNTY OF SUFFOLK, SUFFOLK COUNTY POLICE
DEPARTMENT, SUFFOLK DETECTIVES RONALD
TAVARES, CHARLES LESER, EUGENE GEISSINGER,
NICHOLAS FAVATTA, and ALFRED CICCOTTO,
DETECTIVE/SGT. WILLIAM J. LAMB, SGT. JACK
SMITHERS, SUFFOLK POLICE OFFICERS WILLIAM
MEANEY, JESUS FAYA and SUFFOLK JOHN DOES
1-10, THE COUNTY OF NASSAU, NASSAU COUNTY
POLICE DEPARTMENT, SGT. TIMOTHY MARINACI,
DEPUTY CHIEF OF PATROL JOHN HUNTER,
INSPECTOR EDMUND HORACE, COMMANDING OFFICER
DANIEL FLANAGAN, DETECTIVE/SGT. JOHN
DEMARTINIS, NASSAU POLICE OFFICERS ANTHONY
D. DILEONARDO, EDWARD BIENZ and JOHN DOES
11-20,

               Defendants.
------------------------------------------x
            100 Veterans Highway
            Hauppauge, New York

            February 17, 2017
            10:30 a.m.

      (CAPTION CONTINUED ON NEXT PAGE.)

        Rich Moffett Court Reporting, Inc.
        114 Old Country Road, Suite 630
          Mineola, New York 11501
             516-280-4664

        A        That would sound consistent.

        Q        Whether or not he consented, do
you know whether or not the hospital ever
did those tests?

        A        Just can't recall.

        Q        You looked at the copy of the
hospital record that was shown to you this
morning by Mr. Grandinette.  Did you see any
toxicology screening of Mr. Bienz that
night?

        A        No, I did not.

        Q        Did you consult with anyone with
the Nassau County District Attorney's office
before deciding to dismiss the charges
against Mr. Moroughan?

        A        I did not.

        Q        Did you consult with anyone from
the Nassau County Police Department before
deciding to dismiss the charges against
Mr. Moroughan?

        A        I did not.

        Q        Did you consult with Officer
DiLeonardo before deciding to dismiss the
charges against Mr. Moroughan?

2        A     No.

3        Q     Do you know if District Attorney
4    Spota consulted with anyone at Nassau County
5    directing that the charges be dismissed?

6        A     I don't know.

7        Q     That was done independent of
8    Nassau County, correct?

9             MR. MITCHELL:  Objection to
10            form.  You can answer.

11       A     I don't know.  I didn't have any
12   contact with Nassau County.

13       Q     Looking at the felony complaint,
14   this is Bates stamped 181.  There's a check
15   indicating that the arrest is based upon a
16   statement given by Officer DiLeonardo,
17   correct?

18       A     Yes, discharged based solely on
19   the information and belief of the statement
20   of Anthony DiLeonardo.

21       Q     Anthony DiLeonardo here is
22   identified as a police officer, correct?

23       A     Correct.

24       Q     That number next to the name, do
25   you know what that number refers to?

A C K N O W L E D G M E N T


STATE OF NEW YORK      )
                       :ss
COUNTY OF              )


     I, RAPHAEL PEARL, hereby certify

that I have read the transcript of my

testimony taken under oath in my deposition

of February 17, 2016; that the transcript is

a true, complete and correct record of my

testimony, and that the answers on the

record as given by me are true and correct.




                _____

                RAPHAEL PEARL




Signed and subscribed to before
me, this            day
of                    , 2017.
_____
Notary Public, State of New York

1

2                    C E R T I F I C A T E

3      STATE OF NEW YORK          )

4                                 ) ss.:

5      COUNTY OF SUFFOLK          )

6

7              I, MARIA PELLICANE, a Notary

8      Public within and for the State of New

9      York, do hereby certify:

10             That RAPHAEL PEARL, the witness

11     whose deposition is hereinbefore set

12     forth, was duly sworn by me and that such

13     deposition is a true record of the

14     testimony given by such witness.

15             I further certify that I am not

16     related to any of the parties to this

17     action by blood or marriage; and that I

18     am in no way interested in the outcome

19     of this matter.

20             IN WITNESS WHEREOF, I have

21     hereunto set my hand this 6th day of

22     March, 2017.

23

24     ----------------------------------

25                    MARIA PELLICANE