UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

THOMAS M. MOROUGHAN,

                             Plaintiff,

-against-

THE COUNTY OF SUFFOLK, SUFFOLK COUNTY
POLICE DEPARTMENT, SUFFOLK DETECTIVES
RONALD TAVARES, CHARLES LESER, EUGENE
GEISSINGER, NICHOLAS FAVATTA and ALFRED
CICCOTTO, DETECTIVE/SGT. WILLIAM J. LAMB,
SGT. JACK SMITHERS, SUFFOLK POLICE OFFICERS
WILLIAM MEANEY and JESUS FAYA and SUFFOLK
JOHN DOES 1-10, THE COUNTY OF NASSAU, NASSAU
COUNTY POLICE DEPARTMENT, SGT. TIMOTHY
MARINACI, DEPUTY CHIEF OF PATROL JOHN
HUNTER, INSPECTOR EDMUND HORACE,
COMMANDING OFFICER DANIEL FLANAGAN,
DETECTIVE/SGT. JOHN DEMARTINIS, NASSAU
POLICE OFFICERS ANTHONY D. DILEONARDO,
EDWARD BIENZ and JOHN DOES 11-20,

                             Defendants.

Case No.: 12-cv-0512
(JFB)(AKT)

**DEFENDANT DEPUTY CHIEF OF PATROL JOHN HUNTER'S
REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF HIS MOTION FOR SUMMARY JUDGMENT**

Annemarie S. Jones, Esq.
LEWIS JOHS AVALLONE AVILES, LLP
One CA Plaza, Suite 225
Islandia, New York 11749
T: 631.755.0101
F: 631.755.0117
E-Mail: asjones@lewisjohs.com

*Attorneys for Defendant*
*Deputy Chief of Patrol John Hunter*

# TABLE OF CONTENTS

|  | Page |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| ARGUMENT | 2 |
| I. PLAINTIFF'S 56.1 RESPONSE TO HUNTER IS IMPROPER | 2 |
| II. FACTS CONCEDED BY PLAINTIFF IN RESPONSE TO HUNTER'S 56.1 STATEMENT | 2 |
|     A. Plaintiff's Allegations relating to the DFRT Report are a Red Herring | 4 |
| III. PLAINTIFF'S FIVE SEPARATE CAUSES OF ACTION FOR SECTION 1983 CONSPIRACY SHOULD BE DISMISSED | 4 |
|     A. It is an Impossibility that Hunter Participated in the Alleged Conspiracy to Arrest Moroughan | 5 |
|     B. The Alleged Conspiracy to Criminally Charge Moroughan is Speculative and Not Supported by Any Admissible Evidence | 6 |
| IV. PLAINTIFF'S SECTION 1983 CLAIM BASED UPON FALSIFIED DOCUMENTS SHOULD BE DISMISSED | 8 |
| V. CONCLUSION | 11 |

# TABLE OF AUTHORITIES

**Case**                                                                                                                    **Page(s)**

*Baity v. Kralik*, 51 F. Supp.
    51 F. Supp. 3d 414 (S.D.N.Y. 2014)..................................................................................2

*Brutus v. Silverseal Corp.*,
    No. 06 Civ. 15298, 2009 WL 4277077 (S.D.N.Y. Nov. 24, 2009) ..........................................9

*Colon v. Coughlin*,
    58 F.3d 865 (2d Cir. 1995)......................................................................................................10

*Fiedler v. Incandela*,
    222 F. Supp. 3d 141 (E.D.N.Y. 2016) .....................................................................................5

*Goldstick v. The Hartford, Inc.*,
    No. 00 Civ. 8577, 2002 WL 1906029 (S.D.N.Y. Aug. 19, 2002) ............................................2

*Jovanovic v. City of New York*,
    486 F.App'x 149 (2d Cir. 2012) ...............................................................................................8

*Lozada v. Weilminster*,
    92 F. Supp. 3d 76 (E.D.N.Y. 2015) .........................................................................................8

*McGuire v. Village of Tarrytown*,
    No. 08 Civ. 2049, 2011 WL 2623466 (S.D.N.Y. June 22, 2011).............................................8

*Poux v. Cty. of Suffolk*,
    No. 09 CV 3081, 2012 WL 1020302 (E.D.N.Y. Mar. 23, 2012) .............................................5

*Reyes v. Fairfield Prop.*,
    661 F. Supp. 2d 249 (E.D.N.Y. 2009) .....................................................................................9

*Scotto v. Almenas*,
    143 F.3d 105 (2d Cir. 1998).....................................................................................................8

*Thomas v. Egan*,
    1 F.App'x. 52 (2d Cir. 2001) ...................................................................................................9

*Torres v. City of New York*,
    16 Civ. 6719, 2017 WL 4325822 (E.D.N.Y. Sept. 27, 2017)..................................................9

*Zahrey v. City of New York*,
    No. 98–4546, 2009 WL 1024261 (S.D.N.Y. Apr. 15, 2009)....................................................8

*Zahrey v. Coffey*,
    221 F.3d 342 (2d Cir. 2000)..................................................................................................9

**Rules and Statutes**                                                                                           **Page(s)**

42 U.S.C. § 1983................................................................................................................1, 4, 8

**PRELIMINARY STATEMENT**

Defendant Deputy Chief of Patrol John Hunter ("Hunter"), by and through his attorneys, Lewis Johs Avallone Aviles, LLP, submits this Reply Memorandum of Law in further support of his Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 against Plaintiff Thomas M. Moroughan ("Plaintiff" or "Moroughan"), as well as against the Suffolk County Defendants' cross-claim.

In opposition, Plaintiff withdraws the following causes of action: (1) the official capacity claims against Hunter; (2) Count XVI - 42 U.S.C. § 1983 Fifth Amendment Violations; and (3) Count XXV – State Law Right to Counsel Violation. The remaining causes of action against Hunter are: (1) Counts I, II, III, IV, V - 42 U.S.C. § 1983 Conspiracy; and (2) Count XVIII - 42 U.S.C. § 1983 Due Process Violation.

Briefly, Hunter was the Deputy Chief of Patrol of the Nassau County Police Department ("NCPD") Deadly Force Response Team ("DFRT"). The DFRT is a NCPD administrative team that responds to incidents involving the use of deadly physical force by members of the NCPD. The team also conducts a preliminary administrative investigation and prepares a written report, which is due to the Commissioner of the NCPD by the end of the next business day following the deadly force incident. Plaintiff concedes that Hunter was not present at 0115 hours on February 27, 2011 when the shooting occurred on Oakwood Road, Huntington Station, Suffolk County, New York that is the subject of this lawsuit. Rather, Hunter's involvement began between 0330 and 0400 hours on February 27, 2011 when he received a phone call advising him of the shooting. Hunter was sleeping when he received this phone call. He arrived at Oakwood Road in Huntington Station at approximately 0439 hours. Thereafter, he arrived at Huntington Hospital between 0600 and 0630 hours; more than five hours after the shooting occurred. Within twenty-

1

four hours, Hunter reported to the NCPD Commissioner both verbally and with the DFRT Report. Plaintiff concedes the DFRT report was never provided to the SCPD or the Suffolk County District Attorney's Office.

Hunter played no role in the arrest or prosecution of Moroughan. Nor did Hunter conspire to have Moroughan arrested, charged, or prosecuted. There are no material questions of fact sufficient to require a trial with respect to Hunter. For the foregoing reasons, all claims against Hunter should be dismissed with prejudice.[1]

## ARGUMENT

### I. PLAINTIFF'S 56.1 RESPONSE TO HUNTER IS IMPROPER.

Plaintiff's response to Hunter's 56.1 statement should not be considered by this Court. It improperly interjects arguments and/or immaterial facts without specifically controverting the facts asserted by Hunter. *See Baity v. Kralik*, 51 F. Supp. 3d 414, 417-18 (S.D.N.Y. 2014); *Goldstick v. The Hartford, Inc.*, No. 00 Civ. 8577, 2002 WL 1906029 (S.D.N.Y. Aug. 19, 2002). Plaintiff counsel's use of thirty-six (36) footnotes in his 56.1 response to Hunter is similarly distracting and impedes the ability for counsel and this Court to determine which facts are controverted.

### II. FACTS CONCEDED BY PLAINTIFF IN RESPONSE TO HUNTER'S 56.1 STATEMENT.

Plaintiff concedes the following material facts:[2]

| Hunter 56.1 Paragraph Reference | Admissions made by Plaintiff in response to Hunter's 56.1 Statement |
|---|---|

---

[1] DiLeonardo did not move for summary judgment. In the event all claims are dismissed against the moving defendants, the case will presumably proceed against DiLeonardo.

[2] Plaintiff has a global objection to the use of the word "preliminary" to describe the DFRT report. Plaintiff, however, cites to the NCPD ADM 1221 which uses the phrase "initial account." Whether the report is an initial account, or a preliminary report, this is largely semantics.

2

| Hunt. 56.1 ¶13 | Hunter was not present for the road rage incident or the shooting. |
| --- | --- |
| Hunt. 56.1 ¶14 | The NCPD DFRT is an administrative team which responds to incidents involving the use of deadly physical force by members of the NCPD. The team conducts a [preliminary] administrative investigation and prepares a written [preliminary] report to the Commissioner of the NCPD. |
| Hunt. 56.1 ¶15 | This DFRT [preliminary] report is due to the NCPD Commissioner before the end of the next business day following the deadly force incident. |
| Hunt. 56.1 ¶17 | With respect to the incident in question, on February 27, 2011, Hunter's involvement began between 0330 and 0400 hours when he received a phone call advising him of a shooting involving two off-duty NCPD officers on Oakwood Road in Huntington Station. |
| Hunt. 56.1 ¶19 | When Hunter received the phone call, he was sleeping and the phone call woke him up. |
| Hunt. 56.1 ¶22 | Hunter's involvement in this incident began more than two hours after the shooting took place. |
| Hunt. 56.1 ¶24 | Hunter arrived at the crime scene on Oakwood Road in Huntington Station at approximately 0439 hours. |
| Hunt. 56.1 ¶28 | At that time, the SCPD detective did not give Hunter any substantive information. |
| Hunt. 56.1 ¶35 | [Hunter] arrived at Huntington Hospital between 0600 and 0630 hours. |
| Hunt. 56.1 ¶39 | Hunter did not speak to Thomas M. Moroughan at any point in time. |
| Hunt. 56.1 ¶43 | At some point in time, Horace and Hunter had a discussion that this was a criminal investigation conducted by SCPD because the incident occurred in Suffolk County. Accordingly, the NCPD DFRT's role was to conduct a [preliminary] administrative investigation. Hunter decided that the DFRT was not going to question Officers DiLeonardo and Bienz about the facts of the incident because there was an ongoing SCPD investigation. |
| Hunt. 56.1 ¶54 | As to Officer Bienz, Jillian Bienz, and Sophia Cornia, Hunter did not see any signs of intoxication when he spoke to them.  (*See* also response to paragraph 55). |
| Hunt. 56.1 ¶55 | As to Office DiLeonardo, Hunter did not see any signs of intoxication when he spoke to him. |
| Hunt. 56.1 ¶60 | Moroughan did not ask Hunter if he could speak with a lawyer. |
| Hunt. 56.1 ¶61 | Moroughan did not ask Hunter if he could speak to Risco Lewis. |
| Hunt. 56.1 ¶62 | Moroughan never spoke to Hunter. |
| Hunt. 56.1 ¶63 | Hunter never spoke to Moroughan. |
| Hunt. 56.1 ¶64 | At no point on February 27, 2011 did anyone from SCPD inform Hunter that they may have detected the smell of alcohol on Officers DiLeonardo and Bienz. |
| Hunt. 56.1 ¶66 | At no point in time on February 27, 2011 did any Huntington Hospital medical personnel inform Hunter that they may have detected the smell of alcohol on Officers DiLeonardo or Bienz. |
| Hunt. 56.1 ¶88 | Hunter did not charge Moroughan with a crime. |
| Hunt. 56.1 ¶89 | Hunter did not arrest Moroughan. |
| Hunt. 56.1 ¶91 | Hunter did not provide a copy of the DFRT Report (Exhibit 4) to SCPD. |
| Hunt. 56.1 ¶93 | Hunter never provided a copy of the DFRT Report to the Suffolk County |

|               |                                                                                                                                                                                                                                 |
| ------------- | ------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
|               | District Attorney's Office.                                                                                                                                                                                                     |
| Hunt. 56.1 ¶95 | Hunter never spoke with anyone from the Suffolk County District Attorney's Office regarding the February 27, 2011 incident.                                                                                                    |
| Hunt. 56.1 ¶97 | Hunter did not provide any information to the Suffolk County District Attorney's Office regarding the February 27, 2011 incident.                                                                                              |
| Hunt. 56.1 ¶105 | (response) Plaintiff admits that Dep. Chief Hunter was not in the room when Det. Travares and Det. Leser obtained Moroughan's signature on the 'statement,' and that Dep. Chief Hunter did not draft any part of what's contained on that 'statement.' |
| Hunt. 56.1 ¶101 | Hunter did not draft the document that was previously marked as Plaintiff's Exhibit 29 (Exhibit 5) regarding the New York State Workers' Compensation Board.                                                                   |

### A. *Plaintiff's Allegations relating to the DFRT Report are a Red Herring*

Plaintiff concedes Hunter did not speak to DiLeonardo and Bienz until 6:20-7:00 AM. *See* Resp. to Hunter's 56.1 ¶ 44. Plaintiff concedes that Hunter did not see any signs of intoxication when he spoke to Officers DiLeonardo and Bienz. *See* Resp. to Hunter's 56.1 ¶¶ 44, 54, 55.

Even if the DFRT report contained misstatements (regarding intoxication or any other issue), Plaintiff concedes that Hunter never gave the DFRT report to anyone from SCPD or the Suffolk County District Attorney's Office. *See* Resp. to Hunter's 56.1 ¶¶ 91, 93, 95. Accordingly, the DFRT report could not (and did not) play any role in the arrest or prosecution of Moroughan. Plaintiff's references to this report are a red herring. Based upon Plaintiff's concessions and the irrelevancy of the DFRT Report, it begs the question, what exactly does Plaintiff allege Hunter did? Plaintiff appears to allege Hunter (together with the other members of the DFRT) conspired with the Suffolk County Police Department Homicide Squad ("SCPD") to have Moroughan arrested and criminally charged.

### III. PLAINTIFF'S FIVE SEPARATE CAUSES OF ACTION FOR SECTION 1983 CONSPIRACY SHOULD BE DISMISSED.

For the reasons set forth in Defendants' motions for summary judgment, the underlying Section 1983 claims must be dismissed. "[I]t is well established that "a § 1983 conspiracy claim

4

fails as a matter of law where there is no underlying constitutional violation." *Fiedler v. Incandela*, 222 F. Supp. 3d 141, 165 (E.D.N.Y. 2016) (citations omitted). Additionally, for the reasons set forth in Defendants' motions, there was probable cause to arrest Plaintiff. There is no evidence in the available record that any information became known to Defendants that would vitiate probable cause after the arrest and before the prosecution was turned over to the Suffolk County District Attorney's Office.

Even if this Court addresses Plaintiff's five separate counts of conspiracy, these claims are meritless. "To defeat a motion for summary judgment on a conspiracy claim, the non-moving party may not rely on conclusory allegations or unsubstantiated speculation." *Poux v. Cty. of Suffolk*, No. 09 CV 3081, 2012 WL 1020302, at *30 (E.D.N.Y. Mar. 23, 2012) (citation omitted). Plaintiff's concessions in response to Defendants' 56.1 Statements demonstrate there are no material questions of fact sufficient to warrant a trial as to Hunter.

### A. It is an Impossibility that Hunter Participated in the Alleged Conspiracy to Arrest Moroughan.

Plaintiff's allegation that Hunter was involved in a conspiracy to have Moroughan *arrested* is controverted by Plaintiff's admissions:

|  | **Admissions by Plaintiff** |
|---|---|
| **Plaintiff's Response to Nassau 56.1 ¶ 98, 119, 120, 121** | According to Plaintiff, when D./Sgt. William Lamb arrived at Huntington Hospital at approximately 0415 hours, he was advised that Moroughan was **already under arrest** by Nassau County.<br>Plaintiff notes that Moroughan's arrest paperwork states he was arrested by DiLeonardo at **0115 hours**. (emphasis added) |
| **Hunt. 56.1 ¶ 17** | With respect to the incident in question, on February 27, 2011, Hunter's involvement began between **0330 and 0400 hours** when he received a phone call advising him of a shooting involving two off-duty NCPD officers on Oakwood Road in Huntington Station. (emphasis added) |
| **Hunt. 56.1 ¶ 19** | When Hunter received the phone call, he was sleeping and the phone call woke him up. |

By Plaintiff's account, Moroughan was arrested at 0115 hours while Hunter was sleeping. It is an impossibility that Hunter conspired to arrest Moroughan.

### B. The Alleged Conspiracy to Criminally Charge Moroughan is Speculative and Not Supported by Any Admissible Evidence.

Plaintiff alleges that members of the NCPD DFRT and the SCPD Homicide Squad conspired to criminally charge Moroughan. Plaintiff bases this alleged conspiracy on Hunter's presence at Huntington Hospital with members of the SCPD Homicide Squad and NCPD DFRT in the public waiting area (also referred to as the emergency room). Plaintiff's theory of conspiracy is premised on an alleged conversation in which "the members of the NCPD DFRT, together with the members of the SCPD Homicide Squad, agreed to criminally charge Moroughan, and determined the specific charges to be brought against him." Resp. to Hunter's 56.1 ¶ 38. Plaintiff provides no citation, reference to testimony, or reference to any document that an agreement was reached between the SCPD Homicide Squad and the NCPD DFRT to charge Moroughan. Plaintiff does not provide the time this conversation allegedly took place, nor does Plaintiff allege what was said by whom during this alleged conversation.

In addition to not being supported by any evidence, the conspiracy claim is illogical because Plaintiff alleges that the conspiracy occurred while they were all standing <u>in a public area within the emergency room</u> in Huntington Hospital <u>within earshot of both Moroughan and Risco Lewis</u>. *See* Resp. to Hunter's 56.1 ¶ 59. According to Plaintiff, "it was not a private conversation" *See* Resp. to Hunter's 56.1 ¶ 38, at 20.

Plaintiff repeatedly alleges that Hunter and the others heard certain statements allegedly made by Moroughan and Risco Mention-Lewis because they were all near each other in the Hospital. *See* Resp. to Hunter's 56.1 ¶ 59. According to Plaintiff's 56.1 response, Moroughan and Risco Lewis were "within 15 to 20 feet" from where this alleged conversation took place.

*See* Resp. to Hunter's 56.1 ¶ 38, at 19. If, according to Plaintiff, the NCPD DFRT and SCPD Homicide Sqaud could hear what Moroughan and Risco Lewis were saying, Moroughan and Risco Mention-Lewis would have been able to hear what the SCPD and NCPD were saying. Yet, Risco Mention-Lewis did not offer any testimony that she saw the NCPD and SCPD officers whispering, huddling, talking in each other's ears, or any conduct that could be reasonably be inferred as indicative of a conspiracy forming in a public area. *See generally*, Pl.'s Ex. 41 and 42 (Risco Mention-Lewis Trans.). Nor did Moroughan testify to seeing or hearing any such conduct. *See generally*, Pl.'s Ex. 16 and 118 (Moroughan Trans.)

Plaintiff also references an email at 6:48 AM between Hunter and NCPD Chief Hannon, stating: "they will begin processing the arrest of the taxicab driver for Assault 2 and menacing." *See* Pl.'s Ex. 46. Plaintiff concedes that the actual charges by SCPD against Moroughan differed from the charges in the email: "Moroughan was ultimately charged with 'Assault 2,' however the 'menacing' charge was substituted by a charge for Reckless Endangerment in the Second Degree." *See* Resp. to Hunter's 56.1, n.11. Plaintiff does not offer any evidence as to how this email establishes a conspiracy. According to Plaintiff, when this email was sent, Moroughan had been arrested many hours prior. *See* Resp. to Nassau 56.1 ¶¶ 98, 119, 120, 121. At the most, this email demonstrates that Hunter, having thirty four years on the force, was able to deduce what he thought the charges were going to be *or* that SCPD conveyed the charges to him (after SCPD determined, independently, what the chargers were going to be).[3] There is no evidence that Hunter played any role in conspiring with SCPD to determine what the charges against Moroughan were going to be. And, once again, the ultimate charges differed from the charges in Hunter's email to NCPD Chief Hannon.

---

[3] At his deposition, Hunter did not recall this email. Hunter Ex. 8, 222-236:1-25.

7

In sum, "[p]laintiff's own unsubstantiated speculation and allegations do not support finding a genuine issue of material fact as to the alleged conspiracy." *Lozada v. Weilminster*, 92 F. Supp. 3d 76, 92 (E.D.N.Y. 2015) (citing *Scotto v. Almenas*, 143 F.3d 105, 114-15 (2d Cir. 1998) (finding allegations that a communications took place insufficient to show conspiracy, noting that "the non-moving party may not rely on conclusory allegations or unsubstantiated speculation") (citations omitted); *see also McGuire v. Village of Tarrytown*, No. 08 Civ. 2049, 2011 WL 2623466, at *5 (S.D.N.Y. June 22, 2011) (holding that speculation that police acted only in solidarity to fellow officers and not pursuant to probable cause insufficient to defeat summary judgment). The case law in the Second Circuit is clear that if the evidence shows that the defendants merely worked together, or communicated generally with each other, such allegations are routinely dismissed. *See Scotto v. Almenas*, 143 F.3d 105, 114-15 (2d Cir. 1998) (concluding that "several telephone calls and other communications" were not sufficient to show conspiracy); *Zahrey v. City of New York*, No. 98–4546, 2009 WL 1024261, at *11 (S.D.N.Y. Apr. 15, 2009) (dismissing conspiracy claim where plaintiff "provide[d] no evidence, absent the fact that the Individual Defendants worked together, that ... an agreement existed"). Plaintiff's claim is based upon speculation and conjecture. It is respectfully submitted that no material questions of fact remain and the conspiracy claims should be dismissed.

## IV. PLAINTIFF'S SECTION 1983 CLAIM BASED UPON FALSIFIED DOCUMENTS SHOULD BE DISMISSED.

A plaintiff establishes a constitutional violation for the denial of his right to a fair trial based on the fabrication of evidence if he proves that "an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) *forwards that information to prosecutors*, and (5) the plaintiff suffers a deprivation of liberty as a result." *Jovanovic v. City of New York*, 486 F.App'x 149, 152 (2d Cir. 2012) (emphasis added).

In opposition, Plaintiff concedes the NCPD DFRT Report was never given to any member of the SCPD or the Suffolk County District Attorney's Office.

Although not pleaded in the Second Amended Complaint, Plaintiff, in opposition to this motion, appears to add a new theory with respect to fabricated evidence. In opposition, Plaintiff now argues that Hunter "had Sgt. Marinace fabricate the Firearms Discharge Report." Plt.'s Memo of Law at 20. Because this theory is raised for the first time in opposition to Hunter's motion, it should not be considered by the Court. *See Thomas v. Egan*, 1 F.App'x. 52, 54 (2d Cir. 2001); *Reyes v. Fairfield Prop.*, 661 F. Supp. 2d 249, 263 (E.D.N.Y. 2009); *Brutus v. Silverseal Corp.*, No. 06 Civ. 15298, 2009 WL 4277077, at *1 n.2 (S.D.N.Y. Nov. 24, 2009). Even if this new theory is considered by this Court, for the reasons stated in Sgt. Marinace's motion papers, the Firearms Discharge Report was not fabricated.

Even if this Court finds the Firearms Discharge Report was fabricated, the Firearms Discharge Report was never given to anyone from Suffolk County and could not (and did not) play any role in Moroughan's arrest or prosecution. To have a cognizable claim for the denial of the right to a fair trial, a plaintiff must establish a causal connection between the fabricated evidence and his deprivation of liberty. *See Zahrey v. Coffey*, 221 F.3d 342, 348, 355 (2d Cir. 2000) ("The manufacture of false evidence, in and of itself . . . does not impair anyone's liberty, and therefore does not impair anyone's constitutional right," and the "deprivation of liberty of which [plaintiff] complains [must] be shown to be the result of [the defendant's] fabrication of evidence."); *Torres v. City of New York*, 16 Civ. 6719, 2017 WL 4325822 (E.D.N.Y. Sept. 27, 2017).

Second, there is absolutely no admissible evidence that Hunter "had" Sgt. Marinace fabricate the Firearms Discharge Report. *See* Plt.'s Memo of Law at 20. Plaintiff provides no

citation for this new theory. In response to Nassau's 56.1 statement, Plaintiff provides a six (6) page account of what transpired with respect to the Firearms Discharge Report. Plaintiff makes no reference to Hunter "having" Sgt. Marinance fabricate the report. *See* Resp. to Nassau's 56.1 statement ¶ 237, at 178-183.

Similarly, with respect to the Worker's Compensation Forms (also a new theory raised in opposition to Hunter's motion), in response to Nassau's 56.1 statement, Plaintiff does not allege that Hunter played any role in the preparation of these forms. *See* Resp. to Nassau's 56.1 statement ¶ 238, at 184-192. There is similarly no evidence that this form played any role in the arrest or prosecution of Moroughan.

Any claim regarding fabrication of evidence must be dismissed as to Hunter because there is no admissible evidence that Hunter was personally involved in any *Brady* violation. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). The claims must further be dismissed because the DFRT Report, the Firearms Discharge Report, and the Worker's Compensation Forms were not given to the Suffolk County District Attorney's Office or SCPD and are not causally related to any constitutional violation or damage allegedly sustained by Moroughan.

## **CONCLUSION**

Hunter replies upon his moving papers for all arguments not addressed in this reply, including the defense of qualified immunity. Hunter adopts and incorporates the qualified immunity arguments as set forth in the Nassau Defendants' (DFRT) motion. Hunter respectfully requests that the Court grant his motion for summary judgment, and dismiss Plaintiff's Second Amended Complaint with respect to each and every claim for relief asserted against Hunter with prejudice, and grant such other and further relief as the Court may deem just and proper.

Dated: Islandia, New York
      July 12, 2019

                                              /s/
                                        Annemarie S. Jones