UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
THOMAS M. MOROUGHAN,

                                 Plaintiff,

            -against-

THE COUNTY OF SUFFOLK, SUFFOLK COUNTY
POLICE DEPARTMENT, SUFFOLK DETECTIVES
RONALD TAVARES, CHARLES LESER, EUGENE
GEISSINGER, NICHOLAS FAVATTA, and ALFRED
CICCOTTO, DETECTIVE/SGT. WILLIAM J. LAMB,
SGT. JACK SMITHERS, SUFFOLK POLICE OFFICERS
WILLIAM MEANEY and JESUS FAYA, and SUFFOLK
JOHN DOES 1-10, THE COUNTY OF NASSAU,
NASSAU COUNTY POLICE DEPARTMENT, SGT.
TIMOTHY MARINACI, DEPUTY CHIEF OF PATROL
JOHN HUNTER, INSPECTOR EDMUND HORACE,
COMMANDING OFFICER DANIEL FLANAGAN,
DETECTIVE/SGT. JOHN DEMARTINIS, NASSAU
POLICE OFFICERS ANTHONY D. DILEONARDO,
EDWARD BIENZ and JOHN DOES 11-20,

                              Defendants.
-----------------------------------------------------------------------X

**12-CV-0512**
**(JFB) (AKT)**

 

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
SUFFOLK COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

 

                         Mirel Fisch
                         The Law Office of Anthony M. Grandinette
                         *Attorneys for Plaintiff*
                         114 Old Country Road, Suite 420
                         Mineola, New York 11501
                         (516) 877-2889

# TABLE OF CONTENTS

TABLE OF CONTENTS ………………………………………………………………… i

TABLE OF AUTHORITIES ………………………………………………………… iii

PRELIMINARY STATEMENT ………………………………………………….... 1

ARGUMENT …………………………………………………………………………… 1

I.      LEGAL STANDARD ON A MOTION FOR SUMMARY JUDGMENT …………. 1

II.     THE EVIDENCE SUPPORTS A REASONABLE FINDING THAT
        THE SUFFOLK DEFENDANTS ARRESTED MOROUGHAN,
        AND THAT THEY CHARGED HIM WITH ASSAULT IN THE
        SECOND DEGREE AND RECKLESS ENDANGERMENT IN THE
        SECOND DEGREE WITHOUT PROBABLE CAUSE …………………………… 3

        A.   The evidence is sufficient for a reasonable jury to find that Det.
             Tavares, Det. Leser, and D/Sgt. Lamb, not DiLeonardo, arrested
             Moroughan, and the three 'facts' the Suffolk Defendants refer to
             are entirely refuted …………………………………………………………… 3

        B.   The evidence is sufficient for a reasonable jury to find that there
             was no probable cause to "arrest the plaintiff for Assault in the
             Second Degree and Reckless Endangerment in the Second Degree,"
             and that the Suffolk Defendants therefore conspired to falsely arrest
             Moroughan ……………………………………………………………………… 6

III.    THE EVIDENCE IS SUFFICIENT FOR A REASONABLE JURY
        TO FIND THAT DET. TAVARES, DET. LESER, AND DET.
        CICCOTTO INITIATED THE CRIMINAL PROCEEDINGS
        AGAINST MOROUGHAN, IN ADDITION TO D/SGT. LAMB,
        AND THAT THEY DID SO WITHOUT PROBABLE CAUSE ………………….. 11

        A.   Det. Tavares and Det. Leser initiated the criminal proceedings
             against Moroughan given that, among other things, they
             determined which charges should be filed against him, prepared
             the charging documents, fabricated documents to the support the
             charges, misrepresented the true facts to the prosecutor, and
             otherwise acted in bad faith, and Det. Ciccotto did so by
             knowingly eliciting and fabricating inculpatory statements …………………… 11

        B.   Regardless of who arrested Moroughan, probable cause did not
             exist, and even if it did, it had dissipated before Moroughan was

charged with Assault in the Second Degree and Reckless
Endangerment in the Second ……………………………………………... 18

C.  The Suffolk Defendants are not entitled to qualified immunity
given that the right to be free from prosecution absent probable
cause was clearly established, and it was not objectively reasonable
to charge Moroughan with felony assault when not even *one*
element was met, or to charge him with recklessly endangering
DiLeonardo without any knowledge as to whether the taxi posed
any risk of striking DiLeonardo …………………………………………... 27

IV.   THE EVIDENCE SUPPORTS A REASONABLE FINDING THAT
THE SUFFOLK DEFENDANTS VIOLATED MOROUGHAN'S
DUE PROCESS RIGHTS BY FABRICATING EVIDENCE,
WHICH DEPRIVED HIM OF HIS LIBERTY ……………………………… 31

V.    THE RECORD IS REPLETE WITH EVIDENCE
DEMONSTRATING THAT DEFENDANTS COMMITTED
OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY,
AND THAT MOROUGHAN'S CONSTITUTIONAL RIGHTS
WERE THEREFORE VIOLATED …………………………………………... 36

VI.   THE SUFFOLK DEFENDANTS FAILED TO DEMONSTRATE
THEIR ENTITLED TO SUMMARY JUDGMENT ON ANY OF
MOROUGHAN'S PENDANT STATE LAW CLAIMS …………………….. 39

CONCLUSION ………………………………………………………………………… 40

# TABLE OF AUTHORITIES

**Page(s)**

## <u>Cases</u>

*Abreu v. City of New York*,
　2006 WL 401651 (E.D.N.Y. Feb. 22, 2006) ………………………………………… 31, 34

*Achtman v. Kirby*, *McInerney & Squire, LLP*,
　464 F.3d 328 (2d Cir. 2006) ………………………………………………..………… 40

*Ali v. Connick*,
　136 F. Supp. 3d 270 (E.D.N.Y. 2015) ……………………………………….......... 38

*Alford v. City of New York*,
　2018 WL 1532432 (E.D.N.Y. Mar. 28, 2018) …………………………..……….... 2

*Allen v. Coughlin*,
　64 F.3d 77 (2d Cir. 1995) ……………………………………………………..…… 2

*Amnesty Am. v. Town of W. Hartford*,
　361 F.3d 113 (2d Cir. 2004) ………………………………………………..……… 2

*Anderson v. Branen*,
　17 F.3d 552 (2d Cir. 1994) …………………………………………..……... 4, 17

*Anderson v. Creighton*,
　483 U.S. 635 (1987) ………………………………………………………….….. 27

*Anderson v. Liberty Lobby, Inc.*,
　477 U.S. 242 (1986) ………………………………………………………….…… 2

*Arizona v. Youngblood*,
　488 U.S. 51 (1988) …………………………………………………….…………. 33

*Ashcroft v. al-Kidd*,
　563 U.S. 731 (2011) …………………………………………………….……... 28

*Bailey v. City of New York*,
　79 F. Supp. 3d 424 (E.D.N.Y. 2015) ………………………………………….. *passim*

*Bellamy v. City of New York*,
　914 F.3d 727 (2d Cir. 2019) ……………………………………….…………… 35

*Bermudez v. City of New York*, ,
　790 F.3d 368 (2d Cir. 2015) ……………………………………………………... 35

iii

*Betts v. Shearman*,
   751 F.3d 78 (2d Cir. 2014) ……………………………………………………………... 9

*Binder & Binder PC v. Barnhart*,
   481 F.3d 141 (2d Cir. 2007) ……………………………………………..………….. 2

*Birch v. Danzi*,
   2018 WL 3613016 (E.D.N.Y. July 26, 2018) …………………………….…………... 15

*Brandon v. City of New York*,
   705 F. Supp. 2d 261 (S.D.N.Y. 2010) ………………………………………………... 13

*Briarpatch Ltd. v. Phoenix Pictures, Inc.*,
    373 F.3d 296 (2d Cir. 2004) …………………………………………………………. 40

*Broughton v. New York*,
   37 N.Y.2d 451 (N.Y. 1975) …………………………………………………………… 3

*Brown v. City of New York*,
   798 F.3d 94 (2d Cir. 2015) …………………………………………………….……… 7

*Butler v. Hesch*,
   286 F. Supp. 3d 337 (N.D.N.Y. 2018) …………………………………………… 15, 17

*Caldarola v. Calabrese*,
   298 F.3d 156 (2d Cir. 2002) ………………………………………………………... 9

*Cameron v. City of New York*,
   598 F.3d 50 (2d Cir. 2010) …………………………………………………..…… 26

*Carlton v. Nassau Cty. Police Dep't*,
   306 A.D.2d 365 (N.Y. App. Div. 2d Dep't 2003) ………………………………………… 25

*Cipolla v. Cty. of Rensselaer*,
   129 F. Supp. 2d 436 (N.D.N.Y. 2001) ………………………………………………….. 38

*Clark v. City of New York*,
   2015 WL 5719612 (E.D.N.Y. Sept. 29, 2015) …………………………………………... 7

*Coach Leatherware Co. v. Ann Taylor, Inc.*,
   933 F.2d 162 (2d Cir. 1991) …………………………………………………………… 2

*Coggins v. Buonora*,
   776 F.3d 108 (2d Cir. 2015) ………………………………………….…………... 17, 30

iv

*Coggins v. Cty. of Nassau*,
   988 F. Supp. 2d 231 (E.D.N.Y. 2013) ……………………………………………………… 17

*Collins v. City of New York*,
   923 F. Supp. 2d 462 (E.D.N.Y. 2013) ……………………………………….………….. 33

*Colon v. City of New York*,
    60 N.Y.2d 78 (N.Y. 1983) …………………………………………….……….. 11, 24

*Coollick v. Hughes*,
   699 F.3d 211 (2d Cir. 2012) ………………………………………………………….. 27

*Crews v. Cty. Of Nassau*,
   996 F. Supp. 2d 186 (E.D.N.Y. 2014) ……………………………………………….. 3, 7, 28

*Curley v. Vill. of Suffern*,
    268 F.3d 65 (2d Cir. 2001) ……………………………………………………………... 36

*Deskovic v. City of Peekskill*,
   894 F. Supp. 2d 443 (S.D.N.Y. 2012) ……………………………………………………... 10

*Dufort v. City of New York*,
   874 F.3d 338 (2d Cir. 2017) …………………………………………….…….. 15, 28

*Fabrikant v. French*,
   691 F.3d 193 (2d Cir. 2012) …………………………………………….………. 24

*First National Bank of Arizona v. Cities Service Co.*,
   391 U.S. 253 (1968) ……………………………………………………..……….. 2

*Fischl v. Armitage*,
   128 F.3d 50 (2d Cir. 1997) …………………………………………………………….. 1

*Garcia v. City of New York*,
   59 Misc. 3d 1224(A) (N.Y. Sup. Ct. 2018) …………………………………..……. 12

*Garnett v. City of New York*,
   2014 WL 3950904 (S.D.N.Y. Aug. 13, 2014) …………………………………………... 13
.
*Giglio v. United States*,
   405 U.S. 150 (1972) …………………………………………………….…..……… 36

*Golino v. City of New Haven*,
   950 F.2d 864 (2d Cir. 1991) …………………………………………….………... 28

*Gonzalez v. City of Schenectady*,
　728 F.3d 149 (2d Cir. 2013) …………………………………………………….... 1

*Hayes v. N.Y. City Dep't of Corr.*,
　84 F.3d 614 (2d Cir. 1996) …………………………………………………….... 1

*Henry v. Daytop Vill., Inc.*,
　42 F.3d 89 (2d Cir. 1994) …………………………………………….……………… 4

*Higazy v. Templeton*,
　505 F.3d 161 (2d Cir. 2007) …………………………………………………… 26, 33

*Hill v. Miller*,
　2005 WL 807044 (E.D.N.Y. Apr. 8, 2005) …………………………………………... 19

*Hoyos v. City of New York*,
　999 F. Supp. 2d 375 (E.D.N.Y. 2013) …………………………………..………… 31

*Huminski v. Corsones*,
　396 F.3d 53 (2d Cir. 2005) …………………………………………………………… 1

*Ideal Steel Supply Corp. v. Anza*,
　652 F.3d 310 (2d Cir. 2011) ……………………………………………….………...… 1

*Jackson v. City of New York*,
　939 F. Supp. 2d 219 (E.D.N.Y. 2013) …………………………………………... 8, 29

*Jackson v. Tellado*,
　236 F. Supp. 3d 636 (E.D.N.Y. 2017) …………………………………………..…….. 7

*Jenkins v. City of New York*,
　478 F.3d 76 (2d Cir. 2007) ……………………………………………….…… 3, 6

*Jocks v. Tavernier*,
　316 F.3d 128 (2d Cir. 2003) …………………………………………………... 9, 20, 34

*Kinzer v. Jackson*,
　316 F.3d 139 (2d Cir. 2003) …………………………………………………….. 28

*Lawrence v. City of Cadillac*,
　2010 WL 5174209 (S.D.N.Y. Dec. 9, 2010) ………………………………………… 23, 24

*Lopez v. City of New York*,
　105 F. Supp. 3d 242 (E.D.N.Y. 2015) ………………………………………………….. 33

*Lowth v. Town of Cheektowaga*,
  82 F.3d 563 (2d Cir. 1996), *amended* (May 21, 1996) ……………………….. 18, 19, 20, 29

*Manganiello v. City of New York*,
   612 F.3d 149 (2d Cir. 2010) ……………………………………………… 12, 15, 24, 25, 30

*Mejia v. City of New York*,
   119 F. Supp. 2d 232 (E.D.N.Y. 2000) …………………………………..………….. 17, 30

*Mills v. Miteq, Inc.*,
   2009 WL 10701647 (E.D.N.Y. Mar. 10, 2009) ……………………………………… 12, 39

*Morales v. Quintel Entm't, Inc.*,
   249 F.3d 115 (2d Cir. 2001) ……………………………………………..…………… 2

*Morse v. Fusto*,
   804 F.3d 538 (2d Cir. 2015) ……………………………………………….…………… 32

*Morse v. Spitzer*,
   2012 WL 3202963 (E.D.N.Y. Aug. 3, 2012) …………………………….…..…... 34, 35

*Mullenix v. Luna*,
   136 S. Ct. 305 (2015) ……………………………………………….………….. 27
.

*Oliveira v. Mayer*,
   23 F.3d 642 (2d Cir. 1994) …………………………………………………….…….. 28

*O'Neill v. Krzeminski*,
   839 F.2d 9 (2d Cir. 1988) ……………………………………………………………… 17

*Panetta v. Crowley*,
   460 F.3d 388 (2d Cir. 2006) …………………………………………………………… 23

*Pangburn v. Culbertson*,
   200 F.3d 65 (2d Cir. 1999) …………………………………………………………... 36

*Parisi v. Suffolk Cnty.*,
   2009 WL 4405488 (E.D.N.Y. Nov. 30, 2009) …………………………………………... 9

*Pawlicki v. City of Ithaca*,
   993 F. Supp. 140 (N.D.N.Y 1998) ……………………………………………………… 19

*Penree by Penree v. City of Utica, New York*,
   694 F. App'x 3 (2d Cir. 2017) …………………………………………………….…… 30

*People v. Foster*,
   162 A.D.2d 703 (N.Y. App. Div. 2d Dep't 1990) …………………………………..…. 22

*People v. Lindsey*,
   52 A.D.3d 527 (N.Y. App. Div. 2d Dep't 2008) ……………………………………….. 21

*People v. Pineiro*,
   116 A.D.2d 599 (N.Y. App. Div. 2d Dep't 1986) …………………………………… 19

*People v. Richardson*,
   132 A.D.3d 1239 (N.Y. App. Div. 4th Dep't 2015) …………………………………… 21

*People v. Richmond*,
   36 A.D.3d 721 (N.Y. App. Div. 2d Dep't 2007) ………………………….……………… 22

*People v. Rosario*,
   78 N.Y.2d 583 (N.Y. 1991) …………….…………………………………………….... 8

*People v. Tucker*,
   141 A.D.3d 748 (N.Y. App. Div. 3d Dep't 2016) …………………………………… 21

*Quezada v. Bakraqi*,
   2017 WL 4286646 (S.D.N.Y. Sept. 6, 2017) ……………………………………… 12

*Rae v. County of Suffolk*,
   693 F. Supp. 2d 217 (E.D.N.Y. 2010) ……………………………………… 18, 24

*Rand Estate of Lawrence v. Lavoie*,
   2017 WL 3891679 (D.N.H. Sept. 5, 2017) …………………………….………….... 23

*Randle v. Alexander*,
   170 F. Supp. 3d 580 (S.D.N.Y. 2016) ……………………………………………..…… 37

*Reeves v. Sanderson Plumbing Prods., Inc.*,
   530 U.S. 133 (2000) …………….………………………………………………….... 1

*Ricciuti v. N.Y.C. Transit Auth.*,
   124 F.3d 123 (2d Cir. 1997) ……………………………………………………….. *passim*

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*,
   30 F.3d 339 (2d Cir. 1994) …………………………………………..…………………… 4

*Rodriguez v. City of New York*,
   291 F. Supp. 3d 396 (S.D.N.Y. 2018) …………………………………………… 13

*Rohman v. New York City Transit Auth.*,
  215 F.3d 208 (2d Cir. 2000) ………………………………………….……………………… 11

*Rounseville v. Zahl*,
  13 F.3d 625 (2d Cir.1994) ………………………………………………………………..…. 37

*Russell v. Smith*,
  68 F.3d 33 (2d Cir. 1995) …………………………………………………………………… 11

*Sankar v. City of New York*,
  867 F. Supp. 2d 297 (E.D.N.Y. 2012) ……………………………………………….……… 24

*Savino v. City of New York*,
  331 F.3d 63 (2d Cir. 2003) ………………………………………………………………… 7, 11

*Scotto v. Almenas*,
  143 F.3d 105 (2d Cir. 1998) ……………………………………………………..………..... 30

*Singer v. Fulton County Sheriff*,
  63 F.3d 110 (2d Cir. 1995) …………………………………………………………..……… 9, 24

*Stein v. Janos*,
  269 F. Supp. 2d 256 (S.D.N.Y. 2003) …………………………………………..………… 37

*Terebesi v. Torreso*,
  764 F.3d 217 (2d Cir. 2014) ……………………………………………………….….……… 27

*Thomas v. Roach*,
  165 F.3d 137 (2d Cir. 1999) ………………………………………………………………… 28

*Torres v. Jones*,
  26 N.Y.3d 742 (2016) …………………………………………………………….…...... 15

*Townes v. City of New York*,
  176 F.3d 138 (2d Cir. 1999) ………………………………………………………..……… 26

*Tretola v. Cty. of Nassau*,
  14 F. Supp. 3d 58 (E.D.N.Y. 2014) …………………………………………..……… 9, 24

*Tribie v. Parwanta*,
  2012 WL 246619 (S.D.N.Y. Jan. 26, 2012) ……………………………………..……... 7

*Tsesarskaya v. City of New York*,
  843 F. Supp. 2d 446 (S.D.N.Y. 2012) ……………………………………………..……… 9, 39

*United States v. Goines,*
 604 F. Supp. 2d 533 (E.D.N.Y. 2009) …………………………………………………… 4

*United States v. Hussain,*
 835 F.3d 307 (2d Cir. 2016) …………………………………………………………… 7

*United States v. Nelson,*
 931 F. Supp. 194 (W.D.N.Y. 1996) …………………………………………………… 8

*Victory v. Pataki,*
 814 F.3d 47 (2d Cir. 2016), *as amended* (Feb. 24, 2016) ………………………………… 34

*Vilkhu v. City of New York,*
 2008 WL 1991099 (E.D.N.Y. May 5, 2008) …………………………………………….. 2

*Walker v. City of New York,*
 974 F.2d 293 (2d Cir. 1992) …………………………………………………….…… 33

*Waterman v. City of New York,*
 1998 WL 760233 (S.D.N.Y. Oct. 29, 1998) …………………………………….…….. 39

*Weyant v. Okst,*
 101 F.3d 845 (2d Cir. 1996) …………………………………………………….…... 7

*Windsor v. United States,*
 699 F.3d 169 (2d Cir. 2012) …………………………………………………….…….. 1

*Wong v. Yoo,*
 649 F. Supp. 2d 34 (E.D.N.Y. 2009) …………………………………………………….. 4

*Zahrey v. Coffey,*
 221 F.3d 342 (2d Cir. 2000) …………………………………………………….…… 33

## **Statutes**

28 U.S.C. § 1367(a) …………………………………………………………….…… 40

42 U.S.C. § 1983…………………………………………………………………… 34

Federal Rules of Civil Procedure 56(a) …………………………………………………….... 3

New York Penal Law § 10.00(9) …………………………………………………….. 21, 22

New York Penal Law § 120.05(3) …………………………………………….……… 8, 21, 22

New York Penal Law § 120.20……………………………………………………….. 6, 22

## PRELIMINARY STATEMENT

Plaintiff, Thomas Moroughan, brought various claims against the members of the Suffolk County Police Department ("SCPD") and Nassau County Police Department ("NCPD") who violated his constitutional rights by having him arrested and charged for crimes they knew he did not commit. *See generally* DE 177, Second Amended Complaint ("SAC"). All defendants, other than Anthony DiLeonardo, moved for summary judgment. This Memorandum in Opposition responds to the motion by the defendants employed by the SCPD on February 27, 2011 (collectively, the "Suffolk Defendants").

## ARGUMENT

### I.      LEGAL STANDARD ON A MOTION FOR SUMMARY JUDGMENT

As the Suffolk Defendants recognize, on a motion for summary judgment, the burden is on the moving party to demonstrate that there are no genuine issues of material fact, which entitles it to a judgment as a matter of law. *See* Mem at 3, *quoting* Fed. R. Civ. P. 56(a), and *citing Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013); *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A fact is material if it might affect the outcome of the suit under the governing law." *Windsor v. United States*, 699 F.3d 169, 192 (2d Cir. 2012), *aff'd*, 133 S. Ct. 2675 (2013) (internal quotations omitted).

In considering the evidence, courts may not make credibility determinations, and they may not weight the evidence. *Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310, 326 (2d Cir. 2011), *quoting Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "These determinations are within the sole province of the jury." *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996); *see also Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997) (reversing grant of summary judgment, noting that "[c]redibility assessments, choices between

1

conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment."). Rather, courts are required to "view the evidence in the light most favorable to the nonmoving party," *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995), and to resolve all ambiguities and draw all reasonable inferences in its favor. *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To defeat summary judgment, the evidence does not have to be conclusively established in plaintiff's favor. *Anderson*, 477 U.S. at 248-49, *quoting First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). "[A]ll that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49, *quoting First National Bank of Arizona,* 391 U.S. at 288-89. Summary judgment cannot be granted if "there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007), "if the evidence is such that a reasonable jury *could* return a verdict for the nonmoving party." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001) (emphasis added). "The judge's inquiry . . . unavoidably asks whether reasonable jurors *could* find by a preponderance of the evidence that the plaintiff is entitled to a verdict." *Coach Leatherware Co. v. Ann Taylor, Inc.*, 933 F.2d 162, 167 (2d Cir. 1991) (emphasis added), *quoting Anderson*, 477 U.S. at 252.

Finally, courts may not consider new arguments made for the first time in reply papers. *See Alford v. City of New York*, 2018 WL 1532432, at *6 (E.D.N.Y. Mar. 28, 2018); *Vilkhu v. City of New York*, 2008 WL 1991099, at *8 (E.D.N.Y. May 5, 2008).

II.   **THE EVIDENCE SUPPORTS A REASONABLE FINDING THAT THE SUFFOLK DEFENDANTS ARRESTED MOROUGHAN, AND THAT THEY CHARGED HIM WITH ASSAULT IN THE SECOND DEGREE AND RECKLESS ENDANGERMENT IN THE SECOND DEGREE WITHOUT PROBABLE CAUSE**

"A section 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law." *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007). As the Suffolk Defendants stated, a false arrest claim requires the plaintiff to prove four elements: (1) the defendants intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff "did not consent to" the confinement,[1] and (4) the confinement was not otherwise privileged. *See* Mem. at 7, *quoting Crews v. Cty. Of Nassau*, 996 F. Supp. 2d 186, 203 (E.D.N.Y. 2014), *citing Broughton v. New York*, 37 N.Y.2d 451, 456 (N.Y. 1975). The Suffolk Defendants only challenge the last element, arguing that DiLeonardo arrested Moroughand, that they did not learn of reasons why they could not rely on DiLeonardo's representations, *see* Mem. at 5-6, and *arguendo*, that the confinement was privileged because it was supported by probable cause. *See id.* at 6-13.

A.   **The evidence is sufficient for a reasonable jury to find that Det. Tavares, Det. Leser, and D/Sgt. Lamb, not DiLeonardo, arrested Moroughan, and the three 'facts' the Suffolk Defendants refer to are entirely refuted.**

On page five their Memorandum, the Suffolk Defendants argue that DiLeonardo had arrested Moroughan while at the scene, and that they merely acted on that information. They do not make a legal argument in support, but rather, point to three 'facts' to support this assertion. *See* Mem. at 5. They first point to DiLeoardo's statement at the precinct nine-to-ten hours after the shooting, and Bienz's deposition testimony almost five years later, for the claim that at the

---

[1] The Suffolk Defendants incorrectly listed the third element as "the plaintiff did not *contest* the confinement." *See* Mem. at 7 (emphasis added).

scene, DiLeonardo approached the taxi and told the driver he was under arrest. *See id.* Initially, Moroughan claims this never happened. *See* Pl.'s 56.1 Resp. ¶ 54.[2] Additionally, DiLeonardo's interview only started at approximately 10:00 AM, however, among other facts in the record, Det. Tavares and Det. Leser claim they told Moroughan he was under arrest when they questioned him three hours *prior*, at 7:00 AM, and therefore had him sign a Waiver of Rights form, and D/Sgt. Lamb, who was in charge of the investigation, directed that Moroughan be transferred to the Second Precinct where his *Prisoner* Activity Log was started at 8:48 AM and he was taken to the "*prisoner* room." *See id.* ¶¶ 23-24, 26 (emphasis added).

The Suffolk Defendants next claim that "Detective Lamb, Tavares, Leser, and Ciccotto were advised at the Huntington Hospital that 'Nassau' had arrested the plaintiff," Mem. at 5,[3] and they were "entitled to rely" on DiLeonardo' "representations" that "his arrest of the plaintiff was valid." *See id.* at 6. However, D/Sgt. Lamb, Det. Tavares, and Det. Leser admitted they did not speak with DiLeonardo, his girlfriend, Bienz, or his wife, prior to the interviews later at the

---

[2] While Plaintiff acknowledges that there are numerous facts indicating that the Nassau Defendants arrested Moroughan, and indeed argues that matter at length in opposition to the Nassau Defendants' claim that they did not arrest Moroughan, a plaintiff may proceed to summary judgment, even to trial, with inconsistent statements of fact, or theories on the law, and indeed, the Second Circuit noted that a plaintiff may admit a fact as to one claim, while simultaneously disputing that same fact as to another. *See Henry v. Daytop Vill., Inc.*, 42 F.3d 89, 94-95 (2d Cir. 1994); *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 343 (2d Cir. 1994). Additionally, both groups of defendants can be liable for arresting Moroughan. *See United States v. Goines*, 604 F. Supp. 2d 533, 543 (E.D.N.Y. 2009) ("Immediately after he broke away from Herrmann, Goines was tackled by another officer. At that point, although Goines did not immediately submit, he had been seized for the second time.").

Even if DiLeonardo did arrest Moroughan, D/Sgt. Lamb, Det. Tavares, and Det. Leser are nonetheless liable for the false arrest given that they knew DiLeonardo and Bienz, and not Moroughan, committed crimes that night, and that Moroughaan was unjustifiably arrested. These facts are discussed further below in the lack-of-probable-cause analysis. *See infra* pages 6-11, 18-27; Pl.'s 56.1 Resp. ¶¶ 26, 28. A defendant can also be liable for false arrest if he was aware "a constitutional violation was being committed by a law enforcement official" and nonetheless failed to intervene to prevent the harm from occurring despite the ability to do so. *Wong v. Yoo*, 649 F. Supp. 2d 34, 61 (E.D.N.Y. 2009), *quoting Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) ("An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know . . . (2) that a citizen has been unjustifiably arrested").

[3] Det. Ciccotto never testified he was advised "Nassau" arrested Moroughan, and the Suffolk Defendants did not cite anything in their 56.1 Statement in support. Rather, when by D/Sgt. Lamb briefed Det. Ciccotto at, or shortly after, 4:15 AM, he did not mention an arrest or attempted arrest. *See* Defs.' Ex. T at 21:20-23:7. In fact, Det. Ciccotto did not know whether "anybody was under arrest or charged" as of 9:45-9:50 AM later that morning. *Id.* at 141:21-142:10.

precinct at 10:00-11:00 AM, and they are not aware of anyone who did, no one from the SCPD who was either present at Oakwood Road and communicated with DiLeonardo and/or Bienz, or present at the hospital as of 4:15 AM, was ever advised that DiLeonardo had arrested or attempted to arrest the taxi driver, and there is no source for that information, from *anyone*. Other than Det. Tavares, Det. Leser, and D/Sgt. Lamb, everyone else from the SCPD testified that at the hospital, Moroughan was never under arrest or handcuffed. Moroughan likewise testified that he was not told he was under arrest until after he was brought into the Second Precinct later that morning. *See* Pl.'s 56.1 Resp. ¶¶ 19, 20-21, 23, 42, 43, 47, 50. If SCPD officers, detectives, and sergeants did not believe Moroughan was under arrest at the hospital that morning, a reasonable jury can likewise make that finding. Therefore Det. Tavares and Det. Leser, who claim they told Moroughan he was under arrest, are the ones who arrested him. Additionally, contrary to the claim that they were advised upon arriving at the hospital that "Officer DiLeonardo shot the plaintiff to protect himself" and they were entitled to rely on his representations, *see* Mem. at 5, Det. Tavares testified that while interviewing Moroughan at the hospital, Moroughan told them he believed DiLeonardo shot at him to protect himself because he, Moroughan, drove at DiLeonardo, and that Moroughan was "the first guy to indicate the why" as to DiLeonardo's shooting at him. *See* Defs.' Ex. I at 234:14-235:21; 244:13-19.

Finally, the Suffolk Defendants argue that their previously-disputed statements of fact are corroborated by Risco Lewis, who testified that Det. Tavares and Det. Leser told her that Nassau was arresting Moroughan and that Suffolk would be processing the arrest. *See* Mem. at 5. As demonstrated in abundant detail, the Suffolk and Nassau Defendants knew DiLeonardo was intoxicated when he shot Moroughan, and therefore after the NCPD DFRT members arrived at the hospital, they discussed the incident, and agreed, at that time, to charge Moroughan with

5

Assault in the Second Degree and Menacing in the Third Degree. Given that the assault charge

required the defendant to have caused injury to an individual he knew to be a police officer, with

the intent to prevent the officer from performing a lawful duty, they came up with the story that

DiLeonardo arrested Moroughan at the scene, which as noted, was refuted. Det. Tavares and Det.

Leser then tailored Moroughan's 'confession' to support those charges, and *only* once the

'confession' was secured, did Det. Tavares tell Risco Lewis that "Nassau" was arresting

Moroughan. *See* Pl.'s 56.1 Resp. ¶¶ 23, 26, 28, 35, 44, 49, 59, 81-85; *see Ricciuti v. N.Y.C.*

*Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997) (reversing grant of summary judgment on false

arrest claim where "plaintiffs' evidence could support the view that Lopez and Wheeler

cooperated with Watson in arresting Daniel and falsifying the circumstances," given that "a jury

could find that . . . Lopez and Wheeler believed Watson was arresting Daniel in the station house

without cause; and that they then falsified evidence to make it appear that Daniel had been

arrested at an earlier time, in a different place, and by Lopez, instead of Watson").

**B.  The evidence is sufficient for a reasonable jury to find that there was no probable cause to "arrest the plaintiff for Assault in the Second Degree and Reckless Endangerment in the Second Degree," and that the Suffolk Defendants therefore conspired to falsely arrest Moroughan.**

While Plaintiff acknowledges that the existence of probable cause is a complete defense

to a false arrest claim, *see* Mem. at 7-8, *quoting Jenkins*, 478 F.3d at 84, probable cause to arrest

Moroughan for Assault in the Second Degree due to causing physical injury to a police officer,

in violation of New York Penal Law § 120.05(3), or Reckless Endangerment in the Second

Degree, in violation of New York Penal Law § 120.20, did not exist.

Probable cause exists, as the Suffolk Defendants state, "when the officers have

knowledge or *reasonably trustworthy* information of facts and circumstances that are sufficient

6

to warrant a person of *reasonable caution* in the belief that the person to be arrested has committed or is committing a crime." *See* Mem. at 8, *quoting Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (emphasis added). This determination is based upon the totality of the circumstances the officers had at the time of the arrest. *Jackson v. Tellado*, 236 F. Supp. 3d 636, 654 (E.D.N.Y. 2017). "Where there is no dispute as to the facts of the arrest and the knowledge of the officers involved, the Court may determine probable cause as a matter of law. . . . However, where the underlying facts are disputed, summary judgment is inappropriate." *Clark v. City of New York*, 2015 WL 5719612, at *6 (E.D.N.Y. Sept. 29, 2015), *quoting Weyant*, 101 F.3d at 852; *Tribie v. Parwanta*, 2012 WL 246619 at *5 (S.D.N.Y. Jan. 26, 2012) (denying summary judgement on false arrest claim where there were "two very different versions of what happened."). In this case, all material facts pertaining to probable cause, are in dispute.

Although, as the Suffolk Defendants state, the collective knowledge doctrine provides that if one law enforcement officer has probable cause to arrest, then officers cooperating in the investigation are deemed to have probable cause as well, *see* Mem. at 8-9, *citing Savino v. City of New York,* 331 F.3d 63, 74 (2d Cir. 2003); *Crews*, 996 F. Supp. 2d at 203-04, this principle only applies where "the other officers have *communicated* the information they possess individually, thereby pooling their collective knowledge to meet the probable cause threshold." *Jackson*, 236 F. Supp. 3d at 654 (emphasis added), *quoting Brown v. City of New York*, 798 F.3d 94, 99 (2d Cir. 2015). In fact, "[t]he Second Circuit has 'decline[d] to extend the collective knowledge doctrine to cases where [ ] there is no evidence that an officer has communicated his suspicions with the officer conducting the search, even when the officers are working closely together at a scene.'" *Jackson*, 236 F. Supp. 3d at 654 n. 13, *quoting United States v. Hussain*, 835 F.3d 307, 317 n. 8 (2d Cir. 2016). While the Suffolk Defendants claim they first learned of

7

DiLeonardo's account from his 911 call and from PO Rocchio who first responded to the scene, *see* Mem. at 7, 12, that information was never communicated over the radio transmissions, and Det. Tavares, Det. Leser, and D/Sgt. Lamb did not listen to the 911 calls. *See* Pl.'s 56.1 Resp. ¶¶ 2, 5, 48 n. 26; *see generally* Pl.'s Ex. 102 (911 calls and 2d Precinct radio transmissions). The Suffolk Defendants next point to DiLeonardo's conversation with Sgt. Smithers, however a reasonable jury can find that that conversation never happened. *See* Pl.'s 56.1 Resp. ¶ 7. The Suffolk Defendants next claim that at the hospital, D/Lt. Pelkofski advised D/Sgt. Lamb that the officer shot at the cab driver because the cab driver tried to run him over. *See* Mem. at 7. However, Det. Tavares testified that Moroughan was the first person to give them "the why" as to DiLeonardo shooting him, and Moroughan was only questioned at approximately 7:00 AM, *after* the charges were agreed upon by the defendants. *See* Pl.'s 56.1 Resp. ¶¶ 23, 26.

Additionally, "[w]hen the arresting officer has no personal knowledge of any of the facts establishing probable cause, however, then the officer who issues the directive to arrest must himself have probable cause to arrest." *United States v. Nelson*, 931 F. Supp. 194, 197-98 (W.D.N.Y. 1996), *aff'd*, 131 F.3d 132 (2d Cir. 1997) (citation omitted). "[A]n officer is entitled to rely on a fellow officer's report only when the reporting officer 'has the requisite probable cause,'" however where the "arrest is challenged for lack of probable cause, as is the case here, then the police bear the burden of establishing that the reporting officer had probable cause." *Jackson v. City of New York*, 939 F. Supp. 2d 219, 228 (E.D.N.Y. 2013) (finding sergeant "was not entitled to rely on" officer's report, given that plaintiff challenged that officer's probable cause assertion), *quoting People v. Rosario*, 78 N.Y.2d 583, 588 (N.Y. 1991). As demonstrated, DiLeonardo did not have probable cause to arrest Moroughan. *See* Pl.'s 56.1 Resp. ¶¶ 74, 76-79. In fact Bienz, who witnessed the incident, did not see the taxi drive at DiLeonardo, and he

8

testified that the taxi driver did not commit *any* act warranting an arrest. *See id.* ¶¶ 53, 56(B).

Therefore the Suffolk Defendants could not have relied on DiLeonardo's 'account.'

Plaintiff also acknowledges that an officer may rely on an individual claiming to be the

victim of, or witness to, a crime in determining probable cause, however *only* to the extent that,

as the Suffolk Defendants recognize, "it seems *reasonable* to believe [the individual] is telling

the truth," and there are no "circumstances that raise doubts as to the victim's veracity." *See*

Mem. at 9 (emphasis added), *citing Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir.

1995); *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014); *Caldarola v. Calabrese*, 298 F.3d 156

(2d Cir. 2002). "Indeed, a police officer may not 'neglect all investigative duties in relying on a

victim statement; he can only derive probable cause to effect an arrest from that statement absent

circumstances that raise doubts as to the vic[ti]m's veracity.'" *Clark*, 2015 WL 5719612, at *6,

*quoting Parisi v. Suffolk Cnty.,* 2009 WL 4405488, at *7 (E.D.N.Y. Nov. 30, 2009) (alteration in

original) (internal quotation marks omitted). While the Suffolk Defendants point to their

interview of DiLeonardo and his "sworn statement," claiming it was sufficient to establish the

elements of the charged crimes, *see* Mem. at 6-7,[4] as demonstrated, that was only taken at

approximately 11:00 AM, despite the charges being determined at 6:48 AM at the latest. *See*

*supra* pages 4-5; Pl.'s 56.1 Resp. ¶¶ 24, 26. Additionally, there was nothing to suggest that "it

---

[4] Furthermore, in determining whether probable cause to arrest exists, if an officer becomes aware of facts which support a defense to a crime, that "can eliminate probable cause," and an officer cannot "deliberately disregard facts known to him" which establish a defense to a crime. *Jocks v. Tavernier*, 316 F.3d 128, 135-36 (2d Cir. 2003); *see also Tsesarskaya v. City of New York*, 843 F. Supp. 2d 446, 455 (S.D.N.Y. 2012) ("Defenses which negate the existence of a crime should similarly negate probable cause" for an arrest"), *quoting Jocks*, 316 F.3d at 135. So too, while "an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause," Mem. at 9, and an officer is entitled to believe one account over another conflicting account, *see id.* at 10, the failure to make a further inquiry when a reasonable officer would have done so, may indicate a lack of probable cause. *Tretola v. Cty. of Nassau*, 14 F. Supp. 3d 58, 73-74 (E.D.N.Y. 2014) (collecting cases). These factors are discussed further below, in the analysis demonstration lack of probable cause to prosecute, given that the Suffolk Defendants' probable-cause to arrest argument repeatedly refers to the information DiLeonardo provided at the Second Precinct, and the Deposition he prepared while there, which itself completely refutes their argument that "probable cause existed to *arrest* the plaintiff for Assault in the Second Degree and Reckless Endangerment in the Second Degree." *See* Mem. at 5 ("Point I").

seemed reasonable to believe DiLeonardo was telling the truth," and there was significant

"indicia raising concerns of reliability," *see* Mem. at 11, given that the Suffolk Defendants knew

DiLeonardo was intoxicated at the time he shot Moroughan and that his perception was

impaired,[5] and that he had a motive to lie given that he admitted to driving. This is why they

maintained their distance at the hospital, and together with the Nassau Defendants, came up with

their theory to have Moroughan unconstitutionally arrested and prosecuted. *See id.* ¶¶ 4-11

(demonstrating the officers at the scene knew DiLeonardo was intoxicated, particularly given

that he smelled of alcohol, and was walking in circles mumbling that he'd been shot, when all he

had were some scratches and a cut, contrary to the Suffolk Defendants' claim, *see* Mem. at 11),

19, 23, 26, 28, 49, 81-85; *Ricciuti*, 124 F.3d at 129 (reversing grant of summary judgment on

false arrest claim given that jury could reasonably find defendants knew plaintiff was arrested

without cause, therefore they "falsified evidence to make it appear that Daniel had been arrested

at an earlier time, in a different place, and by Lopez, instead of Watson.").

Of course, as the Suffolk Defendants recognize in their malicious prosecution probable

cause argument, *see* Mem. at 16, fabricated evidence cannot provide police with probable cause.

*See Deskovic v. City of Peekskill*, 894 F. Supp. 2d 443, 457-59 (S.D.N.Y. 2012) (finding no

probable cause where a jury could find that police fabricated "the ejaculation statement" and

coerced plaintiff's confession, "given the negative DNA results and lack of other evidence.").

Det. Tavares and Det. Leser fabricated Moroughan's 'confession,' which they then claimed

corroborated DiLeonardo's account that his subjective belief he was in danger, was reasonable,

and had DiLeonardo prepare a false statement which the defendants all rely on now, in

furtherance of their conspiracy, to justify the previously agreed-upon charges, and then together

---

[5] Plaintiff does not 'reason' that one who consumed alcohol can never give informed consent or be the victim of a crime. *See* Mem. at 12.

10

with Det. Ciccotto, agreed to tailor DiLeonardo, Sophia Cornia, and the Bienzes' accounts to likewise falsely incriminate Moroughan. *See* Pl.'s 56.1 Resp. ¶¶ 26, 49, 51, 59, 73.

### III. THE EVIDENCE IS SUFFICIENT FOR A REASONABLE JURY TO FIND THAT DET. TAVARES, DET. LESER, AND DET. CICCOTTO INITIATED THE CRIMINAL PROCEEDINGS AGAINST MOROUGHAN, IN ADDITION TO D/SGT. LAMB, AND THAT THEY DID SO WITHOUT PROBABLE CAUSE

A malicious prosecution claim pursuant to both § 1983 and New York law, requires the plaintiff to prove the following four elements: (1) the defendants initiated or continued a criminal proceeding against the plaintiff, (2) with malice, (3) without probable cause, and (4) the proceeding was terminated in the plaintiff's favor. *See Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003), *citing Colon v. City of New York*, 60 N.Y.2d 78, 82 (N.Y. 1983); *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995). A § 1983 malicious prosecution claim also requires the plaintiff to demonstrate a "sufficient post-arraignment liberty restraint." *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 216 (2d Cir. 2000). The Suffolk Defendants only challenge the first and third elements—initiation and lack of probable cause.

#### A. Det. Tavares and Det. Leser initiated the criminal proceedings against Moroughan given that, among other things, they determined which charges should be filed against him, prepared the charging documents, fabricated documents to the support the charges, misrepresented the true facts to the prosecutor, and otherwise acted in bad faith, and Det. Ciccotto did so by knowingly eliciting and fabricating inculpatory statements.[6]

Defendants concede that D/Sgt. Lamb initiated the criminal proceedings against Moroughan, *see* Mem. at 15 ("the only defendant that actually initiated or commenced charged against the plaintiff was Detective Sergeant Lamb"), but assert, in one sentence, without pointing

---

[6] As to Defendants PO William Meany and PO Jesus Faya, only, Plaintiff withdraws his 11th cause of action alleging malicious prosecution.

to any fact or law in support, that Det. Tavares and Det. Leser did not. *See id.* Defendants do not

even indicate what actually constitutes the initiation of criminal proceedings as a matter of law,

*see id.* at 14-15, and made no effort to meet their burden demonstrating their entitlement to

summary judgment on this issue. *See supra* page 1; *Mills v. Miteq, Inc.*, 2009 WL 10701647, at

*2-3 (E.D.N.Y. Mar. 10, 2009) (affirming Magistrate Judge Tomlinson's denial of summary

judgment as to claim which defendants' motion did not specifically address). While Plaintiff

need not, therefore, even address this issue, the legal theories are worth noting.

A defendant is deemed to have initiated a criminal proceeding in a number of ways other

than by filing the criminal charges. For example, an officer is considered to have initiated a

criminal proceeding if he "play[ed] an active role in the prosecution," *Bermudez v. City of New

York*, 790 F.3d 368, 377 (2d Cir. 2015) (alteration in original), *quoting Manganiello v. City of

New York*, 612 F.3d 149, 163 (2d Cir. 2010), which "might be satisfied by, for example, showing

that an officer generated witness statements or was regularly in touch with the prosecutor

regarding the case." *Id.; see also Garcia v. City of New York*, 59 Misc. 3d 1224(A) (N.Y. Sup.

Ct. 2018) (finding officer initiated criminal proceeding despite complainant signing criminal

complaint where officer played an active role in the prosecution by "sp[ea]k[ing] to the alleged

victims and the assistant district attorney 'to draw up a case'"). So too, an officer is deemed to

have initiated a criminal proceedings if he was "instrumental in bringing about the charges." *See

Ricciuti*, 124 F.3d at 130 ("A jury could also find that Lt. Wheeler was instrumental in bringing

about the charges" even though they "were added by the Bronx district's attorney's office, and

thus not directly filed by Lt. Wheeler" where he prepared an alleged false confession and

forwarded it to prosecutors); *Quezada v. Bakraqi*, 2017 WL 4286646, at *11 (S.D.N.Y. Sept. 6,

2017), *report and recommendation adopted*, 2017 WL 4296787 (S.D.N.Y. Sept. 26, 2017)

(noting that initiation element may be satisfied where defendant officer "signs the criminal complaint that initiates the prosecution *or provides the information set forth therein*," and therefore finding defendants failed to meet burden on initiation element where "Detective Bakraqi signed the Criminal Court Complaint against plaintiff, based in part on information provided by Officer Demkiw and Detective Glover");[7] *cf. Garnett v. City of New York*, 2014 WL 3950904, at *9 (S.D.N.Y. Aug. 13, 2014) (finding no personal involvement for malicious prosecution claim of undercover officer who "provided *no* information about Garnett's involvement to Officer Viruet, who prepared the relevant arrest papers and criminal court complaint") (emphasis added), *quoting Brandon v. City of New York*, 705 F. Supp. 2d 261, 272, 274-75 (S.D.N.Y. 2010) (finding for malicious prosecution claim that "because neither defendant officer was involved in any of the post-arrest conduct that led to plaintiff's prosecution (*i.e., drafting the arrest paperwork*, swearing to the criminal complaint, or testifying before the grand jury), each lacks the requisite personal involvement to be liable pursuant to § 1983") (alteration in original) (emphasis added); *Rodriguez v. City of New York*, 291 F. Supp. 3d 396, 414 (S.D.N.Y. 2018) ("there is nothing in the record to show that Rivas process*ed Plaintiff's arrest paperwork or had any interaction with the DANY*. There is, thus, no basis for a reasonable jury to conclude that Rivas initiated the criminal proceeding against Plaintiff.") (emphasis added).

While D/Sgt. Lamb is listed as the "Complainant" on the Felony and Misdemeanor Complaints, and he signed them both, *see* Defs.' Ex. H; Defs.' 56.1 Stmt. ¶ 25, as demonstrated in detail, Det. Tavares and Det. Leser, under the supervision and guidance of D/Sgt. Lamb, investigated the incident, specifically to determine which charges to bring against Moroughan. They testified that if their investigation revealed there was no probable cause, they could have

---

[7] The court granted summary judgment because it found that probable cause existed. *See Quezada*, 2017 WL 4286646, at *12-13.

voided the claimed arrest made by DiLeonardo. However, based upon the *cumulative*
information they obtained from their investigation—which included Moroughan's fabricated
confession—*they* determined there was sufficient probable cause to proceed with charging
Moroughan. In fact, Det. Tavares rejected DiLeonardo's request to charge Moroughan with
attempted murder, and Det. Tavares and Det. Leser determined the charges, which DiLeonardo
had no say in. Although Det. Tavares claimed that D/Sgt. Lamb determined the charges and
conveyed them to him, in addition to Det. Tavares conveniently not being able to remember any
information whatsoever regarding when or how that happened, the evidence demonstrates that
while Det. Tavares and Det. Leser were still in the interview room with DiLeonardo and Bienz,
they had DiLeonardo complete a police officer "Deposition" in support of the two *specific*
charges brought, which Det. Leser notarized for DiLeonardo while *still* in that interview room.
*After* it was executed, the detectives showed the *completed* Deposition to D/Sgt. Lamb, and only
thereafter did they process Moroughan's arrest paperwork by handwriting the factual basis—the
to-wit clauses—for the two charges, which DiLeonardo again had no say in, which were then
copied, word-for-word, into the computer-generated Felony and Misdemeanor Complaints
D/Sgt. Lamb ultimately signed, and which were factually different in material respects from
DiLeonardo's sworn Deposition which the defendants rely upon. *See* Pl.'s 56.1 Resp. ¶¶ 26, 28,
44, 48, 59, 68-69. The Suffolk Defendants *admit* Det. Leser "processed" Moroughan's arrest. *See*
Defs.' 56.1 Stmt. ¶ 48 ("Leser facilitated and assisted Nassau County by processing the arrest of
Thomas Moroughan."). Det. Tavares and Det. Leser also spoke with ADA Raphael Pearl, who
was assigned to prosecute the case against Moroughan, from the date Moroughan was arraigned,
throughout the time period the prosecution was pending, and until ADA Pearl was directed to

dismiss the charges. *See* Pl.'s 56.1 Resp. ¶ 66. The misinformation they provided to, and the information they withheld from, ADA Pearl, is discussed below.

Additionally, "[a] jury may permissibly find that a defendant initiated a prosecution where he "prepared an alleged false confession and forwarded it to prosecutors." *Manganiello*, 612 F.3d at 163 (emphasis added), *quoting Ricciuti*, 124 F.3d at 130; *see also Birch v. Danzi*, 2018 WL 3613016, at *6 (E.D.N.Y. July 26, 2018) ("With respect to Defendants Parker and O'Connor, the Court finds that Plaintiff has sufficiently alleged that they perpetuated Plaintiff's prosecution by preparing an allegedly falsified confession and forwarding it to the prosecutor."). "The 'initiation' requirement is met when the plaintiff can establish that police officers forwarded statements to a prosecutor without sharing that the statements were suspect." *Dufort v. City of New York*, 874 F.3d 338, 353 (2d Cir. 2017), *citing Manganiello*, 612 F.3d at 163. So too, "[s]howing that the police 'failed to make a complete and full statement of facts to the District Attorney, misrepresented or falsified evidence, withheld evidence or otherwise acted in bad faith' satisfies the initiation element of malicious prosecution." *Bailey v. City of New York*, 79 F. Supp. 3d 424, 449 (E.D.N.Y. 2015), *quoting Manganiello*, 612 F.3d at 160; *see also Butler v. Hesch*, 286 F. Supp. 3d 337, 356 (N.D.N.Y. 2018) (noting that the New York Court of Appeals "implicitly recognized" that "supplying false information to the prosecutor" may "constitute the commencement or continuation of the prosecution"), *quoting Torres v. Jones*, 26 N.Y.3d 742, 760-61 (2016); *see id.* at 767 ("evidence that the detectives falsified plaintiff's confession and provided the confession to the District Attorney's Office for use in the prosecution of plaintiff created a triable issue of fact on the commencement element of malicious prosecution").

While Moroughan had two bullets in him, a broken nose, and was under the influence of numerous medications, including morphine, dilauded, and Percocet, Det. Tavares and Det. Leser

mislead him into speaking with them, despite the fact that he had requested an attorney numerous times. Pl.'s 56.1 Resp. ¶¶ 26, 59. Prior to questioning Moroughan, they had already determined which crimes to charge him with, and therefore falsely tailored the 'confession' to meet the elements of those charges. *See id.* ADA Pearl utilized the 'statement' in assessing the incident, and found it corroborated portions of DiLeonardo and Bienz's accounts. Pl.'s 56.1 Resp. ¶¶ 60, 66. Det. Tavares and Det. Leser also discussed the 'statement' with ADA Pearl, however they never told him that Moroughan had requested to speak to an attorney, that Moroughan was misled into signing the statement, or that the 'statement' was fabricated, rather, they lead him to believe it was properly taken. *See id.* Similarly, Det. Tavares and Det. Leser also told ADA Pearl that Bienz told them he saw the taxi drive at DiLeonardo and that DiLeonardo then fired at the taxi, however Bienz testified he did *not* see the taxi drive at DiLeonardo, and that he did *not* say that during his interview that morning. *See id.* ¶¶ 53, 68-69; Defs.' 56.1 Stmt. ¶ 56. They also withheld the fact that Eric Klug had stated he saw the shooter walking toward a white car which was stopped on the road, while shooting into it. *Id.* at ¶ 26 n. 34. As to the consumption of alcohol, ADA Pearl "focused" on DiLeonardo's level of intoxication, as that impacted DiLeonardo's perception of the events, including whether he was justified in shooting Moroughan. *See id.* ¶ 66. Det. Tavares and Det. Leser lead ADA Pearl to believe that they properly questioned DiLeonardo and Bienz regarding their alcohol consumption (which Det. Tavares and Det. Leser admitted they did not do, *see id.* ¶¶ 27, 49), but that the only information they had been able to obtain from the two was that they had a couple of drinks." *See Id.* ¶ 66. They also withheld all information demonstrating DiLeonardo was intoxicated, including Dr. Kraszewski's outbursts that DiLeonardo was intoxicated when he shot Moroughan. *Id.* ¶ 68 at.

16

D/Sgt. Lamb, Det. Tavares, Det. Leser, and Det. Ciccotto, are also liable for the prosecution because they conspired with the Nassau Defendants, and were jointly involved in a common scheme to ensure Moroughan was falsely arrested and prosecuted, and knowingly elicited incriminating statements from DiLeonardo, his girlfriend, Bienz, his wife, and from Kristie Mondo. *See id.* ¶ 26, 51, 59, 70; *Ricciuti*, 124 F.3d at 131 (finding, where Wheeler was the detective who drafted the fabricated statement "a jury could find that Lopez knowingly took part with Wheeler in the distribution of a confession he knew to be false, and that he, together with Wheeler, lied about the circumstances surrounding Daniel Ricciuti's arrest," therefore, "a jury could assign responsibility to Lopez for acts taken by Wheeler in furtherance of the conspiracy. Summary judgment should not have been granted to Officer Lopez on the malicious prosecution claim."); *see also Mejia v. City of New York*, 119 F. Supp. 2d 232, 272-73 (E.D.N.Y. 2000) ("persons who conspire with a complaining witness to manufacture evidence that is likely to influence the prosecutor's decision to commence proceedings and the jury's verdict are jointly liable for malicious prosecution."); *Butler*, 286 F. Supp. 3d at 356-57 ("actively eliciting inculpatory statements from witnesses whose veracity was unquestionably suspect, is sufficient to plausibly allege that Defendants commenced or continued the criminal prosecution.").[8]

---

[8] As noted, given that Det. Tavares and Det. Leser admitted that they could have voided the arrest if probable cause did not exist, and given that they nonetheless did not intercede, *see* Pl.'s 56.1 Resp. ¶¶ 23, 26, 28, 35, 44, 49, 59, 68-69, 81-85, they are also liable for Moroughan's prosecution on this theory as well. *See Branen*, 17 F.3d at 557 ("An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: . . . (3) that any constitutional violation has been committed by a law enforcement official"), *citing O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988); *see also Coggins v. Cty. of Nassau*, 988 F. Supp. 2d 231, 245 (E.D.N.Y. 2013), *aff'd in part, appeal dismissed in part sub nom. Coggins v. Buonora*, 776 F.3d 108 (2d Cir. 2015) (finding, on motion to dismiss, that "Buonora was aware of a false arrest and malicious prosecution by Vara and failed to intervene after that arrest to prevent the continuation of those constitutional violations even though, construing the allegations most favorable to plaintiff, there was sufficient time to intervene") (Bianco, J.).

**B. Regardless of who arrested Moroughan, probable cause did not exist, and even if it did, it had dissipated before Moroughan was charged with Assault in the Second Degree and Reckless Endangerment in the Second Degree.**

Plaintiff acknowledges, as the Suffolk Defendants argue, that *if* probable cause to arrest existed, and if it does not dissipate prior to the plaintiff being criminally charged, a malicious prosecution claim would be precluded. *See* Mem. at 15-16. However, as detailed above, Defendants did not have probable cause to arrest Moroughan in the first instance. *See supra* pages 6-11; *see also Clark*, 2015 WL 5719612, at *9 ("Having found previously that an issue of fact exists as to whether the City Defendants had probable cause to arrest, the Court finds that an issue of fact also exists as to whether the City Defendants had probable cause to initiate or continue the proceeding against Clark.").

Even if this Court found that "probable cause [wa]s present at the time of arrest, evidence could later surface which would eliminate that probable cause." Mem. at 17, *quoting Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996), *amended* (May 21, 1996). As the Suffolk Defendants noted, this occurs when "the groundless nature of the charge [is] made apparent to the defendants by the discovery of some intervening fact," Mem. at 17, *quoting Lowth*, 82 F.3d at 571 (alteration in original), such that "the evidence gathered after arrest undermined a finding of probable cause, or whether the [ ] Defendants' inquiry into the alleged crime so far departed from what a reasonable person would have undertaken as to itself constitute evidence of lack of probable cause." Mem. at 17, *quoting Rae v. Cty. of Suffolk*, 693 F. Supp. 2d 217, 227 (E.D.N.Y. 2010) (alteration in original).

The Suffolk Defendants admitted they uncovered evidence indicating the groundless nature of the charges.  Penal Law § 120.05(3) requires the following: "With intent to prevent . . . a police officer . . . from performing a lawful duty . . . he or she causes physical injury to such . . . . police officer." *See also* Defs.' Ex. H at 1. "[I]n order for defendant to be found guilty of [ ]

18

assault in the second degree, defendant must have *known* that [the individual] was a police officer." *People v. Pineiro*, 116 A.D.2d 599, 601 (N.Y. App. Div. 2d Dep't 1986) (emphasis added), *citing, e.g.* PL § 120.05(3); *see also Hill v. Miller*, 2005 WL 807044, at *4 (E.D.N.Y. Apr. 8, 2005) (noting the following regarding assault in the second degree under New York law: "Knowledge that an individual is a police officer is implicit in the concept of 'intent' to prevent a police officer from performing a lawful duty."). Det. Tavares admitted that based upon the officers' interviews, there was nothing to indicate to Moroughan that DiLeonardo was a police officer. *See* Pl.'s 56.1 Resp. ¶¶ 28, 49, 53, 56(B). The Suffolk Defendants knew Mondo call 911 while on route to the hospital with Moroughan to *report* the shooting, *see id.* ¶¶ 49, 55, indicating they were calling for police assistance, not knowing that the individuals involved in the incident were themselves police officers. *See Lowth*, 82 F.3d at 572 (finding that despite probable cause to arrest for reckless endangerment, officer should have realized plaintiff did not realize he was a police officer, "especially so since, by the time he reached the station, he could reasonably have taken in the fact that, while driving, Mrs. Lowth was calling for police help."). Critically, Det. Tavares testified that "Moroughan indicated to me he was not sure he [DiLeonardo] was a cop and *he was believable*." Defs.' Ex. I at 340:2-12 (emphasis added). "I believe in his mind there was doubt." Defs.' Ex. I at 340:4-12; *see also* Pl.'s 56.1 Resp. ¶¶ 28, 49.[9] While the Suffolk Defendants correctly note, in addressing probable cause with respect to the false arrest, that "an officer is entitled to make an arrest based on believing the testimony of one side or the other," *see* Mem. at 10, *quoting Pawlicki v. City of Ithaca*, 993 F. Supp. 140, 145 (N.D.N.Y 1998), on this critical issue, they believed *Moroughan*.

---

[9] Moroughan's uncertainly as to whether DiLeonardo was a police officer, is corroborated by Kristie Mondo, mere moments after the shooting, when she described the shooter as "somebody," "a kid wearing an orange shirt in a blue Acura TL," and when the 911 operator called her back to ask "is your boyfriend a cop or something?" she responded "No, I *think* that kid said that he was a cop." Pl.'s 56.1 Resp. ¶ 49 (emphasis added).

DiLeonardo and Bienz (and Moroughan), told the detectives they were knocked to the ground, which is what caused DiLeonardo "contusions and lacerations"—the "injury," from Moroughan's still-open door, as Moroughan reversed and fled the area. Pl.'s 56.1 Resp. ¶¶ 28, 49.[10] Because the detectives knew, that Moroughan did not *know* DiLeonardo was a police officer, they likewise knew he could not have acted with the intent to prevent a police officer from performing a lawful duty, as he fled the area causing the open door to knock DiLeonardo to the ground. As the Second Circuit in *Lowth*, 82 F.3d at 573, found, which the Suffolk Defendants rely on, "By the time Officer Grant charged Mrs. Lowth with resisting arrest he had ample reason to know that she had not realized he was a policeman at the time that she was 'resisting' . . . especially given the additional facts . . . namely that when the incident occurred he was in plainclothes and that his car was an unmarked vehicle." Additionally, "[d]efenses which negate the existence of a crime should similarly negate probable cause," and "[j]ustification, including both emergency measures and self-defense, is an exculpatory defense." *Jocks*, 316 F.3d at 132-33, 135. Because the injury was caused accidentally as Moroughan fled to the hospital with bullets in him and a fractured nose, from a crazed drunk who shot and assaulted him, *see* Pl.'s 56.1 Resp. ¶¶ 28, 49, they "knew that [Moroughan's] actions were not criminal because [Moroughan] was acting in self-defense." *Jocks*, 316 F.3d at 132-33 (denying summary judgment given finding that officer knew plaintiff acted in self-defense, when, according to plaintiff's version of events, plaintiff threw a phone handset at the officer after the officer drew his weapon and threatened to shoot plaintiff). Unlike *Jocks*, where the Second Circuit had found

---

[10] While the Felony Complaint charged Moroughan with driving a car "*into* DiLeonardo causing pain and injury to his left leg and knew and forearm," *see* Defs.' Ex. H at 1, the detectives *knew* those allegations were false, as DiLeonardo's supporting Deposition expressly stated that "he *backed up* his car causing the driver's *door* to hit me knocking me to the ground causing me multiple contusions and lacerations. . ." Defs.' Ex. H at 3, which Bienz corroborated. *See* Pl.'s 56.1 Resp. ¶¶ 28, 49.

that the defendant officer was not required to investigate the plaintiff's "unsubstantiated claims about the emergency" created by the stalled truck, *see id.*, Moroughan was only charged *after* DiLeonardo and Bienz were interviewed and corroborated Moroughan's account that he had been shot, and reversed and fled. *See* Pl.'s 56.1 Resp. ¶¶ 28, 49.

Regarding the claimed lawful duty DiLeonardo was engaged in—arresting Moroughan, as demonstrated, the Suffolk Defendants knew DiLeonardo did not arrest Moroughan, and even if he did, the arrest was not lawful given that he did not have probable cause to do so, which Bienz conceded, and which the Suffolk Defendants knew. *See* Pl.'s 56.1 Resp. ¶¶ 49, 53, 54, 75-80. "To sustain a conviction of assault in the second degree under Penal Law § 120.05 (3), the People must establish that the injured police officer was engaged in a lawful duty at the time of the assault by the defendant." *People v. Lindsey*, 52 A.D.3d 527, 529 (N.Y. App. Div. 2d Dep't 2008) (citation omitted); *see also People v. Tucker*, 141 A.D.3d 748, 749-50 (N.Y. App. Div. 3d Dep't 2016) (finding no lawful duty existed where officer did not observe the defendant engage in any criminal conduct, or conduct giving rise to a reasonable suspicion that a crime was about to be committed, prior to attempting to restrain her); *People v. Richardson*, 132 A.D.3d 1239, 1240 (N.Y. App. Div. 4th Dep't 2015) ("the search of defendant was unauthorized, and the officer was injured only after he attempted to perform the unlawful search").

Regarding the injury sustained, assault on a police officer in violation of PL § 120.05(3) requires a "physical injury," *see id.*, which is defined as "impairment of physical condition or substantial pain." PL § 10.00(9) (emphasis added). However, everyone conceded that DiLeonardo's injuries—scrapes and a cut—were minor, which is insufficient as a matter of law to meet a PL § 120.05(3) charge. Even as to the most serious of those minor injuries, DiLeonardo caused that to himself when he broke the driver's side window. *See* Pl.'s 56.1 Resp. ¶¶ 28, 49;

*People v. Foster*, 162 A.D.2d 703, 704 (N.Y. App. Div. 2d Dep't 1990) (finding injuries failed to meet PL § 10.00(9) and reversing PL § 120.05(3) conviction where defendant bit the officer causing "cuts to the nose," resulting in "tenderness and swelling," and "pain [that] was '*more* than minor' and hampered him in his work, for which officer received medical treatment, including a tetanus shot and penicillin, and finding no physical impairment where "there was no scar" and "did not require stiches"); *People v. Richmond*, 36 A.D.3d 721, 722 (N.Y. App. Div. 2d Dep't 2007) (bite on arm failed to meet PL § 10.00(9) standard despite antibiotics, tenderness and swelling, where, among other factors, complainant did not take pain medication).[11]

As to the Reckless Endangerment in the Second Degree, charge, a class A misdemeanor, it requires the defendant to have "engage[d] in conduct which creates a substantial risk of serious physical injury to another person." *See* Defs.' Ex. H at 2; PL § 120.20. The detectives admitted they did not obtain *any* information from DiLeonardo or Bienz (or Moroughan), to determine whether the taxi *actually* "almost struck Anthony DiLeonardo." *See* Pl.'s 56.1 Resp. ¶¶ 28, 49. They could not have relied on DiLeonardo's assessment that "I thought he was going to hit me with the car," for several reasons. They knew DiLeonardo consumed alcohol prior to shooting Moroughan, which they admitted would have impact his perception of the incident. *See id.* This was not the only evidence of intoxication, *or* of impaired perception. *See* Mem. at 18. *Because* the detectives knew DiLeonardo was intoxicated they intentionally maintained their distance at the hospital, they learned DiLeonardo refused to have his blood drawn, Bienz, who would have been biased *toward* DiLeonardo, did not corroborate DiLeonardo's account, therefore the

---

[11] Although the complainant did miss work, *see Richmond*, 36 A.D.3d at 722, in this case the evidence demonstrates that the Workers' Compensation documents which resulted in paid sick leave, were fabricated as part of the conspiracy to attempt to meet the Assault in the Second Degree standard. *See* Pl.'s 56.1 Resp. ¶ 85; Pl.'s Ex. 53, 54 (PDCN 206 packet and Workers' Compensation Board forms). This is discussed in further detail in response to the Nassau Defendants' Statement of Fact ¶¶ 237-38.

detectives fabricated it, claiming Bienz confirmed that the taxi drove at DiLeonardo,[12] and independent eye-witness Erik Klug stated, that morning, that the shooter walked toward the taxi which was stopped on the road, while firing. *See* Pl.'s 56.1 Resp. ¶¶ 23, 28, 49, 76-79, Defs.' 56.1 Stmt. ¶ 74, 76; *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) ("information provided by an identified bystander with no apparent motive to falsify has a peculiar likelihood of accuracy") (citation and internal quotation marks omitted).[13] Even based on the information *DiLeonardo* provided, the detectives knew that if the taxi *was* driving toward him, it was crawling forward at a very slow speed, and posed no risk. *See* Pl.'s 56.1 Resp. ¶¶ 28, 49. To the extent the Suffolk Defendants believed DiLeonardo's account because Moroughan "confirmed" it, *see id.* ¶ 49, as they recognize, they cannot rely upon fabricated evidence to obtain probable cause. *See* Mem. at 16 (arguing that probable cause may nonetheless exist if the fabricated evidence is taken out of the equation); Pl.'s 56.1 Resp. ¶ 59.

Finally, while Plaintiff acknowledges that officers may rely upon purported victims or eye-witnesses, as the Suffolk Defendants had recognized, they may only do so if "it seems *reasonable* to believe [the individual] is telling the truth," and there are no "circumstances that raise doubts as to the victim's veracity." *See supra* page 9. They knew DiLeonardo and Bienz had a motive to lie regarding the incident and the amount of alcohol consumed—they both admitted to drinking and driving, that if DiLeonardo's perception that he was in danger was not reasonable, then DiLeonardo committed crime against Moroughan,[14] and that if DiLeonardo and

---

[12] While Plaintiff recognizes that probable cause may nonetheless exist independent of fabricated evidence, *see* Mem. at 16, as demonstrated, that was not the case.

[13] While the Suffolk Defendants claim that they had "no obligation to uncover [this] exculpatory evidence," *see* Mem. at 18, a reasonable jury can find that they did in fact know of Klug's account *prior* to Moroughan being formally charged. *See* Pl.'s 56.1 Resp. ¶ 49.

[14] In fact, it clearly established that "an officer may not use deadly force to defend against a slowly approaching vehicle if . . . the vehicle did not pose an imminent danger . . . and the officer had sufficient opportunity to safely step outside its path." *Rand Estate of Lawrence v. Lavoie*, 2017 WL 3891679, at *8 (D.N.H. Sept. 5, 2017).

Bienz were driving while intoxicated or impaired, they would have been guilty of additional

crimes related thereto. *See* Pl.'s 56.1 Resp. ¶ 49; *see also Sankar v. City of New York*, 867 F.

Supp. 2d 297, 306 (E.D.N.Y. 2012), *quoting Singer*, 63 F.3d at 119 ("this presumption of victim

reliability only survives in the 'absence of circumstances that raise doubts as to the victim's

veracity") (alternation in original); *cf. Fabrikant v. French*, 691 F.3d 193, 216 (2d Cir. 2012)

(finding probable cause based upon complainants' accounts, where the plaintiff "failed to raise

any genuine issue of material fact as to the motives of the complaining witnesses").

      While the Suffolk Defendants recognize that the failure to make a further inquiry when a

reasonable person would have done so, may indicate a lack of probable cause, *see* Mem. at 17,

*citing Rae*, 693 F. Supp. 2d at 227 (E.D.N.Y. 2010), *Lawrence v. City of Cadillac*, 2010 WL

5174209, at *6 (S.D.N.Y. Dec. 9, 2010); *see also Manganiello*, 612 F.3d at 161, *quoting Colon*,

60 N.Y.2d at 82, they do not even attempt to argue that a reasonable detective, under the

circumstances, would not have asked those basic, yet critical, questions to determine whether

DiLeonardo and/or Bienz were impaired or not,[15] or whether the taxi actually posed a

"substantial risk" of striking DiLeonardo. *See* Pl.'s 56.1 Resp. ¶¶ 23, 27-28, 49, 59. It would

have taken mere minutes to ask DiLeoanrdo and Bienz, who were in the conference room readily

answering questions, the distance, time, speed, and location of the taxi's movement in relation to

where DiLeonardo was standing, or "how much," "what," or "when, specifically," they

consumed alcohol. *See Tretola*, 14 F. Supp. 3d at 63-64 (holding, on a motion to set aside the

---

[15] No reasonable jury would believe that skilled homicide detectives would leave it to the drunk individual who just
shot someone, to make the call as whether he was in fact drunk, particularly where the accuracy of that individual's
perception of the incident was critical to determining whether a crime was committed. The only rational explanation
for the failure to follow up and ask those basic questions, which a reasonable jury can certainly believe, is that the
detectives did not ask those questions intentionally because they knew they would be eliciting incriminating
information, and that D/Sgt. Lamb did not have them follow up on those issues for the same reason, particularly
given that the Suffolk Defendants initially delayed interviewing the officers to avoid personally observing evidence
of intoxication. *See* Pl.'s 56.1 Resp. ¶¶ 23, 27-28, 49.

jury's verdict, that as to probable cause, "[i]ncluded within the 'totality of circumstances' is the de minimus effort that would have been required to answer the simple question of whether the heater was, or was not connected to a gas line on May 9th," where an officer arrested, and filed a reckless endearment charge, based upon a gas heater being in close proximity to two bullet straps, despite having notice, prior to arresting and charging the plaintiff, that the gas line was not actually connected). A reasonable jury could find that the inquiry, if DiLeonardo "had a drink," without any follow-up, despite Det. Tavares's claim that DiLeonardo "covered it by saying he wasn't drunk," *see* Defs.' Ex. I at 355:17-357:16, was superficial and insufficient under the circumstances. *See Manganiello*, 612 F.3d at 162 ("The record also indicates that Agostini made only the most superficial and credulous of inquiries of the taxi passenger who had been overheard telling someone he had been present at the shooting and had seen the shooter," despite Agostini speaking with the taxi passenger who admitted to making the statement but claimed it was fabricated, given that Agostini failed to confirm his whereabouts at the time of the shooting or compare his fingerprints to those found at the scene).

The fact that DiLeonardo signed a Deposition did not absolve them of their obligation to reasonably inquire. *See Carlton v. Nassau Cty. Police Dep't*, 306 A.D.2d 365, 366 (N.Y. App. Div. 2d Dep't 2003) (finding, for § 1983 claim, that where officer knew plaintiff disputed bill with restaurant and provided restaurant owner with his business card, issue of fact existed as to probable cause "notwithstanding the existence of an affidavit by the restaurant owner that the plaintiff left without paying the bill," given that "the failure to make further inquiry when a reasonable person would have done so may be evidence of lack of probable cause").

Finally, the Suffolk Defendants incorrectly argue that because Moroughan was arraigned on the charges, that broke the chain of causation from their misconduct to the prosecution. *See*

Mem. at 17. This principle only applies where the prosecutor executed independent judgment in determining whether to arraign the plaintiff, and does not apply where the officers mislead the prosecutor, or failed to disclose issues pertaining to the evidence they gathered. *See Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010) ("generally in malicious prosecution actions alleging that a police officer provided false information to a prosecutor, what prosecutors do subsequently has no effect whatsoever on the police officer's initial, potentially tortious behavior."), *citing Higazy v. Templeton,* 505 F.3d 161, 177 (2d Cir. 2007) ("the chain of causation need not be considered broken if [the officer] deceived the subsequent decision maker"); *Bermudez*, 790 F.3d at 374-75, 377 (finding, as to due process claim, "that a jury could find that Defendants' alleged failure to inform ADA Rodriguez about problems in the initial questioning of these witnesses could have prevented ADA Rodriguez from making an informed decision about the reliability of that evidence," but granting summary judgment as to malicious prosecution claim because after being misled, the ADA *personally interviewed the witnesses* prior to the grand jury presentation and determined probable cause existed). Indeed in *Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999), which the Suffolk Defendants rely on, *see* Mem. at 17, the Second Circuit reiterated that the chain of causation is only broken "in the absence of evidence that the police officer misled or pressured the official who could be expected to exercise independent judgment," and noted that, unlike this case, the plaintiff had *not* alleged "conduct tantamount to malicious prosecution or false imprisonment." *See id.*[16]

As demonstrated, Det. Tavares, Det. Leser, D/Sgt. Lamb, and Det. Ciccotto did not advise ADA Pearl as to any of the evidence incriminating DiLeonardo or Bienz or undermining

---

[16] The plaintiff alleged unreasonable search and seizure, however the officer could not be liable for the subsequent prosecution based on those violations, because the trial court denied the motion to suppress the evidence obtained thereby. *See Townes*, 176 F.3d at 147.

DiLeonardo's account, that the witness statements were fabricated, that Moroughan's 'confession' was taken despite him repeatedly yelling for his attorney, or that the arrest and prosecution was due to an unlawful conspiracy. *See* Pl.'s 56.1 Resp. ¶¶ 26, 51, 59-60, 66-69, 70, 72-73, 81-85. ADA Pearl did not personally speak with DiLeonardo, his girlfriend, Bienz, his wife, or Moroughan and his girlfriend, regarding the incident, at any time, and certainly not prior to Moroughan's arraignment, but relied upon D/Sgt. Lamb, his detectives, and the statements taken, for these witnesses' accounts. *See id.* ¶¶ 66-68.

> **C. The Suffolk Defendants are not entitled to qualified immunity given that the right to be free from prosecution absent probable cause was clearly established, and it was not objectively reasonable to charge Moroughan with felony assault when not even *one* element was met, or to charge him with recklessly endangering DiLeonardo without any knowledge as to whether the taxi posed any risk of striking DiLeonardo.**

Plaintiff acknowledges that a defendant officer who violated a plaintiff's constitutional rights may nonetheless be entitled to qualified immunity if that right was not clearly established, or if it was objectively reasonable for the defendants to believe they did not violate that right. *See* Mem. at 18. The Suffolk Defendants, however, bear the burden of establishing that "no rational jury could conclude" that they violated Moroughan's constitutional rights, *and* that the rights were clearly established.[17] *Bailey*, 79 F. Supp. 3d at 452, *quoting Coollick v. Hughes*, 699 F.3d 211, 220 (2d Cir. 2012), *quoting Anderson v. Creighton*, 483 U.S. 635, 638 (1987). "[A] plaintiff need not show a case 'directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Terebesi v. Torreso*, 764 F.3d 217, 230 (2d Cir. 2014),

---

[17] While the Suffolk Defendants cite *Mullenix v. Luna*, 136 S. Ct. 305, 308-09 (2015) in support of their claim that the law was not clearly established that charging Moroughan under the circumstances would violate his constitutional rights, *see* Mem. at 19, what they cite sets forth the general qualified immunity standard, only. It does not address malicious prosecution, nor does it address any facts which could either be analogized or distinguished from the facts of this case. *See Mullenix*, 136 S. Ct. at 308-09.

*quoting Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "Freedom from malicious prosecution is a constitutional right that has long been clearly established." *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003). To be entitled to qualified immunity, "the *officer must* adduce sufficient facts that no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiff, could conclude that it was objectively unreasonable for the officer to believe that probable cause did not exist." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991) (emphasis added).

Additionally, qualified immunity at the summary judgment stage cannot be granted where issues of fact relevant to the qualified immunity analysis, including whether the officers' actions were objectively unreasonable, exist. *See Crews*, 996 F. Supp. 2d at 216 (Bianco, J.), *quoting Oliveira v. Mayer*, 23 F.3d 642, 649 (2d Cir. 1994) ("Though qualified immunity ordinarily should be decided by the court, that is true only in those cases where the facts concerning the availability of the defense are undisputed; otherwise, jury consideration is normally required") (alteration in original); *Bailey*, 79 F. Supp. 3d at 452, *quoting Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999) ("Summary judgment on qualified immunity grounds is not appropriate where there are facts in dispute that are material to a determination of reasonableness."); *Dufort*, 874 F.3d at 354 (denying qualified immunity at summary judgment stage on false arrest and malicious prosecution claims given that the plaintiff "established a dispute of material fact as to whether the Defendants intentionally withheld or manipulated key evidence during his arrest and prosecution.").

As discussed above, there are numerous facts, including the Suffolk Defendants' own admissions, which demonstrate that no reasonable officer could have believed probable cause existed for a felony assault charge where they had no basis to believe that even *one* of the

necessary elements were met.[18] *See Lowth*, 82 F.3d 563 at 572-73 (despite affirming summary judgment on qualified immunity grounds as to the reckless endangerment charge, reversing grant of summary judgment as to malicious prosecution claim premised on resisting arrest charge, where, as discussed above, the plaintiff did not know that the defendant was a police officer, and therefore "a reasonable officer would have known that Mrs. Lowth was not aware, while she was resisting, that she was being arrested."); *Jackson*, 939 F. Supp. 2d at 257 (denying qualified immunity given, in part, that "serious injury to a police officer is a material element of the crime of assault on a police officer, but Plaintiff denies [the officers] were [ ] seriously injured, and Defendants have introduced no evidence tending to support the existence of these [serious] injuries."). Likewise, as to the reckless endangerment charge, there are numerous facts, including the Suffolk Defendants' own admissions, demonstrating that they had no basis to believe that the taxi *actually* posed a risk to DiLeonardo. Additionally, no officer would have reasonably relied on DiLeonardo's subjective claim that he feared for his safety.[19]

Furthermore, no reasonable officer would have believed DiLeonardo's account was reasonable (despite the knowledge of intoxication or impairment), on the basis that Moroughan's account was consistent with it, as Det. Tavares and Det. Leser claimed, *see* Defs.' Ex. I at 320:11-20; Pl.'s Ex. 3, ███████████████████████, given that it is objectively unreasonable to rely on fabricated evidence to corroborate a claim or obtain probable cause. *See*

---

[18] The Suffolk Defendants, who bear the burden on this issue, only pointed to DiLeonardo's Deposition in arguing that they did not knowingly violate Moroughan's constitutional rights. *See* Mem. at 19. That Deposition however demonstrates their knowing violation however, given that despite DiLeonardo claiming that Moroughan "backed up his car causing the driver's door to hit me knocking me to the ground," Moroughan was charged with driving "*into* DiLeonardo." and despite DiLeonardo claiming that he suffered "multiple contusions and lacerations," Moroughan was charged with causing "substantial pain" or "physical impairment."  *See* Pl.'s 56.1 Resp. ¶¶ 26, 45.

[19] As noted, they knew he was intoxicated or impaired, which they knew impacts perception, he had a motive to lie—if he did not then he would have admitted to committing crimes against Moroughan, Bienz failed to corroborate DiLeonardo's claim that the taxi was driving at him, and Klug, and independent and unbiased witness, affirmatively contradicted it.

*Scotto v. Almenas*, 143 F.3d 105, 113 (2d Cir. 1998) ("it would be objectively unreasonable for Almenas to believe he had probable cause to arrest Scotto if Almenas himself fabricated the grounds for arrest."); *Coggins*, 776 F.3d at 114 (denying qualified immunity where "the alleged falsification of evidence and the related conspiracy, if true, constitute a violation of clearly established law, and no objectively reasonable public official could have thought otherwise.").

Contrary to the Suffolk Defendants' claim, based upon the facts in the record a reasonable jury can certainly find that it *was* "plainly incompetent," *and* "a knowing violation of the law," *see* Mem. at 19, to charge Moroughan with crimes which no reasonable officer in their position could have believed there was probable cause for. This reasonable finding is further supported by the evidence demonstrating that the Suffolk Defendants (intentionally) failed to make a reasonable inquiry regarding the facts necessary to determine what actually happened, because they knew that doing so would create additional evidence indicating that DiLeonardo, as opposed to Moroughan, committed various crimes that evening, and by the evidence demonstrating that they conspired to have Moroughan falsely arrested and prosecuted, affirmatively fabricated evidence, concealed critical facts undermining probable cause from ADA Pearl, and misrepresented critical facts to him. *See Penree by Penree v. City of Utica, New York*, 694 F. App'x 30, 34 (2d Cir. 2017) (denying qualified immunity for malicious prosecution claim where no reasonable officer could have concluded probable cause existed, based upon plaintiff's version of the facts); *Mejia*, 119 F. Supp. 2d at 287-88 (denying qualified immunity for malicious prosecution claim where a jury could find that the detective "knowingly participated in [a controlled drug-buy] ruse and thereafter misrepresented (or concealed) the true circumstances of the controlled pickup to (or from) the prosecutor"); *Manganiello*, 612 F.3d at 165 (finding that district court properly denied defendants' motion as a matter of law based on

30

qualified immunity, where there was "ample evidentiary support" for the findings that the defendant defective "misrepresented the evidence to the prosecutors, or failed to pass on material information, or made statements that were false, and engaged in such misconduct knowingly"); *Ricciuti*, 124 F.3d at 130 ("a reasonable jury could find, based on the evidence, that defendants Lopez and Wheeler violated the plaintiffs' clearly established constitutional rights by conspiring to fabricate and forward to prosecutors a known false confession almost certain to influence a jury's verdict. These defendant police officers are not entitled to summary judgment on the ground of qualified immunity").

## IV.    THE EVIDENCE SUPPORTS A REASONABLE FINDING THAT THE SUFFOLK DEFENDANTS VIOLATED MOROUGHAN'S DUE PROCESS RIGHTS BY FABRICATING EVIDENCE, WHICH DEPRIVED HIM OF HIS LIBERTY[20]

As the Suffolk Defendants recognize, *see* Mem. at 21-22, a plaintiff may bring a § 1983 claim against an officer who "creates false information likely to influence a jury's decision and forwards that information to prosecutors," because it "violates the accused's constitutional right to a fair trial." *Ricciuti*, 124 F.3d at 130; *see also Hoyos v. City of New York*, 999 F. Supp. 2d 375, 393-94 (E.D.N.Y. 2013) (analyzing a fabrication of evidence claim in the context of information the officers "told" the prosecutor); *Abreu v. City of New York*, 2006 WL 401651, at *6 (E.D.N.Y. Feb. 22, 2006) ("When an officer *supplies* false information to a prosecutor about a suspect, the officer has violated that suspect's right to a fair trial.") (emphasis added);. This right is rooted, in part, in the Fourteenth Amendment to the United States Constitution. *See Bailey*, 79 F. Supp. 3d at 445-46. As the Suffolk Defendants further recognize, the existence of probable

---

[20] The Suffolk Defendants moved to dismiss several claims pertaining to the fabricated confession which Moroughan was misled into signing. *See* Mem. at 19-21. Plaintiff withdraws his 14th and 15th causes of action against them alleging violations of his Fifth and Sixth Amendment rights, only, but not his 17th cause of action alleging a violation of his due process rights based upon the fabrication of evidence. *See* SAC ¶¶ 248-49.

cause is not a defense to a fabrication of evidence claim. *See* Mem. at 22, *citing Ricciuti*, 124

F.3d at 130; *see also Bailey*, 79 F. Supp. 3d at 446-47.

In moving to dismiss this claim, the Suffolk Defendants only consider Moroughan's

"alleged fabricated statement," [21] and *only* to the extent that, they argue, he did not suffer a

deprivation of liberty due to that fabricated statement. Initially, Plaintiff alleged, and there are

sufficient facts in the record to demonstrate, that the Suffolk Defendants fabricated other

evidence as well.—all witness statements, the police officers' Supplementary Reports,

DiLeonardo's Deposition and the Felony and Misdemeanor Complaints. *See* Pl.'s 56.1 Resp. ¶¶

26, 49, 51, 70, 72-73; *Ricciuti*, 124 F.3d at 130 ("Here, a reasonable jury could find, based on the

evidence, that defendants Lopez and Wheeler violated the plaintiffs' clearly established

constitutional rights by conspiring to fabricate and forward to prosecutors a known false

confession almost certain to influence a jury's verdict."). These statements were forwarded to

ADA Pearl. Pl.'s Ex. 74 at 132:7-13, 143:12-144:5 (Pearl Dep. Pt 1). While Bienz was

intentionally not asked to sign a statement, *see* Pl.'s 56.1 Resp. ¶ 49, Det. Tavares and Det. Leser

however told ADA Pearl what they claim Bienz had told them. *See* Pl.'s 56.1 Resp. ¶¶ 53, 68,

69; Defs.' 56.1 Stmt. ¶ 56. The evidence reasonably suggests that D/Sgt. Lamb likewise

communicated those facts to ADA Pearl. *See* Pl.'s 56.1 Resp. ¶ 66 n. 44.

In addition to fabricating by affirmatively creating false or misleading evidence, *see*

Mem. at 21-22, police officers or other state actors likewise fabricate evidence where they

intentionally *omit* material information. *Morse v. Fusto*, 804 F.3d 538, 547-48 (2d Cir. 2015)

("We conclude that the omissions in this case were properly considered under the rubric of

*Zahrey,* under which government officials may be held liable for fabricating evidence through

---

[21] *See* Pl.'s 56.1 Resp. ¶ 59, which demonstrates that Moroughan's statement was fabricated, a fact the Suffolk
Defendants appear to accept as true for purposes of this motion. *See* Mem. at 23.

false statements or omissions that are both material and made knowingly" where plaintiff demonstrated defendants created false and/or misleading spreadsheets which they submitted as exhibits before the grand jury that indicted him). "[P]olice officers are under a constitutional obligation to disclose exculpatory evidence." *Collins v. City of New York*, 923 F. Supp. 2d 462, 476 n. 6 (E.D.N.Y. 2013), *citing Arizona v. Youngblood*, 488 U.S. 51, 56-58 (1988). "Police officers can be held liable for *Brady* due process violations under § 1983 if they withhold exculpatory evidence from prosecutors." *Bermudez*, 790 F.3d at 376 n.4, *citing Walker v. City of New York*, 974 F.2d 293, 299 (2d Cir. 1992).

As demonstrated, all Suffolk Defendants withheld the evidence of DiLeonardo's intoxication, all information undermining the two officers' credibility and accounts of the incident, all evidence as to the conspiracy to falsely arrest and prosecute Moroughan, and the fact that his 'confession' was fabricated and taken in violation of his constitutional rights. *See supra* pages 16-17; Pl.'s 56.1 Resp. ¶¶ 4-5, 7, 11, 23, 26, 51, 59-60, 66, 68-69, 70, 72-73, 81-84.

Plaintiff recognizes, of course, that the fabricated evidence must cause the deprivation of liberty. *See* Mem. at 22, *quoting Zahrey v. Coffey*, 221 F.3d at 342, 350 (2d Cir. 2000). "The causation standard is a familiar one – proximate cause." *Lopez v. City of New York*, 105 F. Supp. 3d 242, 247 (E.D.N.Y. 2015). In analyzing proximate causation with respect to both § 1983, as well as related *Bivens* claims, the Second Circuit noted that "[t]ort defendants . . . are responsible for the 'natural consequences' of their actions." *Higazy*, 505 F.3d at 175, *quoting generally Townes,* 176 F.3d 138. In *Zahrey*, which the Suffolk Defendants cite in support of their lack-of-causation argument, *see* Mem. at 22-23, the Second Circuit analyzed the "chain of causation," *Zahrey*, 221 F.3d at 351-53, and phrased the inquiry as "whether the liberty deprivations that occurred are legally *traceable* back even further to [the] earlier *investigatory act of fabrication* . .

33

." *Id.* at 352 (emphasis added) (analyzing a prosecutor's immunity with respect to alleged misconduct committed in his earlier investigative capacity). As to Moroughan's fabricated confession, contrary to the Suffolk Defendants' conclusory argument that it was "never even eluded to in the minutes of the . . . dismissal of the charges," *see* Mem. at 23, it was. *See* Pl.'s 56.1 Resp. ¶ 67.  More to point however, ADA Pearl considered Moroughan's 'statement, and specially, found that it corroborated DiLeonardo and Bienz's accounts of the incident, *see id.* ¶ 68-69, which, as far as ADA Pearl was lead to believe, were all in agreement that Moroughan drove his taxi at DiLeonardo, who therefore fired at him in response, and ADA Pearl "considered [the confession] as part of the evidence *against* Mr. Moroughan." *See id.* ¶ 60 (emphasis added).[22]

---

[22] Focusing only on Moroughan's fabricated confession and disregarding all other evidence of fabrication, the Suffolk Defendants argue that there was no deprivation of liberty given that probable cause existed independent of the fabricated confession. *See* Mem. at 23, *quoting Hoyos*, 999 F. Supp. 2d at 394. In addition to the fact that probable cause did *not* exist, this argument is contrary to established law. Indeed, when the defendants in *Ricciuti* made the identical argument, the Second Circuit described it as "an ill-conceived attempt to erect a legal barricade to shield police officials from liability," and held that "[w]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti*, 124 F.3d at 129-130. The Second Circuit has since reaffirmed *Ricciuti* as to this issue, noting that "we have held that Section 1983 liability attaches for knowingly falsifying evidence even where there simultaneously exists a lawful basis for a deprivation of liberty." *Victory v. Pataki*, 814 F.3d 47, 64 (2d Cir. 2016), *as amended* (Feb. 24, 2016), *citing Ricciuti*, 124 F.3d at 130; *see also Jocks*, 316 F.3d at 137-38 (despite affirming summary judgment as to false arrest given that probable cause existed, reversing grant of summary judgment where plaintiff claimed that defendant detective fabricated a written statement which was "edited to favor the police"); *Bailey*, 79 F. Supp. 3d at 446-47, *quoting Morse v. Spitzer*, 2012 WL 3202963, at *5-6 (E.D.N.Y. Aug. 3, 2012) ("when a Fourth Amendment claim for malicious prosecution is alleged based on the same facts, the ultimate result will be that the existence of probable cause independent of the allegedly falsified evidence is a defense to that claim but not to the fair trial claim.") (alternation in original); *Abreu*, 2006 WL 401651, at *6, *citing Jocks*, 316 F.3d at 38 (noting that violation of right to fair trial claim due to fabrication of evidence, exists "even if the officer had probable cause to arrest the accused in the first place.").

The Suffolk Defendants' misstatement on the law comes from an incorrect recitation of the law in *Hoyos*, 999 F. Supp. 2d at 392, where, citing *Ricciuti and Morse v. Spitzer*, the court erroneously noted that "[t]he existence of probable cause to arrest and prosecute is not a *complete* defense to a fair trial claim." (emphasis added). Neither *Ricciuti* nor *Morse* referenced a partial defense based upon the independent existence of probable cause, but rather, held to the contrary. *Ricciuti* is quoted immediately above. In *Morse*, the court noted that as to a fabrication of evidence/fair trial claim, the Second Circuit in *Jocks v. Tavernier* "simply confirm[ed] the conclusion in *Ricciuti* that probable cause to arrest (or prosecute) is not *a* defense to such a claim. . . . a government official who falsifies evidence against an accused may be subject to liability under § 1983 for violating the . . . Fourteenth Amendment right to a fair trial, and the existence of probable cause is *irrelevant* to the resolution of this claim." *Morse*, 2012 WL 3202963, at *5 (emphasis added), *citing Ricciuti*, 124 F.3d at 129-30, *Jocks*, 316 F.3d at 138. In fact, as in this case,

A reasonable jury can certainly find that if the fabricated evidence was not submitted to the Suffolk County District Attorney's Office, including ADA Pearl, and that if the Suffolk Defendants did not withhold all the evidence undermining the charges, including the legality of the statements they procured, which all, 'conveniently,' corroborated each other, that Moroughan would not have been arraigned, given, as this Court will surely find, that there was no probable cause to prosecute. As the courts have recognized, "the majority of section 1983 cases involving evidence fabrication arise from allegations that a police officer fabricated evidence and forwarded it to prosecutors *in order to provide probable cause* for an arrest or prosecution." *Bailey*, 79 F. Supp. 3d at 447, *quoting Morse*, 2012 WL 3202963, at *5-6 (E.D.N.Y. Aug. 3, 2012) (alternation in original); *see also Bermudez*, 790 F.3d at 376 (finding that "a reasonable jury can find that "Defendants' alleged failure to inform ADA [Goldberg] about problems in the initial questioning of these witnesses could have prevented ADA [Goldberg] from making an informed decision about the reliability of that evidence. And this would mean that a jury could find that Defendants remained a proximate cause of the deprivation of [Lopez's] due process rights."); *Bellamy v. City of New York*, 914 F.3d 727, 751 (2d Cir. 2019) ("Stated differently, to show prejudice the claimant "must demonstrate a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different."). DiLeonardo's (motive-to-lie) claim that the taxi was driving at him, would have been the only (and inherently suspect, particularly given the level to which his perception was impacted due to his intoxication)

---

the case against Ricciuti was never presented to a grand jury, and it was dismissed pre-trial. *See Ricciuti*, 124 F.3d at 126-27. Rather, like in this case where Moroughan was held at the precinct from, at the latest, 8:48 AM on January 27, 2011, and was not released from jail following his arraignment the next day, "[l]ate that night. Monday," Pl.'s Ex. 16 at 490:7-491:113 (Moroughan dep.), Ricciuti was held in custody for over 30 hours, until his arraignment the next day. *See Ricciuti*, 124 F.3d at 126. Finally, there is no indication that the alleged fabricated confession was referenced either during Ricciuti's arraignment, those few times he appeared in court, or when the charges were dismissed, *see id.* at 123, which the Suffolk Defendants argue was necessary in order to prove that the fabricated confession resulted in a constitutional injury. *See* Mem. at 23.

35

evidence supporting criminal charges against Moroughan. *See Giglio v. United States*, 405 U.S. 150, 154 (1972) (holding that where a witness's credibility "may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within this general rule" of required disclosure). Of course, a reasonable jury can find that at the very least, prior to formally charging Moroughan, the matter would have been investigated further. If this was done, the prosecutors would have learned the extent of DiLeonardo and Bienz's consumption of alcohol, as well as the additional exculpatory evidence, based upon which the charges were dismissed.

### V. THE RECORD IS REPLETE WITH EVIDENCE DEMONSTRATING THAT DEFENDANTS COMMITTED OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY, AND THAT MOROUGHAN'S CONSTITUTIONAL RIGHTS WERE THEREFORE VIOLATED

As the Suffolk Defendants noted, a conspiracy claim requires the plaintiff to prove "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Mem. at 23, *quoting Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). Additionally, a conspiracy requires an underlying constitutional violation. *See* Mem. at 24, *citing, e.g., Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001). The Suffolk Defendants argue there was no underlying constitutional violation, and that there is no evidence of overt acts in furtherance of the conspiracy. *See* Mem. at 23-25.

Regarding the underlying violation, as demonstrated, Moroughan was falsely arrested and prosecuted, and his due process rights were violated. While the Suffolk Defendants do not argue that no agreement was entered into,[23] some references to the agreement are necessary to

---

[23] They do not claim that there is no evidence that they *entered* into an agreement, but simply state, without more, that DiLeonardo's invocation of the Fifth Amendment is insufficient to give rise to the inference of a conspiracy. *See* Mem. at 24-25. The law is clear that "'conspiracies are by their very nature secretive operations,' and may have to be proven by circumstantial, rather than direct, evidence." *Pangburn*, 200 F.3d 65 (2d Cir. 1999), *quoting*

demonstrate their overt acts in furtherance of the conspiracy. Briefly, they agreed with the

Nassau Defendants to arrest and charge Moroughan despite knowing DiLeonardo and Bienz

were the ones who committed crimes, and came up with the theory that DiLeonardo had arrested

Moroughan in order to have an underlying 'lawful duty' to justify the "Assault 2" charge. D/Sgt.

Lamb then had Det. Tavares and Det. Leser question Moroughan despite Moroughan yelling for

his attorney all morning, after which the detectives fabricated Moroughan's 'confession,'

specifically tailoring it to support the agreed-upon charges. Det. Ciccotto likewise fabricated

Mondo's confession. The evidence reasonably infers that these defendants then discussed the

statement with the Nassau Defendants, and Det. Tavares then spoke with Sgt. Marinace to ensure

that the Firearms Discharge Report further supports, and does not undetermine, the charge, given

that everyone knew DiLeonardo only suffered a "minor" injury, which was legally insufficient to

support the "Assault 2" charge. Thereafter, everyone responded to the Second Precinct, where, in

the hour prior to interviewing DiLeonardo and Bienz, the defendants all discussed the incident,

including Det. Walsh's canvas, PO Rocchio, PO Meany, and PO Faya prepared Supplementary

Reports omitting all evidence of alcohol consumption and intoxication, and included fabricated

statements they attributed to Moroughan, which he did not make. Det. Tavares, Det. Leser, and

Det. Ciccotto interviewed DiLeonardo and Bienz, and coordinated their fabricated statements

with the assistance of the Nassau Defendants as well as the NCPD PBA representatives. *See*

*Randle*, 170 F. Supp. 3d at 591-92 (finding that evidence guards spent time writing short incident

reports in the same room was sufficient circumstantial evidence that they coordinated their

---

*Rounseville v. Zahl*, 13 F.3d 625, 632 (2d Cir.1994). "To survive a motion for summary judgment, a plaintiff's
evidence of a § 1983 conspiracy must, at least, reasonably lead to the *inference* that the defendants positively or
tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Randle v. Alexander*, 170
F. Supp. 3d 580, 591 (S.D.N.Y. 2016) (emphasis added), *quoting Stein v. Janos*, 269 F. Supp. 2d 256, 261-62
(S.D.N.Y. 2003) (alternation in original).

stories to conceal their role in prison fights); *Cipolla v. Cty. of Rensselaer*, 129 F. Supp. 2d 436, 455-56 (N.D.N.Y. 2001), *aff'd*, 20 F. App'x 84 (2d Cir. 2001) (finding that evidence that defendants testified falsely (like in this case where they submitted false documents and statements), and evidence that others asked witnesses to testify falsely (like in this case where they coordinated the false witness statements), was sufficient evidence for a reasonable jury to find that defendants "took actions in furtherance of an agreement that violated Plaintiff['s] constitutional rights and, if the jury credits the above evidence, it could reasonably infer the necessary agreement."). Det. Tavares and Det. Leser, specifically, had DiLeonardo and Bienz claim, for the first time, that DiLeonardo arrested Moroughan at the scene, and at that time, prior to the conspiracy falling apart after the criminal charges were dismissed, Bienz agreed to go along with DiLeonardo's story despite telling the detectives that DiLeonardo did not identify himself as a police officer, and that the taxi did not drive at DiLeonardo. *See Ali v. Connick*, 136 F. Supp. 3d 270, 282-83 (E.D.N.Y. 2015) (noting that given that a jury could find in plaintiff's favor on an excessive use of force claim which was not subject to summary judgment dismissal (like in this case where DiLeonardo did not move for summary judgment), the documents the defendants created which indicated the plaintiff injured *himself* (like the documents and records created by the various defendants stating that Moroughan drove at DiLeonardo who justifiably shot him), "show[ ] an agreement to falsify testimony and cover up an unconstitutional use of force."). Once the statements were obtained, the Nassau and Suffolk Defendants discussed the matter, and the Nassau Defendants then fabricated the Departmental and State forms to further support, and not to undermine, the agree-upon version of the incident. Additionally, the Suffolk Defendants forwarded the fabricated evidence to ADA Pearl, provided him with false information consistent with their agreed-upon version of the incident, and withheld from him all

38

information undermining the credibility of the fabricated statements, or DiLeonardo and Bienz's credibility, generally. *See, e.g.,* Pl.'s 56.1 Resp. ¶¶ 5, 7-8, 11, 13-15, 18-24, 26, 28, 34-35, 37, 42-43, 44, 48-51, 53-54, 56-60, 66-70, 72-73, 77-87.

## VI.   THE SUFFOLK DEFENDANTS FAILED TO DEMONSTRATE THEIR ENTITLED TO SUMMARY JUDGMENT ON ANY OF MOROUGHAN'S PENDANT STATE LAW CLAIMS[24]

The Suffolk Defendants to do not address in any detail Plaintiff's libel and slander claim, other than arguing, in three lines, that it should be dismissed because probable cause existed to arrest Moroughan, and that Moroughan was in fact arrested. *See* Mem. at 25. Given that a reasonable jury can find that probable cause to arrest Moroughan did *not* exist, as demonstrated in detail, and given that the Suffolk Defendants did not move to dismiss the claim on any other basis, their motion on this issue should be denied outright.

Finally, in just over two lines within their Memorandum, they ask this Court not to retain supplemental jurisdiction over the state law claims based upon their assertion that no viable § 1983 claim remains. *See* Mem. at 25. Even if this Court dismisses all of Plaintiff's § 1983 claims against the Suffolk Defendants (which it shouldn't, as demonstrated), this Court should nonetheless retain supplemental jurisdiction over the pendent state law claims against them, as

---

[24] Plaintiff asserted a state law respondeat superior claim against Suffolk County, to hold it accountable for the torts its employees committed against Moroughan within the scope of their employment. *See* SAC ¶¶ 282-84. Nowhere in their motion papers did the Suffolk Defendants reference this claim, or seek its dismissal. *See generally* Mem. Additionally, while the Suffolk Defendants acknowledged Plaintiff's state law malicious prosecution claim, *see id.* at 1-2; *see also* SAC ¶¶ 261-63, they did not specifically move for summary judgment on that claim. *See* Mem. at 13-19 (expressly addressing only "§ 1983 claims of malicious prosecution"). Therefore, those claims cannot be dismissed at this stage. *See Mills,* 2009 WL 10701647, at *2-3; *Tsesarskaya,* 843 F. Supp. 2d at 460 ("the excessive force claims (on which the defendants have not even moved for summary judgment) clearly will be tried"); *Waterman v. City of New York,* 1998 WL 760233, at *3 n. 3 (S.D.N.Y. Oct. 29, 1998) (denying summary judgment as to claims not "specifically addressed"). If this court considers the Suffolk Defendants' § 1983 malicious prosecution arguments as applying to the state law malicious prosecution claim (which it shouldn't), it should be noted that qualified immunity does not apply to state law claims. While the Suffolk Defendants' false arrest argument does not specifically address the related state law claim, either, their memorandum on this point is not expressly limited to § 1983. *See* Mem. at 5-13.

they 'derive from a common nucleus of operative fact' as the § 1983 claims against the

remaining defendants—the Nassau Defendants, Deputy Chief Hunter, and Anthony DiLeonardo

(who did not move for summary judgment). *See* 28 U.S.C. § 1367(a); *Achtman v. Kirby*,

*McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006), *quoting Briarpatch Ltd. v. Phoenix*

*Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004) (noting that supplemental jurisdiction may be

exercised "even if the state law claim is asserted against a party different from the one named in

the federal claim.").

## CONCLUSION

For the reasons discussed above, and based upon the evidence in the record, this Court

should deny the Suffolk Defendants' motion in its entirety.


Dated:  Mineola, New York
        March 12, 2019

                                              Respectfully,

                                              The Law Office of Anthony M. Grandinette
                                              *Attorneys for Plaintiff*
                                              114 Old Country Road, Suite 420
                                              Mineola, New York 11501
                                              (516) 877-2889

                                      By: _____
                                              Mirel Fisch

CC: All counsel via regular mail


40